# Exhibit X



November 22, 2019

*VIA USPS CERTIFIED MAIL AND EMAIL*

Honorable Debbie Porter
Imperial County Registrar-Recorder/County Clerk
940 W. Main Street, Suite 206
El Centro, California 92243

Hon. Alex Padilla
California Secretary of State
1500 11th Street, 5th Floor
Sacramento, California 62704-4503

**Re:  Statutory Notice of Violations of 52 U.S.C. § 20507 in Imperial County**

Dear Registrar Porter and Secretary Padilla:

I write as legal counsel for Judicial Watch, Inc. ("Judicial Watch"), for the Institute for Fair Elections, and for Joe Rivas, a registered voter in Imperial County ("the County").  This letter is to bring to your attention violations of Section 8 of the National Voter Registration Act ("NVRA") committed in the County.  Registrar Porter, as the registrar of the County, is receiving this letter because his office is responsible for collecting and processing the County's voter registration data.[1] Secretary Padilla, as chief state elections official of California ("the State"), is receiving this letter because his office is responsible for coordinating compliance with Section 8 of the NVRA.[2]

This letter serves as official statutory notice under 52 U.S.C. § 20510(b)(1) & (2) that Judicial Watch and those on whose behalf it has sent this letter will bring a lawsuit against you if these violations are not corrected within 90 days.  Section 8(a)(4) of the NVRA requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters" by reason of death or change of address.  52 U.S.C. § 20507(a)(4).  In order to ensure that states and counties are complying with these requirements, Congress provided a public inspection provision, which requires all records concerning the accuracy and currency of the voter registration list to be disclosed.  52 U.S.C. § 20507(i).

The following explains how we determined that Section 8 has been violated and the remedial steps that must be taken to comply with federal law.

---

[1] 2 Cal. Code Regs. § 20108.1(i).

[2] *See* 52 U.S.C. § 20509; Cal. Elec. Code § 2402(a).

Statutory Notice of NVRA Violations
November 22, 2019
Page | 2

Judicial Watch examines a number of metrics in order to assess whether a jurisdiction is conducting a general program that makes a reasonable effort to remove ineligible registrants from its voter rolls.  To begin with, Judicial Watch determines each jurisdiction's registration rate.  States must report detailed registration data every other year to the U.S. Election Assistance Commission (EAC).[3]  Judicial Watch hires experts to compare this data to the citizen voting-age population in each state and county where data is available.[4]  An unusually high registration rate suggests that a jurisdiction is not removing voters who have died or who have moved elsewhere, as required by 52 U.S.C. § 20507(a)(4).  Federal courts adjudicating NVRA claims have acknowledged the significance of high registration rates.  *See Am. Civ. Rights Union v. Martinez-Rivera*, 166 F. Supp. 3d 779, 793 (W.D. Tex. 2015); *Voter Integrity Project NC, Inc. v. Wake Cnty. Bd. of Elections*, 301 F. Supp. 3d 612, 618 (E.D.N.C. 2017).

Judicial Watch also examines the number of inactive registrations in each jurisdiction.  Voter registrations are subject to cancellation when a voter fails to respond to an address confirmation and then fails to vote or correct the registration record during the next two general federal elections.  52 U.S.C. § 20507(d)(1)(B).  Registrations pending removal during this period are typically referred to as "inactive."  Inactive registrations may still be voted on election day.  52 U.S.C. § 20507(d)(2)(A).  Data concerning such registrations must be reported to the EAC.[5]  "Not only are States allowed to remove registrants who satisfy these requirements, but federal law makes this removal mandatory."  *Husted v. A. Philip Randolph Inst.*, 138 S. Ct. 1833, 1841-42 (2018).[6]  A high number of inactive registrations suggests that they are not being timely removed as required by federal law.

Judicial Watch also considers how many registrations were ultimately removed from the voter rolls because a registrant failed to respond to an address confirmation notice and then failed to vote during the NVRA's statutory waiting period.  If few or no voters were removed by means of this process, the jurisdiction is obviously failing to comply with Section 8(d) of the NVRA.  52 U.S.C. § 20507(d)(1).  States must report the number of such removals to the EAC.[7]

---

[3] 11 C.F.R. § 9428.7.

[4] EAC registration data is available publicly at https://www.eac.gov/research-and-data/election-administration-voting-survey/.  For the latest American Community Survey population and demographic data, *see* https://factfinder.census.gov/faces/nav/jsf/pages/index.xhtml

[5] 11 C.F.R. § 9428.7(b)(1), (2), &(4).

[6] Pursuant to Judicial Watch's settlement agreement in a prior NVRA lawsuit involving Los Angeles County and the State of California, Secretary Padilla's office sent a written advisory concerning these legal obligations to every county elections official.  *See Judicial Watch v. Logan*, No. 17-8948, ECF 96-1, ¶ 9 (C.D. Cal. Jan. 3, 2019).

[7] 11 C.F.R. § 9428.7(b)(5); U.S. Election Assistance Commission, ELECTION ADMINISTRATION AND VOTING SURVEY: 2018 COMPREHENSIVE REPORT at 197 (survey question A9e), available at https://www.eac.gov/assets/1/6/2018_EAVS_Report.pdf.

Statutory Notice of NVRA Violations
November 22, 2019
Page | 3

Our analysis of the data regarding Imperial County showed the following:

● The County has a total registration rate of 101%.  To be clear, the number of voter registrations exceeds the number of citizens in the County who are old enough to register to vote.

● There are more than 31,000 inactive voter registrations on the County's rolls, or more than one third of the total number of registrations.

● The County reported removing only 9 voter registrations in the last two-year reporting period on the grounds that the registrants failed to respond to an address confirmation notice and failed to vote in two consecutive federal elections.  This is an absurdly low number of removals for a county of this size and enough, on its own, to establish a violation of the NVRA.

These facts establish clear violations of Section 8(a)(4) of the NVRA.

In addition, the failure to produce documents as required by Section 8(i) constitutes an independent violation of the NVRA.  Section 8(i)(1) generally requires that "[e]ach state shall maintain for at least 2 years and shall make available for public inspection . . . all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters."  52 U.S.C. § 20507(i)(1).  That provision goes on to specifically provide that "[t]he records maintained . . . shall include lists of the names and addresses of all persons to whom [address confirmation] notices . . . are sent, and information concerning whether or not each such person has responded to the notice."  *Id.*, § 20507(i)(2).

On April 12, 2019, Judicial Watch sent a letter to Ms. Porter pursuant to section 8(i) requesting six categories of records (attached).  To date we have received no response of any kind.

\* \* \* \* \* \* \*

Pursuant to 52 U.S.C. § 20510(b)(2), if the foregoing violations are not corrected within 90 days of your receiving this letter, Judicial Watch and those on whose behalf it has sent this letter may commence an action against you in federal court.  Please contact us about your plans for correcting these violations.  In particular, please set forth in such communication:

● Whether you agree that the EAC accurately quoted data it received from you regarding (1) the number of address confirmation notices you sent, and (2) the number of registrations you removed under the process set forth in Section 8(d) of the NVRA, during the last two-year reporting period.  If you believe the data reported was not accurate, please let us know your own estimates regarding these two numbers.

● Your explanation regarding the County's registration rate discussed above.

Statutory Notice of NVRA Violations
November 22, 2019
Page | 4

●       A description of the State's and the County's programs for sending address confirmation notices described in 52 U.S.C. § 20507(d)(2) to those who are believed to have moved.

●       A description of the State's and the County's programs for complying with the other voter list maintenance requirements of the NVRA, including all requirements to remove the registrations of those who have died or have otherwise become ineligible to register or vote.

●       A description of the State's and the County's programs for producing documents pursuant to 52 U.S.C. § 20507(i)(2).

●       Documents supporting your accounts of the foregoing explanations and descriptions.

●       A description of your plan to remedy any noncompliance with the voter list maintenance requirements of the NVRA, including 52 U.S.C. § 20507(a)(4) and (d).

●       A schedule for producing (1) the records requested by Judicial Watch in April 2019, and (2) a privilege log for any record withheld on the basis of a claimed "exemption."

I hope the concerns identified in this letter can be resolved amicably.  We have a track record of resolving NVRA claims on reasonable terms.  However, if you do not contact us about correcting or otherwise resolving the above-identified problems within 90 days, a federal lawsuit seeking declaratory and injunctive relief against both of you in your official capacities may be necessary.  In such a lawsuit we would seek, in addition to injunctive relief, a judgment awarding reasonable attorney fees, expenses, and costs.  *See* 52 U.S.C. § 20510(c).  For the reasons set forth above, we believe that such a lawsuit would be very likely to succeed.

We look forward to receiving your prompt response.

Sincerely,

**JUDICIAL WATCH, INC.**

*s/ Robert D. Popper*

Robert D. Popper
Attorney, Judicial Watch, Inc.

![Judicial Watch logo — Because no one is above the law!]

October 4, 2019

*VIA USPS CERTIFIED MAIL AND EMAIL*

Hon. Alex Padilla                                   Hon. Claudio Valenzuela
California Secretary of State                  Registrar-Recorder/County Clerk
1500 11th Street, 5th Floor                    Monterey County
Sacramento, California 62704-4503        P.O. Box 4400
                                                           Salinas, California 93912

**Re:  Statutory Notice of Violations of 52 U.S.C. § 20507 in Monterey County**

Dear Secretary Padilla and Registrar Valenzuela:

I write as legal counsel for Judicial Watch, Inc. ("Judicial Watch"), for Election Integrity Project California, Inc., and for Melanie S. Swain and Susan Lowell, registered voters in Monterey County.  This letter is to bring to your attention violations of Section 8 of the National Voter Registration Act ("NVRA") committed in Monterey County.  Secretary Padilla, as California's chief state elections official, is receiving this letter because his office is responsible for coordinating compliance with Section 8 of the NVRA.[1]  Registrar Valenzuela, as the registrar of Monterey County, is receiving this letter because his office is responsible for collecting and processing the County's voter registration data.[2]

This letter serves as official statutory notice under 52 U.S.C. § 20510(b)(1) & (2) that Judicial Watch and those on whose behalf it has sent this letter will bring a lawsuit if these violations are not corrected within 90 days.  Section 8(a)(4) of the NVRA requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters" by reason of death or change of address.  52 U.S.C. § 20507(a)(4).  In order to ensure that states and counties are complying with these requirements, Congress provided a public inspection provision, which requires all records concerning the accuracy and currency of the voter registration list be disclosed.  52 U.S.C. § 20507(i).

The following information explains how we determined that Monterey County is in violation of Section 8 and the remedial steps that must be taken to comply with federal law.

---

[1] *See* 52 U.S.C. § 20509; Cal. Elec. Code § 2402(a).

[2] 2 Cal. Code Regs. § 20108.1(i).

Hon. Alex Padilla
Hon. Claudio Valenzuela
October 4, 2019
Page | 2

      **1.      *The number of voter registrations in Monterey County exceeds the number of citizens living in the County who are old enough to register.***

      According to experts retained by Judicial Watch, Monterey County's voter registration rate is 104% of its age-eligible citizen population.  This shows that the County is not making the reasonable effort required by the NVRA to remove ineligible registrations.

      Based on information the Secretary's office reported to the U.S. Election Assistance Commission (EAC), Monterey County has a total of about 241,000 registered voters.[3]  The U.S. Census Bureau's five-year American Community Survey reports that there are about 232,000 Monterey County citizens who are over the age of 18.[4]  Thus, Monterey County has more registered voters than citizens who lawfully could register or vote.  The disparity is larger than can be explained by any data anomaly or difference in benchmark dates.

      Federal courts have recognized that excessive registration rates indicate that a jurisdiction is not making a reasonable effort to remove ineligible voters as required by 52 U.S.C. § 20507(a)(4).  *See Am. Civ. Rights Union v. Martinez-Rivera*, 166 F. Supp. 3d 779, 793 (W.D. Tex. 2015) (upholding denial of motion to dismiss NVRA complaint where "voter rolls maintained by the Defendant contain more voters registered to vote than there are citizens eligible to vote"); *Voter Integrity Project NC, Inc. v. Wake Cnty. Bd. of Elections*, 301 F. Supp. 3d 612, 618 (E.D.N.C. 2017) (denying motion to dismiss where complaint alleged voter rolls contained "more registrants than eligible voting-age citizens").

      **2.      *Monterey County is not removing inactive registrations as required by the NVRA.***

      Voter registrations are subject to cancellation when a voter fails to respond to an address confirmation and then fails to vote (or to correct the registration record) during the next two general federal elections.  52 U.S.C. § 20507(d)(1)(B).  "Not only are States allowed to remove registrants who satisfy these requirements, but federal law makes this removal mandatory."  *Husted v. A. Philip Randolph Inst.*, 138 S. Ct. 1833, 1841-42 (2018), citing 52 U.S.C. § 20507(d)(3); 52 U.S.C. § 21083(a)(4)(A).[5]  California (along with many states) refers to voters who have failed to respond to an address confirmation and whose registrations are subject to removal removed after the statutory waiting period as "inactive."  2 Cal. Code Regs. § 20108.1(*l*).  Even if a registration is

---

[3] EAC registration data is available publicly at https://www.eac.gov/research-and-data/election-administration-voting-survey/.

[4] For the latest American Community Survey population and demographic data, see https://factfinder.census.gov/faces/nav/jsf/pages/index.xhtml.

[5] Pursuant to Judicial Watch's settlement agreement in a prior NVRA lawsuit involving Los Angeles County and the State of California, Secretary Padilla's office sent a written advisory concerning these legal obligations to every county elections official, including Registrar Valenzuela.  *See Judicial Watch v. Logan*, No. 17-8948, ECF 96-1, ¶ 9 (C.D. Cal. Jan. 3, 2019).

Hon. Alex Padilla
Hon. Claudio Valenzuela
October 4, 2019
Page | 3

designated "inactive," it may still be used to cast ballots on election day.   52 U.S.C. § 20507(d)(2)(A).

The evidence shows that Monterey County is not complying with the NVRA's mandatory removal procedures regarding inactive voter registrations.  The latest EAC survey data shows that, in the last two-year reporting period, Monterey County did not report removing *any* voter registrations because the registrants failed to respond to an address confirmation notice and failed to vote in two consecutive federal elections.  There is no reasonable explanation for this wholesale failure to comply with federal law.

Monterey County's failure to remove any registrations in this category helps to explain the fact that it has about 54,000 inactive registrations on its rolls—or more than one out of every five registrations.

> **3.      *Monterey County has not produced documents required to be produced by the NVRA.***

Section 8(i)(1) generally requires that "[e]ach state shall maintain for at least 2 years and shall make available for public inspection . . . all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters."  52 U.S.C. § 20507(i)(1).  That provision goes on to specifically provide that "[t]he records maintained . . . shall include lists of the names and addresses of all persons to whom [address confirmation] notices . . . are sent, and information concerning whether or not each such person has responded to the notice."  *Id.*, § 20507(i)(2).

On April 12, 2019, Judicial Watch sent a letter to Mr. Valenzuela pursuant to section 8(i) requesting six categories of records (attached).  On May 15, 2019, Mr. Valenzuela responded by letter (attached).

The County's response is fundamentally unserious.  The County supplied a total of ten pages of documents, referred Judicial Watch to the internet for additional documents, and claimed privilege concerning three of the six requests (without, however, producing a privilege log). Similar requests to other California counties and nationwide typically yield responses consisting of hundreds or even thousands of pages of relevant documents.

The County's response to Judicial Watch's first request is particularly brazen.  That request sought "[t]he names and addresses of all persons to whom [address confirmation] notices . . . were sent, and information concerning whether or not each person responded to the notice."  Note that this is the *one category* of records *specifically* identified as responsive by the NVRA.  52 U.S.C. § 20507(i)(2).  Refusing to produce these records plainly violates federal law.

Hon. Alex Padilla
Hon. Claudio Valenzuela
October 4, 2019
Page | 4

No other California county claimed that California law somehow restricted the release of this category of records. Yet even if Monterey County's interpretation of California law were correct—meaning that the other California counties were incorrect—any state law contrary to Section 8(i)(2) would be preempted by it. Preemption claims are particularly strong for statutes like the NVRA passed pursuant to the Elections Clause. *See Harkless v. Brunner*, 545 F.3d 445, 455 (6th Cir. 2008) (rule that preemption must be explicit "does not apply when Congress acts under the Elections Clause, as it did in enacting the NVRA"); *Judicial Watch, Inc. v. Lamone*, 2019 U.S. Dist. LEXIS 134151 at *41-43 (D. Md. Aug. 8, 2019) (collecting NVRA preemption cases and holding that Maryland's voter list must be disclosed); *Project Vote/Voting for America, Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012) ("It is not the province of this court . . . to strike the proper balance between transparency and voter privacy. That is a policy question" that "Congress has already answered" by adopting Section 8(i)).

Judicial Watch has decades of experience in suing to obtain documents under federal public records laws. We will not hesitate to sue to obtain these records.

\* \* \* \* \* \* \*

Pursuant to 52 U.S.C. § 20510(b)(2), if the foregoing violations are not corrected within 90 days of your receiving this letter, Judicial Watch and those on whose behalf it has sent this letter may commence an action against you in federal court. Please contact us about your plans for correcting these violations. In particular, please set forth in such communication:

● Your explanation regarding Monterey County's registration rate discussed in part 1 above.

● A description of Monterey County's program for sending address confirmation notices described in 52 U.S.C. § 20507(d)(2) to those who are believed to have moved, including your estimate of how many such notices have been sent in the last four years, and how many registrations have been removed in that time period because a voter failed to respond to such a notice and failed to vote or correct the registration record in the next two general federal elections.

● A description of Monterey County's program for complying with the other voter list maintenance requirements of the NVRA, including all requirements to remove the registrations of those who have died or have otherwise become ineligible to register or vote.

● A description of Monterey County's program for producing documents pursuant to 52 U.S.C. § 20507(i)(2).

● Documents supporting your account of the foregoing explanations and descriptions.

Hon. Alex Padilla
Hon. Claudio Valenzuela
October 4, 2019
Page | 5

     ● A description of your plan to remedy any noncompliance with the voter list maintenance requirements of the NVRA, including 52 U.S.C. § 20507(a)(4) and (d).

     ● A schedule for producing the documents requested by Judicial Watch in April 2019.

     I hope the concerns identified in this letter can be resolved amicably. We have a track record of resolving NVRA claims on reasonable terms. However, if you do not contact us about correcting or otherwise resolving the above-identified problems within 90 days, a federal lawsuit seeking declaratory and injunctive relief against both of you in your official capacities as California's Secretary of State and Monterey County's Registrar-Recorder/County Clerk may be necessary. In such a lawsuit we would seek, in addition to injunctive relief, a judgment awarding reasonable attorney fees, expenses, and costs. *See* 52 U.S.C. § 20510(c). For the reasons set forth above, we believe that such a lawsuit would be very likely to succeed.

     We look forward to receiving your prompt response.

     Sincerely,

     **JUDICIAL WATCH, INC.**

     *s/ Robert D. Popper*

     Robert D. Popper
     Attorney, Judicial Watch, Inc.



December 12, 2019

*VIA USPS CERTIFIED MAIL AND EMAIL*

Hon. Neal Kelley
Orange County Registrar of Voters
1300 South Grand Avenue
Building C
Santa Ana, California 92705

Hon. Alex Padilla
California Secretary of State
1500 11th Street, 5th Floor
Sacramento, California 62704-4503

**Re:  Statutory Notice of Violations of 52 U.S.C. § 20507 in Orange County**

Dear Registrar Kelley and Secretary Padilla:

I write as legal counsel for Judicial Watch, Inc. ("Judicial Watch"), the Institute for Fair Elections, and Vicky Hoffman, Stephanie Thomas, and Bill Williams, registered voters in Orange County (the "County").  This letter is to bring to your attention violations of Section 8 of the National Voter Registration Act ("NVRA") committed in the County.  Registrar Kelley is receiving this letter because his office is responsible for collecting and processing the County's voter registration data.[1]  Secretary Padilla, as chief state elections official of California ("the State"), is receiving this letter because his office is responsible for coordinating compliance with Section 8 of the NVRA.[2]

This letter serves as official statutory notice under 52 U.S.C. § 20510(b)(1) & (2) that Judicial Watch and those on whose behalf it has sent this letter will bring a lawsuit against you if these violations are not corrected within 90 days.  Section 8(a)(4) of the NVRA requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters" by reason of death or change of address.  52 U.S.C. § 20507(a)(4).  In order to ensure that states and counties are complying with these requirements, Congress provided a public inspection provision, which requires all records concerning the accuracy and currency of the voter registration list to be disclosed.  52 U.S.C. § 20507(i).

---

[1] 2 Cal. Code Regs. § 20108.1(i).

[2] *See* 52 U.S.C. § 20509; Cal. Elec. Code § 2402(a).

Statutory Notice of NVRA Violations
December 12, 2019
Page | 2

The following explains how we determined that Section 8 has been violated and the remedial steps that must be taken to comply with federal law.

Judicial Watch examines a number of metrics in order to assess whether a jurisdiction is conducting a general program that makes a reasonable effort to remove ineligible registrants from its voter rolls.  To begin with, Judicial Watch determines each jurisdiction's registration rate.  States must report detailed registration data every other year to the U.S. Election Assistance Commission (EAC).[3]  Judicial Watch hires experts to compare this data to the citizen voting-age population in each state and county where data is available.[4]  An unusually high registration rate suggests that a jurisdiction is not removing voters who have died or who have moved elsewhere, as required by 52 U.S.C. § 20507(a)(4).  Federal courts adjudicating NVRA claims have acknowledged the significance of high registration rates.  *See Am. Civ. Rights Union v. Martinez-Rivera*, 166 F. Supp. 3d 779, 793 (W.D. Tex. 2015); *Voter Integrity Project NC, Inc. v. Wake Cnty. Bd. of Elections*, 301 F. Supp. 3d 612, 618 (E.D.N.C. 2017).

Judicial Watch also examines the number of inactive registrations in each jurisdiction.  Voter registrations are subject to cancellation when a voter fails to respond to an address confirmation and then fails to vote or correct the registration record during the next two general federal elections.  52 U.S.C. § 20507(d)(1)(B).  Registrations pending removal during this period are typically referred to as "inactive."  Inactive registrations may still be voted on election day.  52 U.S.C. § 20507(d)(2)(A).  Data concerning such registrations must be reported to the EAC.[5]  "Not only are States allowed to remove registrants who satisfy these requirements, but federal law makes this removal mandatory."  *Husted v. A. Philip Randolph Inst.*, 138 S. Ct. 1833, 1841-42 (2018).  A high number of inactive registrations suggests that they are not being timely removed as required by federal law.

Judicial Watch also considers how many registrations were ultimately removed from the voter rolls because a registrant failed to respond to an address confirmation notice and then failed to vote during the NVRA's statutory waiting period.  If few or no voters were removed by means of this process, the jurisdiction is obviously failing to comply with Section 8(d) of the NVRA.  52 U.S.C. § 20507(d)(1).  States must report the number of such removals to the EAC.[6]

Our analysis of the data regarding Orange County showed the following:

---

[3] 11 C.F.R. § 9428.7.

[4] EAC registration data is available publicly at https://www.eac.gov/research-and-data/election-administration-voting-survey/.  For the latest American Community Survey population and demographic data, *see* https://factfinder.census.gov/faces/nav/jsf/pages/index.xhtml

[5] 11 C.F.R. § 9428.7(b)(1), (2), & (4).

[6] 11 C.F.R. § 9428.7(b)(5); U.S. Election Assistance Commission, ELECTION ADMINISTRATION AND VOTING SURVEY: 2018 COMPREHENSIVE REPORT at 197 (survey question A9e), available at https://www.eac.gov/assets/1/6/2018_EAVS_Report.pdf.

Statutory Notice of NVRA Violations
December 12, 2019
Page | 3

●   The County did not report removing *any* voter registrations in the last two-year reporting period on the grounds that the registrants failed to respond to an address confirmation notice and failed to vote in two consecutive federal elections. Such removals are required by the NVRA. If this report is true, it is enough on its own to establish beyond any dispute that the County is not complying with the NVRA.

●   There are about 380,000 inactive voter registrations on the County's rolls, or about one in every five registrations.

●   The County has a high registration rate of 96%.

These facts establish clear violations of Section 8(a)(4) of the NVRA.

* * * * * * *

Pursuant to 52 U.S.C. § 20510(b)(2), if the foregoing violations are not corrected within 90 days of your receiving this letter, Judicial Watch and those on whose behalf it has sent this letter may commence an action against you in federal court. Please contact us about your plans for correcting these violations. In particular, please set forth in such communication:

●   Whether you agree that the EAC accurately quoted data it received from you regarding the number of registrations you removed under the process set forth in Section 8(d) of the NVRA during the last two-year reporting period. If you believe the data reported was not accurate, please let us know your own estimates regarding these two numbers.

●   Your explanation regarding the County's high number of inactive registrations.

●   Your explanation regarding the County's registration rate discussed above.

●   A description of the State's and the County's programs for sending address confirmation notices described in 52 U.S.C. § 20507(d)(2) to those who are believed to have moved.

●   A description of the State's and the County's programs for complying with the other voter list maintenance requirements of the NVRA, including all requirements to remove the registrations of those who have died or have otherwise become ineligible to register or vote.

●   A description of your plan to remedy any noncompliance with the voter list maintenance requirements of the NVRA, including 52 U.S.C. § 20507(a)(4) and (d).

* * * * * * *

Statutory Notice of NVRA Violations
December 12, 2019
Page | 4

Section 8(i)(1) of the NVRA requires that "[e]ach state shall maintain for at least 2 years and shall make available for public inspection . . . all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1). That provision goes on to specifically provide that "[t]he records maintained . . . shall include lists of the names and addresses of all persons to whom [address confirmation] notices . . . are sent, and information concerning whether or not each such person has responded to the notice." *Id.*, § 20507(i)(2).

Pursuant to that section, please provide the following categories of records to Judicial Watch within two weeks of the date of this letter. If you fail to do so, we will deem it an independent violation of the NVRA. Specifically, please provide the following records insofar as they were generated by, or concern, the County:

1.    The names and addresses of all persons to whom notices described in 52 U.S.C. § 20507(d)(2) were sent, and information concerning whether or not each person responded to the notice.

2.    All documents and communications concerning the questions contained in Section A of the most recent Election Administration & Voting Survey ("EAVS"). This request includes, but is not limited to:
       a.    Your written responses to the EAVS, along with any documents you provided along with your responses.
       b.    Any internal or external communications about the EAVS.

3.    All documents concerning any internal or external audit, evaluation, assessment, review, analysis, critique, or request for or response to any of the foregoing, relating to the accuracy and currency of official lists of eligible voters. This request includes, but is not limited to any of the foregoing documents relating to:
       a.    Registered voters who were sent notices described in 52 U.S.C. § 20507(d)(2).
       b.    Registered voters who have died.
       c.    Registered voters who are noncitizens.

4.    All documents concerning any instance(s) of voter fraud, including, but not limited to, impersonation fraud, double voting, registration fraud, absentee ballot fraud, mail-in ballot fraud, registration or voting by noncitizens, unlawful assistance, or aiding, abetting, or conspiring to commit any of the foregoing.

5.    All manuals, training materials, protocols, written standards, and official guidance concerning efforts to ensure the accuracy and currency of your official list of eligible voters.

6.    All contracts with the U.S. Postal Service or any other federal agency to provide change-of-address information concerning registered voters.

Statutory Notice of NVRA Violations
December 12, 2019
Page | 5

    7.      Copies of all documents and communications concerning the following:
          a.      The Systematic Alien Verification for Entitlements ("SAVE") database.
          b.      The Interstate Voter Registration Cross-Check Program.
          c.      The Electronic Registration Information Center ("ERIC").

* * * * * * *

I hope the concerns identified in this letter can be resolved amicably.  We have a track record of resolving NVRA claims on reasonable terms.  However, if you do not contact us about correcting or otherwise resolving the above-identified problems within 90 days, a federal lawsuit seeking declaratory and injunctive relief against both of you in your official capacities may be necessary.  In such a lawsuit we would seek, in addition to injunctive relief, a judgment awarding reasonable attorney fees, expenses, and costs.  *See* 52 U.S.C. § 20510(c).  For the reasons set forth above, we believe that such a lawsuit would be very likely to succeed.

We look forward to receiving your prompt response.

Sincerely,

**JUDICIAL WATCH, INC.**

*s/ Robert D. Popper*

Robert D. Popper
Attorney, Judicial Watch, Inc.



December 12, 2019

*VIA USPS CERTIFIED MAIL AND EMAIL*

Hon. Rebecca Spencer
Riverside County Registrar of Voters
2724 Gateway Drive
Riverside, California 92507

Hon. Alex Padilla
California Secretary of State
1500 11th Street, 5th Floor
Sacramento, California 62704-4503

**Re:  Statutory Notice of Violations of 52 U.S.C. § 20507 in Riverside County**

Dear Registrar Spencer and Secretary Padilla:

I write as legal counsel for Judicial Watch, Inc. ("Judicial Watch"), for the Institute for Fair Elections, and for Ruebin Seibert, a registered voter in Riverside County (the "County").  This letter is to bring to your attention violations of Section 8 of the National Voter Registration Act ("NVRA") committed in the County.  Registrar Spencer is receiving this letter because her office is responsible for collecting and processing the County's voter registration data.[1]  Secretary Padilla, as chief state elections official of California ("the State"), is receiving this letter because his office is responsible for coordinating compliance with Section 8 of the NVRA.[2]

This letter serves as official statutory notice under 52 U.S.C. § 20510(b)(1) & (2) that Judicial Watch and those on whose behalf it has sent this letter will bring a lawsuit against you if these violations are not corrected within 90 days.  Section 8(a)(4) of the NVRA requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters" by reason of death or change of address.  52 U.S.C. § 20507(a)(4).  In order to ensure that states and counties are complying with these requirements, Congress provided a public inspection provision, which requires all records concerning the accuracy and currency of the voter registration list to be disclosed.  52 U.S.C. § 20507(i).

The following explains how we determined that Section 8 has been violated and the remedial steps that must be taken to comply with federal law.

---

[1] 2 Cal. Code Regs. § 20108.1(i).

[2] *See* 52 U.S.C. § 20509; Cal. Elec. Code § 2402(a).

Statutory Notice of NVRA Violations
December 12, 2019
Page | 2

Judicial Watch examines a number of metrics in order to assess whether a jurisdiction is conducting a general program that makes a reasonable effort to remove ineligible registrants from its voter rolls.  To begin with, Judicial Watch determines each jurisdiction's registration rate.  States must report detailed registration data every other year to the U.S. Election Assistance Commission (EAC).[3]  Judicial Watch hires experts to compare this data to the citizen voting-age population in each state and county where data is available.[4]  An unusually high registration rate suggests that a jurisdiction is not removing voters who have died or who have moved elsewhere, as required by 52 U.S.C. § 20507(a)(4).  Federal courts adjudicating NVRA claims have acknowledged the significance of high registration rates.  *See Am. Civ. Rights Union v. Martinez-Rivera*, 166 F. Supp. 3d 779, 793 (W.D. Tex. 2015); *Voter Integrity Project NC, Inc. v. Wake Cnty. Bd. of Elections*, 301 F. Supp. 3d 612, 618 (E.D.N.C. 2017).

Judicial Watch also examines the number of inactive registrations in each jurisdiction.  Voter registrations are subject to cancellation when a voter fails to respond to an address confirmation and then fails to vote or correct the registration record during the next two general federal elections.  52 U.S.C. § 20507(d)(1)(B).  Registrations pending removal during this period are typically referred to as "inactive."  Inactive registrations may still be voted on election day.  52 U.S.C. § 20507(d)(2)(A).  Data concerning such registrations must be reported to the EAC.[5]  "Not only are States allowed to remove registrants who satisfy these requirements, but federal law makes this removal mandatory."  *Husted v. A. Philip Randolph Inst.*, 138 S. Ct. 1833, 1841-42 (2018).  A high number of inactive registrations suggests that they are not being timely removed as required by federal law.

Judicial Watch also considers how many registrations were ultimately removed from the voter rolls because a registrant failed to respond to an address confirmation notice and then failed to vote during the NVRA's statutory waiting period.  If few or no voters were removed by means of this process, the jurisdiction is obviously failing to comply with Section 8(d) of the NVRA.  52 U.S.C. § 20507(d)(1).  States must report the number of such removals to the EAC.[6]

Our analysis of the data regarding Riverside County showed the following:

---

[3] 11 C.F.R. § 9428.7.

[4] EAC registration data is available publicly at https://www.eac.gov/research-and-data/election-administration-voting-survey/.   For the latest American Community Survey population and demographic data, *see* https://factfinder.census.gov/faces/nav/jsf/pages/index.xhtml

[5] 11 C.F.R. § 9428.7(b)(1), (2), & (4).

[6] 11 C.F.R. § 9428.7(b)(5); U.S. Election Assistance Commission, ELECTION ADMINISTRATION AND VOTING SURVEY: 2018 COMPREHENSIVE REPORT at 197 (survey question A9e), available at https://www.eac.gov/assets/1/6/2018_EAVS_Report.pdf.

Statutory Notice of NVRA Violations
December 12, 2019
Page | 3

●       The County reported removing only 279 voter registrations in the last two-year reporting period on the grounds that the registrants failed to respond to an address confirmation notice and failed to vote in two consecutive federal elections.  This is an absurdly low figure for a county of this size.  If this figure is accurate, it establishes beyond any dispute that the County is not complying with the NVRA.

●       There are almost 450,000 inactive voter registrations on the County's rolls.  This amounts to about 30% of the County's registrations.

●       The County has a registration rate of about 100% of citizens who are old enough to register.  This registration rate is implausibly high.

These facts establish clear violations of Section 8(a)(4) of the NVRA.

* * * * * * *

Pursuant to 52 U.S.C. § 20510(b)(2), if the foregoing violations are not corrected within 90 days of your receiving this letter, Judicial Watch and those on whose behalf it has sent this letter may commence an action against you in federal court.  Please contact us about your plans for correcting these violations.  In particular, please set forth in such communication:

●       Whether you agree that the EAC accurately quoted data it received from you regarding the number of registrations you removed under the process set forth in Section 8(d) of the NVRA during the last two-year reporting period.  If you believe the data reported was not accurate, please let us know your own estimates regarding these two numbers.

●       Your explanation regarding the County's high number of inactive registrations.

●       Your explanation regarding the County's registration rate discussed above.

●       A description of the State's and the County's programs for sending address confirmation notices described in 52 U.S.C. § 20507(d)(2) to those who are believed to have moved.

●       A description of the State's and the County's programs for complying with the other voter list maintenance requirements of the NVRA, including all requirements to remove the registrations of those who have died or have otherwise become ineligible to register or vote.

●       A description of your plan to remedy any noncompliance with the voter list maintenance requirements of the NVRA, including 52 U.S.C. § 20507(a)(4) and (d).

* * * * * * *

Statutory Notice of NVRA Violations
December 12, 2019
Page | 4

Section 8(i)(1) of the NVRA requires that "[e]ach state shall maintain for at least 2 years and shall make available for public inspection . . . all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters."  52 U.S.C. § 20507(i)(1).  That provision goes on to specifically provide that "[t]he records maintained . . . shall include lists of the names and addresses of all persons to whom [address confirmation] notices . . . are sent, and information concerning whether or not each such person has responded to the notice."  *Id.*, § 20507(i)(2).

Pursuant to that section, please provide the following categories of records to Judicial Watch within two weeks of the date of this letter.  If you fail to do so, we will deem it an independent violation of the NVRA.  Specifically, please provide the following records insofar as they were generated by, or concern, the County:

1.      The names and addresses of all persons to whom notices described in 52 U.S.C. § 20507(d)(2) were sent, and information concerning whether or not each person responded to the notice.

2.      All documents and communications concerning the questions contained in Section A of the most recent Election Administration & Voting Survey ("EAVS").  This request includes, but is not limited to:
    a.      Your written responses to the EAVS, along with any documents you provided along with your responses.
    b.      Any internal or external communications about the EAVS.

3.      All documents concerning any internal or external audit, evaluation, assessment, review, analysis, critique, or request for or response to any of the foregoing, relating to the accuracy and currency of official lists of eligible voters.  This request includes, but is not limited to any of the foregoing documents relating to:
    a.      Registered voters who were sent notices described in 52 U.S.C. § 20507(d)(2).
    b.      Registered voters who have died.
    c.      Registered voters who are noncitizens.

4.      All documents concerning any instance(s) of voter fraud, including, but not limited to, impersonation fraud, double voting, registration fraud, absentee ballot fraud, mail-in ballot fraud, registration or voting by noncitizens, unlawful assistance, or aiding, abetting, or conspiring to commit any of the foregoing.

5.      All manuals, training materials, protocols, written standards, and official guidance concerning efforts to ensure the accuracy and currency of your official list of eligible voters.

6.      All contracts with the U.S. Postal Service or any other federal agency to provide change-of-address information concerning registered voters.

Statutory Notice of NVRA Violations
December 12, 2019
Page | 5

   7.     Copies of all documents and communications concerning the following:
          a.     The Systematic Alien Verification for Entitlements ("SAVE") database.
          b.     The Interstate Voter Registration Cross-Check Program.
          c.     The Electronic Registration Information Center ("ERIC").

                              *  *  *  *  *  *  *

       I hope the concerns identified in this letter can be resolved amicably.  We have a track
record of resolving NVRA claims on reasonable terms.  However, if you do not contact us about
correcting or otherwise resolving the above-identified problems within 90 days, a federal lawsuit
seeking declaratory and injunctive relief against both of you in your official capacities may be
necessary.  In such a lawsuit we would seek, in addition to injunctive relief, a judgment awarding
reasonable attorney fees, expenses, and costs.  *See* 52 U.S.C. § 20510(c).  For the reasons set
forth above, we believe that such a lawsuit would be very likely to succeed.

       We look forward to receiving your prompt response.

                              Sincerely,

                              **JUDICIAL WATCH, INC.**

                              *s/ Robert D. Popper*

                              Robert D. Popper
                              Attorney, Judicial Watch, Inc.



November 15, 2019

*VIA USPS CERTIFIED MAIL AND EMAIL*

Hon. Alex Padilla                                    Hon. Michael Vu
California Secretary of State                  Registrar-Recorder/County Clerk
1500 11th Street, 5th Floor                    San Diego County
Sacramento, California 62704-4503     P.O. Box 85656
                                                            San Diego, California 92186-5656

**Re:  Statutory Notice of Violations of 52 U.S.C. § 20507 in San Diego County**

Dear Secretary Padilla and Registrar Vu:

I write as legal counsel for the Institute for Fair Elections to bring to your attention violations of Section 8 of the National Voter Registration Act ("NVRA") in San Diego County.

I previously wrote to you on October 4, 2019, on behalf of Judicial Watch, Inc. ("Judicial Watch") and certain individual and institutional clients.  This letter is in no way intended to withdraw or modify that letter or the dates or deadlines it contains.  This letter is solely intended to add the Institute for Fair Elections to those providing notice of NVRA violations.  In all other relevant respects it is identical to that October 4, 2019 letter.

* * *

Secretary Padilla, as California's chief state elections official, is responsible for coordinating compliance with Section 8 of the NVRA.[1]  Registrar Vu, as the registrar of San Diego County, is responsible for collecting and processing the County's voter registration data.[2]

This letter serves as official statutory notice under 52 U.S.C. § 20510(b)(1) & (2) that Judicial Watch will bring a lawsuit on behalf of the Institute for Fair Elections if the violations of the NVRA identified in this letter are not corrected within 90 days.  Section 8(a)(4) of the NVRA requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters" by reason of death or change of address.  52 U.S.C. § 20507(a)(4).  In order to ensure that states and counties are complying with these requirements, Congress provided a public inspection provision, which requires all records concerning the accuracy and currency of the voter registration list be disclosed.  52 U.S.C. § 20507(i).

---

[1] *See* 52 U.S.C. § 20509; Cal. Elec. Code § 2402(a).

[2] 2 Cal. Code Regs. § 20108.1(i).

Hon. Alex Padilla
Hon. Michael Vu
November 15, 2019
Page | 2

The following information explains how we determined that San Diego County is in violation of Section 8 of the NVRA and the remedial steps that must be taken to comply with federal law.

**1.     The number of voter registrations in San Diego County exceeds the number of citizens living in the County who are old enough to register.**

According to experts retained by Judicial Watch, San Diego County's voter registration rate is 117% of its age-eligible citizen population. This is one of the highest registration rates in the nation. This shows that the County is not making the reasonable effort required by the NVRA to remove ineligible registrations.

Based on information the Secretary's office reported to the U.S. Election Assistance Commission (EAC), San Diego County has a total of about 2.6 million registered voters.[3] The U.S. Census Bureau's five-year American Community Survey reports that there are about 2.2 million San Diego County citizens who are over the age of 18.[4] Thus, San Diego County has many more registered voters than citizens who lawfully could register or vote. The disparity is far larger than can be explained by any data anomaly or difference in benchmark dates.

Federal courts have recognized that excessive registration rates indicate that a jurisdiction is not making a reasonable effort to remove ineligible voters as required by 52 U.S.C. § 20507(a)(4). *See Am. Civ. Rights Union v. Martinez-Rivera*, 166 F. Supp. 3d 779, 793 (W.D. Tex. 2015) (upholding denial of motion to dismiss NVRA complaint where "voter rolls maintained by the Defendant contain more voters registered to vote than there are citizens eligible to vote"); *Voter Integrity Project NC, Inc. v. Wake Cnty. Bd. of Elections*, 301 F. Supp. 3d 612, 618 (E.D.N.C. 2017) (denying motion to dismiss where complaint alleged voter rolls contained "more registrants than eligible voting-age citizens").

**2.     San Diego County is not removing inactive registrations as required by the NVRA.**

Voter registrations are subject to cancellation when a voter fails to respond to an address confirmation and then fails to vote (or to correct the registration record) during the next two general federal elections. 52 U.S.C. § 20507(d)(1)(B). "Not only are States allowed to remove registrants who satisfy these requirements, but federal law makes this removal mandatory." *Husted v. A. Philip Randolph Inst.*, 138 S. Ct. 1833, 1841-42 (2018), citing 52 U.S.C. § 20507(d)(3); 52 U.S.C.

---

[3] EAC registration data is available publicly at https://www.eac.gov/research-and-data/election-administration-voting-survey/.

[4] For the latest American Community Survey population and demographic data, see https://factfinder.census.gov/faces/nav/jsf/pages/index.xhtml.

Hon. Alex Padilla
Hon. Michael Vu
November 15, 2019
Page | 3

§ 21083(a)(4)(A).[5]  California (along with many states) refers to voters who have failed to respond to an address confirmation and whose registrations are subject to removal removed after the statutory waiting period as "inactive."  2 Cal. Code Regs. § 20108.1(*l*).  Even if a registration is designated "inactive," it may still be used to cast ballots on election day.  52 U.S.C. § 20507(d)(2)(A).

The evidence is overwhelming that San Diego County is not complying with the NVRA's mandatory removal procedures regarding inactive voter registrations.  The latest EAC survey data shows that, in the last two-year reporting period, San Diego County did report removing *any* voter registrations because the registrants failed to respond to an address confirmation notice and failed to vote in two consecutive federal elections.

San Diego County's failure to report removing any registrations in this category helps to explain the fact that the County has over 800,000 inactive registrations on its rolls.  It is the second highest number of such registrations of any county in the United States (behind only Los Angeles County).  Indeed, the number of adult registered voters on San Diego County's inactive list is greater than the entire population of North Dakota.  In all, about 32% of San Diego County's registrations—about one of every three—is inactive.

In the course of a previous lawsuit involving Los Angeles County, Judicial Watch learned during the course of discovery that many California counties simply failed to remove inactive registrants for years or even decades.  The foregoing evidence suggests that San Diego was one of those counties.

> **3.      *San Diego County is not sending enough address confirmation notices to its registered voters.***

Before a voter can either respond to an address confirmation notice, or fail to respond (which commences the statutory waiting period) that notice must be mailed by California elections officials.

According to the EAC's report, San Diego County sent an average of 9,268 address confirmation notices per year to about 1.8 million active voters.  In other words, on a yearly basis, San Diego County screens approximately 0.5% of its active voter population for change of address.

---

[5] Pursuant to Judicial Watch's settlement agreement in a prior NVRA lawsuit involving Los Angeles County and the State of California, Secretary Padilla's office sent a written advisory concerning these legal obligations to every county elections official, including Registrar Vu.  *See Judicial Watch v. Logan*, No. 17-8948, ECF 96-1, ¶ 9 (C.D. Cal. Jan. 3, 2019).

Hon. Alex Padilla
Hon. Michael Vu
November 15, 2019
Page | 4

The Census Bureau has estimated that perhaps 15.7% of the residents of San Diego County are *not* living in the same house that they were living in a year ago.[6]  San Diego County is simply not sending enough address confirmation cards to keep track of those who may have moved.

### 4.      *San Diego County is not retaining documents required by the NVRA.*

Section 8(i) requires each state to make available all records concerning the accuracy and currency of the official list of eligible voters.  *See* 52 U.S.C. § 20507(i)(1).  That provision particularly provides that "[t]he records maintained . . . shall include lists of the names and addresses of all persons to whom [address confirmation] notices . . . are sent, and information concerning whether or not each such person has responded to the notice."  *Id.* § 20507(i)(2).

On April 12, 2019, Judicial Watch sent a letter requesting records under Section 8(i) of the NVRA to Mr. Vu (attached).  The first request in that letter sought "[t]he names and addresses of all persons to whom [address confirmation] notices . . . were sent, and information concerning whether or not each person responded to the notice."

In subsequent communications with the Registrar-Recorder/County Clerk's office, Judicial Watch was told that San Diego County does not retain records concerning whether a voter responded to the notice, and so cannot provide them.  The failure to retain and provide these records constitutes a clear violation of 52 U.S.C. § 20507(i)(2).

* * * * * * *

Pursuant to 52 U.S.C. § 20510(b)(2), if the foregoing violations are not corrected within 90 days of your receiving this letter, Judicial Watch may commence an action against you in federal court on behalf of the Institute for Fair Elections.  Please contact us about your plans for correcting these violations.  In particular, please set forth in such communication:

●      Your explanation regarding San Diego County's registration rate discussed in part 1 above.

●      A description of San Diego County's program for sending address confirmation notices described in 52 U.S.C. § 20507(d)(2) to those who are believed to have moved, including your estimate of how many such notices have been sent in the last four years, and how many registrations have been removed in that time period because a voter failed to respond to such a notice and failed to vote or correct the registration record in the next two general federal elections.

---

[6] *See* https://www.census.gov/quickfacts/sandiegocountycalifornia, "Living in same house 1 year ago" (estimates from 2013 to 2017).

Hon. Alex Padilla
Hon. Michael Vu
November 15, 2019
Page | 5


●	A description of San Diego County's program for complying with the other voter list maintenance requirements of the NVRA, including all requirements to remove the registrations of those who have died or have otherwise become ineligible to register or vote.

●	A description of San Diego County's program for producing documents pursuant to 52 U.S.C. § 20507(i)(2).

●	Documents supporting your account of the foregoing explanations and descriptions.

●	A description of your plan to remedy any noncompliance with the voter list maintenance requirements of the NVRA, including 52 U.S.C. § 20507(a)(4) and (d).

●	Your plan for instituting document retention and production policies consistent with the requirements of 52 U.S.C. § 20507(i).

I hope that the concerns identified in this letter can be resolved amicably. We have a track record of resolving NVRA claims on reasonable terms. However, if you do not contact us about correcting or otherwise resolving the above-identified problems within 90 days, a federal lawsuit seeking declaratory and injunctive relief against both of you in your official capacities as California's Secretary of State and San Diego County's Registrar-Recorder/County Clerk may be necessary. In such a lawsuit we would seek, in addition to injunctive relief, a judgment awarding reasonable attorney fees, expenses, and costs. *See* 52 U.S.C. § 20510(c). For the reasons set forth above, we believe that such a lawsuit would be very likely to succeed.

We look forward to receiving your prompt response.

Sincerely,

**JUDICIAL WATCH, INC.**

*s/ Robert D. Popper*

Robert D. Popper
Attorney, Judicial Watch, Inc.



November 15, 2019

*VIA USPS CERTIFIED MAIL AND EMAIL*

Hon. Alex Padilla
California Secretary of State
1500 11th Street, 5th Floor
Sacramento, California 62704-4503

Hon. Michael Vu
Registrar-Recorder/County Clerk
San Diego County
P.O. Box 85656
San Diego, California 92186-5656

**Re:  Statutory Notice of Violations of 52 U.S.C. § 20507 in San Diego County**

Dear Secretary Padilla and Registrar Vu:

I write as legal counsel for the Institute for Fair Elections to bring to your attention violations of Section 8 of the National Voter Registration Act ("NVRA") in San Diego County.

I previously wrote to you on October 4, 2019, on behalf of Judicial Watch, Inc. ("Judicial Watch") and certain individual and institutional clients.  This letter is in no way intended to withdraw or modify that letter or the dates or deadlines it contains.  This letter is solely intended to add the Institute for Fair Elections to those providing notice of NVRA violations.  In all other relevant respects it is identical to that October 4, 2019 letter.

\* \* \*

Secretary Padilla, as California's chief state elections official, is responsible for coordinating compliance with Section 8 of the NVRA.[1]  Registrar Vu, as the registrar of San Diego County, is responsible for collecting and processing the County's voter registration data.[2]

This letter serves as official statutory notice under 52 U.S.C. § 20510(b)(1) & (2) that Judicial Watch will bring a lawsuit on behalf of the Institute for Fair Elections if the violations of the NVRA identified in this letter are not corrected within 90 days.  Section 8(a)(4) of the NVRA requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters" by reason of death or change of address.  52 U.S.C. § 20507(a)(4).  In order to ensure that states and counties are complying with these requirements, Congress provided a public inspection provision, which requires all records concerning the accuracy and currency of the voter registration list be disclosed.  52 U.S.C. § 20507(i).

---

[1] *See* 52 U.S.C. § 20509; Cal. Elec. Code § 2402(a).

[2] 2 Cal. Code Regs. § 20108.1(i).

Hon. Alex Padilla
Hon. Michael Vu
November 15, 2019
Page | 2

     The following information explains how we determined that San Diego County is in violation of Section 8 of the NVRA and the remedial steps that must be taken to comply with federal law.

     ***1.     The number of voter registrations in San Diego County exceeds the number of citizens living in the County who are old enough to register.***

     According to experts retained by Judicial Watch, San Diego County's voter registration rate is 117% of its age-eligible citizen population. This is one of the highest registration rates in the nation. This shows that the County is not making the reasonable effort required by the NVRA to remove ineligible registrations.

     Based on information the Secretary's office reported to the U.S. Election Assistance Commission (EAC), San Diego County has a total of about 2.6 million registered voters.[3] The U.S. Census Bureau's five-year American Community Survey reports that there are about 2.2 million San Diego County citizens who are over the age of 18.[4] Thus, San Diego County has many more registered voters than citizens who lawfully could register or vote. The disparity is far larger than can be explained by any data anomaly or difference in benchmark dates.

     Federal courts have recognized that excessive registration rates indicate that a jurisdiction is not making a reasonable effort to remove ineligible voters as required by 52 U.S.C. § 20507(a)(4). *See Am. Civ. Rights Union v. Martinez-Rivera*, 166 F. Supp. 3d 779, 793 (W.D. Tex. 2015) (upholding denial of motion to dismiss NVRA complaint where "voter rolls maintained by the Defendant contain more voters registered to vote than there are citizens eligible to vote"); *Voter Integrity Project NC, Inc. v. Wake Cnty. Bd. of Elections*, 301 F. Supp. 3d 612, 618 (E.D.N.C. 2017) (denying motion to dismiss where complaint alleged voter rolls contained "more registrants than eligible voting-age citizens").

     ***2.     San Diego County is not removing inactive registrations as required by the NVRA.***

     Voter registrations are subject to cancellation when a voter fails to respond to an address confirmation and then fails to vote (or to correct the registration record) during the next two general federal elections. 52 U.S.C. § 20507(d)(1)(B). "Not only are States allowed to remove registrants who satisfy these requirements, but federal law makes this removal mandatory." *Husted v. A. Philip Randolph Inst.*, 138 S. Ct. 1833, 1841-42 (2018), citing 52 U.S.C. § 20507(d)(3); 52 U.S.C.

---

[3] EAC registration data is available publicly at https://www.eac.gov/research-and-data/election-administration-voting-survey/.

[4] For the latest American Community Survey population and demographic data, see https://factfinder.census.gov/faces/nav/jsf/pages/index.xhtml.

Hon. Alex Padilla
Hon. Michael Vu
November 15, 2019
Page | 3

§ 21083(a)(4)(A).[5]  California (along with many states) refers to voters who have failed to respond to an address confirmation and whose registrations are subject to removal removed after the statutory waiting period as "inactive."  2 Cal. Code Regs. § 20108.1(*l*).  Even if a registration is designated "inactive," it may still be used to cast ballots on election day.  52 U.S.C. § 20507(d)(2)(A).

The evidence is overwhelming that San Diego County is not complying with the NVRA's mandatory removal procedures regarding inactive voter registrations.  The latest EAC survey data shows that, in the last two-year reporting period, San Diego County did report removing *any* voter registrations because the registrants failed to respond to an address confirmation notice and failed to vote in two consecutive federal elections.

San Diego County's failure to report removing any registrations in this category helps to explain the fact that the County has over 800,000 inactive registrations on its rolls.  It is the second highest number of such registrations of any county in the United States (behind only Los Angeles County).  Indeed, the number of adult registered voters on San Diego County's inactive list is greater than the entire population of North Dakota.  In all, about 32% of San Diego County's registrations—about one of every three—is inactive.

In the course of a previous lawsuit involving Los Angeles County, Judicial Watch learned during the course of discovery that many California counties simply failed to remove inactive registrants for years or even decades.  The foregoing evidence suggests that San Diego was one of those counties.

**3.      *San Diego County is not sending enough address confirmation notices to its registered voters.***

Before a voter can either respond to an address confirmation notice, or fail to respond (which commences the statutory waiting period) that notice must be mailed by California elections officials.

According to the EAC's report, San Diego County sent an average of 9,268 address confirmation notices per year to about 1.8 million active voters.  In other words, on a yearly basis, San Diego County screens approximately 0.5% of its active voter population for change of address.

---

[5] Pursuant to Judicial Watch's settlement agreement in a prior NVRA lawsuit involving Los Angeles County and the State of California, Secretary Padilla's office sent a written advisory concerning these legal obligations to every county elections official, including Registrar Vu.  *See Judicial Watch v. Logan*, No. 17-8948, ECF 96-1, ¶ 9 (C.D. Cal. Jan. 3, 2019).

Hon. Alex Padilla
Hon. Michael Vu
November 15, 2019
Page | 4

The Census Bureau has estimated that perhaps 15.7% of the residents of San Diego County are *not* living in the same house that they were living in a year ago.[6]  San Diego County is simply not sending enough address confirmation cards to keep track of those who may have moved.

### 4.  *San Diego County is not retaining documents required by the NVRA.*

Section 8(i) requires each state to make available all records concerning the accuracy and currency of the official list of eligible voters.  *See* 52 U.S.C. § 20507(i)(1).  That provision particularly provides that "[t]he records maintained . . . shall include lists of the names and addresses of all persons to whom [address confirmation] notices . . . are sent, and information concerning whether or not each such person has responded to the notice."  *Id.* § 20507(i)(2).

On April 12, 2019, Judicial Watch sent a letter requesting records under Section 8(i) of the NVRA to Mr. Vu (attached).  The first request in that letter sought "[t]he names and addresses of all persons to whom [address confirmation] notices . . . were sent, and information concerning whether or not each person responded to the notice."

In subsequent communications with the Registrar-Recorder/County Clerk's office, Judicial Watch was told that San Diego County does not retain records concerning whether a voter responded to the notice, and so cannot provide them.  The failure to retain and provide these records constitutes a clear violation of 52 U.S.C. § 20507(i)(2).

* * * * * * *

Pursuant to 52 U.S.C. § 20510(b)(2), if the foregoing violations are not corrected within 90 days of your receiving this letter, Judicial Watch may commence an action against you in federal court on behalf of the Institute for Fair Elections.  Please contact us about your plans for correcting these violations.  In particular, please set forth in such communication:

● Your explanation regarding San Diego County's registration rate discussed in part 1 above.

● A description of San Diego County's program for sending address confirmation notices described in 52 U.S.C. § 20507(d)(2) to those who are believed to have moved, including your estimate of how many such notices have been sent in the last four years, and how many registrations have been removed in that time period because a voter failed to respond to such a notice and failed to vote or correct the registration record in the next two general federal elections.

---

[6] *See* https://www.census.gov/quickfacts/sandiegocountycalifornia, "Living in same house 1 year ago" (estimates from 2013 to 2017).

Hon. Alex Padilla
Hon. Michael Vu
November 15, 2019
Page | 5

● A description of San Diego County's program for complying with the other voter list maintenance requirements of the NVRA, including all requirements to remove the registrations of those who have died or have otherwise become ineligible to register or vote.

● A description of San Diego County's program for producing documents pursuant to 52 U.S.C. § 20507(i)(2).

● Documents supporting your account of the foregoing explanations and descriptions.

● A description of your plan to remedy any noncompliance with the voter list maintenance requirements of the NVRA, including 52 U.S.C. § 20507(a)(4) and (d).

● Your plan for instituting document retention and production policies consistent with the requirements of 52 U.S.C. § 20507(i).

I hope that the concerns identified in this letter can be resolved amicably. We have a track record of resolving NVRA claims on reasonable terms. However, if you do not contact us about correcting or otherwise resolving the above-identified problems within 90 days, a federal lawsuit seeking declaratory and injunctive relief against both of you in your official capacities as California's Secretary of State and San Diego County's Registrar-Recorder/County Clerk may be necessary. In such a lawsuit we would seek, in addition to injunctive relief, a judgment awarding reasonable attorney fees, expenses, and costs. *See* 52 U.S.C. § 20510(c). For the reasons set forth above, we believe that such a lawsuit would be very likely to succeed.

We look forward to receiving your prompt response.

Sincerely,

**JUDICIAL WATCH, INC.**

*s/ Robert D. Popper*

Robert D. Popper
Attorney, Judicial Watch, Inc.



October 4, 2019

*VIA USPS CERTIFIED MAIL AND EMAIL*

| | |
|---|---|
| Hon. Alex Padilla | Hon. Michael Vu |
| California Secretary of State | Registrar-Recorder/County Clerk |
| 1500 11th Street, 5th Floor | San Diego County |
| Sacramento, California 62704-4503 | P.O. Box 85656 |
| | San Diego, California 92186-5656 |

**Re:  Statutory Notice of Violations of 52 U.S.C. § 20507 in San Diego County**

Dear Secretary Padilla and Registrar Vu:

I write as legal counsel for Judicial Watch, Inc. ("Judicial Watch"), for Election Integrity Project California, Inc., and for Dennis Dorman, Jim Redhead, Jean Esop, Hugh Winthrop, and Norman Walker, registered voters in San Diego County, to bring to your attention violations of Section 8 of the National Voter Registration Act ("NVRA") in San Diego County.  Secretary Padilla, as California's chief state elections official, is responsible for coordinating compliance with Section 8 of the NVRA.[1]  Registrar Vu, as the registrar of San Diego County, is responsible for collecting and processing the County's voter registration data.[2]

This letter serves as official statutory notice under 52 U.S.C. § 20510(b)(1) & (2) that Judicial Watch and those on whose behalf it has sent this letter will bring a lawsuit if these violations are not corrected within 90 days.  Section 8(a)(4) of the NVRA requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters" by reason of death or change of address.  52 U.S.C. § 20507(a)(4).  In order to ensure that states and counties are complying with these requirements, Congress provided a public inspection provision, which requires all records concerning the accuracy and currency of the voter registration list be disclosed.  52 U.S.C. § 20507(i).

The following information explains how we determined that San Diego County is in violation of Section 8 of the NVRA and the remedial steps that must be taken to comply with federal law.

---

[1] *See* 52 U.S.C. § 20509; Cal. Elec. Code § 2402(a).

[2] 2 Cal. Code Regs. § 20108.1(i).

Hon. Alex Padilla
Hon. Michael Vu
October 4, 2019
Page | 2

1.      **The number of voter registrations in San Diego County exceeds the number of citizens living in the County who are old enough to register.**

According to experts retained by Judicial Watch, San Diego County's voter registration rate is 117% of its age-eligible citizen population. This is one of the highest registration rates in the nation. This shows that the County is not making the reasonable effort required by the NVRA to remove ineligible registrations.

Based on information the Secretary's office reported to the U.S. Election Assistance Commission (EAC), San Diego County has a total of about 2.6 million registered voters.[3] The U.S. Census Bureau's five-year American Community Survey reports that there are about 2.2 million San Diego County citizens who are over the age of 18.[4] Thus, San Diego County has many more registered voters than citizens who lawfully could register or vote. The disparity is far larger than can be explained by any data anomaly or difference in benchmark dates.

Federal courts have recognized that excessive registration rates indicate that a jurisdiction is not making a reasonable effort to remove ineligible voters as required by 52 U.S.C. § 20507(a)(4). *See Am. Civ. Rights Union v. Martinez-Rivera*, 166 F. Supp. 3d 779, 793 (W.D. Tex. 2015) (upholding denial of motion to dismiss NVRA complaint where "voter rolls maintained by the Defendant contain more voters registered to vote than there are citizens eligible to vote"); *Voter Integrity Project NC, Inc. v. Wake Cnty. Bd. of Elections*, 301 F. Supp. 3d 612, 618 (E.D.N.C. 2017) (denying motion to dismiss where complaint alleged voter rolls contained "more registrants than eligible voting-age citizens").

2.      **San Diego County is not removing inactive registrations as required by the NVRA.**

Voter registrations are subject to cancellation when a voter fails to respond to an address confirmation and then fails to vote (or to correct the registration record) during the next two general federal elections. 52 U.S.C. § 20507(d)(1)(B). "Not only are States allowed to remove registrants who satisfy these requirements, but federal law makes their removal mandatory." *Husted v. A. Philip Randolph Inst.*, 138 S. Ct. 1833, 1841-42 (2018), citing 52 U.S.C. § 20507(d)(3); 52 U.S.C. § 21083(a)(4)(A).[5] California (along with many states) refers to voters who have failed to respond

---

[3] EAC registration data is available publicly at https://www.eac.gov/research-and-data/election-administration-voting-survey/.

[4] For the latest American Community Survey population and demographic data, see https://factfinder.census.gov/faces/nav/jsf/pages/index.xhtml.

[5] Pursuant to Judicial Watch's settlement agreement in a prior NVRA lawsuit involving Los Angeles County and the State of California, Secretary Padilla's office sent a written advisory concerning these legal obligations to every county elections official, including Registrar Vu. *See Judicial Watch v. Logan*, No. 17-8948, ECF 96-1, ¶ 9 (C.D. Cal. Jan. 3, 2019).

Hon. Alex Padilla
Hon. Michael Vu
October 4, 2019
Page | 3

to an address confirmation and whose registrations are subject to removal removed after the statutory waiting period as "inactive." 2 Cal. Code Regs. § 20108.1(*l*). Even if a registration is designated "inactive," it may still be used to cast ballots on election day. 52 U.S.C. § 20507(d)(2)(A).

The evidence is overwhelming that San Diego County is not complying with the NVRA's mandatory removal procedures regarding inactive voter registrations. The latest EAC survey data shows that, in the last two-year reporting period, San Diego County did report removing *any* voter registrations because the registrants failed to respond to an address confirmation notice and failed to vote in two consecutive federal elections.

San Diego County's failure to report removing any registrations in this category helps to explain the fact that the County has over 800,000 inactive registrations on its rolls. It is the second highest number of such registrations of any county in the United States (behind only Los Angeles County). Indeed, the number of adult registered voters on San Diego County's inactive list is greater than the entire population of North Dakota. In all, about 32% of San Diego County's registrations—about one of every three—is inactive.

In the course of a previous lawsuit involving Los Angeles County, Judicial Watch learned during the course of discovery that many California counties simply failed to remove inactive registrants for years or even decades. The foregoing evidence suggests that San Diego was one of those counties.

> **3.   San Diego County is not sending enough address confirmation notices to its registered voters.**

Before a voter can either respond to an address confirmation notice, or fail to respond (which commences the statutory waiting period) that notice must be mailed by California elections officials.

According to the EAC's report, San Diego County sent an average of 9,268 address confirmation notices per year to about 1.8 million active voters. In other words, on a yearly basis, San Diego County screens approximately 0.5% of its active voter population for change of address.

The Census Bureau has estimated that perhaps 15.7% of the residents of San Diego County are *not* living in the same house that they were living in a year ago.[6] San Diego County is simply not sending enough address confirmation cards to keep track of those who may have moved.

---

[6] *See* https://www.census.gov/quickfacts/sandiegocountycalifornia, "Living in same house 1 year ago" (estimates from 2013 to 2017).

Hon. Alex Padilla
Hon. Michael Vu
October 4, 2019
Page | 4

### 4.    *San Diego County is not retaining documents required by the NVRA.*

Section 8(i) requires each state to make available all records concerning the accuracy and currency of the official list of eligible voters. *See* 52 U.S.C. § 20507(i)(1). That provision particularly provides that "[t]he records maintained . . . shall include lists of the names and addresses of all persons to whom [address confirmation] notices . . . are sent, and information concerning whether or not each such person has responded to the notice." *Id.* § 20507(i)(2).

On April 12, 2019, Judicial Watch sent a letter requesting records under Section 8(i) of the NVRA to Mr. Vu (attached). The first request in that letter sought "[t]he names and addresses of all persons to whom [address confirmation] notices . . . were sent, and information concerning whether or not each person responded to the notice."

In subsequent communications with the Registrar-Recorder/County Clerk's office, Judicial Watch was told that San Diego County does not retain records concerning whether a voter responded to the notice, and so cannot provide them. The failure to retain and provide these records constitutes a clear violation of 52 U.S.C. § 20507(i)(2).

* * * * * * *

Pursuant to 52 U.S.C. § 20510(b)(2), if the foregoing violations are not corrected within 90 days of your receiving this letter, Judicial Watch and those on whose behalf it has sent this letter may commence an action against you in federal court. Please contact us about your plans for correcting these violations. In particular, please set forth in such communication:

● Your explanation regarding San Diego County's registration rate discussed in part 1 above.

● A description of San Diego County's program for sending address confirmation notices described in 52 U.S.C. § 20507(d)(2) to those who are believed to have moved, including your estimate of how many such notices have been sent in the last four years, and how many registrations have been removed in that time period because a voter failed to respond to such a notice and failed to vote or correct the registration record in the next two general federal elections.

● A description of San Diego County's program for complying with the other voter list maintenance requirements of the NVRA, including all requirements to remove the registrations of those who have died or have otherwise become ineligible to register or vote.

● A description of San Diego County's program for producing documents pursuant to 52 U.S.C. § 20507(i)(2).

Hon. Alex Padilla
Hon. Michael Vu
October 4, 2019
Page | 5

      ●     Documents supporting your account of the foregoing explanations and descriptions.

      ●     A description of your plan to remedy any noncompliance with the voter list maintenance requirements of the NVRA, including 52 U.S.C. § 20507(a)(4) and (d).

      ●     Your plan for instituting document retention and production policies consistent with the requirements of 52 U.S.C. § 20507(i).

I hope that the concerns identified in this letter can be resolved amicably.  We have a track record of resolving NVRA claims on reasonable terms.  However, if you do not contact us about correcting or otherwise resolving the above-identified problems within 90 days, a federal lawsuit seeking declaratory and injunctive relief against both of you in your official capacities as California's Secretary of State and San Diego County's Registrar-Recorder/County Clerk may be necessary.  In such a lawsuit we would seek, in addition to injunctive relief, a judgment awarding reasonable attorney fees, expenses, and costs.  *See* 52 U.S.C. § 20510(c).  For the reasons set forth above, we believe that such a lawsuit would be very likely to succeed.

We look forward to receiving your prompt response.

                    Sincerely,

                    **JUDICIAL WATCH, INC.**

                    *s/ Robert D. Popper*

                    Robert D. Popper
                    Attorney, Judicial Watch, Inc.



November 22, 2019

*VIA USPS CERTIFIED MAIL AND EMAIL*

Honorable John Arntz
San Francisco County Registrar-Recorder/County Clerk
1 Dr. Carlton B Goodlett Place, Room 48
San Francisco, California 94102-4635

Hon. Alex Padilla
California Secretary of State
1500 11th Street, 5th Floor
Sacramento, California 62704-4503

**Re:  Statutory Notice of Violations of 52 U.S.C. § 20507 in San Francisco County**

Dear Registrar Arntz and Secretary Padilla:

I write as legal counsel for Judicial Watch, Inc. ("Judicial Watch"), for the Institute for Fair Elections, and for Michael Sienkiewicz and Lisa Remmer, registered voters in San Francisco County ("the County").  This letter is to bring to your attention violations of Section 8 of the National Voter Registration Act ("NVRA") committed in the County.  Registrar Arntz, as the registrar of the County, is receiving this letter because his office is responsible for collecting and processing the County's voter registration data.[1]  Secretary Padilla, as chief state elections official of California ("the State"), is receiving this letter because his office is responsible for coordinating compliance with Section 8 of the NVRA.[2]

This letter serves as official statutory notice under 52 U.S.C. § 20510(b)(1) & (2) that Judicial Watch and those on whose behalf it has sent this letter will bring a lawsuit against you if these violations are not corrected within 90 days.  Section 8(a)(4) of the NVRA requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters" by reason of death or change of address.  52 U.S.C. § 20507(a)(4).  In order to ensure that states and counties are complying with these requirements, Congress provided a public inspection provision, which requires all records concerning the accuracy and currency of the voter registration list to be disclosed.  52 U.S.C. § 20507(i).

---

[1] 2 Cal. Code Regs. § 20108.1(i).

[2] *See* 52 U.S.C. § 20509; Cal. Elec. Code § 2402(a).

425 Third St. SW, Suite 800, Washington, DC 20024 • Tel: (202) 646-5172 or 1-888-593-8442
FAX: (202) 646-5199 • Email: rpopper@JudicialWatch.org • www.JudicialWatch.org

Statutory Notice of NVRA Violations
November 22, 2019
Page | 2

The following explains how we determined that Section 8 has been violated and the remedial steps that must be taken to comply with federal law.

Judicial Watch examines a number of metrics in order to assess whether a jurisdiction is conducting a general program that makes a reasonable effort to remove ineligible registrants from its voter rolls.  To begin with, Judicial Watch determines each jurisdiction's registration rate.  States must report detailed registration data every other year to the U.S. Election Assistance Commission (EAC).[3]  Judicial Watch hires experts to compare this data to the citizen voting-age population in each state and county where data is available.[4]  An unusually high registration rate suggests that a jurisdiction is not removing voters who have died or who have moved elsewhere, as required by 52 U.S.C. § 20507(a)(4).   Federal courts adjudicating NVRA claims have acknowledged the significance of high registration rates.  *See Am. Civ. Rights Union v. Martinez-Rivera*, 166 F. Supp. 3d 779, 793 (W.D. Tex. 2015); *Voter Integrity Project NC, Inc. v. Wake Cnty. Bd. of Elections*, 301 F. Supp. 3d 612, 618 (E.D.N.C. 2017).

Judicial Watch also examines the number of inactive registrations in each jurisdiction.  Voter registrations are subject to cancellation when a voter fails to respond to an address confirmation and then fails to vote or correct the registration record during the next two general federal elections.  52 U.S.C. § 20507(d)(1)(B).  Registrations pending removal during this period are typically referred to as "inactive."  Inactive registrations may still be voted on election day.  52 U.S.C. § 20507(d)(2)(A).  Data concerning such registrations must be reported to the EAC.[5]  "Not only are States allowed to remove registrants who satisfy these requirements, but federal law makes this removal mandatory."  *Husted v. A. Philip Randolph Inst.*, 138 S. Ct. 1833, 1841-42 (2018).[6]  A high number of inactive registrations suggests that they are not being timely removed as required by federal law.

Judicial Watch also looks at the number of address confirmation notices sent by a jurisdiction.   Except where a voter confirms a change of address in writing, an address confirmation notice must be sent before a registration may be removed from the voter rolls on the ground that the voter has changed residence.  52 U.S.C. § 20507(d)(1).  Accordingly, the failure to send address confirmation notices (or to send enough of them) constitutes a clear violation of

---

[3] 11 C.F.R. § 9428.7.

[4] EAC registration data is available publicly at https://www.eac.gov/research-and-data/election-administration-voting-survey/.   For the latest American Community Survey population and demographic data, *see* https://factfinder.census.gov/faces/nav/jsf/pages/index.xhtml

[5] 11 C.F.R. § 9428.7(b)(1), (2), &(4).

[6] Pursuant to Judicial Watch's settlement agreement in a prior NVRA lawsuit involving Los Angeles County and the State of California, Secretary Padilla's office sent a written advisory concerning these legal obligations to every county elections official.  *See Judicial Watch v. Logan*, No. 17-8948, ECF 96-1, ¶ 9 (C.D. Cal. Jan. 3, 2019).

Statutory Notice of NVRA Violations
November 22, 2019
Page | 3

the NVRA.  States must tell the EAC how many address confirmation notices were sent during each two-year reporting period.[7]

Judicial Watch also considers how many registrations were ultimately removed from the voter rolls because a registrant failed to respond to an address confirmation notice and then failed to vote during the NVRA's statutory waiting period.  If few or no voters were removed by means of this process, the jurisdiction is obviously failing to comply with Section 8(d) of the NVRA.  52 U.S.C. § 20507(d)(1).  States must report the number of such removals to the EAC.[8]

Our analysis of the data regarding San Francisco County showed the following:

● The County has a total registration rate of 108%.  To be clear, the number of voter registrations exceeds the number of citizens in the County who are old enough to register to vote.

● There are 191,000 inactive voter registrations on the County's rolls, or more than one fourth of the total number of registrations.

● The County reported sending about only 5600 address confirmation notices per year to a voter list containing close to 700,000 registrations.

● The County reported removing only 13 voter registrations in the last two-year reporting period on the grounds that the registrants failed to respond to an address confirmation notice and failed to vote in two consecutive federal elections.  This is an absurdly low number of removals for a county of this size.

These facts establish clear violations of Section 8(a)(4) of the NVRA.

* * * * * * *

Pursuant to 52 U.S.C. § 20510(b)(2), if the foregoing violations are not corrected within 90 days of your receiving this letter, Judicial Watch and those on whose behalf it has sent this letter may commence an action against you in federal court.  Please contact us about your plans for correcting these violations.  In particular, please set forth in such communication:

● Whether you agree that the EAC accurately quoted data it received from you regarding (1) the number of address confirmation notices you sent, and (2) the number of registrations you removed under the process set forth in Section 8(d) of the NVRA, during the

---

[7] 11 C.F.R. § 9428.7(b)(8).

[8] 11 C.F.R. § 9428.7(b)(5); U.S. Election Assistance Commission, ELECTION ADMINISTRATION AND VOTING SURVEY: 2018 COMPREHENSIVE REPORT at 197 (survey question A9e), available at https://www.eac.gov/assets/1/6/2018_EAVS_Report.pdf.

Statutory Notice of NVRA Violations
November 22, 2019
Page | 4

last two-year reporting period.  If you believe the data reported was not accurate, please let us know your own estimates regarding these two numbers.

●      Your explanation regarding the County's registration rate discussed above.

●      A description of the State's and the County's programs for sending address confirmation notices described in 52 U.S.C. § 20507(d)(2) to those who are believed to have moved.

●      A description of the State's and the County's programs for complying with the other voter list maintenance requirements of the NVRA, including all requirements to remove the registrations of those who have died or have otherwise become ineligible to register or vote.

●      Documents supporting your accounts of the foregoing explanations and descriptions.

●      A description of your plan to remedy any noncompliance with the voter list maintenance requirements of the NVRA, including 52 U.S.C. § 20507(a)(4) and (d).

I hope the concerns identified in this letter can be resolved amicably.  We have a track record of resolving NVRA claims on reasonable terms.  However, if you do not contact us about correcting or otherwise resolving the above-identified problems within 90 days, a federal lawsuit seeking declaratory and injunctive relief against both of you in your official capacities may be necessary.  In such a lawsuit we would seek, in addition to injunctive relief, a judgment awarding reasonable attorney fees, expenses, and costs.  *See* 52 U.S.C. § 20510(c).  For the reasons set forth above, we believe that such a lawsuit would be very likely to succeed.

We look forward to receiving your prompt response.

Sincerely,

**JUDICIAL WATCH, INC.**

*s/ Robert D. Popper*

Robert D. Popper
Attorney, Judicial Watch, Inc.



November 22, 2019

*VIA USPS CERTIFIED MAIL AND EMAIL*

Hon. Mark Church
Registrar-Recorder/County Clerk
San Mateo County
40 Tower Road
San Mateo, California 94402

Hon. Alex Padilla
California Secretary of State
1500 11th Street, 5th Floor
Sacramento, California 62704-4503

**Re:  Statutory Notice of Violations of 52 U.S.C. § 20507 in San Mateo County**

Dear Registrar Church and Secretary Padilla:

I write as legal counsel for Judicial Watch, Inc. ("Judicial Watch"), for the Institute for Fair Elections, and for Douglas Roberts, a registered voter in San Mateo County ("the County").  This letter is to bring to your attention violations of Section 8 of the National Voter Registration Act ("NVRA") committed in the County.  Registrar Church, as the registrar of the County, is receiving this letter because his office is responsible for collecting and processing the County's voter registration data.[1]  Secretary Padilla, as chief state elections official of California ("the State"), is receiving this letter because his office is responsible for coordinating compliance with Section 8 of the NVRA.[2]

This letter serves as official statutory notice under 52 U.S.C. § 20510(b)(1) & (2) that Judicial Watch and those on whose behalf it has sent this letter will bring a lawsuit against you if these violations are not corrected within 90 days.  Section 8(a)(4) of the NVRA requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters" by reason of death or change of address.  52 U.S.C. § 20507(a)(4).  In order to ensure that states and counties are complying with these requirements, Congress provided a public inspection provision, which requires all records concerning the accuracy and currency of the voter registration list to be disclosed.  52 U.S.C. § 20507(i).

---

[1] 2 Cal. Code Regs. § 20108.1(i).

[2] *See* 52 U.S.C. § 20509; Cal. Elec. Code § 2402(a).

425 Third St. SW, Suite 800, Washington, DC 20024 • Tel: (202) 646-5172 or 1-888-593-8442
FAX: (202) 646-5199 • Email: rpopper@JudicialWatch.org • www.JudicialWatch.org

Statutory Notice of NVRA Violations
November 22, 2019
Page | 2

       The following explains how we determined that Section 8 has been violated and the remedial steps that must be taken to comply with federal law.

       Judicial Watch examines a number of metrics in order to assess whether a jurisdiction is conducting a general program that makes a reasonable effort to remove ineligible registrants from its voter rolls.  To begin with, Judicial Watch determines each jurisdiction's registration rate.  States must report detailed registration data every other year to the U.S. Election Assistance Commission (EAC).[3]  Judicial Watch hires experts to compare this data to the citizen voting-age population in each state and county where data is available.[4]  An unusually high registration rate suggests that a jurisdiction is not removing voters who have died or who have moved elsewhere, as required by 52 U.S.C. § 20507(a)(4).  Federal courts adjudicating NVRA claims have acknowledged the significance of high registration rates.  *See Am. Civ. Rights Union v. Martinez-Rivera*, 166 F. Supp. 3d 779, 793 (W.D. Tex. 2015); *Voter Integrity Project NC, Inc. v. Wake Cnty. Bd. of Elections*, 301 F. Supp. 3d 612, 618 (E.D.N.C. 2017).

       Judicial Watch also examines the number of inactive registrations in each jurisdiction.  Voter registrations are subject to cancellation when a voter fails to respond to an address confirmation and then fails to vote or correct the registration record during the next two general federal elections.  52 U.S.C. § 20507(d)(1)(B).  Registrations pending removal during this period are typically referred to as "inactive."  Inactive registrations may still be voted on election day.  52 U.S.C. § 20507(d)(2)(A).  Data concerning such registrations must be reported to the EAC.[5]  "Not only are States allowed to remove registrants who satisfy these requirements, but federal law makes this removal mandatory."  *Husted v. A. Philip Randolph Inst.*, 138 S. Ct. 1833, 1841-42 (2018).[6]  A high number of inactive registrations suggests that they are not being timely removed as required by federal law.

       Judicial Watch also looks at the number of address confirmation notices sent by a jurisdiction.  Except where a voter confirms a change of address in writing, an address confirmation notice must be sent before a registration may be removed from the voter rolls on the ground that the voter has changed residence.  52 U.S.C. § 20507(d)(1).  Accordingly, the failure to send address confirmation notices (or to send enough of them) constitutes a clear violation of

---

[3] 11 C.F.R. § 9428.7.

[4] EAC registration data is available publicly at https://www.eac.gov/research-and-data/election-administration-voting-survey/.  For the latest American Community Survey population and demographic data, *see* https://factfinder.census.gov/faces/nav/jsf/pages/index.xhtml

[5] 11 C.F.R. § 9428.7(b)(1), (2), &(4).

[6] Pursuant to Judicial Watch's settlement agreement in a prior NVRA lawsuit involving Los Angeles County and the State of California, Secretary Padilla's office sent a written advisory concerning these legal obligations to every county elections official.  *See Judicial Watch v. Logan*, No. 17-8948, ECF 96-1, ¶ 9 (C.D. Cal. Jan. 3, 2019).

Statutory Notice of NVRA Violations
November 22, 2019
Page | 3

the NVRA.  States must tell the EAC how many address confirmation notices were sent during each two-year reporting period.[7]

Judicial Watch also considers how many registrations were ultimately removed from the voter rolls because a registrant failed to respond to an address confirmation notice and then failed to vote during the NVRA's statutory waiting period.  If few or no voters were removed by means of this process, the jurisdiction is obviously failing to comply with Section 8(d) of the NVRA.  52 U.S.C. § 20507(d)(1).  States must report the number of such removals to the EAC.[8]

Our analysis of the data regarding San Mateo County showed the following:

●    The County has a total registration rate of 106%.  To be clear, the number of voter registrations exceeds the number of citizens in the County who are old enough to register to vote.

●    There are 125,000 inactive voter registrations on the County's rolls, or almost one fourth of the total number of registrations.

●    The County reported sending *no* address confirmation notices in the last two-year reporting period to registrants who may have moved elsewhere.

●    The County reported removing only 37 voter registrations in the last two-year reporting period on the grounds that the registrants failed to respond to an address confirmation notice and failed to vote in two consecutive federal elections.  This is an absurdly low number of removals for a county of this size.

These facts establish clear violations of Section 8(a)(4) of the NVRA.

In addition, the failure to produce documents as required by Section 8(i) constitutes an independent violation of the NVRA.  Section 8(i)(1) generally requires that "[e]ach state shall maintain for at least 2 years and shall make available for public inspection . . . all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters."  52 U.S.C. § 20507(i)(1).  That provision goes on to specifically provide that "[t]he records maintained . . . shall include lists of the names and addresses of all persons to whom [address confirmation] notices . . . are sent, and information concerning whether or not each such person has responded to the notice."  *Id.*, § 20507(i)(2).

---

[7] 11 C.F.R. § 9428.7(b)(8).

[8] 11 C.F.R. § 9428.7(b)(5); U.S. Election Assistance Commission, Election Administration and Voting Survey: 2018 Comprehensive Report at 197 (survey question A9e), available at https://www.eac.gov/assets/1/6/2018_EAVS_Report.pdf.

Statutory Notice of NVRA Violations
November 22, 2019
Page | 4

On April 12, 2019, Judicial Watch sent a letter to Mr. Church pursuant to section 8(i) requesting six categories of records (attached). On April 22, 2019, Mr. Church responded by letter (attached).

Judicial Watch's first request sought "[t]he names and addresses of all persons to whom [address confirmation] notices . . . were sent, and information concerning whether or not each person responded to the notice." Note that this request sought the one category of records specifically identified as responsive records by the NVRA. 52 U.S.C. § 20507(i)(2). Judicial Watch's third request asked for "[a]ll documents concerning any internal or external audit, evaluation, assessment, review, analysis, critique, or request for or response to any of the foregoing, relating to the accuracy and currency of official lists of eligible voters."

San Mateo has not produced any documents relating to either request. In a subsequent series of email communications about these requests, County officials stated that there were "no additional non-exempt records responsive to the requests."

With respect to any records specifically enumerated in 52 U.S.C. § 20507(i)(2), the failure to retain or to produce such records for any reason is a per se violation of the NVRA. With respect to the request for audits, the County's response is inadequate in that it fails to identify whether such records exist, whether they are being withheld as "exempt," and what the basis for any claimed exemption is.

\* \* \* \* \* \* \*

Pursuant to 52 U.S.C. § 20510(b)(2), if the foregoing violations are not corrected within 90 days of your receiving this letter, Judicial Watch and those on whose behalf it has sent this letter may commence an action against you in federal court. Please contact us about your plans for correcting these violations. In particular, please set forth in such communication:

- Whether you agree that the EAC accurately quoted data it received from you regarding (1) the number of address confirmation notices you sent, and (2) the number of registrations you removed under the process set forth in Section 8(d) of the NVRA, during the last two-year reporting period. If you believe the data reported was not accurate, please let us know your own estimates regarding these two numbers.

- Your explanation regarding the County's registration rate discussed above.

- A description of the State's and the County's programs for sending address confirmation notices described in 52 U.S.C. § 20507(d)(2) to those who are believed to have moved.

- A description of the State's and the County's programs for complying with the other voter list maintenance requirements of the NVRA, including all requirements to remove the registrations of those who have died or have otherwise become ineligible to register or vote.

Statutory Notice of NVRA Violations
November 22, 2019
Page | 5


●      A description of the State's and the County's programs for producing documents pursuant to 52 U.S.C. § 20507(i)(2).

●      Documents supporting your accounts of the foregoing explanations and descriptions.

●      A description of your plan to remedy any noncompliance with the voter list maintenance requirements of the NVRA, including 52 U.S.C. § 20507(a)(4) and (d).

●      A schedule for producing (1) the records requested by Judicial Watch in April 2019, and (2) a privilege log for any record withheld on the basis of a claimed "exemption."

I hope the concerns identified in this letter can be resolved amicably.  We have a track record of resolving NVRA claims on reasonable terms.  However, if you do not contact us about correcting or otherwise resolving the above-identified problems within 90 days, a federal lawsuit seeking declaratory and injunctive relief against both of you in your official capacities may be necessary.  In such a lawsuit we would seek, in addition to injunctive relief, a judgment awarding reasonable attorney fees, expenses, and costs.  *See* 52 U.S.C. § 20510(c).  For the reasons set forth above, we believe that such a lawsuit would be very likely to succeed.

We look forward to receiving your prompt response.

Sincerely,

**JUDICIAL WATCH, INC.**

*s/ Robert D. Popper*

Robert D. Popper
Attorney, Judicial Watch, Inc.



December 12, 2019

*VIA USPS CERTIFIED MAIL AND EMAIL*

Hon. Shannon Bushey
Santa Clara County Registrar of Voters
1555 Berger Drive
Building 2
San Jose, California 95112

Hon. Alex Padilla
California Secretary of State
1500 11th Street, 5th Floor
Sacramento, California 62704-4503

**Re:  Statutory Notice of Violations of 52 U.S.C. § 20507 in Santa Clara County**

Dear Registrar Bushey and Secretary Padilla:

I write as legal counsel for Judicial Watch, Inc. ("Judicial Watch") and for the Institute for Fair Elections.  This letter is to bring to your attention violations of Section 8 of the National Voter Registration Act ("NVRA") committed in Santa Clara County (the "County").  Registrar Bushey is receiving this letter because her office is responsible for collecting and processing the County's voter registration data.[1]  Secretary Padilla, as chief state elections official of California ("the State"), is receiving this letter because his office is responsible for coordinating compliance with Section 8 of the NVRA.[2]

This letter serves as official statutory notice under 52 U.S.C. § 20510(b)(1) & (2) that Judicial Watch and those on whose behalf it has sent this letter will bring a lawsuit against you if these violations are not corrected within 90 days.  Section 8(a)(4) of the NVRA requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters" by reason of death or change of address.  52 U.S.C. § 20507(a)(4).  In order to ensure that states and counties are complying with these requirements, Congress provided a public inspection provision, which requires all records concerning the accuracy and currency of the voter registration list to be disclosed.  52 U.S.C. § 20507(i).

---

[1] 2 Cal. Code Regs. § 20108.1(i).

[2] *See* 52 U.S.C. § 20509; Cal. Elec. Code § 2402(a).

Statutory Notice of NVRA Violations
December 12, 2019
Page | 2

The following explains how we determined that Section 8 has been violated and the remedial steps that must be taken to comply with federal law.

Judicial Watch examines a number of metrics in order to assess whether a jurisdiction is conducting a general program that makes a reasonable effort to remove ineligible registrants from its voter rolls.  To begin with, Judicial Watch determines each jurisdiction's registration rate.  States must report detailed registration data every other year to the U.S. Election Assistance Commission (EAC).[3]  Judicial Watch hires experts to compare this data to the citizen voting-age population in each state and county where data is available.[4]  An unusually high registration rate suggests that a jurisdiction is not removing voters who have died or who have moved elsewhere, as required by 52 U.S.C. § 20507(a)(4).  Federal courts adjudicating NVRA claims have acknowledged the significance of high registration rates.  *See Am. Civ. Rights Union v. Martinez-Rivera*, 166 F. Supp. 3d 779, 793 (W.D. Tex. 2015); *Voter Integrity Project NC, Inc. v. Wake Cnty. Bd. of Elections*, 301 F. Supp. 3d 612, 618 (E.D.N.C. 2017).

Judicial Watch also examines the number of inactive registrations in each jurisdiction.  Voter registrations are subject to cancellation when a voter fails to respond to an address confirmation and then fails to vote or correct the registration record during the next two general federal elections.  52 U.S.C. § 20507(d)(1)(B).  Registrations pending removal during this period are typically referred to as "inactive."  Inactive registrations may still be voted on election day.  52 U.S.C. § 20507(d)(2)(A).  Data concerning such registrations must be reported to the EAC.[5]  "Not only are States allowed to remove registrants who satisfy these requirements, but federal law makes this removal mandatory."  *Husted v. A. Philip Randolph Inst.*, 138 S. Ct. 1833, 1841-42 (2018).  A high number of inactive registrations suggests that they are not being timely removed as required by federal law.

Judicial Watch also considers how many registrations were ultimately removed from the voter rolls because a registrant failed to respond to an address confirmation notice and then failed to vote during the NVRA's statutory waiting period.  If few or no voters were removed by means of this process, the jurisdiction is obviously failing to comply with Section 8(d) of the NVRA.  52 U.S.C. § 20507(d)(1).  States must report the number of such removals to the EAC.[6]

Our analysis of the data regarding Santa Clara County showed the following:

---

[3] 11 C.F.R. § 9428.7.

[4] EAC registration data is available publicly at https://www.eac.gov/research-and-data/election-administration-voting-survey/.  For the latest American Community Survey population and demographic data, *see* https://factfinder.census.gov/faces/nav/jsf/pages/index.xhtml

[5] 11 C.F.R. § 9428.7(b)(1), (2), & (4).

[6] 11 C.F.R. § 9428.7(b)(5); U.S. Election Assistance Commission, ELECTION ADMINISTRATION AND VOTING SURVEY: 2018 COMPREHENSIVE REPORT at 197 (survey question A9e), available at https://www.eac.gov/assets/1/6/2018_EAVS_Report.pdf.

Statutory Notice of NVRA Violations
December 12, 2019
Page | 3

●        The County has a total registration rate of 101%.  To be clear, the number of voter registrations exceeds the number of citizens in the County who are old enough to register to vote.

●        The County did not report removing *any* voter registrations in the last two-year reporting period on the grounds that the registrants failed to respond to an address confirmation notice and failed to vote in two consecutive federal elections.  Such removals are required by the NVRA.  If this report is true, it is enough on its own to establish beyond any dispute that the County is not complying with the NVRA.

●        There are almost 290,000 inactive voter registrations on the County's rolls.  This amounts to about one fourth of the County's voter registrations.

These facts establish clear violations of Section 8(a)(4) of the NVRA.

* * * * * * *

Pursuant to 52 U.S.C. § 20510(b)(2), if the foregoing violations are not corrected within 90 days of your receiving this letter, Judicial Watch and those on whose behalf it has sent this letter may commence an action against you in federal court.  Please contact us about your plans for correcting these violations.  In particular, please set forth in such communication:

●        Whether you agree that the EAC accurately quoted data it received from you regarding the number of registrations you removed under the process set forth in Section 8(d) of the NVRA during the last two-year reporting period.  If you believe the data reported was not accurate, please let us know your own estimates regarding these two numbers.

●        Your explanation regarding the County's high registration rate discussed above.

●        Your explanation regarding the County's high number of inactive registrations.

●        A description of the State's and the County's programs for sending address confirmation notices described in 52 U.S.C. § 20507(d)(2) to those who are believed to have moved.

●        A description of the State's and the County's programs for complying with the other voter list maintenance requirements of the NVRA, including all requirements to remove the registrations of those who have died or have otherwise become ineligible to register or vote.

●        A description of your plan to remedy any noncompliance with the voter list maintenance requirements of the NVRA, including 52 U.S.C. § 20507(a)(4) and (d).

* * * * * * *

Statutory Notice of NVRA Violations
December 12, 2019
Page | 4

Section 8(i)(1) of the NVRA requires that "[e]ach state shall maintain for at least 2 years and shall make available for public inspection . . . all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1). That provision goes on to specifically provide that "[t]he records maintained . . . shall include lists of the names and addresses of all persons to whom [address confirmation] notices . . . are sent, and information concerning whether or not each such person has responded to the notice." *Id.*, § 20507(i)(2).

Pursuant to that section, please provide the following categories of records to Judicial Watch within two weeks of the date of this letter. If you fail to do so, we will deem it an independent violation of the NVRA. Specifically, please provide the following records insofar as they were generated by, or concern, the County:

1. The names and addresses of all persons to whom notices described in 52 U.S.C. § 20507(d)(2) were sent, and information concerning whether or not each person responded to the notice.

2. All documents and communications concerning the questions contained in Section A of the most recent Election Administration & Voting Survey ("EAVS"). This request includes, but is not limited to:
    a. Your written responses to the EAVS, along with any documents you provided along with your responses.
    b. Any internal or external communications about the EAVS.

3. All documents concerning any internal or external audit, evaluation, assessment, review, analysis, critique, or request for or response to any of the foregoing, relating to the accuracy and currency of official lists of eligible voters. This request includes, but is not limited to any of the foregoing documents relating to:
    a. Registered voters who were sent notices described in 52 U.S.C. § 20507(d)(2).
    b. Registered voters who have died.
    c. Registered voters who are noncitizens.

4. All documents concerning any instance(s) of voter fraud, including, but not limited to, impersonation fraud, double voting, registration fraud, absentee ballot fraud, mail-in ballot fraud, registration or voting by noncitizens, unlawful assistance, or aiding, abetting, or conspiring to commit any of the foregoing.

5. All manuals, training materials, protocols, written standards, and official guidance concerning efforts to ensure the accuracy and currency of your official list of eligible voters.

6. All contracts with the U.S. Postal Service or any other federal agency to provide change-of-address information concerning registered voters.

Statutory Notice of NVRA Violations
December 12, 2019
Page | 5

    7.        Copies of all documents and communications concerning the following:
            a.       The Systematic Alien Verification for Entitlements ("SAVE") database.
            b.       The Interstate Voter Registration Cross-Check Program.
            c.       The Electronic Registration Information Center ("ERIC").

*  *  *  *  *  *  *

I hope the concerns identified in this letter can be resolved amicably.  We have a track record of resolving NVRA claims on reasonable terms.  However, if you do not contact us about correcting or otherwise resolving the above-identified problems within 90 days, a federal lawsuit seeking declaratory and injunctive relief against both of you in your official capacities may be necessary.  In such a lawsuit we would seek, in addition to injunctive relief, a judgment awarding reasonable attorney fees, expenses, and costs.  *See* 52 U.S.C. § 20510(c).  For the reasons set forth above, we believe that such a lawsuit would be very likely to succeed.

We look forward to receiving your prompt response.

Sincerely,

**JUDICIAL WATCH, INC.**

*s/ Robert D. Popper*

Robert D. Popper
Attorney, Judicial Watch, Inc.



December 12, 2019

*VIA USPS CERTIFIED MAIL AND EMAIL*

Hon. Shannon Bushey
Santa Clara County Registrar of Voters
1555 Berger Drive
Building 2
San Jose, California 95112

Hon. Alex Padilla
California Secretary of State
1500 11th Street, 5th Floor
Sacramento, California 62704-4503

**Re:  Statutory Notice of Violations of 52 U.S.C. § 20507 in Santa Clara County**

Dear Registrar Bushey and Secretary Padilla:

I write as legal counsel for Judicial Watch, Inc. ("Judicial Watch") and for the Institute for Fair Elections.  This letter is to bring to your attention violations of Section 8 of the National Voter Registration Act ("NVRA") committed in Santa Clara County (the "County").  Registrar Bushey is receiving this letter because her office is responsible for collecting and processing the County's voter registration data.[1]  Secretary Padilla, as chief state elections official of California ("the State"), is receiving this letter because his office is responsible for coordinating compliance with Section 8 of the NVRA.[2]

This letter serves as official statutory notice under 52 U.S.C. § 20510(b)(1) & (2) that Judicial Watch and those on whose behalf it has sent this letter will bring a lawsuit against you if these violations are not corrected within 90 days.  Section 8(a)(4) of the NVRA requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters" by reason of death or change of address.  52 U.S.C. § 20507(a)(4).  In order to ensure that states and counties are complying with these requirements, Congress provided a public inspection provision, which requires all records concerning the accuracy and currency of the voter registration list to be disclosed.  52 U.S.C. § 20507(i).

---

[1] 2 Cal. Code Regs. § 20108.1(i).

[2] *See* 52 U.S.C. § 20509; Cal. Elec. Code § 2402(a).

425 Third St. SW, Suite 800, Washington, DC 20024 • Tel: (202) 646-5172 or 1-888-593-8442
FAX: (202) 646-5199 • Email: rpopper@JudicialWatch.org • www.JudicialWatch.org

Statutory Notice of NVRA Violations
December 12, 2019
Page | 2

The following explains how we determined that Section 8 has been violated and the remedial steps that must be taken to comply with federal law.

Judicial Watch examines a number of metrics in order to assess whether a jurisdiction is conducting a general program that makes a reasonable effort to remove ineligible registrants from its voter rolls.  To begin with, Judicial Watch determines each jurisdiction's registration rate.  States must report detailed registration data every other year to the U.S. Election Assistance Commission (EAC).[3]  Judicial Watch hires experts to compare this data to the citizen voting-age population in each state and county where data is available.[4]  An unusually high registration rate suggests that a jurisdiction is not removing voters who have died or who have moved elsewhere, as required by 52 U.S.C. § 20507(a)(4).  Federal courts adjudicating NVRA claims have acknowledged the significance of high registration rates.  *See Am. Civ. Rights Union v. Martinez-Rivera*, 166 F. Supp. 3d 779, 793 (W.D. Tex. 2015); *Voter Integrity Project NC, Inc. v. Wake Cnty. Bd. of Elections*, 301 F. Supp. 3d 612, 618 (E.D.N.C. 2017).

Judicial Watch also examines the number of inactive registrations in each jurisdiction.  Voter registrations are subject to cancellation when a voter fails to respond to an address confirmation and then fails to vote or correct the registration record during the next two general federal elections.  52 U.S.C. § 20507(d)(1)(B).  Registrations pending removal during this period are typically referred to as "inactive."  Inactive registrations may still be voted on election day.  52 U.S.C. § 20507(d)(2)(A).  Data concerning such registrations must be reported to the EAC.[5]  "Not only are States allowed to remove registrants who satisfy these requirements, but federal law makes this removal mandatory."  *Husted v. A. Philip Randolph Inst.*, 138 S. Ct. 1833, 1841-42 (2018).  A high number of inactive registrations suggests that they are not being timely removed as required by federal law.

Judicial Watch also considers how many registrations were ultimately removed from the voter rolls because a registrant failed to respond to an address confirmation notice and then failed to vote during the NVRA's statutory waiting period.  If few or no voters were removed by means of this process, the jurisdiction is obviously failing to comply with Section 8(d) of the NVRA.  52 U.S.C. § 20507(d)(1).  States must report the number of such removals to the EAC.[6]

Our analysis of the data regarding Santa Clara County showed the following:

---

[3] 11 C.F.R. § 9428.7.

[4] EAC registration data is available publicly at https://www.eac.gov/research-and-data/election-administration-voting-survey/.   For the latest American Community Survey population and demographic data, *see* https://factfinder.census.gov/faces/nav/jsf/pages/index.xhtml

[5] 11 C.F.R. § 9428.7(b)(1), (2), & (4).

[6] 11 C.F.R. § 9428.7(b)(5); U.S. Election Assistance Commission, ELECTION ADMINISTRATION AND VOTING SURVEY: 2018 COMPREHENSIVE REPORT at 197 (survey question A9e), available at https://www.eac.gov/assets/1/6/2018_EAVS_Report.pdf.

Statutory Notice of NVRA Violations
December 12, 2019
Page | 3

● The County has a total registration rate of 101%.  To be clear, the number of voter registrations exceeds the number of citizens in the County who are old enough to register to vote.

● The County did not report removing *any* voter registrations in the last two-year reporting period on the grounds that the registrants failed to respond to an address confirmation notice and failed to vote in two consecutive federal elections.  Such removals are required by the NVRA.  If this report is true, it is enough on its own to establish beyond any dispute that the County is not complying with the NVRA.

● There are almost 290,000 inactive voter registrations on the County's rolls.  This amounts to about one fourth of the County's voter registrations.

These facts establish clear violations of Section 8(a)(4) of the NVRA.

\* \* \* \* \* \* \*

Pursuant to 52 U.S.C. § 20510(b)(2), if the foregoing violations are not corrected within 90 days of your receiving this letter, Judicial Watch and those on whose behalf it has sent this letter may commence an action against you in federal court.  Please contact us about your plans for correcting these violations.  In particular, please set forth in such communication:

● Whether you agree that the EAC accurately quoted data it received from you regarding the number of registrations you removed under the process set forth in Section 8(d) of the NVRA during the last two-year reporting period.  If you believe the data reported was not accurate, please let us know your own estimates regarding these two numbers.

● Your explanation regarding the County's high registration rate discussed above.

● Your explanation regarding the County's high number of inactive registrations.

● A description of the State's and the County's programs for sending address confirmation notices described in 52 U.S.C. § 20507(d)(2) to those who are believed to have moved.

● A description of the State's and the County's programs for complying with the other voter list maintenance requirements of the NVRA, including all requirements to remove the registrations of those who have died or have otherwise become ineligible to register or vote.

● A description of your plan to remedy any noncompliance with the voter list maintenance requirements of the NVRA, including 52 U.S.C. § 20507(a)(4) and (d).

\* \* \* \* \* \* \*

Statutory Notice of NVRA Violations
December 12, 2019
Page | 4

Section 8(i)(1) of the NVRA requires that "[e]ach state shall maintain for at least 2 years and shall make available for public inspection . . . all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1). That provision goes on to specifically provide that "[t]he records maintained . . . shall include lists of the names and addresses of all persons to whom [address confirmation] notices . . . are sent, and information concerning whether or not each such person has responded to the notice." *Id.*, § 20507(i)(2).

Pursuant to that section, please provide the following categories of records to Judicial Watch within two weeks of the date of this letter. If you fail to do so, we will deem it an independent violation of the NVRA. Specifically, please provide the following records insofar as they were generated by, or concern, the County:

1.      The names and addresses of all persons to whom notices described in 52 U.S.C. § 20507(d)(2) were sent, and information concerning whether or not each person responded to the notice.

2.      All documents and communications concerning the questions contained in Section A of the most recent Election Administration & Voting Survey ("EAVS"). This request includes, but is not limited to:
        a.      Your written responses to the EAVS, along with any documents you provided along with your responses.
        b.      Any internal or external communications about the EAVS.

3.      All documents concerning any internal or external audit, evaluation, assessment, review, analysis, critique, or request for or response to any of the foregoing, relating to the accuracy and currency of official lists of eligible voters. This request includes, but is not limited to any of the foregoing documents relating to:
        a.      Registered voters who were sent notices described in 52 U.S.C. § 20507(d)(2).
        b.      Registered voters who have died.
        c.      Registered voters who are noncitizens.

4.      All documents concerning any instance(s) of voter fraud, including, but not limited to, impersonation fraud, double voting, registration fraud, absentee ballot fraud, mail-in ballot fraud, registration or voting by noncitizens, unlawful assistance, or aiding, abetting, or conspiring to commit any of the foregoing.

5.      All manuals, training materials, protocols, written standards, and official guidance concerning efforts to ensure the accuracy and currency of your official list of eligible voters.

6.      All contracts with the U.S. Postal Service or any other federal agency to provide change-of-address information concerning registered voters.

Statutory Notice of NVRA Violations
December 12, 2019
Page | 5

    7.      Copies of all documents and communications concerning the following:
           a.      The Systematic Alien Verification for Entitlements ("SAVE") database.
           b.      The Interstate Voter Registration Cross-Check Program.
           c.      The Electronic Registration Information Center ("ERIC").

\* \* \* \* \* \* \*

I hope the concerns identified in this letter can be resolved amicably. We have a track record of resolving NVRA claims on reasonable terms. However, if you do not contact us about correcting or otherwise resolving the above-identified problems within 90 days, a federal lawsuit seeking declaratory and injunctive relief against both of you in your official capacities may be necessary. In such a lawsuit we would seek, in addition to injunctive relief, a judgment awarding reasonable attorney fees, expenses, and costs. *See* 52 U.S.C. § 20510(c). For the reasons set forth above, we believe that such a lawsuit would be very likely to succeed.

We look forward to receiving your prompt response.

           Sincerely,

           **JUDICIAL WATCH, INC.**

           *s/ Robert D. Popper*

           Robert D. Popper
           Attorney, Judicial Watch, Inc.



November 22, 2019

*VIA USPS CERTIFIED MAIL AND EMAIL*

Honorable Timothy Flanagan
Solano County Registrar-Recorder/County Clerk
675 Texas Street, Suite 2600
Fairfield, California 94533

Hon. Alex Padilla
California Secretary of State
1500 11th Street, 5th Floor
Sacramento, California 62704-4503

**Re:  Statutory Notice of Violations of 52 U.S.C. § 20507 in Solano County**

Dear Registrar Flanagan and Secretary Padilla:

I write as legal counsel for Judicial Watch, Inc. ("Judicial Watch"), for the Institute for Fair Elections, and for Tom Burr, a registered voter in Solano County ("the County").  This letter is to bring to your attention violations of Section 8 of the National Voter Registration Act ("NVRA") committed in the County.  Registrar Flanagan, as the registrar of the County, is receiving this letter because his office is responsible for collecting and processing the County's voter registration data.[1] Secretary Padilla, as chief state elections official of California ("the State"), is receiving this letter because his office is responsible for coordinating compliance with Section 8 of the NVRA.[2]

This letter serves as official statutory notice under 52 U.S.C. § 20510(b)(1) & (2) that Judicial Watch and those on whose behalf it has sent this letter will bring a lawsuit against you if these violations are not corrected within 90 days.  Section 8(a)(4) of the NVRA requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters" by reason of death or change of address.  52 U.S.C. § 20507(a)(4).  In order to ensure that states and counties are complying with these requirements, Congress provided a public inspection provision, which requires all records concerning the accuracy and currency of the voter registration list to be disclosed.  52 U.S.C. § 20507(i).

The following explains how we determined that Section 8 has been violated and the remedial steps that must be taken to comply with federal law.

---

[1] 2 Cal. Code Regs. § 20108.1(i).

[2] *See* 52 U.S.C. § 20509; Cal. Elec. Code § 2402(a).

Statutory Notice of NVRA Violations
November 22, 2019
Page | 2

Judicial Watch examines a number of metrics in order to assess whether a jurisdiction is conducting a general program that makes a reasonable effort to remove ineligible registrants from its voter rolls.  To begin with, Judicial Watch determines each jurisdiction's registration rate.  States must report detailed registration data every other year to the U.S. Election Assistance Commission (EAC).[3]  Judicial Watch hires experts to compare this data to the citizen voting-age population in each state and county where data is available.[4]  An unusually high registration rate suggests that a jurisdiction is not removing voters who have died or who have moved elsewhere, as required by 52 U.S.C. § 20507(a)(4).   Federal courts adjudicating NVRA claims have acknowledged the significance of high registration rates.  *See Am. Civ. Rights Union v. Martinez-Rivera*, 166 F. Supp. 3d 779, 793 (W.D. Tex. 2015); *Voter Integrity Project NC, Inc. v. Wake Cnty. Bd. of Elections*, 301 F. Supp. 3d 612, 618 (E.D.N.C. 2017).

Judicial Watch also examines the number of inactive registrations in each jurisdiction. Voter registrations are subject to cancellation when a voter fails to respond to an address confirmation and then fails to vote or correct the registration record during the next two general federal elections.  52 U.S.C. § 20507(d)(1)(B).  Registrations pending removal during this period are typically referred to as "inactive."  Inactive registrations may still be voted on election day.  52 U.S.C. § 20507(d)(2)(A).  Data concerning such registrations must be reported to the EAC.[5]  "Not only are States allowed to remove registrants who satisfy these requirements, but federal law makes this removal mandatory."  *Husted v. A. Philip Randolph Inst.*, 138 S. Ct. 1833, 1841-42 (2018).[6]  A high number of inactive registrations suggests that they are not being timely removed as required by federal law.

Judicial Watch also considers how many registrations were ultimately removed from the voter rolls because a registrant failed to respond to an address confirmation notice and then failed to vote during the NVRA's statutory waiting period.  If few or no voters were removed by means of this process, the jurisdiction is obviously failing to comply with Section 8(d) of the NVRA.  52 U.S.C. § 20507(d)(1).  States must report the number of such removals to the EAC.[7]

---

[3] 11 C.F.R. § 9428.7.

[4] EAC registration data is available publicly at https://www.eac.gov/research-and-data/election-administration-voting-survey/.   For the latest American Community Survey population and demographic data, *see* https://factfinder.census.gov/faces/nav/jsf/pages/index.xhtml

[5] 11 C.F.R. § 9428.7(b)(1), (2), &(4).

[6] Pursuant to Judicial Watch's settlement agreement in a prior NVRA lawsuit involving Los Angeles County and the State of California, Secretary Padilla's office sent a written advisory concerning these legal obligations to every county elections official.  *See Judicial Watch v. Logan*, No. 17-8948, ECF 96-1, ¶ 9 (C.D. Cal. Jan. 3, 2019).

[7] 11 C.F.R. § 9428.7(b)(5); U.S. Election Assistance Commission, ELECTION ADMINISTRATION AND VOTING SURVEY: 2018 COMPREHENSIVE REPORT at 197 (survey question A9e), available at https://www.eac.gov/assets/1/6/2018_EAVS_Report.pdf.

Statutory Notice of NVRA Violations
November 22, 2019
Page | 3

Our analysis of the data regarding Solano County showed the following:

●       The County has a total registration rate of 102.7%.  To be clear, the number of voter registrations exceeds the number of citizens in the County who are old enough to register to vote.

●       There are 79,000 inactive voter registrations on the County's rolls, or more than one fourth of the total number of registrations.

●       The County reported removing *four* voter registrations in the last two-year reporting period on the grounds that the registrants failed to respond to an address confirmation notice and failed to vote in two consecutive federal elections.  This is an absurdly low number for a county this size, and is enough on its own to conclusively establish a violation of the NVRA.

These facts establish clear violations of Section 8(a)(4) of the NVRA.

* * * * * * *

Pursuant to 52 U.S.C. § 20510(b)(2), if the foregoing violations are not corrected within 90 days of your receiving this letter, Judicial Watch and those on whose behalf it has sent this letter may commence an action against you in federal court.  Please contact us about your plans for correcting these violations.  In particular, please set forth in such communication:

●       Whether you agree that the EAC accurately quoted data it received from you regarding (1) the number of address confirmation notices you sent, and (2) the number of registrations you removed under the process set forth in Section 8(d) of the NVRA, during the last two-year reporting period.  If you believe the data reported was not accurate, please let us know your own estimates regarding these two numbers.

●       Your explanation regarding the County's registration rate discussed above.

●       A description of the State's and the County's programs for sending address confirmation notices described in 52 U.S.C. § 20507(d)(2) to those who are believed to have moved.

●       A description of the State's and the County's programs for complying with the other voter list maintenance requirements of the NVRA, including all requirements to remove the registrations of those who have died or have otherwise become ineligible to register or vote.

●       Documents supporting your accounts of the foregoing explanations and descriptions.

Statutory Notice of NVRA Violations
November 22, 2019
Page | 4

    ●     A description of your plan to remedy any noncompliance with the voter list maintenance requirements of the NVRA, including 52 U.S.C. § 20507(a)(4) and (d).

    I hope the concerns identified in this letter can be resolved amicably.  We have a track record of resolving NVRA claims on reasonable terms.  However, if you do not contact us about correcting or otherwise resolving the above-identified problems within 90 days, a federal lawsuit seeking declaratory and injunctive relief against both of you in your official capacities may be necessary.  In such a lawsuit we would seek, in addition to injunctive relief, a judgment awarding reasonable attorney fees, expenses, and costs.  *See* 52 U.S.C. § 20510(c).  For the reasons set forth above, we believe that such a lawsuit would be very likely to succeed.

    We look forward to receiving your prompt response.

        Sincerely,

        **JUDICIAL WATCH, INC.**

        *s/ Robert D. Popper*

        Robert D. Popper
        Attorney, Judicial Watch, Inc.



November 22, 2019

*VIA USPS CERTIFIED MAIL AND EMAIL*

Honorable Donna Linder
Stanislaus County Registrar-Recorder/County Clerk
1021 I Street, Suite 101
Modesto, California 95354-2331

Hon. Alex Padilla
California Secretary of State
1500 11th Street, 5th Floor
Sacramento, California 62704-4503

**Re:  Statutory Notice of Violations of 52 U.S.C. § 20507 in Stanislaus County**

Dear Registrar Linder and Secretary Padilla:

      I write as legal counsel for Judicial Watch, Inc. ("Judicial Watch"), for the Institute for Fair Elections, and for Fred Cruz and Kristine Wolfley, registered voters in Stanislaus County ("the County").  This letter is to bring to your attention violations of Section 8 of the National Voter Registration Act ("NVRA") committed in the County.  Registrar Linder, as the registrar of the County, is receiving this letter because his office is responsible for collecting and processing the County's voter registration data.[1]  Secretary Padilla, as chief state elections official of California ("the State"), is receiving this letter because his office is responsible for coordinating compliance with Section 8 of the NVRA.[2]

      This letter serves as official statutory notice under 52 U.S.C. § 20510(b)(1) & (2) that Judicial Watch and those on whose behalf it has sent this letter will bring a lawsuit against you if these violations are not corrected within 90 days.  Section 8(a)(4) of the NVRA requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters" by reason of death or change of address.  52 U.S.C. § 20507(a)(4).  In order to ensure that states and counties are complying with these requirements, Congress provided a public inspection provision, which requires all records concerning the accuracy and currency of the voter registration list to be disclosed.  52 U.S.C. § 20507(i).

---

[1] 2 Cal. Code Regs. § 20108.1(i).

[2] *See* 52 U.S.C. § 20509; Cal. Elec. Code § 2402(a).

425 Third St. SW, Suite 800, Washington, DC 20024 • Tel: (202) 646-5172 or 1-888-593-8442
FAX: (202) 646-5199 • Email: rpopper@JudicialWatch.org • www.JudicialWatch.org

Statutory Notice of NVRA Violations
November 22, 2019
Page | 2

The following explains how we determined that Section 8 has been violated and the remedial steps that must be taken to comply with federal law.

Judicial Watch examines a number of metrics in order to assess whether a jurisdiction is conducting a general program that makes a reasonable effort to remove ineligible registrants from its voter rolls.  To begin with, Judicial Watch determines each jurisdiction's registration rate. States must report detailed registration data every other year to the U.S. Election Assistance Commission (EAC).[3]  Judicial Watch hires experts to compare this data to the citizen voting-age population in each state and county where data is available.[4]  An unusually high registration rate suggests that a jurisdiction is not removing voters who have died or who have moved elsewhere, as required by 52 U.S.C. § 20507(a)(4).  Federal courts adjudicating NVRA claims have acknowledged the significance of high registration rates.  *See Am. Civ. Rights Union v. Martinez-Rivera*, 166 F. Supp. 3d 779, 793 (W.D. Tex. 2015); *Voter Integrity Project NC, Inc. v. Wake Cnty. Bd. of Elections*, 301 F. Supp. 3d 612, 618 (E.D.N.C. 2017).

Judicial Watch also examines the number of inactive registrations in each jurisdiction. Voter registrations are subject to cancellation when a voter fails to respond to an address confirmation and then fails to vote or correct the registration record during the next two general federal elections.  52 U.S.C. § 20507(d)(1)(B).  Registrations pending removal during this period are typically referred to as "inactive."  Inactive registrations may still be voted on election day.  52 U.S.C. § 20507(d)(2)(A).  Data concerning such registrations must be reported to the EAC.[5]  "Not only are States allowed to remove registrants who satisfy these requirements, but federal law makes this removal mandatory."  *Husted v. A. Philip Randolph Inst.*, 138 S. Ct. 1833, 1841-42 (2018).[6]  A high number of inactive registrations suggests that they are not being timely removed as required by federal law.

Judicial Watch also considers how many registrations were ultimately removed from the voter rolls because a registrant failed to respond to an address confirmation notice and then failed to vote during the NVRA's statutory waiting period.  If few or no voters were removed by means of this process, the jurisdiction is obviously failing to comply with Section 8(d) of the NVRA.  52 U.S.C. § 20507(d)(1).  States must report the number of such removals to the EAC.[7]

---

[3] 11 C.F.R. § 9428.7.

[4] EAC registration data is available publicly at https://www.eac.gov/research-and-data/election-administration-voting-survey/.   For the latest American Community Survey population and demographic data, *see* https://factfinder.census.gov/faces/nav/jsf/pages/index.xhtml

[5] 11 C.F.R. § 9428.7(b)(1), (2), &(4).

[6] Pursuant to Judicial Watch's settlement agreement in a prior NVRA lawsuit involving Los Angeles County and the State of California, Secretary Padilla's office sent a written advisory concerning these legal obligations to every county elections official.  *See Judicial Watch v. Logan*, No. 17-8948, ECF 96-1, ¶ 9 (C.D. Cal. Jan. 3, 2019).

[7] 11 C.F.R. § 9428.7(b)(5); U.S. Election Assistance Commission, ELECTION ADMINISTRATION AND VOTING SURVEY: 2018 COMPREHENSIVE REPORT at 197 (survey question A9e), available at https://www.eac.gov/assets/1/6/2018_EAVS_Report.pdf.

Statutory Notice of NVRA Violations
November 22, 2019
Page | 3

Our analysis of the data regarding Stanislaus County showed the following:

● The County has a total registration rate of 103.4%. To be clear, the number of voter registrations exceeds the number of citizens in the County who are old enough to register to vote.

● There are 87,000 inactive voter registrations on the County's rolls, or more than one fourth of the total number of registrations.

● The County reported removing *two* voter registrations in the last two-year reporting period on the grounds that the registrants failed to respond to an address confirmation notice and failed to vote in two consecutive federal elections. This is an absurdly low number for a county this size, and is enough on its own to conclusively establish a violation of the NVRA.

These facts establish clear violations of Section 8(a)(4) of the NVRA.

* * * * * * *

Pursuant to 52 U.S.C. § 20510(b)(2), if the foregoing violations are not corrected within 90 days of your receiving this letter, Judicial Watch and those on whose behalf it has sent this letter may commence an action against you in federal court. Please contact us about your plans for correcting these violations. In particular, please set forth in such communication:

● Whether you agree that the EAC accurately quoted data it received from you regarding (1) the number of address confirmation notices you sent, and (2) the number of registrations you removed under the process set forth in Section 8(d) of the NVRA, during the last two-year reporting period. If you believe the data reported was not accurate, please let us know your own estimates regarding these two numbers.

● Your explanation regarding the County's registration rate discussed above.

● A description of the State's and the County's programs for sending address confirmation notices described in 52 U.S.C. § 20507(d)(2) to those who are believed to have moved.

● A description of the State's and the County's programs for complying with the other voter list maintenance requirements of the NVRA, including all requirements to remove the registrations of those who have died or have otherwise become ineligible to register or vote.

Statutory Notice of NVRA Violations
November 22, 2019
Page | 4

● Documents supporting your accounts of the foregoing explanations and descriptions.

● A description of your plan to remedy any noncompliance with the voter list maintenance requirements of the NVRA, including 52 U.S.C. § 20507(a)(4) and (d).

I hope the concerns identified in this letter can be resolved amicably. We have a track record of resolving NVRA claims on reasonable terms. However, if you do not contact us about correcting or otherwise resolving the above-identified problems within 90 days, a federal lawsuit seeking declaratory and injunctive relief against both of you in your official capacities may be necessary. In such a lawsuit we would seek, in addition to injunctive relief, a judgment awarding reasonable attorney fees, expenses, and costs. *See* 52 U.S.C. § 20510(c). For the reasons set forth above, we believe that such a lawsuit would be very likely to succeed.

We look forward to receiving your prompt response.

Sincerely,

**JUDICIAL WATCH, INC.**

*s/ Robert D. Popper*

Robert D. Popper
Attorney, Judicial Watch, Inc.



November 22, 2019

*VIA USPS CERTIFIED MAIL AND EMAIL*

Honorable Jesse Salinas
Yolo County Registrar-Recorder/County Clerk
P.O. Box 1820
Woodland, California 95776-1820

Hon. Alex Padilla
California Secretary of State
1500 11th Street, 5th Floor
Sacramento, California 62704-4503

**Re:  Statutory Notice of Violations of 52 U.S.C. § 20507 in Yolo County**

Dear Registrar Salinas and Secretary Padilla:

I write as legal counsel for Judicial Watch, Inc. ("Judicial Watch"), for the Institute for Fair Elections, and for Sharon Kowalski and James B. Oerding, registered voters in Yolo County ("the County"). This letter is to bring to your attention violations of Section 8 of the National Voter Registration Act ("NVRA") committed in the County. Registrar Salinas, as the registrar of the County, is receiving this letter because his office is responsible for collecting and processing the County's voter registration data.[1] Secretary Padilla, as chief state elections official of California ("the State"), is receiving this letter because his office is responsible for coordinating compliance with Section 8 of the NVRA.[2]

This letter serves as official statutory notice under 52 U.S.C. § 20510(b)(1) & (2) that Judicial Watch and those on whose behalf it has sent this letter will bring a lawsuit against you if these violations are not corrected within 90 days. Section 8(a)(4) of the NVRA requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters" by reason of death or change of address. 52 U.S.C. § 20507(a)(4). In order to ensure that states and counties are complying with these requirements, Congress provided a public inspection provision, which requires all records concerning the accuracy and currency of the voter registration list to be disclosed. 52 U.S.C. § 20507(i).

---

[1] 2 Cal. Code Regs. § 20108.1(i).

[2] *See* 52 U.S.C. § 20509; Cal. Elec. Code § 2402(a).

Statutory Notice of NVRA Violations
November 22, 2019
Page | 2

The following explains how we determined that Section 8 has been violated and the remedial steps that must be taken to comply with federal law.

Judicial Watch examines a number of metrics in order to assess whether a jurisdiction is conducting a general program that makes a reasonable effort to remove ineligible registrants from its voter rolls. To begin with, Judicial Watch determines each jurisdiction's registration rate. States must report detailed registration data every other year to the U.S. Election Assistance Commission (EAC).[3] Judicial Watch hires experts to compare this data to the citizen voting-age population in each state and county where data is available.[4] An unusually high registration rate suggests that a jurisdiction is not removing voters who have died or who have moved elsewhere, as required by 52 U.S.C. § 20507(a)(4). Federal courts adjudicating NVRA claims have acknowledged the significance of high registration rates. *See Am. Civ. Rights Union v. Martinez-Rivera*, 166 F. Supp. 3d 779, 793 (W.D. Tex. 2015); *Voter Integrity Project NC, Inc. v. Wake Cnty. Bd. of Elections*, 301 F. Supp. 3d 612, 618 (E.D.N.C. 2017).

Judicial Watch also examines the number of inactive registrations in each jurisdiction. Voter registrations are subject to cancellation when a voter fails to respond to an address confirmation and then fails to vote or correct the registration record during the next two general federal elections. 52 U.S.C. § 20507(d)(1)(B). Registrations pending removal during this period are typically referred to as "inactive." Inactive registrations may still be voted on election day. 52 U.S.C. § 20507(d)(2)(A). Data concerning such registrations must be reported to the EAC.[5] "Not only are States allowed to remove registrants who satisfy these requirements, but federal law makes this removal mandatory." *Husted v. A. Philip Randolph Inst.*, 138 S. Ct. 1833, 1841-42 (2018).[6] A high number of inactive registrations suggests that they are not being timely removed as required by federal law.

Judicial Watch also looks at the number of address confirmation notices sent by a jurisdiction. Except where a voter confirms a change of address in writing, an address confirmation notice must be sent before a registration may be removed from the voter rolls on the ground that the voter has changed residence. 52 U.S.C. § 20507(d)(1). Accordingly, the failure to send address confirmation notices (or to send enough of them) constitutes a clear violation of

---

[3] 11 C.F.R. § 9428.7.

[4] EAC registration data is available publicly at https://www.eac.gov/research-and-data/election-administration-voting-survey/. For the latest American Community Survey population and demographic data, *see* https://factfinder.census.gov/faces/nav/jsf/pages/index.xhtml

[5] 11 C.F.R. § 9428.7(b)(1), (2), &(4).

[6] Pursuant to Judicial Watch's settlement agreement in a prior NVRA lawsuit involving Los Angeles County and the State of California, Secretary Padilla's office sent a written advisory concerning these legal obligations to every county elections official. *See Judicial Watch v. Logan*, No. 17-8948, ECF 96-1, ¶ 9 (C.D. Cal. Jan. 3, 2019).

Statutory Notice of NVRA Violations
November 22, 2019
Page | 3

the NVRA.  States must tell the EAC how many address confirmation notices were sent during each two-year reporting period.[7]

Judicial Watch also considers how many registrations were ultimately removed from the voter rolls because a registrant failed to respond to an address confirmation notice and then failed to vote during the NVRA's statutory waiting period.  If few or no voters were removed by means of this process, the jurisdiction is obviously failing to comply with Section 8(d) of the NVRA.  52 U.S.C. § 20507(d)(1).  States must report the number of such removals to the EAC.[8]

Our analysis of the data regarding Yolo County showed the following:

● The County has a total registration rate of 103.4%.  To be clear, the number of voter registrations exceeds the number of citizens in the County who are old enough to register to vote.

● There are 34,000 inactive voter registrations on the County's rolls, or close to one fourth of the total number of registrations.

● The County reported sending *zero* address confirmation notices during the last two-year reporting period.  This fact alone is enough to conclusively establish a violation of the NVRA.

● The County reported removing *zero* voter registrations in the last two-year reporting period on the grounds that the registrants failed to respond to an address confirmation notice and failed to vote in two consecutive federal elections.  This fact alone is enough to conclusively establish a violation of the NVRA.

These facts establish clear violations of Section 8(a)(4) of the NVRA.

* * * * * * *

Pursuant to 52 U.S.C. § 20510(b)(2), if the foregoing violations are not corrected within 90 days of your receiving this letter, Judicial Watch and those on whose behalf it has sent this letter may commence an action against you in federal court.  Please contact us about your plans for correcting these violations.  In particular, please set forth in such communication:

● Whether you agree that the EAC accurately quoted data it received from you regarding (1) the number of address confirmation notices you sent, and (2) the number of

---

[7] 11 C.F.R. § 9428.7(b)(8).

[8] 11 C.F.R. § 9428.7(b)(5); U.S. Election Assistance Commission, ELECTION ADMINISTRATION AND VOTING SURVEY: 2018 COMPREHENSIVE REPORT at 197 (survey question A9e), available at https://www.eac.gov/assets/1/6/2018_EAVS_Report.pdf.

Statutory Notice of NVRA Violations
November 22, 2019
Page | 4

registrations you removed under the process set forth in Section 8(d) of the NVRA, during the last two-year reporting period.  If you believe the data reported was not accurate, please let us know your own estimates regarding these two numbers.

- Your explanation regarding the County's registration rate discussed above.

- A description of the State's and the County's programs for sending address confirmation notices described in 52 U.S.C. § 20507(d)(2) to those who are believed to have moved.

- A description of the State's and the County's programs for complying with the other voter list maintenance requirements of the NVRA, including all requirements to remove the registrations of those who have died or have otherwise become ineligible to register or vote.

- Documents supporting your accounts of the foregoing explanations and descriptions.

- A description of your plan to remedy any noncompliance with the voter list maintenance requirements of the NVRA, including 52 U.S.C. § 20507(a)(4) and (d).

I hope the concerns identified in this letter can be resolved amicably.  We have a track record of resolving NVRA claims on reasonable terms.  However, if you do not contact us about correcting or otherwise resolving the above-identified problems within 90 days, a federal lawsuit seeking declaratory and injunctive relief against both of you in your official capacities may be necessary.  In such a lawsuit we would seek, in addition to injunctive relief, a judgment awarding reasonable attorney fees, expenses, and costs.  *See* 52 U.S.C. § 20510(c).  For the reasons set forth above, we believe that such a lawsuit would be very likely to succeed.

We look forward to receiving your prompt response.

Sincerely,

**JUDICIAL WATCH, INC.**

*s/ Robert D. Popper*

Robert D. Popper
Attorney, Judicial Watch, Inc.