SONJA DIAZ (CA Bar No. 298138)
sonjadiaz@luskin.ucla.edu
UCLA Voting Rights Project
UCLA Luskin School of Public Affairs
3250 Public Affairs Bldg
337 Charles E. Young Dr,
Los Angeles, California
Telephone: (310)-794-9498

*CHAD W. DUNN (TX Bar No. 24036507)
chad@brazilanddunn.com
Director, UCLA Voting Rights Project
Brazil & Dunn, LLP
4407 Bee Caves Road, Suite 111
Austin, Texas 78746
Telephone: (512) 717-9822

*LUIS ROBERTO VERA, JR. (TX Bar No. 20546740)
Lrvlaw@sbcglobal.net
LULAC, National General Counsel
111 Soledad, Suite 1325
San Antonio, TX 78205
Telephone: (210) 225-3300

*Pro Hac Vice Application Forthcoming

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REPUBLICAN NATIONAL COMMITTEE; NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE; and CALIFORNIA REPUBLICAN PARTY,<br><br>Plaintiffs<br><br>v.<br><br>GAVIN NEWSOM, in his official capacity as Governor of California; and ALEX PADILLA, in his official capacity as California Secretary of State,<br><br>Defendants,<br><br>DCCC and California Democratic Party,<br>Intervenor-Defendants.<br><br>League of United Latin American Citizens and California League of Latin American Citizens.<br>Proposed Intervenor-Defendants | Case No. 2:20-cv-01055-MCE-CKD<br><br>**NOTICE OF MOTION AND MOTION TO INTERVENE AS DEFENDANTS AND MEMORANDUM IN SUPPORT THEREOF**<br><br>DATE: July 9, 2020<br>TIME: 2:00 p.m.<br>COURTROOM: 7<br>JUDGE: Hon. Morrison C. England, Jr. |

MOTION TO INTERVENE

Pursuant to Federal Rule of Civil Procedure 24, League of United Latin American Citizens and California League of United Latin American Citizens (collectively "LULAC Proposed Intervenors" and "Proposed Intervenors") move to intervene as defendants in the above-titled action.[1] Plaintiffs Republican National Committee, National Republican Congressional Committee, and California Republican Party challenge the election plans instituted by Defendants Gavin Newsom, the Governor of California (the "Governor"), and Alex Padilla, the California Secretary of State, for the November 3, 2020 general election (the "Election"). Defendants' decision to implement a primarily all-mail system for the Election is not only reasonable, but constitutionally required to ensure that all eligible California voters can safely exercise their franchise amid the coronavirus pandemic. Plaintiffs allege several claims in an attempt to undermine Defendants' effort to protect California voters during an unprecedented public health crisis. In so doing, they pose a clear and direct threat to Proposed Intervenors' rights and legal interests.

For the reasons set forth below, Proposed Intervenors should be granted permissive intervention pursuant to Rule 24(b).

**BACKGROUND**

LULAC is the largest and oldest Latino civil rights organization in the United States with over 132,000 members nationwide and over 1,000 local councils. California LULAC is the statewide chapter of LUAC and seeks to protect the voting rights of its members and the broader Latin community.  Since 1929, LULAC has worked to advance the civil rights of the Latino population of the United States. LULAC has councils across the State of California[2] and has been

---

[1] Counsel for LULAC Proposed Intervenors has conferred with counsel for California Common Cause, League of Women Voters of California, and the Community Coalition and each have agreed to file joint briefing hereinafter.
[2] http://calulac.org/about-us.

MOTION TO INTERVENE                                                               2

a party to voting rights cases involving California in the past.³ LULAC's national and state chapters have brought voting rights enforcement actions in defense of Latino-specific voting interests.⁴

The COVID-19 pandemic has become one of the leading causes of death in the United States.⁵ As of May 26, California has 98,980 cases of COVID-19, and 3,884 Californians have died from the virus.⁶ Any place where people gather and cannot maintain physical distancing, such as a polling place, represent a heightened danger for transmission of COVID-19 disease. Crowding and exposure to a range of surfaces at the polls make polling places likely transmission sites for the virus. States that conducted in-person primaries, like Wisconsin, suffered an uptick in COVID-19 due to transmission at the polls.⁷ It is highly likely that COVID-19 will seriously compromise public health through November, threatening voters who vote in person during the November 3, 2020 General Election.⁸

On March 4, 2020, in response to the growing threat of COVID-19, Governor Newsom declared a state of emergency pursuant to his authority under CAL. GOV'T CODE §§ 8558(b) and

---

³ *See, e.g., LULAC, Monterey Chapter 2055 v. City of Salinas Fire Dep't*, 654 F.2d 557 (1981); *LULAC v. City of Santa Ana*, 410 F.Supp.873 (1976); *LULAC v. Wilson*, 997 F. Supp. 1244 (C.D. Cal. 1997);
⁴ *See, e.g.,* League of United Latin American Citizens v. Perry, 548 U.S. 399 (2006) (challenging Latino vote dilution); LULAC Kan. v. Cox, No. 2:18-cv-2572 (D. Kan. 2018) (challenging a lack of polling places in Latino neighborhoods); LULAC Ariz. v. Reagan 2:17-cv-04102-DGC (D. Ariz. 2018) (challenging dual voter registration system that suppressed the Latino vote).
⁵ Mackenzie Bean, *COVID-19 is 3rd Leading Cause of Death, STAT Analysis Suggests,* BECKER'S HOSPITAL REVIEW (May 1, 2020), https://www.beckershospitalreview.com/public-health/covid-19-is-3rd-leading-cause-of-death-stat-analysis-suggests.html.
⁶ CAL. DEPT. PUB. HEALTH, https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/Immunization/ncov2019.aspx (last visited June 11, 2020).
⁷ David Wahlberg, *71 People Who Went to the Polls on April 7 Got COVID-19l Tie to Election Uncertain*, WIS. STATE JOURNAL (May 16, 2020), https://madison.com/wsj/news/local/health-med-fit/71-people-who-went-to-the-polls-on-april-7-got-covid-19-tie-to/article_ef5ab183-8e29-579a-a52b-1de069c320c7.html.
⁸ Gabrielle Masson, *Spread of COVID-19 Could Last into 2021; WHO Says Pandemic Risk is 'Very Real'*, BECKER'S HOSPITAL REVIEW (May 10, 2020), https://www.beckershospitalreview.com/public-health/spread-of-covid-19-could-last-into-2021-why-who-hasn-t-declared-a-pandemic.html.

MOTION TO INTERVENE                                                                                         3

8625.[9] All 50 states received a federal disaster declaration just weeks later.[10] During a state of emergency, CAL. GOV'T CODE § 8571 vests in Governor Newsom the authority to "suspend any regulatory statute, or statute prescribing the procedure for conduct of state business, or the orders, rules, or regulations of any state agency." Governor Newsom refrained from suspending election-related statutes until the pressing threat of mass COVID-19 transmission at the polls compelled his Office to issue EO N-64-20 on May 8, 2020. In EO N-64-20, Governor Newsom recognizes that "all Californians" need to be empowered to vote by mail to preserve the public health.[11]  In addition to CAL. GOV'T CODE § 8571, the Executive Order cites CAL. GOV'T CODE § 8567, which provides that Governor Newsom "may make, amend, and rescind orders and regulations necessary to carry out the provisions of this chapter. The orders and regulations shall have the force and effect of law." EO N-64-20 also cites CAL. GOV'T CODE § 8627, which provides that:

> "during a state of emergency the Governor shall, to the extent he deems necessary, have complete authority over all agencies of the state government and the right to exercise within the area designated all police power vested in the state by the Constitution and laws of the State of California in order to effectuate the purposes of this chapter. In exercise thereof, he shall promulgate, issue, and enforce such orders and regulations as he deems necessary, in accordance with the provisions of Section 8567."

Based on this authority, EO N-64-20 mandated that, to the extent otherwise permitted by law, "every Californian who is eligible to vote in the November 3, 2020 General Election shall receive a vote-by-mail ballot."[12]

---

[9] OFFICE OF THE GOV., https://www.gov.ca.gov/2020/03/04/governor-newsom-declares-state-of-emergency-to-help-state-prepare-for-broader-spread-of-covid-19 (last visited June 11, 2020).
[10] Emma Newburger, *Every US State is Now Under a Major Disaster Declaration Amid Coronavirus Pandemic,* CNBC (Ap. 11, 2020), https://www.cnbc.com/2020/04/11/every-state-in-the-us-is-now-under-a-major-disaster-declaration-amid-coronavirus-pandemic.html.
[11] OFFICE OF THE GOV., https://www.gov.ca.gov/wp-content/uploads/2020/05/05.08.2020-EO-N-64-20-signed.pdf (last visited June 11, 2020).
[12] *Id.*

Vote-by-mail is already a widespread feature of the California voting landscape. In 2016, the California Legislature adopted the Voter's Choice Act (VCA), establishing an all-mail ballot system in which counties could conduct vote-by-mail elections provided they qualified and opted for the system. 15 counties participate in the VCA.[13] Over the past four years, there has been record voting turnout in California, with a 75.3 percent voter turnout during the 2016 Presidential Election.[14] Despite a substantial mail voting, millions of voters still vote in-person. In 2018 over four million Californians voted in person[15] and during the 2020 Primary Elections almost three million Californians voted in-person.[16] Now, given the serious threats to voters who vote in person, all counties will provide voters with much-needed mail-in ballots.

No community of voters is more in need of mail-in ballots than Latinos. Latino persons are at a higher risk of contracting and dying from COVID-19 if not provided with a mail ballot.[17] As of May 27, 2020, Latinos comprise 54.5% of all of California's reported COVID-19 cases.[18] Despite the clear authority for Governor Newsom's Executive order and the dire need to protect these voters, Plaintiffs seek to restrict the availability of mail-in ballots in California, arguing that EO N-64-20 is unlawful under state and federal law. Proposed Intervenors bring this motion to protect Latino Californians.

---

[13] CAL.SEC. OF STATE, https://www.sos.ca.gov/elections/voters-choice-act/vca-counties/ (last visited June 11, 2020).

[14] Jim Miller, *Hillary Clinton Won California by 4.3 Million Votes, Turnout Topped 75 percent*, SAC BEE (Dec. 8, 2016), https://www.sacbee.com/news/politics-government/capitol-alert/article119672758.html.

[15] CAL SEC. OF STATE, https://elections.cdn.sos.ca.gov/sov/2018-general/sov/03-voter-participation-stats-by-county.pdf (last visited May 28, 2020).

[16] CAL SEC. OF STATE, https://elections.cdn.sos.ca.gov/sov/2020-primary/03-voter-participation-stats-by-county.pdf (last visited May 28, 2020).

[17] Corin Hoggard, *California's Hispanic Community Is Being Hit the Hardest By COVID-19, Data Shows*, ABC 7 (May 8, 2020), https://abc7news.com/california-hispanic-covid-latino-coronavirus-racist/6164396; Joaquin Palomino and Tatiana Sanchez, Latino's Coronavirus Burden, S.F. CHRON. (May 8, 2020), https://www.sfchronicle.com/bayarea/article/Bay-Area-Latinos-hit-hardest-by-coronavirus-15252632.php.

[18] CAL. DEPT. OF PUB. HEALTH, https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/COVID-19/Race-Ethnicity.aspx (last visited May 27, 2020).

MOTION TO INTERVENE                                                                       5

## STANDARD OF LAW

A court may grant permissive intervention to a party under Rule 24(b) "if that party shows '(1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common.'" *Conservation Cong. v. U.S. Forest Serv.*, No. 2:16-cv-00864-MCE-AC, 2018 WL 529484, at *1 (E.D. Cal. Jan. 23, 2018), *quoting Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 839 (9th Cir. 1996)).

## ARGUMENT

**I.   Proposed Intervenors satisfy Rule 24(b) for permissive intervention.**

Proposed-Intervenors easily satisfy the requirements for permissive intervention under Rule 24(b). "District courts have broad discretion to allow permissive intervention." *Snowlands Network v. United States*, No. 2:11-cv-02921-MCE-DAD, 2012 WL 4755161, at *4 (E.D. Cal. Oct. 4, 2012) (citing *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977)); *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998). Permissive intervention is appropriate where the proposed intervenor submits a timely motion and its claim or defense, the main action have a question of law and fact in common, and there is an independent basis for the court's jurisdiction over the proposed intervenor. *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998); see also *City of Los Angeles*, 288 F.3d at 403. Additionally, "[i]n exercising its discretion to grant or deny permissive intervention, a court must consider whether the intervention will 'unduly delay or prejudice the adjudication of the'" original parties' rights. *Venegas v. Skaggs,* 867 F.2d 527, 530 (9th Cir. 1989) (quoting Fed. R. Civ. P. 24(b)(3)). The Court should exercise its discretion to allow this intervention especially in light of the agreement of LULAC Proposed Intervenors' agreement to consolidate briefing with other proposed

MOTION TO INTERVENE                                                                                                              6

intervenors.

### a. The motion to intervene is timely

Three factors guide the determination of timeliness. "(1) [T]he stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016) (citation omitted).

In this case, Proposed Intervenors' motion is timely. First, the current stages of the proceedings are early. Plaintiffs filed their complaint on May 24, 2020. This motion follows less than three weeks later, before any significant action in the case and the response to the Plaintiff's Motion for Preliminary Injunction is not due until June 25. *See Conservation Cong.*, at *2 (granting motion to intervene filed nearly one year after action commenced). Second, there has been no delay. Third, there is no possible risk of prejudice to the other parties at this time. *See League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997); *see also Cal. Dump Truck Owners Ass'n v. Nichols*, 275 F.R.D. 303, 306 (E.D. Cal. 2011) (granting motion to intervene filed in April where "Plaintiff filed its case in February, amended its complaint at the beginning of April and no substantive proceedings have been had").

### b. Proposed Intervenors' Claims and Defenses Share Common Questions of Law and Fact with the Case

LULAC Proposed Intervenors do not seek to add state law claims or other federal claims that enlarge the case.  Rather, LULAC Proposed Intervenors seek to defend against the findings and injunction sought by the Plaintiffs and in so doing support and defend the rights of its members. "[T]he central issues [raised by LULAC] are the same [as those raised by the Complaint.]"  *See In re Grupo Unidos Por El Canal S.A.*, No. 14-mc-80277-JST (DMR), 2015 U.S. Dist. LEXIS 52358, at *15–16 (N.D. Cal. Apr. 21, 2015).  Importantly, LULAC Proposed Intervenors has their interests

and those of their members to protect.

"An intervenor's interest is 'significantly protectable' under the Ninth Circuit's test when it 'is protectable under some law'…." *W. States Trucking Ass'n v. Schoorl*, No. 2:18-cv-1989-MCE-KJN, 2018 WL 5920148, at *2 (E.D. Cal. Nov. 13, 2018) (*quoting Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011)). "[T]he requisite interest need not be direct as long as it may be impaired by the outcome of the litigation." *California Dump Truck Owners Ass'n*, 275 F.R.D. at 306.

Movant has several significant and direct interests in this litigation. Proposed Intervenors' interests also mirror those raised by Plaintiffs in this litigation. Proposed Intervenors have interests in "protecting the ability of [member] voters to cast… votes in California elections"; ensuring that their members remain confident in the electoral process; and avoiding the need "to divert resources and spend significant amounts of money educating [member] voters on" changes to the Election rules. Complaint ¶¶ 12–13. If Plaintiffs succeed and Defendants' plans to mail ballots to registered voters are thwarted, then LULAC Proposed Intervenors' voting members will have less of an opportunity to vote in the Election.

LULAC Proposed Intervenors represent voters that live in jurisdictions that do not implement universal vote-by-mail under the California Voter's Choice Act. See CAL. ELEC. CODE § 4005(a)(1)-(10). These voters will automatically access a mail-in ballot for the November 2020 general election because of Governor Newsom's Executive Order N-64-20. Were it not for EO N-64-20, these voters may not acquire a mail-in ballot and instead risk their health to vote in-person. This would pose to them a stark choice between risking their lives and the lives of others and casting a vote. As applied to the COVID-19 pandemic, the mailing of ballots to all voters in California is directly related to the right to vote, which is unquestionably an important protectable interest. See *Harper v. Virginia State Bd. of Elections*, 383 U.S. 663, 667 (1966) (holding that

voting is a fundamental right); *Illinois Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979) ("voting is of the most fundamental significance under our constitutional structure.").

   c. **There is an adequate basis for jurisdiction**

The independent jurisdictional requirement for permissive intervention serves to "prevent[] the enlargement of federal jurisdiction in such cases only where a proposed intervenor seeks to bring new state-law claims." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011). In cases where jurisdiction is based on federal questions and where the proposed intervenor is not bringing new state-law claims, "the independent jurisdictional grounds requirement does not apply to proposed intervenors." *Id.* Proposed Intervenors do not intend to bring new state law counterclaims or crossclaims. The independent-jurisdiction element is satisfied. *Id.*

## CONCLUSION

For the reasons stated above, Proposed Intervenors respectfully request that the Court grant their motion to intervene under Rule 24(b).

DATED this 12th day of June, 2020.

Respectfully submitted,
By: */s/ Sonja Diaz*
Sonja Diaz
California State Bar No. 298138
UCLA Voting Rights Project
UCLA Luskin School of Public Affairs, 3250
Public Affairs Bldg,
337 Charles E. Young Dr,
Los Angeles, CA 90095


*Chad W. Dunn
Director, UCLA Voting Rights Project
Texas State Bar No. 24036507
Brazil & Dunn, LLP
4407 Bee Caves Road, Suite 111

MOTION TO INTERVENE                                                                                             9

|   |   |
|---|---|
| 1 | Austin, Texas 78746 |
| 2 | Telephone: (512) 717-9822 |
|   | chad@brazilanddunn.com |
| 3 |   |
| 4 | *Luis Roberto Vera, Jr. |
|   | Texas State Bar No. 0546740 |
| 5 | LULAC, National General Counsel |
| 6 | 111 Soledad, Suite 1325 |
|   | San Antonio, TX 78205 |
| 7 | Telephone: (210) 225-3300 |
|   | Lrvlaw@sbcglobal.net |
| 8 |   |
| 9 | *Attorneys for Proposed Intervenor-* |
| 10 | *Defendants LULAC and California LULAC* |
| 11 | **Pro Hac Vice Application Forthcoming* |

MOTION TO INTERVENE                                                                 10

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of June, 2020 a true and correct copy of the foregoing Notice of Motion to Intervene as Defendants, Motion to Intervene as Defendants, and Proposed Order, submitted herewith, was served via the United State District Court's CM/ECF system on all parties or person requiring notice.

By: */s/ Sonja Diaz*
Sonja Diaz
Founding Director of UCLA LPPI
**UCLA Voting Rights Project**