1

ARNOLD & PORTER KAYE SCHOLER LLP
TRENTON H. NORRIS (SBN 164781)
Trent.Norris@arnoldporter.com
GILBERT R. SEROTA (SBN 75305)
Gilbert.Serota@arnoldporter.com
BEN HALBIG (SBN 321523)
Ben.Halbig@arnoldporter.com
Three Embarcadero Center, 10th Floor
San Francisco, CA  94111-4024
Telephone:     415.471.3100
Facsimile:     415.471.3400

Attorneys for Proposed Defendant-Intervenors
CALIFORNIA LEAGUE OF CONSERVATION VOTERS
and CALIFORNIA LEAGUE OF CONSERVATION
VOTERS EDUCATION FUND

*Additional Attorneys for Proposed Defendant-Intervenors
listed on next page*

2

3

4

5

6

7

8

9

10

11

12

UNITED STATES DISTRICT COURT

13

EASTERN DISTRICT OF CALIFORNIA

14

15

REPUBLICAN NATIONAL COMMITTEE, *et al*.,

16

                    Plaintiffs,

17

        v.

18

GAVIN NEWSOM, *et al*.,

19

                    Defendants.,

20

21

Case No. 2:20-cv-01055-MCE-CDK

**MEMORANDUM OF POINTS AND AUTHORITIES OF PROPOSED DEFENDANT-INTERVENORS CALIFORNIA LEAGUE OF CONSERVATION VOTERS AND CALIFORNIA LEAGUE OF CONSERVATION VOTERS EDUCATION FUND IN SUPPORT OF RULE 24 MOTION TO INTERVENE**

22

23

24

25

26

27

28

BRENNAN CENTER FOR JUSTICE
  at NYU SCHOOL OF LAW
MYRNA PÉREZ*
ELIZA SWEREN-BECKER*
myrna.perez@nyu.edu
eliza.sweren-becker@nyu.edu
120 Broadway, Suite 1750
New York, NY  10271
Telephone:    646.292.8310
Facsimile:    212.463.7308

ARNOLD & PORTER KAYE SCHOLER LLP
JOHN A. FREEDMAN*
John.Freedman@arnoldporter.com
601 Massachusetts Ave, NW
Washington, DC  20001
Telephone:    202.942.5000
Facsimile:    202.942.5999

*Application for admission pro hac vice forthcoming

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................................ 1

DESCRIPTION OF APPLICANTS FOR INTERVENTION .......................................... 3

ARGUMENT ............................................................................................................................... 4

I.    The Court Should Grant Intervention As Of Right Under Rule 24(a)(2) ................................. 4

    A.   CLCV's Motion is Timely ........................................................................... 5

    B.   CLCV Has a Significantly Protectable Interest in the Underlying Litigation ................. 7

    C.   The Disposition of this Action Could Impair Applicants' Interests .............................. 10

    D.   The Existing Parties Do Not Adequately Represent the Interests of CLCV ................. 12

II.   Alternatively, the Court Should Grant Permissive Intervention under Rule 24(b)(1)(B) ....... 15

CONCLUSION ......................................................................................................................... 16

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Anderson v. Celebrezze*,
   460 U.S. 780 (1983) ........................................................................................ 10

5

6

*Arakaki v. Cayetano*,
   324 F.3d 1078 (9th Cir.2003) .......................................................................... 12

7

8

*Arizona State Legislature v. Arizona Indep. Redistricting Comm'n*,
   576 U.S. 13, 135 S. Ct. 2652 (2015) ............................................................. 2, 9

9

10

*Bellitto v. Snipes*,
   No. 0:16-cv-61474, 2016 WL 5118568 (S.D. Fla. Sep. 21, 2016) ................ 10

11

*Busbee v. Smith*,
   549 F. Supp. 494 (D.D.C. 1982) ....................................................................... 9

12

13

*Ca. Dump Truck Owners Ass'n v. Nichols*,
   275 F.R.D. 303 (E.D. Cal. 2011) ............................................................ 8, 12, 15

14

15

*Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*,
   152 F.3d 1184 (9th Cir. 1998) ......................................................................... 14

16

*Cascade Nat'l Gas Corp. v. El Paso Nat'l Gas Co.*,
   386 U.S. 129 (1967) ......................................................................................... 11

17

18

*Citizens for Balanced Use v. Montana Wilderness Ass'n*,
   647 F.3d 893 (9th Cir. 2011) ................................................................... 7, 10, 12

19

20

*City of Lockhart v. United States*,
   460 U.S. 125 (1983) ........................................................................................... 9

21

*City of Petersburg, Va. v. United States*,
   354 F. Supp. 1021 (D.D.C. 1972) .................................................................... 10

22

23

*City of Port Arthur, Texas v. United States*,
   517 F. Supp. 987 (D.D.C. 1981) ........................................................................ 9

24

25

*Commonwealth of Va. v. United States*,
   386 F. Supp. 1319 (D.D.C. 1974) ...................................................................... 9

26

*Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*,
   983 F.2d 211 (11th Cir. 1993) .......................................................................... 12

27

28

*Georgia v. Ashcroft*,
   539 U.S. 461 (2003) *superseded by statute* 135 S. Ct. 1257 (2105) .............. 9

ii

MEMO OF POINTS AND AUTHORITIES OF PROPOSED DEFENDANT-INTERVENORS
CLCV AND CLCVEF IN SUPPORT OF RULE 24 MOTION TO INTERVENE        NO. 2:20-CV-01055-MCE-CDK

*Higginson v. Becerra*,
    733 Fed. Appx. 402 (9th Cir. 2018) ............................................................. 9

*Idaho Farm Bureau Fed'n v. Babbitt*,
    58 F.3d 1392 (9th Cir. 1995) .............................................................. 7, 8

*Kobach v U.S. Election Assistance Comm'n*,
    No. 5:13-cv-04095, 2013 WL 6511874 (D. Kan. Dec. 12, 2013) ............................. 10

*LaRoque v. Holder*,
    No. 1:10-cv-00561 (D.D.C. Aug. 25, 2010) ................................................ 10

*League of Women Voters of Virginia v. Virginia State Bd. of Elections*,
    No. 6:20-CV-00024, 2020 WL 2090678 (W.D. Va. Apr. 30, 2020) ........................... 10

*Miller v. Silbermann*,
    832 F. Supp. 663 (S.D.N.Y. 1993) ........................................................ 15

*N.Y. State v. United States*,
    65 F.R.D. 10 (D.D.C. 1974) ............................................................... 9

*Northwest Forest Res. Council v. Glickman*,
    82 F.3d 825 (9th Cir. 1996) .............................................................. 6

*Nuesse v. Camp*,
    385 F.2d 694 (D.C. Cir. 1967) ........................................................... 12

*Nw. Austin Mun. Util. Dist. v. Gonzales*,
    No. 1:06-cv-01384 (D.D.C. Nov. 09, 2006) ................................................ 10

*Pub. Interest Legal Found., Inc. v. Winfrey*,
    No. 19-13638, 2020 WL 2781826 (E.D. Mich. May 28, 2020) ................................ 10

*Shelby Cnty., Ala. v. Holder*,
    No. 1:10-cv-00651 (D.D.C. Aug. 25, 2010) ................................................ 10

*Smith v. Los Angeles Unified Sch. Dist.*,
    830 F.3d 843 (9th Cir. 2016) ........................................................... 5, 6

*Smith v. Pangilinan*,
    651 F.2d 1320 (9th Cir. 1981) ........................................................... 7

*Snowlands Network v. United States*,
    No. 2:11-CV-02921-MCE, 2012 WL 4755161 (E.D. Cal. Oct. 4, 2012) ....................... 13

*Southwest Ctr. for Biological Diversity v. Berg*,
    268 F.3d 810 (9th Cir. 2001) .................................................... 5, 10, 12, 14

*Texas v. United States*,
    798 F.3d 1108 (D.C. Cir. 2015) ......................................................... 10

*Trbovich v. United Mine Workers of Am.*,
    404 U.S. 528 (1972) ................................................................................ 12, 13

*U.S. v. City of Los Angeles*,
    288 F.3d 391 (9th Cir. 2002) ................................................................... 7, 15

*U.S. v. Sprint Commc'ns, Inc.*,
    855 F.3d 985 (9th Cir. 2017) ..................................................................... 5, 7

*Veasey v. Abbott*,
    No. 2:13-cv-00193 (S.D. Tex. Sep. 19, 2013) ............................................. 10

*Washington State Democratic Party v. Reed*,
    No. 3:00-cv-5419 (W.D. Wash. Feb. 16, 2001) ............................................. 7

*Yang v. Kellner*,
    No. 20 CIV. 3325 (AT), 2020 WL 2115412 (S.D.N.Y. May 3, 2020) ......................... 10

**Statutes and Rules**

52 U.S.C. § 20501(a)(1) ................................................................................. 10

Fed. R. Civ. P.
    24 ........................................................................................... 7, 10, 12
    24(a) ...................................................................................... 3, 5, 7, 8
    24(a)(2) ................................................................................... 1, 4, 10
    24(b) ......................................................................................... 3, 16
    24(b)(1)(B) .................................................................................. 1, 15
    24(b)(3) ......................................................................................... 15
    26(f) ............................................................................................... 5

# INTRODUCTION

California League of Conservation Voters (the "League") and the California League of Conservation Voters Education Fund (the "Fund," collectively with the League "CLCV" or "Applicants"), by and through the undersigned counsel, respectfully submit this memorandum in support of its motion to intervene as a defendant in this action. Applicants seek to intervene as of right under Rule 24(a)(2) of the Federal Rules of Civil Procedure or, in the alternative, permissively under Rule 24(b)(1)(B).

This case is about whether California can proactively provide its voters with a safe way to exercise their fundamental right to vote during a pandemic. That question is a matter of great public importance to all California voters, Democrats, Republicans and independents, and the named defendants cannot fully and adequately protect all the voters and the organizations that represent them. Plaintiffs, including the Republican National Committee, have sued Defendants Governor Newsom and Secretary State Padilla to invalidate Executive Order N-64-20 (the "Executive Order"), which would mail absentee ballots to all registered voters in the State because of the COVID-19 pandemic. Plaintiffs seek sweeping relief that is predicated on delegitimizing voting by mail on the false premise that voting by mail "facilitates fraud and other illegitimate voting practices." Notably, Plaintiffs offer no reasonable alternative on how the election should be conducted in light of the ongoing public health emergency, or why millions of registered California voters should risk their health or face any further burden to exercise the right to vote.

As a nonprofit, community-based organization, CLCV is not aligned with either political party and is dedicated to enabling all Californians to combat climate change by participating in the democratic process. In furtherance of its core mission, CLCV fights to protect and expand the ability of all eligible persons to have their voices heard by casting their ballot on election day. CLCV accomplishes this through a variety of means, including by advocating for policies that expand the franchise and make it easier for Californians to vote. That is why CLCV has long been actively involved in efforts to expand vote-by-mail in California. CLCV advocated for the passage of the California Voter's Choice Act of 2016, which created a system under which counties throughout the state could offer mail-in ballots to all registered voters. In the midst of the current

MEMO OF POINTS AND AUTHORITIES OF PROPOSED DEFENDANT-INTERVENORS
CLCV AND CLCVEF IN SUPPORT OF RULE 24 MOTION TO INTERVENE       NO. 2:20-CV-01055-MCE-CDK

COVID-19 pandemic, CLCV has been actively working to ensure access to vote-by-mail in California, including by specifically advocating for policies at issue in this lawsuit.  As a result, Plaintiffs' lawsuit is a direct threat to CLCV's interests.

First, Plaintiffs' attempt to reduce access of certain California voters to mail ballots runs contrary to CLCV's mission and efforts to protect and expand Californians' ability to cast their ballots, and to do so in a safe manner.  Second, Plaintiffs' claims would directly undermine CLCV's successful efforts to advocate for easy mail ballot access to all registered voters in California.  Third, Plaintiffs urge an unduly narrow interpretation of "legislature" in the Elections Clause and Electors Clause that could severely infringe on the power of voters under the California Constitution to change laws by ballot initiative or referendum, or the ability to delegate certain functions under state law (such as state and congressional redistricting) to a Commission. Plaintiffs' radical interpretation of "legislature" directly contradicts how the Supreme Court has construed the term.  *See Arizona State Legislature v. Arizona Indep. Redistricting Comm'n*, 576 U.S. 13, 135 S. Ct. 2652, (2015) (rejecting Plaintiffs' theory because "the Elections Clause [is] in line with the fundamental premise that all political power flows from the people").  California has a long tradition of allowing the people of California to pass, by popular referendum, laws that impact the Time, Place, and Manner of federal elections -- including Proposition 14 that provided for nonpartisan primaries, and Proposition 20 that authorized the California Citizens Redistricting Commission to establish congressional districts.  CLCV has a longstanding interest in defending direct democracy, actively engages in California's initiative and referenda process, and believes that voters should have a direct voice and pathway to enact democracy reform. CLCV also has an abiding interest in defending the authority of Redistricting Commission. For example, recognizing that fair districting helps to prevent the erosion of safeguards and regulatory oversight for the air, land, and water that California's environmental community has battled for decades to achieves, CLCV actively participates and engages in the Redistricting Commission's redistricting processes. CLCV staff, volunteers, and members have participated in Commission meetings in the majority of districts within California, including by testifying on behalf of environmental communities of interest.  In addition, in 2019, many CLCV members applied to become commissioners to further

ensure the protection of the voice of these communities in California's electoral map.  As a result of these efforts, CLCV has a strong interest in protecting the authority of the Commission to set the boundaries of California's legislative districts.

As set forth below, Applicants meet the standards for both intervention as of right and permissive intervention.

Applicants therefore request their motion to intervene be granted as of right under Rule 24(a) or alternatively, by permission under Rule 24(b).

## DESCRIPTION OF APPLICANTS FOR INTERVENTION

The CLCV Education Fund is a 501(c)(3) nonprofit, nonpartisan, educational organization founded in 1996.  Decl. of Mary Creasman in Support of Mot. to Intervene (hereinafter "Creasman Decl.") ¶ 4.  The Fund works through programs focused on voter engagement and mobilization, issue advocacy, legislative education, and research and opinion polling toto providing the public, policymakers, and environmental advocates with the resources they need to make California's air, water and natural resources cleaner and greener through the democratic process.  *Id.*  The League is a 501(c)(4) nonprofit, nonpartisan, grassroots advocacy organization dedicated to empowering Californians to impact climate change by participating in the democratic process.  *Id.* ¶ 3.[1]

With offices and staff in Oakland, Los Angeles, and Sacramento, and staff in Fresno, CLCV serves its more than 150,000 members throughout California, including many registered and eligible voters.  Creasman Decl. ¶¶ 5-6.  One of the core ways CLCV achieves its mission is by working to ensure that all eligible persons in California -- whether they have registered as a Democrat, Republican or independent -- have an equal opportunity to register to vote, vote for the candidate of their choice, and ensure their vote is counted.  *Id.* ¶ 7.  To that end, CLCV staff and volunteers assist Californians statewide in registering to vote, and in mobilizing voters to cast their ballots.  *Id.*  CLCV has advocated for numerous policies and legislation that ease the process for Californians to register to vote and cast their ballots. *Id.* ¶ 8.  In 2018 and 2019, CLCV successfully fought for the passage of bills allowing for same-day voter registration and expansion of voting access for college students, as well as for a bill providing prepaid postage for all mail-in ballots. *Id.*

---

[1] Hereinafter, "CLCV" shall refer collectively to the 501(c)(3) and (c)(4) entities.

At present, CLCV is advocating for constitutional amendments that would restore voting rights to every person on parole in California and lower the voting age to 17.  *Id.* ¶ 9.

A central aspect of CLCV's voting rights advocacy has been its efforts to expand and ease the ability of registered Californians to cast their ballots by mail.  Creasman Decl. ¶¶ 10-11.  In 2016, CLCV successfully lobbied for the passage of the Voter's Choice Act, which enabled all California counties to adopt vote by mail programs where all registered voters automatically mailed ballots. *Id.* ¶ 12.  In response to the COVID-19 pandemic this year, CLCV helped organize a coalition of grassroots and advocacy organizations dedicated to ensuring that the state takes steps to ensure Californians' ability to vote safely in the November 2020 general election, and directly called upon Defendants to take the action challenged here: to proactively send ballots to every registered voter in the state.  *Id.* ¶¶ 13-17.  CLCV committed its resources to and actively lobbied for Governor Newsom and Secretary Padilla's adoption of the Executive Order to ensure that all Californians registered to vote will be able to vote by mail in November without risking their health or safety.  *Id.*  CLCV's advocacy efforts in support of the Executive Order included advocating for (1) affirmatively sending vote-by-mail ballots to all registered voters; (2) expanding the number of polling locations to reduce lines and wait times on election day and to ensure there is adequate support for voters who need assistance; (3) expanding the use of ballot drop boxes, and (4) funding these initiatives.  *Id.* ¶ 14  In furtherance of these efforts, CLCV was part of a coalition that created a petition to state lawmakers calling for the expansion of vote-by-mail and other efforts to promote voter safety in the 2020 general elections, and participated in over two dozen meetings with Governor Newsom and Secretary Padilla's staff members, state legislators, and other key stakeholders.  *Id.* ¶¶ 15-16.  CLCV also helped organize a coalition of organizations that is now engaging in advocacy efforts to support the passage of Assembly Bill 860, which would codify the Order into a state statute. *Id.* ¶ 17.

## ARGUMENT

### I.  The Court Should Grant Intervention as of Right under Rule 24(a)(2)

The Ninth Circuit has established a four-part test for when a court must allow intervention as of right under Rule 24(a)(2) of the Federal Rules of Civil Procedure:

4

(1) the application for intervention must be timely; (2) the applicant must have a 'significantly protectable' interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by the existing parties in the lawsuit.

*United States v. Sprint Commc'ns, Inc.*, 855 F.3d 985, 991 (9th Cir. 2017) (quoting *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817, 823 (9th Cir. 2001)); *see also* Mem. and Order Granting DCCC Mot. to Intervene, (Dkt. No. 38), at 3 (June 10, 2020) (hereinafter "DCCC Order"). Rule 24(a) must be construed "liberally in favor of potential intervenors," and, in addition to this "broad construction," eschews "technical distinctions" in favor of "practical considerations" in reviewing intervention applications.  *Southwest*, 268 F.3d at 818 (citations omitted); DCCC Order at 3.  In addition, courts must "take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections."  *Id.* at 820.

CLCV satisfies each part of the Ninth Circuit's four-part test for as of right intervention, particularly when considered (as the Ninth Circuit requires) with a liberal construction in favor of intervention.  Consequently, this Court should permit Applicants' intervention as of right.

### A.   CLCV's Motion is Timely

The Ninth Circuit directs courts to focus on three primary factors in assessing timeliness: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay."  *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016).  Moreover, "[t]imeliness is determined by the totality of the circumstances facing would-be intervenors."  *Id.*

This case is in its infancy, and the application here is timely under the "totality of the circumstances."  Plaintiffs filed the complaint on May 24, 2020.  ECF No. 1.  Defendants have not yet filed a responsive pleading, the Parties have not yet held a Rule 26(f) conference.  Though Plaintiffs filed a motion for a preliminary injunction on June 5, 2020, (ECF No. 24), CLCV is prepared to abide by the Court's deadline to respond by June 25, 2020.  Apart from that motion, the Court has not yet set any schedule for this case.  There has been no delay in filing this application

5

MEMO OF POINTS AND AUTHORITIES OF PROPOSED DEFENDANT-INTERVENORS
CLCV AND CLCVEF IN SUPPORT OF RULE 24 MOTION TO INTERVENE      NO. 2:20-CV-01055-MCE-CDK

1    and intervention will not prejudice any party.  *See, e.g.*, *Northwest Forest Res. Council v. Glickman*,

2    82 F.3d 825, 837 (9th Cir. 1996).

3          CLCV is prepared to meet any further schedule the Court sets.  To that end, CLCV has

4    retained outside counsel with significant expertise in election law, with the ability to litigate this

5    matter both in California and in Washington, D.C. (where plaintiffs Republican National Committee

6    and National Republican Congressional Committee are located).  In short, CLCV's participation in

7    this case will not delay proceedings.

8          CLCV is seeking to intervene before any substantive hearings or rulings, before any

9    discovery has taken place, and well before the pre-trial conference and trial dates set by the Court.

10   Only one substantive motion has been filed, and CLCV is prepared to respond to that Motion on the

11   Court's schedule.  Because there have been no substantive motions adjudicated, intervention would

12   not interfere with any pending issues before the Court or upset the resolution of issues already

13   decided.  Moreover, because CLCV does not request any extension of existing deadlines, granting

14   intervention will not result in a delay in hearing and resolving dispositive motions or adjudicating

15   this case after a trial.  Accordingly, intervention will not impose undue burdens on the parties or the

16   Court.

17         Nor would intervention prejudice the existing parties.[2]  Prejudice cannot be established by a

18   current litigant complaining "that including another party in the case [such as CLCV here] might

19   make resolution more 'difficult[ ].'"  *Smith*, 830 F.3d at 857.  Rather, the Ninth Circuit has

20   explained that the only potential prejudice "that is relevant under this factor is that which flows

21   from a prospective intervenor's failure to intervene after he knew, or reasonably should have

22   known, that his interests were not being adequately represented."  *Id.*

23         The Defendants, the existing Intervenors, and other proposed Intervenors are not in a

24   position to fully or adequately represent CLCV's interests.  This determination was made well

25   before any substantial discovery has taken place or any substantive rulings have been made by the

---

[2] On June 11, counsel conferred with counsel for Plaintiffs, who advised they opposed this request.  On June 10, counsel for Defendants Newsom and Padilla advised that Defendants take no position on this motion.

MEMO OF POINTS AND AUTHORITIES OF PROPOSED DEFENDANT-INTERVENORS
CLCV AND CLCVEF IN SUPPORT OF RULE 24 MOTION TO INTERVENE      NO. 2:20-CV-01055-MCE-CDK

Court.  Given that posture, CLCV's intervention cannot and will not prejudice Plaintiffs or any other litigants.

Given the totality of the circumstances, including the fact that CLCV is seeking to intervene "at a very early stage, before any hearings or rulings on substantive matters," granting intervention here would be consistent with Ninth Circuit precedent and keeping with the liberal spirit of Rule 24 intervention.  *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995); *see also id.* (finding intervention appropriate where motion was filed four months after action commenced and *after* motion for preliminary injunction was filed); *Washington State Democratic Party v. Reed*, No. 3:00-cv-5419 (W.D. Wash. Feb. 16, 2001), (Doc. 143) (permitting intervention by defendant-intervenor Washington State Grange where motion was filed more than six months after complaint was filed).

**B.**      **CLCV Has a Significantly Protectable Interest in the Underlying Litigation**

An applicant's right to intervene is conditioned on having a "significantly protectable interest relating to the property or transaction that is the subject of the action."  *Sprint*, 855 F.3d at 991.  As the Ninth Circuit has recognized and the Court already explained in this lawsuit, such an interest exists where "(1) [the intervenor] asserts an interest that is protected under some law, and (2) there is a 'relationship' between [the intervenor's] legally protected interest and the plaintiff's claims." DCCC Order (ECF 38) at 4 (citing *U.S. v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002)).  An intervenor is not required to show it has "a legal or equitable interest in jeopardy." *Smith v. Pangilinan*, 651 F.2d 1320, 1324 (9th Cir. 1981).  Moreover, determining whether an applicant has a sufficient interest is a "practical, threshold inquiry, and no specific legal or equitable interest need be established." *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (citation and quotation marks omitted).

CLCV has three strong interests in this litigation, sufficient to meet the requirements of Rule 24(a).  First, as a part of its core mission in promoting Californians' ability to impact climate change through the electoral process, CLCV has an interest in ensuring that all eligible persons have equal opportunity to register to vote, vote for the candidate of their choice, and ensure that their vote has been counted.  CLCV has long been a proponent of mail voting because it encourages participation

in elections by decreasing the burden of casting a ballot, particularly for vulnerable Californians who may not have the means or physical ability to travel to a polling station. Creasman Decl. ¶ 11. For example, CLCV advocated for the passage of the 2016 Voter's Choice Act, which enabled all counties throughout the state to offer vote-by-mail ballots to all registered voters. *Id.* ¶ 12. COVID-19 has only increased CLCV's interest in ensuring that all registered voters receive mail ballots. *Id.* ¶ 13.

CLCV also has a direct interest in ensuring that all registered voters have easy access to mail ballots. This is because CLCV specifically advocated for the action challenged here, and helped organize the coalition of grassroots and advocacy organizations that successfully lobbied Governor Newsom to adopt this policy and is currently advocating for the legislature's passage of Assembly Bill 860, which would codify the Order into a state statute. Creasman Decl. ¶¶ 13-17. As part of its advocacy efforts in support of Executive Order N-64-20, CLCV's CEO Mary Creasman sent a letter to Governor Newsom and Secretary Padilla on April 16, 2020 asking that the state affirmatively mail ballots to all registered voters and expand opportunities for in-person voting. *Id.* ¶ 14. In addition, CLCV staff and volunteers participated in over two dozen meetings with state legislators, Secretary Padilla and Governor Newsom's offices, and other key stakeholders about the necessity of expanding mail-in ballot access to ensure voter safety in the 2020 general election. *Id.* ¶ 16.

These two interests alone are more than sufficient to show CLCV's interest under Rule 24(a). *See Ca. Dump Truck Owners Ass'n v. Nichols*, 275 F.R.D. 303, 306-07 (E.D. Cal. 2011). In *Nichols*, this Court permitted an environmental non-profit to intervene based on its general policy interest in reducing diesel emissions and its specific interest in upholding a regulation for which it had actively advocated. *Id.* at 306. Likewise, CLCV seeks to intervene in this action to uphold a policy for which it has actively advocated. Creasman Decl. ¶¶ 13-17. CLCV and its membership "benefit from the challenged" Executive Order because it promotes and protects Californians' practical ability to cast their vote and participate in the electoral process. *See Nichols* 275 F.R.D. at 307. And CLCV has a significant protectable interest in defending an action by the State it supported. *See id.* (citing *Idaho Farm Bureau*, 58 F.3d at 1397).

In addition, CLCV also has a strong interest in resisting the flawed interpretation of "legislature" under the Elections Clause and Electors Clause that Plaintiffs pursue. As noted above, if implemented, it could prevent California's voters from modifying election laws through the referendum or initiative process, directly contrary to the Supreme Court's holding that the "fundamental premise" of the Elections Clause is "that all political power flows from the people." *Arizona State Legislature*, 576 U.S. 13, 135 S. Ct. at 2677. CLCV regularly participates in California's ballot initiative and referendum process and has an interest in making sure that Californians maintain their ability to enact democracy reforms directly through that process. Creasman Decl. ¶ 20. In addition, CLCV is an active participant in and engages with California's Citizens Redistricting Commission, the state entity with the responsibility for drawing California's congressional districts. *Id.* ¶ 21. CLCV staff, volunteers, and members have testified before district commissions on behalf of environmental communities of interest to ensure that those communities' voices are protected on California's legislative districting map. *Id.* ¶ 22. In addition, in 2019, many CLCV members applied to become commissioners to further ensure the protection of the voice of these communities in California's electoral map. *Id.* As a result of these efforts, CLCV has a strong interest in protecting the authority of the Commission to set the boundaries of California's legislative districts. *Id.* ¶ 23. The interpretation that Plaintiffs advance could undermine the Commission's authority to draw congressional districts, contrary to CLCV's longstanding interest in fair representation and district boundaries that include environmental "communities-of-interest"—like watersheds, wetlands, foothills, desert, coastal, and rural communities, and communities disparately affected by pollution and climate impacts—within a single district. Creasman Decl. ¶ 22.

Intervention in voting rights cases is favored, and the courts have routinely allowed it. *See Georgia v. Ashcroft*, 539 U.S. 461, 477 (2003) *superseded by statute* 135 S. Ct. 1257 (2015); *City of Lockhart v. United States*, 460 U.S. 125, 129 (1983); *Higginson v. Becerra*, 733 Fed. Appx. 402, 404 (9th Cir. 2018); *Busbee v. Smith*, 549 F. Supp. 494 (D.D.C. 1982); *City of Port Arthur, Texas v. United States*, 517 F. Supp. 987, 991 n.2 (D.D.C. 1981); *N.Y. State v. United States*, 65 F.R.D. 10, 12 (D.D.C. 1974); *Commonwealth of Va. v. United States*, 386 F. Supp. 1319, 1321 (D.D.C. 1974);

*City of Petersburg, Va. v. United States*, 354 F. Supp. 1021, 1024 (D.D.C. 1972); *League of Women Voters of Virginia v. Virginia State Bd. of Elections*, No. 6:20-CV-00024, 2020 WL 2090678, at *5 (W.D. Va. Apr. 30, 2020); *Yang v. Kellner*, No. 20 CIV. 3325 (AT), 2020 WL 2115412, at *2 (S.D.N.Y. May 3, 2020); *Pub. Interest Legal Found., Inc. v. Winfrey*, No. 19-13638, 2020 WL 2781826, at *2 (E.D. Mich. May 28, 2020); *Bellitto v. Snipes*, No. 0:16-cv-61474, 2016 WL 5118568 (S.D. Fla. Sep. 21, 2016); *Texas v. United States*, 798 F.3d 1108, 1111 (D.C. Cir. 2015); *Kobach v U.S. Election Assistance Comm'n*, No. 5:13-cv-04095, 2013 WL 6511874 (D. Kan. Dec. 12, 2013); *Veasey v. Abbott*, No. 2:13-cv-00193 (S.D. Tex. Sep. 19, 2013), (Doc. 29); *LaRoque v. Holder*, No. 1:10-cv-00561 (D.D.C. Aug. 25, 2010), (Doc. 24); *Shelby Cnty., Ala. v. Holder*, No. 1:10-cv-00651 (D.D.C. Aug. 25, 2010), (Doc. 29); *Nw. Austin Mun. Util. Dist. v. Gonzales*, No. 1:06-cv-01384 (D.D.C. Nov. 09, 2006), (Doc. 33).  Courts and Congress have often recognized that the right to vote—that is central to Applicants' work and the bedrock of American democracy—is "a fundamental right."  52 U.S.C. § 20501(a)(1).  And the Supreme Court has long recognized that voting-related restrictions implicate "interwoven strands of liberty" that "rank among our most precious freedoms":  "the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively."  *Anderson v. Celebrezze*, 460 U.S. 780, 787 (1983) (citations and quotation marks omitted).  Such an interest, and Applicants' role in furthering it, is more than sufficient to merit intervention.

**C.      The Disposition of this Action Could Impair Applicants' Interests**

In addition to demonstrating an interest in the underlying litigation, intervention should be granted where the applicant shows that it is "so situated that the disposing of the action may as a practical matter impair or impede [its] ability to protect its interest."  Fed. R. Civ. P. 24(a)(2).  An intervenor is not required to show with "absolute certainty that a party's interests will be impaired." *Citizens for Balanced Use*, 647 F.3d at 900.  Instead, the Ninth Circuit "follow[s] the guidance of Rule 24 advisory committee notes that state that '[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene.'"  *Southwest*, 268 F.3d at 822 (quoting Fed. R. Civ. P. 24 advisory committee's notes to

1966 amendment).  "The requisite interest need not even be direct as long as it *may* be impaired by

the outcome of the litigation."  DCCC Order (ECF 38) at 4 (citing *Cascade Nat'l Gas Corp. v. El Paso Nat'l Gas Co.*, 386 U.S. 129, 135-36 (1967)).  CLCV's interests here could very well be

impaired by a disposition in favor of Plaintiffs for several reasons.

CLCV's interest in ensuring an open and accessible electoral process in California and

upholding a policy for which it actively advocated would be severely impaired if Plaintiffs prevail.

In particular, Plaintiffs seek a sweeping declaration that would not only burden Californian voters'

access to mail ballots, but also impair their ability to vote safely in light of the current public health

crisis facing the nation.  If Plaintiffs are successful in invalidating the Executive Order and

impeding vote-by-mail, CLCV would be forced to divert resources to develop and execute new

plans educate voters as to the availability of vote-by-mail, assist voters to apply to vote-by-mail, and

to reconfigure its get-out-the-vote program to place additional emphasis on in person election day

voting, all while California scrambles to develop adequate protections for voters.  Creasman Decl.

¶ 19.  In addition, CLCV would have to redouble its efforts to advocate for alternative measures to

protect voter safety at the polls, such as its April 16 recommendation to Governor Newsom that the

state expand the number of voting locations statewide so as to reduce lines and wait times on

election day.  *Id.* ¶¶ 14, 19.  Moreover, if Plaintiffs are granted the relief they seek, CLCV would

have to expend additional resources educating voters on how to reduce the risk of exposure to

COVID-19 at polling places.  *Id.* ¶ 19.

Furthermore, Plaintiffs seek a sweeping declaration regarding the meaning of "legislature"

under the Elections Clause and the Electors Clause that, if successful, could (i) preclude future

efforts to reform election laws through popular referendum or through other lawmaking bodies, and

(ii) bring prior election reforms enacted through referendum or commission into question, including

California's Citizens Redistricting Commission.  CLCV and its membership are active participants

and heavily invested in both California's referendum and ballot initiative process and in the

Redistricting Commission's work to ensure that state districting maps fairly and adequately

represent communities-of-interest within the state.  Creasman Decl. ¶¶ 20-23.  Both of these

interests are threatened by Plaintiffs' position in this lawsuit.

**D.**     **The Existing Parties Do Not Adequately Represent the Interests of CLCV**

The Ninth Circuit does not require a proposed intervenor to show with "absolute certainty . . . that existing parties will not adequately represent its interests." *Citizens for Balanced Use*, 647 F.3d at 900.  Rather, "[t]he burden of showing inadequacy of representation is 'minimal' and satisfied if the intervenor can demonstrate that representation of its interests 'may be' inadequate." *Id.* at 898 (quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir.2003)).  "The applicant need only show that 'the representation of [its] interest 'may be' inadequate."  DCCC Order at 6 (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 (1972)).  And  all doubt "as to whether the existing parties will adequately represent the intervenor should be resolved in favor of intervention." *Cal. Dump Truck*, 275 F.R.D. at 307, (citing *Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993)).

In assessing whether a proposed intervenor has met its burden, courts consider "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Citizens for Balanced Use*, 647 F.3d at 898 (quoting *Arakaki v. Cayetano*, 324 F.3d at 1086).  *See also Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 823 (9th Cir. 2001) (intervention should be permitted where the parties "do not have sufficiently congruent interests').  Rule 24 "underscores both the burden on those opposing intervention to show the adequacy of the existing representation and the need for a liberal application in favor of permitting intervention." *Nuesse v. Camp*, 385 F.2d 694, 702-04 (D.C. Cir. 1967).  CLCV here easily meets the "minimal" burden of showing that the existing defendants *may not* adequately represent its interests.  *See Citizens for Balanced Use*, 647 F.3d at 898.

In this case, while there may be some overlap between the interest of the existing Defendants (both governmental officials), other existing or proposed Intervenors (political parties and broad voter coalitions), and that of CLCV, it is likely that each has its own discrete areas of interest, making it far from "undoubted" that the other defendants would, or are "capable and willing" to, make all of Applicants' proposed arguments.  *Id*.  As governmental officials with

12

substantial public responsibilities and limited resources tied to the public treasury, the existing

defendants' arguments "turn on their inherent authority as state executives and their responsibility

to properly administer election laws."  DCCC Order at 6.  In their capacity as officials, Secretary

Padilla and Governor Newsom are "charged with making decisions for the benefit of the entire

population."  *Snowlands Network v. United States*, No. 2:11-CV-02921-MCE, 2012 WL 4755161,

at *3 (E.D. Cal. Oct. 4, 2012).  Both officials may need to take into account their respective offices'

narrow institutional interests and staff capabilities and are subject to political pressures that do not

align perfectly given their different constituencies.  Because of those institutional interests, neither

Governor Newsom or Secretary Padilla could be expected to focus perfectly on the interests of a

group like CLCV or its efforts to expand and protect Californians' ability to have their voices heard

through the political process, as well as its efforts to seek reform through the initiative or

referendum processes.  Moreover, political forces could affect Defendants' defense of the case in

ways that are very much in conflict with Applicants' interests, particularly in maximizing eligible

voter engagement and participation.  To be sure, governmental officials should be responsive to

their constituents, but CLCV will give primacy to the interests of its members and other voters in a

way that governmental officials simply cannot replicate.  Indeed, CLCV has faced opposition from

the state regarding many of its policy recommendations for how to ensure voter participation in the

November 2020 general election, such as its proposal to increase the number of polling places and

ballot drop boxes, and the amount of public input into the state's process to ensure the safety of

Californians in casting their votes.  Creasman Decl. ¶ 18.

Because of their different interests and areas of expertise, courts have recognized in dozens

of cases that governmental parties cannot adequately represent the interests of private intervenors,

even if they take the same position on underlying merits.  For example, in *Trbovich v. United Mine*

*Workers*, 404 U.S. 528 (1972)), the Court allowed a union member to intervene in an action brought

by the Secretary of Labor to set aside union elections for violation of the Labor-Management

Reporting and Disclosure Act of 1959, even though the Secretary was broadly charged with

protecting the public interest.  The Court reasoned that the Secretary of Labor could not adequately

represent the union member because the Secretary had a "duty to serve two distinct interests," (*id.,*

404 U.S. at 538), a duty to protect both the public interest and the rights of union members. *See also Southwest*, 268 F.3d at 823 (inadequacy of representation found where defendant "City's range of considerations in development is broader than the profit-motives animating [intervenor] developers"); *Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1190 (9th Cir. 1998) (affirming district court's grant of intervention where "the employment interests of [intervenor's] members were potentially more narrow and parochial than the interests of the public at large").

CLCV is differently situated to the other existing and proposed defendant-intervenors. The Democratic Congressional Campaign Committee and Democratic Party of California are partisan political parties "concerned with ensuring their party members and [constituent] voters have… the opportunity to vote in the upcoming election, [and] advancing their overall electoral prospects." DCCC Order (ECF 38) at 6. CLCV is not beholden to any particular political party or group of constituents in the arguments it may make in this litigation. *See* Creasman Decl. ¶¶ 3, 4, 22. CLCV is also uniquely situated from the Democratic and Republican litigants in that it advocates on behalf of local voting interests, including through its advocacy work before California's Redistricting Commission on behalf of environmental communities of interest, such as watersheds, wetlands, foothills, desert, coastal, and rural communities, and communities disparately affected by pollution and climate impacts. *Id.* ¶ 22. Without intervention by CLCV, these local voices would go unrepresented in this lawsuit.

Finally, even assuming that the Court grants the pending motions to intervene by proposed Intervenor-Defendants California Common Cause, League of Women Voters of California, Community Coalition, and LULAC, CLCV's interests are distinct from these groups. CLCV's longstanding support for the ballot initiative and referenda process, and its participation in and interest in defending the authority of the Citizens Redistricting Commission make CLCV unique among existing and proposed parties. Notably, for example, neither existing intervenors nor proposed intervenors appear poised to address Plaintiffs' attempt to advance a radical interpretation of the Elections and Electors Clauses. The nature of this litigation could leave CLCV without sufficient time to remedy any adverse disposition here before critical elections. If the existing

1    parties were to settle or otherwise reach a resolution on the merits that adversely affected the

2    interests of CLCV and its members, CLCV could lack meaningful avenues of relief as a non-party

3    to this case.  For this reason—and many others—CLCV's interests are threatened by the relief

4    sought by Plaintiffs in this action.

5    **II.    Alternatively, the Court Should Grant Permissive Intervention under Rule 24(b)(1)(B)**

6           CLCV satisfies not only the standard for intervention as of right, but also the criteria for

7    Rule 24(b)(1)(B) permissive intervention. Under that rule, courts may permit intervention upon

8    "timely motion" where the applicant "has a claim or defense that shares with the main action a

9    common question of law or fact," (Fed. R. Civ. P. 24(b)(1)(B)), and must consider "whether the

10   intervention will unduly delay or prejudice the adjudication of the original parties' rights," (Fed. R.

11   Civ. P. 24(b)(3)).  According to the Ninth Circuit, "a court may grant permissive intervention where

12   the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is

13   timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a

14   question of fact in common."  *United States v. City of Los Angeles*, 288 F.3d 391, 403 (9th Cir.

15   2002) (citation omitted); *see also Nichols*, 275 F.R.D. at 309.

16          As discussed above, CLCV's motion is timely, and, for the same reasons, its intervention

17   will not unduly delay or prejudice the adjudication of the original parties' rights. Nor do the

18   applicants present any jurisdictional issues—this Court independently has subject matter

19   jurisdiction over CLCV under federal question jurisdiction because the dispute involves a question

20   of constitutional law.  The questions of law and fact presented in this action address the core issues

21   that CLCV seeks to litigate.  CLCV does not propose to add a counterclaim or expand the questions

22   presented by the Complaint—in fact, CLCV will confer with Defendants, existing intervenors, and

23   any other intervenors the court sees fit to permit to seek to avoid redundant filings before the Court,

24   including in opposition to Plaintiffs' motion for a preliminary injunction. Furthermore, CLCV will

25   lend its unique perspective and expertise to the case, thereby enhancing development of the relevant

26   issues in the case. *See Miller v. Silbermann*, 832 F. Supp. 663, 674 (S.D.N.Y. 1993) (finding

27   permissive intervention appropriate where the applicants, because of their "knowledge and

28   concern," would "greatly contribute to the Court's understanding" of the case).  Accordingly, if the

MEMO OF POINTS AND AUTHORITIES OF PROPOSED DEFENDANT-INTERVENORS
CLCV AND CLCVEF IN SUPPORT OF RULE 24 MOTION TO INTERVENE        NO. 2:20-CV-01055-MCE-CDK

court finds that CLCV may not intervene as of right, Applicants respectfully request that the Court allow intervention under Rule 24(b).

## CONCLUSION

For the above and foregoing reasons, CLCV respectfully requests that the Court grant its motion to intervene in this action as defendant. If the Court believes it would assist with the management of this case, CLCV's counsel have a long history of working cooperatively with counsel for the other intervenors and have no objection to coordinating discovery efforts and briefing to reduce duplication of efforts.


Dated:  June 12, 2020

Respectfully submitted,

ARNOLD & PORTER KAYE SCHOLER LLP

By:   /s/ Trenton H. Norris
       TRENTON H. NORRIS
       Trent.Norris@arnoldporter.com
       GILBERT R. SEROTA
       Gilbert.Serota@arnoldporter.com
       BEN HALBIG
       Ben.Halbig@arnoldporter.com
       Three Embarcadero Center, 10th Floor
       San Francisco, CA  94111-4024
       Telephone: 415.471.3100
       Facsimile: 415.471.3400

       JOHN A. FREEDMAN[*]
       John.Freedman@arnoldporter.com
       601 Massachusetts Ave, NW
       Washington, DC  20001
       Telephone: 202.942.5000
       Facsimile: 202.942.5999

BRENNAN CENTER FOR JUSTICE
   at NYU SCHOOL OF LAW
MYRNA PÉREZ[*]
ELIZA SWEREN-BECKER[*]
myrna.perez@nyu.edu
eliza.sweren-becker@nyu.edu
120 Broadway, Suite 1750
New York, NY  10271
Telephone: 646.292.8310
Facsimile:  212.463.7308

Attorneys for Proposed Defendant-Intervenors
CALIFORNIA LEAGUE OF CONSERVATION VOTERS and
CALIFORNIA LEAGUE OF CONSERVATION VOTERS EDUCATION FUND

*Application for admission pro hac vice forthcoming

1

**CERTIFICATE OF SERVICE**

2

I, Trenton H. Norris, hereby certify that all counsel of record who are deemed to have

3

consented to electronic service are being served a copy of the foregoing document(s) via the Court's

4

CM/ECF system on June 12, 2020.

5

/s/ *Trenton H. Norris*

6

TRENTON H. NORRIS

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMO OF POINTS AND AUTHORITIES OF PROPOSED DEFENDANT-INTERVENORS
CLCV AND CLCVEF IN SUPPORT OF RULE 24 MOTION TO INTERVENE      NO. 2:20-CV-01055-MCE-CDK