SONJA DIAZ (CA Bar No. 298138)
sonjadiaz@luskin.ucla.edu
UCLA Voting Rights Project
UCLA Luskin School of Public Affairs
3250 Public Affairs Bldg.
337 Charles E. Young Dr,
Los Angeles, California
Telephone: (310)-794-9498

*CHAD W. DUNN (TX Bar No. 24036507)
chad@brazilanddunn.com
Director, UCLA Voting Rights Project
Brazil & Dunn, LLP
4407 Bee Caves Road, Suite 111
Austin, Texas 78746
Telephone: (512) 717-9822

**LUIS ROBERTO VERA, JR. (TX Bar no. 20546740)
Lrvlaw@sbcglobal.net
LULAC, National General Counsel
111 Soledad, Suite 1325
San Antonio, TX 78205
Telephone: (210) 225-3300

*Pro Hac Vice Application Granted
** Pro Hac Vice Application Forthcoming

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REPUBLICAN NATIONAL COMMITTEE; NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE; AND CALIFORNIA REPUBLICAN PARTY<br><br>Plaintiff,<br><br>vs.<br><br>GAVIN NEWSOM, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF CALIFORNIA; AND ALEX PADILLA, IN HIS OFFICAL CAPACITY AS CALIFORNIIA SECRETARY OF STATE<br><br>Defendant,<br><br>DCC and California Democratic Party,<br>Intervenor- Defendant,<br><br>League of United Latin American Citizens and California League of Latin American Citizens,<br>Proposed Intervenor-Defendants, | Case No.: 2:20-cv-01055-MCE-CKD<br><br>**REPLY TO PLAINTIFF'S OPPOSITION TO PROPOSED INTERVENOR'S MOTION TO INTERVENE**<br><br>**DATE: JULY 9, 2020**<br>**TIME: 2:00 PM**<br>**COURTROOM: 7, 14TH FLOOR**<br>**JUDGE: HON. MORRISON C. ENGLAND, JR.** |

This Court should grant LULAC and California LULAC's ("Movants" or "Proposed Intervenors") Motion to Intervene. Movants meet the requirements for intervention and this Court has "broad discretion" in granting permissive intervention. *Conservation Cong. v. U.S. Forest Serv.*, No. 2:16-cv-00864-MCE-AC, 2018 WL 529484, at *1 (E.D. Cal. Jan. 23, 2018) (quoting *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002)). Plaintiffs bring this suit to frustrate the State Defendants' effort to ensure that voters remain safe during the public health crises caused by the novel coronavirus. Despite the Plaintiffs' assertions otherwise, Movants have unique interests in this litigation. Further, Plaintiffs have not alleged *any* prejudice if Movants intervene. The greater justice would be served in permitting a Latino-led organization to participate in a voting rights lawsuit to ensure that their members—which have been the most strongly and negatively impacted by COVID-19 in California, and vote in higher in-person rates—have equitable access to the ballot box. Intervention should be granted.

## ARGUMENT

### I. Proposed Intervenors clearly satisfy the requirements for permissive intervention under Rule 24(b).

First, Proposed Intervenors easily satisfy the requirements for permissive intervention under Rule 24(b). "District courts have broad discretion to allow permissive intervention." *Snowlands Network v. United States*, No. 2:11-cv-02921-MCE-DAD, 2012 WL 4755161, at *4 (E.D. Cal. Oct. 4, 2012) (citing *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977)); *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998). Permissive intervention is appropriate where the proposed intervenor submits a timely motion and its claim or defense, the main action have a question of law and fact in common, and there is an independent basis for the court's jurisdiction over the proposed intervenor. *Donnelly*, 159 F.3d at 412; *see also City of Los Angeles*, 288 F.3d at 403. Additionally, "[i]n exercising its

discretion to grant or deny permissive intervention, a court must consider whether the intervention will 'unduly delay or prejudice the adjudication of the'" original parties' rights. *Venegas v. Skaggs*, 867 F.2d 527, 530 (9th Cir. 1989) (quoting Fed. R. Civ. P. 24(b)(3)).  In Plaintiffs' Opposition, they do not speak to timeliness, prejudicial issues, the independent jurisdictional requirement, or the fact that Movants have claims or defenses that share common questions of law and fact with the present litigation. Movants forcefully reject Plaintiffs' claims that Executive Order N-64-20 violates the Fourteenth Amendment, the Elections Clause, and the Electors Clause, and that it is ultra vires. Additionally, Movants disagree with Plaintiffs' suggestion that Governor Newsom's Executive Order will lead to vote "dilution" (Compl. ¶ 129).

     Rather, Plaintiffs oppose Movants intervention simply because they do not want "any additional defendants." Pls.' Opp'n to Movants Mot. to Intervene, at 2. This reasoning alone is an inadequate basis for denial of Movants intervention. *See Cal. Dump Truck Owners Ass'n v. Nichols*, 275 F.R.D. 303, 309 (E.D. Cal. 2011) (granting motion to intervene where "Plaintiff's only arguments in opposition to permissive intervention are that the [intervening party] will add nothing of substance to the litigation of th[e] matter and that Plaintiff will be prejudiced by having to litigate against [the state] *and* a 'well-funded, nationwide organization.'" (emphasis added)). As noted in Movant's Motion to Intervene, Movants have conferred with Proposed Intervenor-Defendants California Common Cause, League of Women Voters of California, and Community Coalition's counsel and have agreed to file joint briefing. Thus, there will be limited sources of brief sand motions that would otherwise make such a proceeding the "Donnybrook Fair" Plaintiffs fear. Doc. 53 at 2.

REPLY TO THE OPPOSITION TO MOTION TO INTERVENE     3

Proposed Intervenors are confident that their intervention in this case, and the filings that will follow, will expedite resolution of this litigation. After all, Movants have a strong interest in ensuring that Defendants have enough time to allow every California voter to cast a ballot in the Election. Moreover, there has been no undue delay as a result of Movant's Motion to Intervene.  The motion was timely filed before any substantive proceedings and its filing has caused no changes to the case's schedule. Lastly, intervention is in the interest of judicial economy. LULAC Movants should be involved in this action, and not any future litigation that might need to be initiated protect the interests of LULAC and its members. By intervening in this action, Proposed Intervenors are ensuring that judicial resources are conserved and that these related matters are litigated concurrently.

## II. Movants have a unique and significantly protectable interest

Movants have a significantly protectable interest that other parties cannot adequately represent, an interest that requires being a party rather than simply filing an amicus brief. When proposed intervenors' interests are "potentially narrower and parochial than the interests of the public at large," there are grounds to show that state agencies' representation of their interests "may [be] inadequate." *Californians For Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1190 (9th Cir. 1998). The Ninth Circuit requires only a "minimal showing" to "establish that…representation 'may' be inadequate. *Los Angeles*, 288 F.3d at 402.[1]

---

[1] Although the Ninth Circuit required more than a minimal showing in *Arakaki v. Cayetano*, 324 F.3d 1078 (9th Cir. 2003), intervening parties have had no trouble overcoming this presumption in this Court when parties' interests are not "identical." *Cal. Dump Truck Owners Ass'n v. Nichols*, 275 F.R.D. 303, 307 (E.D. Ca. 2011) ("[i]f the applicant's interest is identical to that of one of the present parties, a compelling showing should be required to demonstrate inadequate representation.").

Plaintiffs have not shown that Movants lack a protectable interest or should be prevented from intervening.

First, Proposed Intervenors, as the *only* Latino-led organization attempting to intervene in this case, clearly bring perspectives that are not otherwise represented by the parties to this case. Movants bring distinct and particularized interests that are undeniably more "narrow and parochial" than the interests of the public at large. *See Competitive Dump Truck Transp.,* 152 F.3d at 1190. Movants represent the interests of voters who face a unique risk of disenfranchisement because of COVID-19. Latino and Hispanic persons are at a higher risk of contracting and dying from COVID-19 if not provided with a mail ballot.[2] As of May 27, 2020, Latinos comprise 54.5% of all of California's reported COVID-19 cases[3]; accordingly, Latinos have and will continue to bring to this litigation their interest in safety, equity, and fairness in access to the franchise.[4] It is well documented that Latino voters are less likely to access vote-by-mail than the general population in California.[5] These disparities between Latino voters and all-Californians will endure if the Plaintiffs' claims are successful. The Plaintiffs assert that the Democratic Party adequately represents the interests of Latino voters across the State. To state that proposition is sufficient to defeat it. *See Miller v. Johnson*, 515 U.S. 900, 911–12 (1995)

---

[2] Corin Hoggard, *California's Hispanic Community Is Being Hit the Hardest By COVID-19, Data Shows*, ABC 7 (May 8, 2020), https://abc7news.com/california-hispanic-covid-latino-coronavirus-racist/6164396; Joaquin Palomino and Tatiana Sanchez, Latino's Coronavirus Burden, S.F. CHRON. (May 8, 2020). https://www.sfchronicle.com/bayarea/article/Bay-Area-Latinos-hit-hardest-by-coronavirus-15252632.php.
[3] CAL. DEPT. OF PUB. HEALTH, *COVID-19 Race and Ethnicity Data*, (June 17, 2020) https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/COVID-19/Race-Ethnicity.aspx (last visited May 27, 2020).
[4] *Id.*
[5] California Civic Engagement Project, *The California Voter Experience: Vote-by-Mail vs. the Polls*, UC Davis Center for Regional Change (July 2016) https://static1.squarespace.com/static/57b8c7ce15d5dbf599fb46ab/t/57ffe6bfe3df28f75af48b3b/1476388544252/UCDavisCCEPCVEBrief1.pdf (last visited June 17, 2020).

("When the State assigns voters on the basis of race, it engages in the offensive and demeaning assumption that voters of a particular race, because of their race, 'think alike, share the same political interests, and will prefer the same candidates at the polls.'"). While Plaintiffs contend that a political party sufficiently represents Movants, the political parties' goals in this case are to argue in favor of those aligned with the party and are not specifically to advance the particular interests of Latino voters. That these divergent interests could affect case strategies and outcomes is far from speculative.

Second, Movants are well-positioned from decades of Latino voting rights advocacy to make forceful arguments in favor of the voting rights of California Latino citizens most at risk of COVID-19 and to argue for an expansive view of the State's obligations under the law that goes further than what the State may be willing to concede. Movants, therefore, hold a different conscientiousness about the measures taken to enfranchise voters, as they maintain an organizational interest in being able to allocate their resources to achieve maximum impact in enfranchising the voters they represent. Similarly, while the Defendants and organizational intervenors share the broad goal of maximizing democratic participation in California, Movants' interest in this goal is driven by their missions to amplify the voices of particular communities in that process.

Third, the existing parties are also motivated by outside factors about which Proposed Intervenors are unconcerned. Movants represent and are comprised of Latino voters who are disproportionately impacted by COVID-19 and are solely driven to safely gain the equitable access to the franchise to which they are legally entitled. Given these facts, it cannot be said that any present party will "undoubtedly" make all the intervenor's arguments, especially given that LULAC and California LULAC have a special interest in protecting the rights of the Latino

community. *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003). LULAC is uniquely situated to guard the rights of Latino Californians.[6] LULAC's national and state chapters have brought numerous lawsuits in defense of Latino-specific voting interests.[7] To equate Movants to the other "California League movants" is misleading and incorrect.

Lastly, this case touches on more than just legal issues, as Plaintiffs suggest (Brief at p. 1:25-27), but there are also likely to be significant factual disputes including the factors the court should consider before granting a preliminary injunction as well as the alleged dilutive nature of the election plans that Plaintiffs' challenge. LULAC's comprehensive knowledge regarding the issues Latino voters face will provide evidence in the record uniquely tailored to the interest they seek to represent. These interests cannot be adequately protected with an amicus filing.

## CONCLUSION

For these reasons, along with those stated in their Motion, Proposed Intervenors respectfully request that the Court grant their motion to intervene and permit them to intervene under Rule 24(b).

DATED this 19th day of June, 2020.                    Respectfully submitted,

By: */s/ Chad Dunn*
Chad Dunn

---

[6] *See, e.g., LULAC, Monterey Chapter 2055 v. City of Salinas Fire Dep't*, 654 F.2d 557 (1981); LULAC v. City of Santa Ana, 410 F.Supp.873 (1976).

[7] *See, e.g.,* League of United Latin American Citizens v. Perry, 548 U.S. 399 (2006) (challenging Latino vote dilution); LULAC Kan. v. Cox, No. 2:18-cv-2572 (D. Kan. 2018) (challenging a lack of polling places in Latino neighborhoods); LULAC Ariz. v. Reagan 2:17-cv-04102-DGC (D. Ariz. 2018) (challenging dual voter registration system that suppressed the Latino vote).

Sonja Diaz
California State Bar No. 298138
UCLA Voting Rights Project
UCLA Luskin School of Public Affairs
3250 Public Affairs Bldg
337 Charles E. Young Dr
Los Angeles, CA 90095
sonjadiaz@luskin.ucla.edu

*Chad W. Dunn
Director, UCLA Voting Rights Project
Texas State Bar No. 24036507
Brazil & Dunn, LLP
4407 Bee Caves Road, Suite 111
Austin, Texas 78746
Telephone: (512) 717-9822
chad@brazilanddunn.com

**Luis Roberto Vera, Jr.
Texas State Bar No. 0546740
LULAC, National General Counsel
111 Soledad, Suite 1325
San Antonio, TX 78205
Telephone: (210) 225-3300
Lrvlaw@sbcglobal.net

*Attorneys for Proposed Intervenor-Defendants LULAC and California LULAC*

*Pro Hac Vice Application Granted*
** *Pro Hac Vice Application Forthcoming*

# CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of June, 2020 a true and correct copy of the foregoing Notice of Reply to the Opposition to Motion to Intervene as Defendants, and Reply to the Opposition to Motion to Intervene as Defendants, submitted herewith, was served via the United State District Court's CM/ECF system on all parties or person requiring notice.

By: */s/ Chad Dunn*

Chad Dunn
Director of Litigation
**UCLA Voting Rights Project**