John C. Eastman (SBN: 193726)
Center for Constitutional Jurisprudence
c/o Chapman University Fowler School of Law
One University Dr.
Orange, CA 92866
(714) 943-9983
(714) 844-4817 fax
jeastman@chapman.edu

Noel H. Johnson*
Public Interest Legal Foundation
32 E. Washington Street, Ste. 1675
Indianapolis, IN 46204
(317) 203-5599
njohnson@publicinterestlegal.org
*Pro Hac Vice application to be filed, if necessary

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REPUBLICAN NATIONAL COMMITTEE; NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE; and CALIFORNIA REPUBLICAN PARTY,<br><br>*Plaintiffs*,<br><br>v.<br><br>GAVIN NEWSOM, in his official capacity as Governor of California; and ALEX PADILLA, in his official capacity as California Secretary of State,<br><br>*Defendants*. | No. 2:20-cv-01055-MCE-CKD<br><br>**BRIEF OF THE PUBLIC INTEREST LEGAL FOUNDATION AS *AMICUS CURIAE*** |

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

ARGUMENT ..................................................................................................................... 1

    I.    PILF's Research and Submission of Findings to the California Secretary of State ................................................................................. 1

    II.    PILF Matched More than 23,000 Registrations to a Verifiable Record of Death ........................................................................... 2

    III.    PILF Identified Potentially Duplicated Registrations with Apparent Voting Credits Assigned for California Elections ............................. 2

    IV.    PILF Identified Potentially Duplicated Registrations with Apparent Voting Credits Assigned for Elections in California and Another State .......... 3

    V.    PILF Invites the Court to Appoint an *Amicus Curiae* to Verify PILF's Research ................................................................................... 4

CONCLUSION .................................................................................................................. 4

## INTRODUCTION

In 2010, according to reports, a Napa County, California woman received two mail-in ballots for the November 3 Special Election.[1] According to court documents, this woman "marked both ballots and submitted them to Napa Elections Department[.]"[2] Research conducted by *amicus curiae* Public Interest Legal Foundation ("PILF") and attached to this brief indicates that what occurred in Napa County may happen again in November, if election officials proceed to automatically distribute ballots through the mail. In fact, PILF's research reveals thousands of active registrants in California who are potentially deceased or registered to vote more than once.

Plaintiffs ask this Court to enjoin California's order to conduct the November General Election entirely by mail. (Doc. 24.) Plaintiffs warn that all-mail balloting poses serious risks in light of "widespread errors in the voting records across California." (Doc. 24-1 at 8.) PILF's research shows that these concerns are not unfounded. While election officials alone are the final judge of voter eligibility and are perfectly capable of replicating PILF's research, PILF believes this Court should be aware of potential problems with the voter rolls that could be exploited under the California's planned all-mail ballot system.

## ARGUMENT

**I.     PILF's Research and Submission of Findings to the California Secretary of State.**

As part of its organizational mission, PILF analyzes voter rolls across the Nation to assess their health. In December 2019, PILF received a copy of California's statewide voter roll via the VoteCal system. Then, at considerable expense for a 501(c)(3) charitable organization, using detailed methodologies and matching techniques (described *infra* and in the attached letter) PILF flagged registrations that are potentially inaccurate, outdated, or no longer valid. In California, these registrations include the following: (1) registrations belonging to potentially deceased individuals; (2) registrations that are duplicated across county lines; (3) registrations that are duplicated within the same county; and, (4) persons potentially registered twice across state lines.

---

[1] Duarte, *Morales pleads guilty to voter fraud*, St. Helena Star, March 18, 2010, https://napavalleyregister.com/community/star/news/local/morales-pleads-guilty-to-voter-fraud/article_06ed7297-e0f1-56b8-bb27-894d207bc23e.html (last accessed June 10, 2020).

[2] *Id*.

**Amicus Curiae Brief of the
Public Interest Legal Foundation**          1

PILF also reviews voting histories to determine if one or more voting credits were assigned to these potentially problematic entries. A voting credit is an indication on the voter roll that a registrant voted in an election. On June 9, 2020, PILF sent a letter to the California Secretary of State that describes PILF's methodology and findings and asks the Secretary to investigate and take corrective action where necessary.[3] Exhibit A (hereafter, the "Letter").

**II.     PILF Matched More than 23,000 Registrations to a Verifiable Record of Death.**

PILF's research indicates that there are potentially more than 23,000 deceased individuals with an active registration in California. Letter at 1. In a normal election, each of those potentially deceased individuals presents an opportunity for confusion and even fraud. Surviving spouses, relatives, or caretakers may not resist the temptation to request an absentee ballot in the name of the deceased. In the election contemplated by Executive Order N-64-20—where mail-in ballots will be *automatically* distributed to all active registrants—the risk that ballots will be cast in the name of deceased individuals is magnified to a significant degree. Were someone to succeed in doing so, it would cancel out the legitimate vote of another Californian.

In order to ensure a high degree of confidence, PILF matched voter roll data against the federally maintained cumulative Social Security Death Index (SSDI), and where possible, against the SSDI and printed obituaries and other public notices. Letter at 1. Approximately 95 percent of registrants matched against the SSDI list a date of death in November 2019 or earlier, with some dates of death reaching back decades. Letter at 1. It is paramount that Secretary Padilla investigate these registrations further to ensure that ballots are not distributed to deceased registrants.[4]

**III.    PILF Identified Potentially Duplicated Registrations with Apparent Voting Credits Assigned for California Elections.**

PILF's letter also alerted Secretary Padilla to registrations that are potentially duplicated within the same California county (intracounty) and across county lines (intercounty) that were

---

[3] Election officials are the final judge of voter eligibility. PILF asks election officials to do what is permissible under state and federal law to investigate the leads PILF submits.

[4] The true number of deceased registrants is likely even higher because PILF analyzed only registrants with active registrations.

Amicus Curiae Brief of the
Public Interest Legal Foundation              2

apparently assigned voting credits for the same election. Letter at 2. For the 2016 General Election, more than 280 potential intercounty duplicates were apparently assigned voting credits, and more than 900 potential intracounty duplicates were apparently assigned voting credits. For the 2018 General Election, 625 potential intracounty duplicates were apparently assigned voting credits. To ensure a high degree of confidence, the Foundation flagged only those registrations with identical addresses and dates of birth and nearly identical first and last names. Letter at 2.

The number of people with two or more registrations is assuredly even higher because PILF flagged only registrations that were assigned voting credits and PILF has not yet accounted for some well-known causes of duplication, such as married-name confusion, which happens when a registrant becomes married and then submits a subsequent registration using a different last name. The Foundation has seen those circumstances result in significant numbers of likely duplicated registrations in other jurisdictions.

The risks associated with California's plan to automatically distribute ballots are obvious: registrants with more than one registration may receive more than one ballot, increasing the chances that one voter will cast more than one ballot. Because of these risks, it is paramount that Secretary Padilla investigate and confirm the registrations PILF flagged and further examine California's rolls for other duplicate entries.

### IV. PILF Identified Potentially Duplicated Registrations with Apparent Voting Credits Assigned for Elections in California and Another State.

Using voter roll extracts obtained from other states, PILF performed a detailed matching analysis to discern the number of registrants who are potentially registered in more than one state. PILF then reviewed their voting histories. Using this methodology, PILF alerted Secretary Padilla to more than 2,000 potentially duplicated registrations across state lines with a voting credits assigned for the 2018 General Election in each state. Letter at 2.

If registrants of California are residing and voting in other states, they might not be eligible for voter registration in California. Cal. Elec. Code § 2101(a) ("A person entitled to register to vote shall be . . . a resident of California . . .."). Yet they may still receive a ballot under the election contemplated by Executive Order N-64-20. PILF has asked Secretary Padilla to

investigate and confirm these registrations so that corrections can be made prior to the November General Election.

### V. PILF Invites the Court to Appoint an *Amicus Curiae* to Verify PILF's Research.

PILF's research can be replicated. PILF hopes that replication can resolve any doubts concerning ambiguities in the data. PILF therefore invites the Court to verify it. PILF welcomes efforts to verify and improve upon its work so that the Court is working with the most accurate and up-to-date data when rendering a decision in this matter. For example, PILF invites the Court to appoint its own *amicus curiae* to perform this function, if the Court believes it is warranted, and PILF is happy to work with any such designee to assist in cataloging the numbers of registrations that could pose risks under the election contemplated by Executive Order N-64-20.

### CONCLUSION

Inaccurate voter rolls create risks for the franchise. Those risks are heightened when ballots are automatically distributed through the mail. For that reason, the research discussed herein merits consideration and further investigation by election officials and this Court alike.

Dated: June 23, 2020.

Respectfully submitted,

　　　　　　　　　　　　　　　　　　　/s/ John C. Eastman
　　　　　　　　　　　　　　　　　　John C. Eastman (SBN: 193726)
　　　　　　　　　　　　　　　　　　Center for Constitutional Jurisprudence
　　　　　　　　　　　　　　　　　　c/o Chapman University Fowler School of Law
　　　　　　　　　　　　　　　　　　One University Dr.
　　　　　　　　　　　　　　　　　　Orange, CA 92866
　　　　　　　　　　　　　　　　　　(714) 943-9983
　　　　　　　　　　　　　　　　　　(714) 844-4817 fax
　　　　　　　　　　　　　　　　　　jeastman@chapman.edu

　　　　　　　　　　　　　　　　　　Noel H. Johnson*
　　　　　　　　　　　　　　　　　　Public Interest Legal Foundation
　　　　　　　　　　　　　　　　　　32 E. Washington Street, Ste. 1675
　　　　　　　　　　　　　　　　　　Indianapolis, IN 46204
　　　　　　　　　　　　　　　　　　(317) 203-5599
　　　　　　　　　　　　　　　　　　njohnson@publicinterestlegal.org
　　　　　　　　　　　　　　　　　　**Pro Hac Vice* application to be filed, if necessary*

**Amicus Curiae Brief of the
Public Interest Legal Foundation**　　　　4

## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2020, I electronically filed the foregoing using the Court's ECF system, which will serve notice on all parties.

    /s/ John C. Eastman
John C. Eastman (SBN: 193726)
jeastman@chapman.edu
*Counsel for Amicus Curiae*
*Public Interest Legal Foundation*