MARC E. ELIAS, ESQ. (D.C. Bar No. 442007)*
HENRY J. BREWSTER, ESQ. (D.C. Bar No. 1033410)*
COURTNEY A. ELGART, ESQ. (D.C. Bar No. 1645065)*
**PERKINS COIE LLP**
700 Thirteenth Street NW, Suite 800
Washington, D.C. 20005-3960
Tel: (202) 654-6200
melias@perkinscoie.com
hbrewster@perkinscoie.com
celgart@perkinscoie.com

ABHA KHANNA, ESQ. (Wash. Bar No. 42612)*
JONATHAN P. HAWLEY, ESQ. (SBN 319464)
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Tel: (206) 359-8000
akhanna@perkinscoie.com
jhawley@perkinscoie.com

*Attorneys for Intervenor-Defendants DCCC and
California Democratic Party*

*Admitted pro hac vice*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REPUBLICAN NATIONAL COMMITTEE; NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE; and CALIFORNIA REPUBLICAN PARTY,<br><br>            Plaintiffs,<br><br>    v.<br><br>GAVIN NEWSOM, in his official capacity as Governor of California; and ALEX PADILLA, in his official capacity as California Secretary of State,<br><br>            Defendants,<br><br>and | Case No.:      2:20-cv-01055-MCE-CKD<br><br>**INTERVENOR-DEFENDANTS' CONSOLIDATED OPPOSITION TO PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION** |

DCCC and CALIFORNIA DEMOCRATIC
PARTY,

                                    Intervenor-
                                    Defendants.

OPPOSITION TO MOTIONS FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

BACKGROUND .................................................................................................. 2

LEGAL STANDARD ........................................................................................... 3

ARGUMENT ....................................................................................................... 4

    I.     Plaintiffs have not demonstrated a likelihood of success on the merits. ............... 4

          A.     Plaintiffs' claims are moot. ........................................................... 4

          B.     Plaintiffs' claims are barred by the Eleventh Amendment. ...................... 5

          C.     Plaintiffs cannot prevail on their claims under the Elections or Electors Clause because Defendants' plans for the November Election are consistent with California law. ............................................. 7

    II.    Plaintiffs will suffer no injury absent an injunction............................................. 13

    III.   The balance of harms weighs strongly in favor of Defendants. .......................... 17

    IV.   The public interest would not be served by an injunction. .................................. 19

CONCLUSION..................................................................................................... 20

**TABLE OF AUTHORITIES**

**Pages**

CASES

*Actmedia, Inc. v. Stroh*,
   830 F.2d 957 (9th Cir. 1986), *overruled on other grounds by Sorrell v. IMS
   Health Inc.*, 564 U.S. 552 (2011)..................................................................6

*All. for Wild Rockies v. Cottrell*,
   632 F.3d 1127 (9th Cir. 2011) ......................................................................14

*Am. Civil Rights Union v. Martinez-Rivera*,
   166 F. Supp. 3d 779 (W.D. Tex. 2015)..........................................................16

*ARC of Cal. v. Douglas*,
   No. 2:11-cv-02545-MCE-CKD, 2018 WL 1535511 (E.D. Cal. Mar. 29, 2018).......................6

*Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*,
   135 S. Ct. 2652 (2015)..........................................................................7, 8, 10

*Cal. Corr. Peace Officers' Ass'n v. Schwarzenegger*,
   163 Cal. App. 4th 802 (2008) .......................................................................11

*Cardona v. Oakland Unified Sch. Dist.*,
   785 F. Supp. 837 (N.D. Cal. 1992) ...............................................................18

*Carmel Valley Fire Prot. Dist. v. State*,
   25 Cal. 4th 287 (2001) ................................................................................13

*City of Morgan Hill v. Bay Area Air Quality Mgmt. Dist.*,
   118 Cal. App. 4th 861 (2004) ........................................................................9

*Common Cause/Ga. v. Billups*,
   439 F. Supp. 2d 1294 (N.D. Ga. 2006) ........................................................19

*Cook v. Gralike*,
   531 U.S. 510 (2001)........................................................................................7

*Democratic Nat'l Comm. v. Hobbs*,
   948 F.3d 989, 1036 (9th Cir. 2020) (en banc) .............................................16

*Evans v. Beck*,
   No. 1:12-cv-00284-AWI-MJS (PC), 2012 WL 3133479 (E.D. Cal. July 31,
   2012) ...............................................................................................................4

*Fla. Democratic Party v. Scott*,
   215 F. Supp. 3d 1250 (N.D. Fla. 2016)..........................................................19

*Gerawan Farming, Inc. v. Agric. Labor Relations Bd.*,
   3 Cal. 5th 1118 (2017) ..................................................................................10

*Hendricks v. Hanigan*,
   No. D037609, 2002 WL 397648 (Cal. Ct. App. Mar. 14, 2002) ...............................9

*Issa v. Newsom*,
   No. 2:20-cv-01044-MCE-CKD (E.D. Cal.).............................................. passim

*League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*,
   752 F.3d 755 (9th Cir. 2014) ...............................................................19

*League of Women Voters of Cal. v. McPherson*,
   145 Cal. App. 4th 1469 (2006) ...........................................................13

*League of Women Voters of N.C. v. North Carolina*,
   769 F.3d 224 (4th Cir. 2014) ...............................................................19

*Libertarian Party v. Eu*,
   28 Cal. 3d 535 (1980) .........................................................................10

*Macias v. State*,
   10 Cal. 4th 844 (1995) ...................................................................9, 12

*Martin v. Mun. Court*,
   148 Cal. App. 3d 693 (1983) ...........................................................8, 11

*Massey v. Coon*,
   No. 87-3768, 1989 WL 884 (9th Cir. Jan. 3, 1989)...................................7

*Metabolife Int'l, Inc. v. Wornick*,
   264 F.3d 832 (9th Cir. 2001) ...............................................................15

*Obama for Am. v. Husted*,
   697 F.3d 423 (6th Cir. 2012) ...............................................................18

*One Wis. Inst., Inc. v. Thomsen*,
   198 F. Supp. 3d 896 (W.D. Wis. 2016) ...........................................16, 19

*Paher v. Cegavske*,
   No. 3:20-cv-00243-MMD-WGC, 2020 WL 2089813 (D. Nev. Apr. 30, 2020) .............16, 20

*Pennhurst State Sch. & Hosp. v. Halderman*,
   465 U.S. 89 (1984)...............................................................................6

*People First of Ala. v. Sec'y of State*,
   No. 20-12184 (11th Cir. June 25, 2020) ...........................................16, 18

*Purcell v. Gonzalez*,
   549 U.S. 1 (2006)................................................................................14

*R.F. ex rel. Frankel v. Delano Union Sch. Dist.*,
   No. 1:16-cv-01796-LJO-JLT, 2017 WL 633919 (E.D. Cal. Feb. 15, 2017) .......................4, 5

*Republican Nat'l Comm. v. Democratic Nat'l Comm.*,
   140 S. Ct. 1205 (2020) .........................................................................................14

*Republican Nat'l Comm. v. Newsom*,
   No. 2:20-cv-01055-MCE-CKD (E.D. Cal.) ............................................................3

*Sanchez v. Cegavske*,
   214 F. Supp. 3d 961 (D. Nev. 2016) ...................................................................18

*Serv. Emps. Int'l Union, Local 1 v. Husted*,
   906 F. Supp. 2d 745 (S.D. Ohio 2012) ...............................................................18

*Sierra Forest Legacy v. Rey*,
   691 F. Supp. 2d 1204 (E.D. Cal. 2010) ...........................................................3, 20

*Six v. Newsom*,
   No. 8:20-cv-00877-JLS-DFM, 2020 WL 2896543 (C.D. Cal. May 22, 2020) ...................6, 7

*Thompson v. Alabama*,
   No. 2:16-CV-783-WKW, 2017 WL 3223915 (M.D. Ala. July 28, 2017) ...............................7

*Vasquez v. Rackauckas*,
   734 F.3d 1025 (9th Cir. 2013) .............................................................................6

*Wash. Ass'n of Churches v. Reed*,
   492 F. Supp. 2d 1264 (W.D. Wash. 2006) ..........................................................19

*Wash. State Grange v. Wash. State Republican Party*,
   552 U.S. 442 (2008) ...........................................................................................10

*Weinberger v. Romero-Barcelo*,
   456 U.S. 305 (1982) .............................................................................................1

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ............................................................................................3, 14

STATUTES

Cal. Elec. Code § 3000.5 ...........................................................................................5

Cal. Elec. Code § 3010 ..............................................................................................5

Cal. Elec. Code § 3011 .............................................................................................20

Cal. Elec. Code § 3019 .............................................................................................20

Cal. Elec. Code §§ 4005–4007 ........................................................................... passim

Cal. Elec. Code § 18568 ...........................................................................................20

Cal. Elec. Code § 18573 ............................................................................20

Cal. Elec. Code § 18578 ............................................................................20

Cal. Gov't Code 8550 ................................................................................8

Cal. Gov't Code §§ 8550–8669 ........................................................... passim

Cal Gov't Code § 8558 ..............................................................................11

Cal. Gov't Code § 8567 .............................................................................12

Cal. Gov't Code § 8571 ..........................................................................9, 10

Cal. Gov't Code § 8625 .............................................................................11

Cal Gov't Code § 8627 ..............................................................................10

Cal Gov't Code § 8629 ..............................................................................12

National Voter Registration Act of 1993 ....................................................16

**OTHER AUTHORITIES**

Adam Beam, *California Senate OKs Bill to Mail Ballots for Fall Election*, AP
(June 11, 2020), https://apnews.com/8a198bbe7294befdc01fd6e67930bc65 ........................14

Eleventh Amendment................................................................................ passim

Fifth Amendment .......................................................................................7

Fourteenth Amendment ..............................................................................7

Amy Gardner et al., *Primary Voters in 8 States and D.C. Faced Some Confusion,
Long Lines and Poor Social Distancing*, Wash. Post (June 2, 2020), https://
www.washingtonpost.com/politics/in-pennsylvania-officials-prepare-for-
coronavirus-civil-unrest-to-disrupt-tuesday-primary/2020/06/02/96a55c40-
a4be-11ea-b619-3f9133bbb482_story.html ..........................................18

*Assembly Bill No. 860*, Cal. Legis. Info. (June 18, 2020), https://
leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=201920200AB860...............3, 5

Brian Naylor, *As More Americans Prepare to Vote by Mail, Postal Service Faces
Big Challenges*, NPR (May 30, 2020), https://www.npr.org/2020/05/30/
865258362/as-more-americans-prepare-to-vote-by-mail-postal-service-faces-
big-challenges ......................................................................................12

Cal. Const. art. II, § 4 ...............................................................................13

Cal. Const. art. III, § 3 ..............................................................................13

*COVID-19*, Cal. Dep't of Pub. Health, https://www.cdph.ca.gov/Programs/CID/
     DCDC/Pages/Immunization/ncov2019.aspx (last visited June 25, 2020) ..............................2

Elise Viebeck, *Minuscule Number of Potentially Fraudulent Ballots in States with
     Universal Mail Voting Undercuts Trump Claims About Election Risks*, Wash.
     Post (June 8, 2020), https://www.washingtonpost.com/politics/minuscule-
     number-of-potentially-fraudulent-ballots-in-states-with-universal-mail-voting-
     undercuts-trump-claims-about-election-risks/2020/06/08/1e78aa26-a5c5-
     11ea-bb20-ebf0921f3bbd_story.html .................................................................................15

Fed. Judicial Ctr., *Reference Manual on Scientific Evidence* (3d ed. 2011) ...............................15

Jim Malewitz, *Their Wisconsin Ballots Never Arrived. So They Risked a Pandemic.
     Or Stayed Home.*, Wis. Watch (Apr. 7, 2020), https://
     www.wisconsinwatch.org/2020/04/ballots-never-arrived-pandemic-or-stay-home...............18

Op. No. SO 77-11, 60 Cal. Op. Att'y Gen. 99 (1977) ..................................................................10

Matt Kristoffersen, *Gavin Newsom Signs Law Ordering Mail-in Ballots for
     November Election*, Sacramento Bee (June 18, 2020), https:/
     /www.sacbee.com/news/politics-government/capitol-alert/article243636972.html..................3

Scott Shafer, *Trump Sees Voter Fraud, but Election Chiefs in Red Counties Do
     Not*, KQED (June 18, 2020), https://www.kqed.org/news/11824704/trump-
     sees-voter-fraud-but-election-chiefs-in-red-counties-do-not...................................................20

U.S. Const. art. I, § 4, cl. 1........................................................................................... passim

U.S. Const. art. II, § 1, cl. 2 .......................................................................................... passim

OPPOSITION TO MOTIONS FOR PRELIMINARY INJUNCTION—PAGE vi

**INTRODUCTION**

In a time of crisis and unrest, ensuring that every individual has a meaningful opportunity to cast a ballot is of paramount importance. The State of California, recognizing both this imperative and the dangers posed by an extraordinary global pandemic, has taken the responsible course of action: implementing plans for the November general election to allow all eligible Californians to vote safely by mail. In response, two sets of plaintiffs, both backed by conservative interests, have moved to thwart this reasonable, necessary action. Their complaints and motions for preliminary injunction suggest that COVID-19 is now but a rare disease, and that an epidemic of voter fraud is sweeping across America. But Plaintiffs have it exactly backwards—the risks imposed by the novel coronavirus continue and will likely spike again in the fall, while no evidence supports their allegations of widespread electoral malfeasance. Plaintiffs are litigating against reality.

Plaintiffs' claims are not only wrong on the facts; they are wrong on the law. At bottom, they ask this Court to find that Defendants' election plans contravene the authority and intent of the California Legislature. But subsequent to the filing of Plaintiffs' motions, the California Legislature enacted legislation mirroring and ratifying the challenged plans, thus precluding any argument that Defendants have not followed the Legislature's dictates and consequently mooting Plaintiffs' claims. Rather than withdrawing their motions, Plaintiffs have chosen to press on. But even if their claims were not moot, they still could not succeed; the Eleventh Amendment prevents the relief Plaintiffs seek because a federal court cannot order state officials to conform to state law, and Plaintiffs' central contention—that Defendants violated California law—is plain wrong.

Even if the question of whether Defendants followed California law were properly before the Court, an injunction would still be inappropriate. "[A]n injunction is an equitable remedy," and, as such, it must be deployed to achieve equitable ends. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311 (1982). Plaintiffs have not, and could not, prove that Defendants' efforts to make voting easier for Californians in any way prevents Plaintiffs from voting, or causes any cognizable injury. The evidence they have marshaled does not demonstrate widespread voter fraud, or a threat to electoral integrity in California, or *any* risk that would justify the extraordinary remedy of a

preliminary injunction. By striking contrast, Plaintiffs' requested relief *will result* in widescale disruption ahead of the November election, and *will cause* many voters to suffer disenfranchisement. Balanced against each other, the equitable considerations independently counsel against the requested relief.

Equipped only with speculation, a hodgepodge of news articles, and out-of-context citations, Plaintiffs seek an order from this Court that would serve to disenfranchise California voters while putting the health and safety of the electorate at risk. Because they have fallen far short of the considerable showing required for the extraordinary relief they seek, their motions for preliminary injunction should be denied.[1]

## BACKGROUND

As of June 23, 2020, nearly 200,000 people in California have tested positive for the novel coronavirus, and more than 5,500 have died from COVID-19. *See COVID-19*, Cal. Dep't of Pub. Health, https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/Immunization/ncov2019.aspx (last visited June 25, 2020). The pandemic has upended life in California, leading Defendant Gavin Newsom, the Governor of California (the "Governor"), to declare a state of emergency on March 4, 2020. *See* Motion for Preliminary Injunction ("Issa Mot."), Ex. 5, *Issa v. Newsom*, No. 2:20-cv-01044-MCE-CKD (E.D. Cal.), ECF No. 38.

In response to this unprecedented public health crisis, the Governor exercised his authority to ensure that every voter has an opportunity to vote in the November 3, 2020 general election (the "November Election"). Specifically, he issued two executive orders, Executive Order ("EO") N-64-20 and EO N-67-20, which, among other things, require all county election officials to proactively send mail ballots to registered voters. *See id.*, Exs. 2, 6.

In late May, Plaintiffs Darrell Issa, James B. Oerding, Jerry Griffin, Michelle Bolotin, and Michael Sienkiewicz (the "Issa Plaintiffs"), and Plaintiffs Republican National Committee, National Republican Congressional Committee, and California Republican Party (the "RNC

---

[1] Given the significant factual and legal overlap between the two pending motions, Intervenor-Defendants have consolidated their oppositions into this single brief.

1  Plaintiffs," and together with the Issa Plaintiffs, "Plaintiffs") each filed suit, and subsequently filed

2  these motions for injunctive relief, asking the Court to invalidate EO N-64-20 and thus upend

3  Defendants' plans for the November Election. *See Issa*, ECF No. 1; *Republican Nat'l Comm. v.*

4  *Newsom* ("*RNC*"), No. 2:20-cv-01055-MCE-CKD (E.D. Cal.), ECF No. 1.; Issa Mot.; Motion for

5  Preliminary Injunction ("RNC Mot.), *RNC*, ECF No. 24.

6       On June 18, 2020, the California Legislature overwhelmingly passed—and the Governor

7  signed into law—Assembly Bill ("AB") 860, which ratified Defendants' decision "requir[ing]

8  county elections officials to mail a ballot to every registered voter for the November 3, 2020,

9  statewide general election." *Assembly Bill No. 860*, Cal. Legis. Info. (June 18, 2020), https://

10 leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=201920200AB860; *see also* Matt

11 Kristoffersen, *Gavin Newsom Signs Law Ordering Mail-in Ballots for November Election*,

12 Sacramento Bee (June 18, 2020), https://www.sacbee.com/news/politics-government/capitol-

13 alert/article243636972.html (noting that "[t]he bill almost mirrors the election-related executive

14 orders that Newsom issued since the coronavirus outbreak, which guarantee that registered voters

15 receive ballots ahead of the election").

16                                **LEGAL STANDARD**

17       "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*

18 *v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *accord Sierra Forest Legacy v. Rey*, 691 F.

19 Supp. 2d 1204, 1207 (E.D. Cal. 2010) ("Because it 'is an extraordinary and drastic remedy,' an

20 injunction 'should not be granted unless the movant, *by a clear showing*, carries the burden of

21 persuasion.'" (citation omitted) (quoting *Munaf v. Geren*, 553 U.S. 674, 689 (2008), and *Mazurek*

22 *v. Armstrong*, 520 U.S. 968, 972 (1997))).

23       The party requesting an injunction must demonstrate (1) a likelihood of success on the

24 merits, (2) a likelihood of irreparable harm absent injunctive relief, (3) that the balance of equities

25 tips in the party's favor, and (4) that "an injunction is in the public interest." *Winter*, 555 U.S. at

26 20. "If a plaintiff fails to meet its burden on any of the four requirements for injunctive relief, its

27 request must be denied." *Sierra Forest Legacy*, 691 F. Supp. 2d at 1207. A party moving for a

28 preliminary injunction cannot establish a likelihood of success on the merits if its claims are moot,

*see R.F. ex rel. Frankel v. Delano Union Sch. Dist.*, No. 1:16-cv-01796-LJO-JLT, 2017 WL 633919, at *1 (E.D. Cal. Feb. 15, 2017), or if it has failed to state a claim upon which relief can be granted, *see Evans v. Beck*, No. 1:12-cv-00284-AWI-MJS (PC), 2012 WL 3133479, at *2 (E.D. Cal. July 31, 2012).

## ARGUMENT

### I.    Plaintiffs have not demonstrated a likelihood of success on the merits.

Plaintiffs contend that "EO N-64-20 violates the Elections Clause and the Electors Clause because it was not enacted pursuant to California's lawmaking power or some unique lawmaking function that is prescribed under the California constitution." Issa Mot. at 10; *see also* RNC Mot. at 10.[2] The Legislature's passage of AB 860 has mooted these claims. Even if it did not, these claims are barred by the Eleventh Amendment, and Defendants' actions were ultimately consistent with California law. Plaintiffs therefore cannot succeed on the merits of their claims.

### A.    Plaintiffs' claims are moot.

While the lynchpin of Plaintiffs' claims is an assertion that EO N-64-20 violates California law, California law has since changed. As a result, the claims upon which Plaintiffs' motions for preliminary injunction are based are now moot.

"'[A] case is moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.' . . . [I]f 'changes in the circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief,' then the case is moot." *Frankel*, 2017 WL 633919, at *6 (first alteration in original) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969), and *West v. Sec'y of Dep't of Transp.*, 206 F.3d 920, 925 n.4 (9th Cir. 2000)).

Plaintiffs' causes of action rely wholly and unequivocally on the contention that Defendants' decision to proactively mail ballots to voters, rather than requiring use of the absentee

───────────────

[2] The RNC Plaintiffs state that they "are seeking a preliminary injunction based only on their claims under the Elections and Electors Clauses." RNC Mot. at 10 n.3. Although the Issa Plaintiffs do not provide a similarly explicit assertion, their motion also addresses only their claims under the Elections and Electors Clauses. *See* Issa Mot. at 10–14.

ballot procedure, is inconsistent with and in violation of California law—in particular, the Voter's

Choice Act (the "VCA"), Cal. Elec. Code §§ 4005–4007. The Legislature, however, recently

passed AB 860, which amended the Elections Code to ratify EO N-64-20's plan to proactively

mail ballots to voters. *See Assembly Bill No. 860*, *supra* (adding section 3000.5 to Elections Code,

requiring that "for the statewide general election to be held on November 3, 2020, the county

elections official shall, no later than 29 days before the day of the election, begin mailing the

materials specified in Section 3010 to every registered voter in the county"). As discussed further

in Part I.C *supra*, Plaintiffs' claims under the Elections and Electors Clauses of the U.S.

Constitution—the *only* claims for which they seek preliminary injunctions—require a showing

that Defendants acted in contravention of the Legislature and thus violated state law. The passage

of AB 860, which grants the Legislature's imprimatur to the very plans Plaintiffs challenge,

renders these claims moot. Plaintiffs therefore cannot succeed on the merits. *See Frankel*, 2017

WL 633919, at *1 (denying motion for preliminary injunction where "Plaintiff cannot show

likelihood of success on the merits because his claim is moot").

### B.   Plaintiffs' claims are barred by the Eleventh Amendment.

Even if the Legislature had not enacted AB 860, the Eleventh Amendment would bar

Plaintiffs' claims because a federal court cannot order state officials to conform to state law.

Plaintiffs' complaints and preliminary injunction motions are replete with references to

what *California* law requires, what the *California* Legislature intended, and how EO N-64-20

violates both.[3] As the RNC Plaintiffs explain in their motion, the basis for their claims that "[EO]

---

[3] *See, e.g.*, Issa Compl. ¶¶ 43–47 ("The all-mail system ordered by Governor Newsom in EO N-64-20 is an unlawful attempt to supersede and replace California election law, including the VCA, by imposing an entirely new system without the many qualifications required by the California Legislature before a county can opt in to all-mail balloting."); *id.* ¶¶ 59–60 ("The California Legislature never delegated to Defendants its authority under the Elections Clause or Electors Clause to regulate the manner of conducting elections for senators, representatives, or presidential electors."); Issa Mot. at 10–14 (arguing that the Governor lacks the authority he assumes under state law); RNC Compl. ¶ 2 ("In a direct usurpation of the legislature's authority, Governor Newsom issued an executive order purporting to rewrite the entire election code for the November 2020 election."); *id.* ¶¶ 101–20 ("In California, the Governor is not the Legislature and thus cannot

N-64-20 violates the Elections and Electors Clauses"—the *only* claims for which Plaintiffs seek preliminary injunctions—is that "[n]one of the [state] statutes cited by [EO] N-64-20 delegate . . . to the Governor" "the power to control federal elections." RNC Mot. at 10; *see also* Issa Mot. at 10. Accordingly, Plaintiffs urge this Court to (1) adjudicate whether Defendants have violated state law, and (2) issue a preliminary injunction requiring *state officials* to comply with *state law*, by prohibiting implementation of EO N-64-20. *See* Issa Compl. at 13–14; RNC Compl. at 26. But as the U.S. Supreme Court explained decades ago in *Pennhurst State School & Hospital v. Halderman*, "the principles of federalism that underlie the Eleventh Amendment" prohibit a federal court from granting "relief against state officials on the basis of state law, whether prospective or retroactive." 465 U.S. 89, 106 (1984). Because Plaintiffs' claims rest entirely on their shared misconception that a federal court can order state officials to comply with state law, they cannot succeed on their claims.

*Pennhurst* announced a bright line rule that has been applied countless times by federal courts since. Simply put: "A federal court may not enjoin a state official from violating purely state law; this is proscribed by the Eleventh Amendment to the United States Constitution." *ARC of Cal. v. Douglas*, No. 2:11-cv-02545-MCE-CKD, 2018 WL 1535511, at *6 (E.D. Cal. Mar. 29, 2018); *accord Vasquez v. Rackauckas*, 734 F.3d 1025, 1041 (9th Cir. 2013) ("'A federal court[]' may not 'grant' injunctive 'relief against state officials on the basis of state law,' when those officials are sued in their official capacity." (alteration in original) (quoting *Pennhurst*, 465 U.S. at 106)); *Actmedia, Inc. v. Stroh*, 830 F.2d 957, 964 (9th Cir. 1986) (noting that Eleventh Amendment bars "suits based on alleged violations of state law, or designed to compel state officials 'to conform their conduct to state law,' because such suits 'do [] not vindicate the supreme authority of federal law,' and do produce 'great [] intrusion[s] on state sovereignty'" (alterations in original) (quoting *Pennhurst*, 465 U.S. at 106)), *overruled on other grounds by Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011); *Six v. Newsom*, No. 8:20-cv-00877-JLS-DFM, 2020 WL

exercise legislative power."); RNC Mot. at 1–2 (explaining California election law and emphasizing what the Legislature "has chosen *not* to" do).

OPPOSITION TO MOTIONS FOR PRELIMINARY INJUNCTION—PAGE 6

2896543, at *8 (C.D. Cal. May 22, 2020) (claims "based on the California Emergency Services Act" and "violations of the California Constitution" are "barred by the Eleventh Amendment"). This is true even when the request to order state officials to conform to state law is cloaked in a federal claim to relief. *See, e.g.*, *Massey v. Coon*, No. 87-3768, 1989 WL 884, at *2 (9th Cir. Jan. 3, 1989) (affirming dismissal of suit where "on its face the complaint states a claim under the due process and equal protection clauses of the Constitution, [but] these constitutional claims are entirely based on the failure of defendants to conform to state law"); *Six*, 2020 WL 2896543, at *8 (denying temporary restraining order in part because Fifth and Fourteenth Amendment claims were predicated on violations of state law); *Thompson v. Alabama*, No. 2:16-CV-783-WKW, 2017 WL 3223915, at *8 (M.D. Ala. July 28, 2017) (denying preliminary injunction where plaintiffs' federal constitutional claims rested on premise that state officials were violating state law).

Plaintiffs frame their claims under the U.S. Constitution's Elections Clause, U.S. Const. art. I, § 4, cl. 1, and Electors Clause, U.S. Const. art. II, § 1, cl. 2. While courts have entertained claims under these Clauses, those cases typically involved a claim that a state law exceeded the power delegated to the States by the *U.S.* Constitution. For example, in *Cook v. Gralike*, the U.S. Supreme Court struck down a Missouri law that mandated a ballot designation for any congressional candidate who refused to commit to term limits. 531 U.S. 510, 525–26 (2001). And in *Arizona State Legislature v. Arizona Independent Redistricting Commission*, the Supreme Court upheld a law that delegated the redistricting process to an independent commission. 135 S. Ct. 2652, 2663 (2015). In both instances, the task of the federal court was to measure a state law against a *federal* mandate. Not so here. Instead, Plaintiffs ask this Court to measure Defendants' executive actions against *California* law, and issue an injunction requiring state officials to conform their conduct to state law. The Eleventh Amendment prohibits the Court from engaging in this task.

### C. Plaintiffs cannot prevail on their claims under the Elections or Electors Clause because Defendants' plans for the November Election are consistent with California law.

As Plaintiffs concede, they must prove that the issuance of EO N-64-20 violated California

law in order to prevail on their claims under the Elections Clause or Electors Clause. *See* Issa Mot. at 10 ("EO N-64-20 violates the Elections Clause and the Electors Clause because it was not enacted pursuant to California's lawmaking power or some unique lawmaking function that is prescribed under the California constitution."); RNC Mot. at 10 (arguing that "[EO] N-64-20 violates the Elections and Electors Clauses" because "[n]one of the statutes cited by [it] delegate this power [to control federal elections] to the Governor"). Even before passage of AB 860, they had failed to do so.

Contrary to Plaintiffs' assertions, the U.S. Supreme Court has held that state legislatures can delegate their authority to implement the procedural regulations governing elections, notwithstanding the fact that the Elections and Electors Clauses confer their respective powers to "the Legislature." *See Ariz. State Legislature*, 135 S. Ct. at 2667, 2673 (noting that Elections Clause does not preclude "the State's choice to include the Governor" in lawmaking functions so long as such involvement is "in accordance with the method which the State has prescribed for legislative enactments" (quoting *Smiley v. Holm*, 285 U.S. 355, 367 (1932))); *see also id.* at 2686 (noting that Electors Clause is "a constitutional provision with considerable similarity to the Elections Clause"). Accordingly, Defendants' plans for the November Election could only constitute plausible violations of the Elections and Electors Clauses if the Governor exceeded the authority granted to him by the California Constitution and state statute. He did not. The Governor's actions to address the coronavirus pandemic and expand voting opportunities for eligible Californians were authorized by California law—specifically, the California Emergency Services Act (the "Act"), Cal. Gov't Code §§ 8550–8669, which recognizes that the State has a "responsibility to mitigate the effects of . . . emergencies" and "protect the health and safety and preserve the lives and property of the people of the state," Cal. Gov't Code § 8550, and thus "confers broad powers on the Governor to deal with emergencies." *Martin v. Mun. Court*, 148 Cal. App. 3d 693, 696 (1983). Consistent with this broad mandate, EO N-64-20 temporarily suspends the ability of some California counties to choose whether to "opt in" to the VCA in order to ensure that the November Election "is held in a manner that is accessible, secure, and safe." Issa Mot., Ex. 2. The Governor's actions were therefore lawful under the plain text of—and expansive

authority conferred by—the Act. *See* Cal. Gov't Code § 8571 (empowering Governor to "suspend any regulatory statute, or statute prescribing the procedure for conduct of state business" if compliance would "delay the mitigation of the effects of the emergency"); *Macias v. State*, 10 Cal. 4th 844, 854 (1995) ("[T]he Emergency Services Act makes clear that in situations of 'extreme peril' to the public welfare the State may exercise its sovereign authority to the fullest extent possible consistent with individual rights and liberties." (quoting Cal. Gov't Code § 8550)).

In response to this straightforward exercise of powers granted by the Legislature, Plaintiffs attempt to muddy the waters by imposing novel limitations and requirements on the Governor's powers under the Act. Ultimately, none of these arguments is compelling, and certainly none demonstrates that the Governor exceeded his lawful authority.

*First*, Plaintiffs incorrectly suggest that the Act does not permit the Governor to suspend provisions of the VCA or the Elections Code, and instead only gives him the authority to "get rid of roadblocks" and "cut through red tape." RNC Mot. at 12–13; *see also* Issa Mot. at 13–14. Neither the text of the Act nor the cases cited by Plaintiffs impose such a limitation. The plain language of the Act empowers the Governor to "suspend any regulatory statute, *or statute prescribing the procedure for conduct of state business*." Cal. Gov't Code § 8571 (emphasis added). And while the cases on which Plaintiffs rely addressed the Act in the regulatory context, none confined the Act's scope only to those circumstances.[4] This is not surprising; any such limitation would conflict with the broad executive mandate that the Act provides. *See, e.g.*, *Macias*, 10 Cal. 4th at 856 ("[T]he power to declare and abate a public emergency represents a formidable undertaking. It is, without a doubt, the single most compelling and absolute exercise of *sovereign* authority that the State, acting through its chief executive, may pursue.").

*Second*, Plaintiffs argue that the Governor lacks authority under the Act to suspend

---

[4] *See City of Morgan Hill v. Bay Area Air Quality Mgmt. Dist.*, 118 Cal. App. 4th 861, 876 (2004) (noting that the Act "authorizes the Governor to rescind regulatory statutes and regulations, if this action is necessary to carry out the provisions of the [A]ct," but *not* limiting the Act only to those circumstances); *Hendricks v. Hanigan*, No. D037609, 2002 WL 397648, at *10 (Cal. Ct. App. Mar. 14, 2002) (permitting suspension of competitive bidding requirements during state of emergency without imposing regulatory limitation on the Act).

OPPOSITION TO MOTIONS FOR PRELIMINARY INJUNCTION—PAGE 9

provisions of the Elections Code because they are not "statute[s] prescribing the procedure for conduct of state business." Cal. Gov't Code § 8571. But both the U.S. and California Supreme Courts have repeatedly emphasized that the conduct of elections—both state and federal—is quintessential state business. *See, e.g.*, *Ariz. State Legislature*, 135 S. Ct. at 2673; *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 451 (2008); *Libertarian Party v. Eu*, 28 Cal. 3d 535, 545 (1980). Moreover, during several prior emergencies, previous Governors issued executive orders under the Act that temporarily suspended provisions of the Elections Code, without apparent challenge from courts or the Legislature. *See* Exs. 2–6 (previous executive orders affecting elections issued by Governors Pete Wilson, Arnold Schwarzenegger, and Edmund G. Brown, Jr.); *see also Gerawan Farming, Inc. v. Agric. Labor Relations Bd.*, 3 Cal. 5th 1118, 1156 (2017) (noting that "[t]he Legislature is presumed to be aware of a long-standing administrative practice. . . . If the Legislature, as here, makes no substantial modifications to the [statute], there is a strong indication that the administrative practice [is] consistent with the legislative intent" (alterations in original) (quoting *Thornton v. Carlson*, 4 Cal. App. 4th 1249, 1257 (1992))).

*Third*, Plaintiffs suggest that EO N-64-20 affirmatively *enacts*, rather than merely *suspends*, election rules. *Id.* at 13; RNC Mot. at 13. As an initial matter, it is far from clear that this distinction matters, given that the Act broadly conveys to the Governor "complete authority over all agencies of the state government and the right to exercise within the area designated all police power vested in the state." Cal. Gov't Code § 8627; *see also* Op. No. SO 77-11, 60 Cal. Op. Att'y Gen. 99 (1977) ("The Governor . . . possesses powers broad enough to encompass ordering the mandatory rationing of water pursuant to a declaration of a 'state of emergency,' under the [Act]."). But even assuming that the Governor's authority is as limited as Plaintiffs suggest, their contention relies on a mischaracterization of EO N-64-20, which does indeed *suspend* certain portions of the Elections Code; in particular, those provisions (1) permitting counties to opt into the VCA and its requirement to mail ballots to all registered voters; (2) requiring a certain number of polling locations, vote centers, and ballot drop boxes; and (3) requiring county election officials to hold certain in-person workshops and meetings.

Having failed to demonstrate that the Governor lacked authority under the Act to issue EO

OPPOSITION TO MOTIONS FOR PRELIMINARY INJUNCTION—PAGE 10

N-64-20, the RNC Plaintiffs try a different approach, suggesting that there is no "emergency" to justify EO N-64-20 in the first place. They explicitly contend that the pandemic will no longer constitute a crisis—and therefore will no longer justify emergency action—come November. *See, e.g.*, RNC Mot. at 14 ("It strains credulity to think that, with precautions, people can safely go to the mall today, get their hair cut tomorrow, and go to church Sunday, but that a state of emergency will prevent them from voting in person five months from now."). This blasé and cavalier characterization of the public health crisis is not only dangerous, but also wholly unsupported by Plaintiffs with any medical evidence. Instead, as discussed in Part III *supra*, medical experts agree that the pandemic will still constitute a significant public health crisis in November—particularly in California.

The RNC Plaintiffs also suggest that the Governor has not made the required finding of an emergency to justify invocation of the Act. *See* RNC Mot at 13–14. This is simply untrue. "The Governor is [] empowered to proclaim a state of emergency when" (1) he finds that the circumstances constitute a state of emergency as described in California Government Code section 8558(b), and (2) "[h]e finds that local authority is inadequate to cope with the emergency." Cal. Gov't Code § 8625. Here, the Governor made this required showing in his March 4, 2020 Emergency Proclamation, which was cited in EO N-64-20. *See* Issa Mot., Ex. 2; *see also id.*, Ex. 5 (articulating the reasons for the state of emergency and concluding that "local authority is inadequate to cope with the threat posed by COVID-19"). This is all that the Act requires—the Governor has "state[d] the circumstances of the emergency found to exist and that the emergency is found to be beyond local control measures." *Martin*, 148 Cal. App. 3d at 697.[5]

The RNC Plaintiffs further debate whether Defendants' action constitute "the most efficient and effective response," and suggest that it is "objectively unreasonable" to proactively

---

[5] Indeed, contrary to the RNC Plaintiffs' erroneous reading of relevant caselaw, the Governor *exceeded* the Act's requirements by clearly articulating his reasoning in the Emergency Proclamation, since "it is sufficient if the proclamation sets forth circumstances that support the *implied* finding." *Cal. Corr. Peace Officers' Ass'n v. Schwarzenegger*, 163 Cal. App. 4th 802, 820 (2008) (emphasis added); *accord Martin*, 148 Cal. 3d at 697 ("Nothing in the emergency act requires the Governor to make findings.").

1   mail ballots to voters given that "California already has a system set up for people to vote by mail."

2   RNC Mot. at 12, 15. (quoting *Macias*, 10 Cal. 4th at 856). But whether any particular response to

3   an emergency is efficient or effective is a determination for the *Governor*, not this Court; the Act

4   "concentrates considerable power in the Governor to control and coordinate the efforts of all the

5   various State agencies and local governments to ensure the most efficient and effective response."

6   *Macias*, 10 Cal. 4th at 856. Nothing in the Act requires or permits the sort of second-guessing that

7   Plaintiffs now seek. In any event, the absentee ballot system on which the RNC Plaintiffs rely

8   represents a *less* efficient method of ensuring that all eligible Californians can vote. During this

9   time of unprecedented crisis—when the U.S. Postal Service is already struggling with budget

10  deficits, delivery issues, and presidential antipathy[6]—Plaintiffs would have the State further

11  overwhelm the postal system by first mailing absentee ballot applications to voters, then waiting

12  to receive completed and delivered applications, and only then distributing ballots. This

13  cumbersome process would *create* inefficiencies, not reduce them, while also risking

14  disenfranchisement. *See* note 12 *supra*.

15       Finally, Plaintiffs make grasping arguments that the Governor's actions, and even *the Act*

16  *itself*, violate the California Constitution. They are wrong. First, contrary to Plaintiffs' assertions,

17  the Governor did not engage in impermissible "lawmaking." Issa Mot. at 10; RNC Mot. at 10–11,

18  15. Although the Act authorizes the Governor to "make, amend, and rescind orders and

19  regulations" with the "force and effect of law," Cal. Gov't Code § 8567(a), these executive orders

20  do not enjoy the same status as statutes enacted by the California Legislature. Unlike legislative

21  enactments, such executive orders may be issued only during a proclaimed state of emergency and

22  have "no further force or effect" once the emergency has ended, and the Legislature retains the

23  power to terminate a declared state of emergency, which would in turn terminate the effect of any

24  executive orders issued under the Act. Cal Gov't Code §§ 8567(a)–(b), 8629. Therefore, the Act

25

26  _____

27  [6] *See, e.g.*, Brian Naylor, *As More Americans Prepare to Vote by Mail, Postal Service Faces Big
    Challenges*, NPR (May 30, 2020), https://www.npr.org/2020/05/30/865258362/as-more-

28  americans-prepare-to-vote-by-mail-postal-service-faces-big-challenges.

is consistent with the separation of powers recognized in the California Constitution, *see* Cal. Const. art. III, § 3, which does not "prohibit one branch from taking action properly within its sphere that has the *incidental* effect of duplicating a function or procedure delegated to another branch" so long as it does not "exercis[e] the *complete* power constitutionally vested in another." *Carmel Valley Fire Prot. Dist. v. State*, 25 Cal. 4th 287, 298 (2001) (quoting *Younger v. Superior Court*, 21 Cal. 3d 102, 117 (1978)). Second, the RNC Plaintiffs incorrectly assert that Article II, Section 4 of the California Constitution "expressly entrusts the Legislature to maintain the integrity of elections" such that "the Legislature cannot delegate to the Governor the power to . . . suspend validly enacted election-integrity laws." RNC Mot. at 11. But the RNC Plaintiffs conspicuously omit that provision's full text, which states: "The Legislature shall prohibit improper practices that affect elections and shall provide for the disqualification of electors while mentally incompetent or imprisoned or on parole for the conviction of a felony." Cal. Const. art. II, § 4. In addition to ignoring the clear limiting language of Article II, Section 4, the RNC Plaintiffs fail to identify any caselaw—and indeed, none exists—that supports their eccentric, over-expansive interpretation of Article II, Section 4.[7]

In short, because the Governor acted pursuant to the powers validly granted to him by the Legislature, EO N-64-20 does not violate the Elections Clause or Electors Clause, and Plaintiffs cannot succeed on the merits of their claims. Indeed, that Defendants acted consistently with the intent of the Legislature was underscored by the passage of AB 860, which ratified EO N-64-20.

## II.  Plaintiffs will suffer no injury absent an injunction.

Plaintiffs have similarly failed to meet their burdens as to *Winter*'s equitable factors.

The U.S. Supreme Court's "frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction," which is consistent with its "characterization of injunctive relief as an extraordinary remedy that

---

[7] Instead, the relatively few cases interpreting Article II, Section 4 understandably focus on the provision's disenfranchisement of felons. *See, e.g.*, *League of Women Voters of Cal. v. McPherson*, 145 Cal. App. 4th 1469, 1473–75 (2006).

OPPOSITION TO MOTIONS FOR PRELIMINARY INJUNCTION—PAGE 13

1    may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555

2    U.S. at 22; *accord All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) ("Under

3    *Winter*, plaintiffs must establish that irreparable harm is *likely*, not just possible, in order to obtain

4    a preliminary injunction."). Plaintiffs make various assertions in support of a finding of irreparable

5    injury, none of which is persuasive—and certainly none of which satisfies the clear showing that

6    they must make to justify injunctive relief.

7            At the outset, Plaintiffs observe that constitutional violations constitute irreparable harm.

8    *See* Issa Mot. at 14; RNC Mot. at 16. But as discussed above, no constitutional violation has

9    occurred, and so this is not a sound basis for a finding of injury. Plaintiffs also suggest that altering

10   the voting system might result in confusion and injury. *See* Issa Mot. at 14–15; RNC Mot. at 15.

11   But while *major*, *last-minute* changes to electoral processes *by federal courts* should generally be

12   avoided, *see, e.g.*, *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207

13   (2020); *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006), Plaintiffs provide no explanation—through

14   evidence, caselaw, or even common sense—why election plans announced *by the State itself*, six

15   months before the November Election, would result in confusion, disenfranchisement, or

16   diminished confidence. This is particularly true given that "[m]ost California voters already vote

17   by mail." Adam Beam, *California Senate OKs Bill to Mail Ballots for Fall Election*, AP (June 11,

18   2020), https://apnews.com/8a198bbe7294befdc01fd6e67930bc65 ("More than 87% of registered

19   voters are scheduled to receive a ballot in the mail before the November election, including all of

20   the 4.3 million registered voters in Los Angeles County."). Indeed, in their opposition to

21   Intervenor-Defendants' motion to intervene, the Issa Plaintiffs themselves acknowledged that EO

22   N-64-20 represented only a very modest departure from normal California election practices. *See*

23   Plaintiffs' Opposition to Motion to Intervene at 4, *Issa*, ECF No. 17 ("[E]ven prior to the

24   governor's order, California voters could request an absentee, mail-in ballot, without having to

25   provide any particular reason for doing so. . . . Absentee ballots will remain available to every

26   California voter who wants one *with or without the governor's order*.").

27           The only other basis for injury advanced by Plaintiffs—and, judging by their evidentiary

28   submissions and complaints, the theory on which they place the most weight—is that "[EO] N-64-

OPPOSITION TO MOTIONS FOR PRELIMINARY INJUNCTION—PAGE 14

20 washes away many of the procedures and safeguards that the California Legislature implemented, inviting illegitimate practices that will dilute the votes of honest voters in violation of the Constitution." RNC Mot. at 16. This is what Plaintiffs are truly litigating against—the specter of voter fraud, a phantom threat that, despite clear evidence to the contrary, continues to be broadcast in the leadup to the November Election, not least of all by the RNC Plaintiffs' standard-bearer.[8]

And yet, despite their vociferous claims of widespread fraud, neither the Issa Plaintiffs nor the RNC Plaintiffs have produced a shred of compelling evidence to support their allegations, and have certainly not demonstrated any relationship between an expansion of vote by mail and a higher incidence of voter fraud. Plaintiffs primarily rely on a limited set of studies and reports to support their allegations of widespread fraud—in particular, the Report of the Commission on Federal Election Reform co-chaired by Jimmy Carter and James Baker, *see* RNC Mot., Ex. J; Professor Michael T. Morley's *Election Emergency Redlines*, *see id.*, Ex. K; and a case study on the VCA authored by Stanford Law students as part of a policy practicum course, *see* Issa Mot., Ex. 10. But *none* of these documents qualifies as peer-reviewed research, which remains the gold standard for validating research and determining the reliability of evidence. *See, e.g.*, *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 841 (9th Cir. 2001); Fed. Judicial Ctr., *Reference Manual on Scientific Evidence* 13 (3d ed. 2011). Moreover, none of the sections of these documents on which Plaintiffs rely *themselves* contain citations to peer-reviewed research on voter fraud.[9] Plaintiffs also cite various news articles related to alleged voter fraud occurrences in Nevada and New Jersey, *see* RNC Mot. Exs. N–Q, but one of those articles clearly states that "[p]roven cases of fraud

---

[8] *See, e.g.*, Elise Viebeck, *Minuscule Number of Potentially Fraudulent Ballots in States with Universal Mail Voting Undercuts Trump Claims About Election Risks*, Wash. Post (June 8, 2020), https://www.washingtonpost.com/politics/minuscule-number-of-potentially-fraudulent-ballots-in-states-with-universal-mail-voting-undercuts-trump-claims-about-election-risks/2020/06/08/1e78aa26-a5c5-11ea-bb20-ebf0921f3bbd_story.html.

[9] Although the Stanford Law case study did provide one peer-reviewed citation in a paragraph quoted by the Issa Plaintiffs, *see* Issa Mot. at 9, that research related to "vote-by-mail ballots [that] are rejected for missing or mismatched signatures," *id.*, Ex. 10 at 13 & n.26, *not* to "risks inherent in voting by mail," *id.* at 9.

OPPOSITION TO MOTIONS FOR PRELIMINARY INJUNCTION—PAGE 15

through vote harvesting or absentee voting are exceedingly rare nationwide." *Id.*, Ex. N at 3. Simply put, noting "exceedingly rare" situations of absentee ballot issues in jurisdictions *outside of California* does not constitute the systematic inquiry necessary to establish a link between expansion of vote by mail in the manner ordered by EO N-64-20 and an increase in voter fraud.

In short, Plaintiffs' attempt to nudge their allegations of voter fraud from wholly speculative to somehow likely falls flat, as none of this evidence actually proves, or even suggests, that expanding mail voting in California will lead to increased voter fraud and diminished public confidence.[10] Repeating the fiction of widespread voter fraud, even in a court of law, does not make it true—as evidenced by the courts that have rejected attempts to limit voting opportunities based on similarly speculative allegations of voter fraud. *See, e.g.*, *People First of Ala. v. Sec'y of State*, No. 20-12184, slip op. at 19 (11th Cir. June 25, 2020) (concluding that state's "interest for maintaining the photo ID and witness requirements do not outweigh" burdens on voters where evidence "suggests that Alabama has not found itself in recent years to have a significant absentee-ballot fraud problem"); *Democratic Nat'l Comm. v. Hobbs*, 948 F.3d 989, 1036 (9th Cir. 2020) (en banc) (rejecting fraud-based justification for ballot collection ban where "[t]here has never been a case of voter fraud associated with ballot collection charged in Arizona" (quoting *Democratic Nat'l Comm. v. Reagan*, 329 F. Supp. 3d 824, 852 (D. Ariz. 2018))); *Paher v. Cegavske*, No. 3:20-cv-00243-MMD-WGC, 2020 WL 2089813, at *6 & n.10 (D. Nev. Apr. 30, 2020) (finding that plaintiffs' "claim of voter fraud is without any factual basis"); *One Wis. Inst., Inc. v. Thomsen*, 198 F. Supp. 3d 896, 912 (W.D. Wis. 2016) (noting that "there is utterly no evidence that [there] is a systematic problem" of multiple voting); *Am. Civil Rights Union v. Martinez-Rivera*, 166 F. Supp. 3d 779, 789, 802–03 (W.D. Tex. 2015) (rejecting standing argument where alleged injuries,

---

[10] Similarly, although Plaintiffs expend a considerable amount of ink discussing California's history under the National Voter Registration Act of 1993 ("NVRA") and trumpeting Judicial Watch's 2019 settlement, *see* Issa Mot. at 1, 5–9, 15; RNC Mot. at 7–8; *see also* Brief of the Public Interest Legal Foundation as *Amicus Curiae*, *Issa*, ECF No. 57, they never actually demonstrate a link between mail ballots and voter fraud, nor explain how California's compliance with the NVRA has *anything* to do with whether the Governor validly issued EO N-64-20—which is, of course, the legal issue actually before this Court.

OPPOSITION TO MOTIONS FOR PRELIMINARY INJUNCTION—PAGE 16

"undermined voter confidence and the risk of vote dilution, are speculative").

Accordingly, any argument or cause of action premised on the specter of voter fraud necessarily fails, and Plaintiffs have not demonstrated a risk of irreparable injury.

**III.     The balance of harms weighs strongly in favor of Defendants.**

While Plaintiffs have not demonstrated *any* likely injury, enjoining Defendants' plans to expand access to mail ballots would have a devastating impact on Californians' ability to participate meaningfully in the November Election.

Defendants' decision to implement vote by mail is a necessary response to a public health crisis, one that severely curtails the ability to travel and interact with others. The expert medical evidence in the record demonstrates that the COVID-19 pandemic is not, whatever Plaintiffs might argue, behind us. *See* Declaration of Dr. Ranit Mishori ("Mishori Decl.") ¶¶ 23–33, *Issa*, ECF No. 33-5 (explaining that "the consensus among public health professionals is that community spread will still be a serious threat to public health and that infection and illness rates will remain high" in November); Ex. 1, Declaration of Dr. John Swartzberg ("Swartzberg Decl.") ¶¶ 5, 12 (concurring with Dr. Mishori and concluding that "COVID-19 will continue to represent a major health crisis in November 2020"). Indeed, the evidence indicates that a resurgence of cases will likely occur *precisely* around the time of the November Election, and that "[t]he risk of exposure to infectious diseases in enclosed areas like polling places with many people entering and leaving is significantly higher than in the community generally." Mishori Decl. ¶ 34; *see also id.* ¶¶ 35–51 (detailing risks posed by in-person voting). These risks will be particularly acute in California, where a variety of factors—an influx of students, the insalubrious consequences of wildfire season, and the commencement of influenza season among them—will exacerbate the pandemic's danger. *See* Swartzberg Decl. ¶¶ 8–10.[11] Accordingly, whether by necessity or choice, many California voters will continue to exercise social distancing and remain sheltered in their homes in early

---

[11] Plaintiffs, by contrast, have provided no medical evidence, expert or otherwise, to support their repeated assertions that the ongoing pandemic does not justify Defendants' emergency election plans.

November, thus necessitating the ability to vote easily and safely by mail. Without this opportunity, voters will be forced to choose between casting a ballot in person or safeguarding their health—resulting in effective disenfranchisement.[12]

"It is clear that abridgement of the right to vote constitutes an irreparable injury." *Sanchez v. Cegavske*, 214 F. Supp. 3d 961, 976 (D. Nev. 2016); *see also, e.g.*, *People First of Ala.*, *supra*, slip op. at 24 ("The denial of the opportunity to cast a vote that a person may otherwise be entitled to cast—even once—is an irreparable harm." (quoting *Jones v. Governor*, 950 F.3d 795, 828 (11th Cir. 2020))); *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) ("A restriction on the fundamental right to vote [] constitutes irreparable injury."); *Cardona v. Oakland Unified Sch. Dist.*, 785 F. Supp. 837, 840 (N.D. Cal. 1992) ("Abridgement or dilution of a right so fundamental as the right to vote constitutes irreparable injury."). If this Court were to prevent Defendants from expanding the availability of mail ballots for the November Election, then any eligible Californians who are unwilling or unable to incur the health risks to themselves and their families by voting in-person, and who cannot timely and successfully complete an absentee ballot application, will suffer disenfranchisement. Depriving a voter of their opportunity to cast a ballot is not only a significant harm—"[t]o disenfranchise a single voter is a matter for grave concern," *Serv. Emps. Int'l Union, Local 1 v. Husted*, 906 F. Supp. 2d 745, 750 (S.D. Ohio 2012)—but an irreparable harm as well.

---

[12] This is not merely a speculative risk. Normal absentee ballot procedures require election officials to process, track, and respond to ballot applications on an ad hoc basis, rather than systematically mail ballots to all voters on a fixed timeline. Recent elections in other jurisdictions have demonstrated the significant administrative burdens that this process places on election officials, particularly as requests increase due to the pandemic. As a result, not all voters who have needed mail ballots have received them. *See, e.g.*, Amy Gardner et al., *Primary Voters in 8 States and D.C. Faced Some Confusion, Long Lines and Poor Social Distancing*, Wash. Post (June 2, 2020), https://www.washingtonpost.com/politics/in-pennsylvania-officials-prepare-for-coronavirus-civil-unrest-to-disrupt-tuesday-primary/2020/06/02/96a55c40-a4be-11ea-b619-3f9133bbb482_story.html. Wisconsin's April 2020 primary provides an instructive case study. There, some voters who did not receive their mail ballots were forced to vote in person. *See* Jim Malewitz, *Their Wisconsin Ballots Never Arrived. So They Risked a Pandemic. Or Stayed Home.*, Wis. Watch (Apr. 7, 2020), https://www.wisconsinwatch.org/2020/04/ballots-never-arrived-pandemic-or-stay-home. For these and other reasons, it is not "objectively unreasonable" for Defendants to proactively mail ballots despite the availability of California's absentee ballot process, whatever the RNC Plaintiffs might suggest to the contrary. RNC Mot. at 15.

OPPOSITION TO MOTIONS FOR PRELIMINARY INJUNCTION—PAGE 18

*See League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014) ("[O]nce the election occurs, there can be no do-over and no redress."); *Fla. Democratic Party v. Scott*, 215 F. Supp. 3d 1250, 1258 (N.D. Fla. 2016) ("This isn't golf: there are no mulligans.").

Plaintiffs have not demonstrated *any* likely injury that would occur absent an injunction, let alone disenfranchisement. As discussed above, they are litigating against a mere apparition of alleged fraud that vanishes under the light of even limited scrutiny. As one court has perceptively noted, "a preoccupation with mostly phantom election fraud leads to real incidents of disenfranchisement, which undermine rather than enhance confidence in elections." *One Wis. Inst.*, 198 F. Supp. 3d at 903. Enjoining Defendants' plans for vote by mail will not prevent any harms to Plaintiffs—their supposed harms are, ultimately, imaginary—but will indisputably disenfranchise California voters who are unable, due to the pandemic and myriad other issues, to cast a ballot in the November Election.

**IV.    The public interest would not be served by an injunction.**

An injunction precluding Defendants' proactive distribution of mail ballots for the November Election—resulting in likely disenfranchisement of eligible voters—will not serve the public interest. "By definition, '[t]he public interest . . . favors permitting as many qualified voters to vote as possible.'" *League of Women Voters*, 769 F.3d at 247 (alterations in original) (quoting *Obama for Am.*, 697 F.3d at 437); *see also, e.g.*, *Wash. Ass'n of Churches v. Reed*, 492 F. Supp. 2d 1264, 1271 (W.D. Wash. 2006). This includes not only members of the Democratic Party represented by Intervenor-Defendants, but *all* eligible Californians who would risk disenfranchisement if Plaintiffs receive their requested injunctive relief. *See League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014) ("The public interest inquiry primarily addresses impact on non-parties rather than parties." (quoting *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 974 (9th Cir. 2002))). By contrast, the public interest would most assuredly be *ill*-served if voters' constitutional rights were violated to safeguard against nonexistent instances voter fraud. *See, e.g.*, *Common Cause/Ga. v. Billups*, 439 F. Supp. 2d 1294, 1359–60 (N.D. Ga. 2006). This is particularly true given that California already safeguards the integrity of elections, and polices potential electoral fraud,

OPPOSITION TO MOTIONS FOR PRELIMINARY INJUNCTION—PAGE 19

1   through other means. *See Paher*, 2020 WL 2089813, at *7 ("Plaintiffs' overarching theory that

2   having widespread mail-in votes makes the Nevada election more susceptible to voter fraud seems

3   unlikely where the Plan essentially maintains the material safeguards to preserve election

4   integrity.").[13]

5                                                      **CONCLUSION**

6          Plaintiffs seek the extraordinary remedy of a preliminary injunction to dismantle

7   Defendants' plans to allow all eligible California to vote safely by mail in the face of a global

8   health crisis. But they have failed to demonstrate a likelihood of success on the merits; to explain

9   how the Court can grant the relief they seek consistent with the Eleventh Amendment; to establish

10  that the Governor's actions conflict with state law, especially in light of AB 860; to show why the

11  ongoing pandemic does not justify Defendants' plans; and, most notably, to actually prove that

12  increasing Californians' access to the ballot will result in fraud or compromise the integrity of the

13  November Election. Because Plaintiffs have not, "*by a clear showing*, carrie[d] the burden of

14  persuasion," *Sierra Forest Legacy*, 691 F. Supp. 2d at 1207 (quoting *Mazurek*, 520 U.S. at 972),

15  Intervenor-Defendants respectfully request that this Court deny their motions for preliminary

16  injunction.

17          DATED this 25th day of June, 2020

18

19                                                      **PERKINS COIE LLP**

20          By: */s/ Jonathan P. Hawley*

21

22  _____

23  [13] For example, California voters must sign their mail ballot envelopes, and election officials must
    conduct a subsequent signature match. *See* Cal. Elec. Code §§ 3011, 3019. It is also a felony to
24  "vote by mail ballot by fraudulently signing" and to defraud a voter through deception, and fines
    and imprisonment can be imposed for wrongfully voting or tampering with mail ballots. Cal. Elec.
25  Code §§ 18568, 18573, 18578. Given these safeguards, when asked about the possibility of voter
    fraud, Amador County Chief Deputy Registrar of Voters Mark Hammergren replied that "there's
26  so many checks and balances that go[] into the process that, I don't want to say impossible because
    anything's possible, but it's damn near impossible." Scott Shafer, *Trump Sees Voter Fraud, but
27  Election Chiefs in Red Counties Do Not*, KQED (June 18, 2020), https://www.kqed.org/news/
    11824704/trump-sees-voter-fraud-but-election-chiefs-in-red-counties-do-not.
28

Jonathan P. Hawley, Esq.
Abha Khanna, Esq.*
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099

Marc E. Elias, Esq.*
Henry J. Brewster, Esq.*
Courtney A. Elgart, Esq.*
700 Thirteenth Street NW, Suite 800
Washington, D.C. 20005-3960

*Attorneys for Intervenor-Defendants DCCC and California Democratic Party*

*Admitted pro hac vice*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 25th of June, 2020 a true and correct copy of Intervenor-Defendants Consolidated Opposition to Plaintiffs' Motions for Preliminary Injunction was served via the United States District Court's CM/ECF system on all parties or persons requiring notice.


By:   *s/Vanessa Salinas*
      Vanessa Salinas
      Legal Assistant

CERTIFICATE OF SERVICE— PAGE 1