1   XAVIER BECERRA
    Attorney General of California
2   BENJAMIN M. GLICKMAN
    Supervising Deputy Attorney General
3   JAY C. RUSSELL
    Deputy Attorney General
4   JOHN W. KILLEEN, State Bar No. 258395
    Deputy Attorney General
5    1300 I Street, Suite 125
     P.O. Box 944255
6    Sacramento, CA 94244-2550
     Telephone:  (916) 210-6045
7    Fax:  (916) 324-8835
     E-mail:  John.Killeen@doj.ca.gov
8   *Attorneys for Defendants Gavin Newsom*
    *and Alex Padilla*

9

10                    IN THE UNITED STATES DISTRICT COURT

11                   FOR THE EASTERN DISTRICT OF CALIFORNIA

12

13

| | |
|---|---|
| 14 | |
| 15 **REPUBLICAN NATIONAL COMMITTEE; NATIONAL** | No. 2:20-cv-01055-MCE-CKD |
| 16 **REPUBLICAN CONGRESSIONAL COMMITTEE; and CALIFORNIA** | |
| 17 **REPUBLICAN PARTY,** | **DECLARATION OF JANA M. LEAN IN SUPPORT OF OPPOSITION TO** |
| | Plaintiffs, | **PLAINTIFFS' MOTION FOR** |
| 18 | **PRELIMINARY INJUNCTION** |
| 19           v. | |
| | | Date:          July 16, 2020 |
| 20 **GAVIN NEWSOM, in his official capacity** | Time:          10:00 a.m. |
| **as Governor of California; and ALEX** | Dept:          Courtroom 7, 14th Floor |
| 21 **PADILLA, in his official capacity as** | Judge:         The Honorable Morrison C. |
| **California Secretary of State,** | England |
| 22 | Trial Date:    None Set |
| | Defendants. | Action Filed:  5/24/2020 |
| 23 | |

24

25

26

27

28

I, Jana M. Lean, declare as follows:

1.      I am Chief of the Elections Division, employed in the Office of the California Secretary of State. I have served in this capacity since 2010. I make this declaration in support of the Defendants' Opposition to the Motion for Preliminary Injunction. I have personal knowledge of the matters set forth herein, except those matters stated on information and belief, and would so testify.

### *Voting by Mail in California*

2.      California voters have numerous options for casting a ballot. In addition to in-person voting at a polling place on election day, since 1979, California voters have been able to request a vote by mail ballot for any reason.

3.      Beginning 29 days before each election, all registered voters have the option of voting by mail or casting a vote-by-mail ballot in-person at their local election office. *See* Cal. Elec. Code §§ 3001; 3003; 3018(a). In the November 8, 2016 presidential election, approximately 59% of California's 14.6 million voters cast vote-by-mail ballots. *See* http://www.sos.ca.gov/elections/historical-absentee/ (last accessed June 24, 2020). In the November 2018 midterm election, approximately 65% of all votes cast in California were by mail. *Id.* And in the March 3, 2020 primary election, approximately 72% of all votes cast in California were by mail. *Id.*

4.      In addition to requesting a vote-by-mail ballot for any single election, California voters also have the option of registering as a permanent vote-by-mail voter. Cal. Elec. Code § 3201. Voters on the permanent vote-by-mail list are automatically mailed a vote-by-mail ballot beginning 29 days before every election. *Id.* §§ 3206; *see id.* §§ 3001; 3203(b) (vote-by-mail applications processed beginning on 29th day before election).

5.      In addition, persons not planning to vote by mail but who find themselves physically incapable of reaching the polls on election day may have a ballot delivered by an elections official to their authorized representative. Cal. Elec. Code § 3021.

6.      California's vote-by-mail program also provides all registered voters with an additional option for in-person, early voting. Specifically, beginning on the 29th day before an

1

election and until the close of the polls on election day, any voter may obtain and vote a vote-by-mail ballot at the office of the elections official that issued the ballot, or other designated satellite location. Cal. Elec. Code § 3018(a), (b).

7. A vote-by-mail voter also may vote in a polling place on election day by surrendering an unused vote-by-mail ballot to the precinct inspector. Cal. Elec. Code § 3015. And if a vote-by-mail voter is unable to surrender their vote-by-mail ballot, they may cast a provisional ballot. *Id.* § 3016.

8. In addition to the optional vote-by-mail procedures available to California voters described above, California also has experimented with all-mailed ballot elections, in which all voters automatically are provided vote-by-mail ballots. For example, since 2005, local elections officials have had discretion to send vote-by-mail ballots to all voters in precincts with fewer than 250 persons in lieu of operating a polling place for such precincts. Cal. Elec. Code § 3005(a). Alpine, Plumas, and Sierra Counties currently conduct all-mailed ballot elections.

9. Small cities (i.e., cities with fewer than 100,000 residents), school districts, and special districts likewise have long had the option of conducting all-mailed ballot elections. Cal. Elec. Code § 4004. More recently, in 2014, the Legislature authorized San Diego County to conduct, as a pilot program, an all-mailed ballot special election or special consolidated election to fill a congressional or legislative vacancy under specified conditions. *Id.*, § 4000.5; *see* 2014 Cal. Stat. ch. 598 (Assemb. Bill No. 1873). And in 2016, the Legislature expanded this option to all counties. Cal. Elec. Code § 4001.5; *see* 2016 Cal. Stat. ch. 764 (Assemb. Bill No. 2686).

10. The California Voter's Choice Act ("VCA") was enacted in 2016. *See* 2016 Cal. Stat. ch. 832 (Sen. Bill No. 450). In counties that choose to implement the VCA, all registered voters are automatically sent a vote-by-mail ballot beginning 29 days before an election, and a limited number of "vote centers" will replace traditional polling places. Cal. Elec. Code § 4005(a)(2), (8). The VCA specifies the number of vote centers that must be provided, and their days and hours of operation. *Id.* § 4005(a)(3), (4). Some vote centers must be open beginning eleven days before the election, and all vote centers must be open beginning three days before the election. *Id.* Voters also have the option of registering to vote or casting a provisional ballot at

2

1   any vote center.  *See Id.* §§ 2170; 4005(a)(2)(A)(ii).  Voters in VCA counties have three options

2   for casting their ballots:  (1) return the ballot by mail; (2) return the ballot to any designated ballot

3   dropoff location within the county; or (3) return, or vote and return, the ballot to a vote center.  *Id.*

4   § 4005(a)(1), (2), (8).

5       11.   All California counties now have the option of implementing the VCA program as

6   of January 1, 2020.  Cal. Elec. Code § 4005(a).  The County of Los Angeles also has the

7   additional option of conducting a "vote center" election, in which ballots are mailed to all

8   registered permanent vote-by-mail voters (and all voters in precincts with fewer than 500

9   registered voters), and votes may be cast in vote centers instead of traditional polling places.  *Id.*

10  § 4007.  The County of Los Angeles may conduct such "vote center" elections for up to four

11  years, after which it may implement the VCA's all-mailed ballot election procedures or revert to

12  the prior polling place model.  *Id.* § 4007(c).

13      12.   As of the signing of this declaration, the following counties have opted to conduct

14  their elections pursuant to the VCA, using an all-mailed election procedure for the November

15  2020 election:  Amador, Butte, Calaveras, El Dorado, Fresno, Los Angeles, Madera, Mariposa,

16  Napa, Nevada, Orange, Sacramento, San Mateo, Santa Clara, and Tuolumne.  Combined, nearly

17  10.4 million registered active voters live in these 15 counties.

18      13.   Based on the number of vote-by-mail ballots that were issued in the March 2020

19  presidential primary election, for the November 2020 presidential election, California's county

20  elections official would have been mailing out approximately 16.4 million ballots to registered

21  active voters.  This represents approximately 80% of California's approximately 20.6 million

22  registered active voters.

23      14.   I have reviewed and am familiar with Assembly Bill 860 (AB 860), which requires

24  that all registered active voters receive a vote-by-mail ballot in the November 2020 election.

25      15.   Based on the number of vote-by-mail ballots that were issued in the March 2020

26  presidential primary election, the effect of AB 860 is that California's county elections official

27  will send out approximately 4.2 million additional vote-by-mail ballots to registered active voters,

28  in addition to the approximately 16.4 million ballots that were already scheduled to be mailed.

3

*Safeguards to Prevent Voter Fraud or Abuse of Mailed Ballots*

16. California law has many safeguards to ensure the integrity of the vote-by-mail system.

17. *List maintenance.* Both federal (the National Voter Registration Act) and state law require that elections officials regularly maintain their voter rolls. Attached hereto as Exhibit A is a true and copy of a recent letter from the Secretary of State's attorneys to Judicial Watch, a plaintiff here. The letter describes California's list maintenance practices and explains why the allegations made by Judicial Watch in this lawsuit about California's voter rolls are, at best, outdated and inaccurate. The letter also encloses chapter 4 of California's National Voter Registration Act manual, which details California's list maintenance procedures.

18. Attached hereto as Exhibits B (without attachments), C, and D are true and correct copies of additional letters from our office and the Counties of San Diego and Orange refuting Judicial Watch's allegations, which allegations Judicial Watch has repeated in this lawsuit.

19. *Active voters.* California law also requires that ballot materials be mailed only to "active" voters. Cal. Elec. Code § 2226(a)(2). An "'[i]nactive voter'" means a voter for whom a county elections office receives information and/or an undeliverable/returned election mailing (such as a voter information guide or vote-by-mail ballot) indicating the voter no longer lives at that address. Cal. Elec. Code §§ 2220, 2226. "Per California Elections Code sections 2221 and 2226, such inactive registrants retain the legal right to vote, but need not be mailed election material." Cal. Code Regs. tit. 2, § 20108.1(l). "Further, inactive voters who do not vote in two consecutive Federal general elections are subject to cancellation of their voter registration pursuant to [federal law]." *Id.*

20. Inactive voters can receive a mail ballot by affirmatively taking some action to signal that they are active, including by requesting a vote-by-mail ballot. Or these voters can still use whatever in-person polling places are available on November 3 to cast an in-person ballot, as explained below.

21. *Ballot identification and tracking.* Every vote-by-mail envelope has a unique barcode. County officials are responsible for keeping track of every vote-by-mail ballot. Cal.

4

1    Elec. Code §§ 3017(c), 3013, 3014. The Secretary of State also offers a statewide system for

2    voters to track and receive notifications on the status of their vote-by-mail ballots, known as

3    BallotTrax. Cal. Elec. Code § 3019.7. Additionally, pursuant to AB 860 for the November 2020

4    presidential election, all county officials must use the BallotTrax system, unless they can provide

5    equal or better tracking. Cal. Elec. Code § 3019.7(d).

6         22.    *Election Day.* If a vote-by-mail voter appears at their designated polling place on

7    Election Day, or appears at a vote center or the regular or satellite office of their elections official

8    where voting is permitted on or before Election Day, the roster will indicate that they are a vote-

9    by-mail voter. As noted above, that voter cannot cast a non-provisional ballot unless they

10   surrender their vote-by-mail ballot or unless the elections official can ensure that their vote-by-

11   mail ballot has not been cast. Cal. Elec. Code § 3015. Attached hereto as Exhibit E is a true and

12   correct copy of recent guidance that the Secretary of State's Office issued regarding the

13   surrendering of vote-by-mail ballots.

14        23.    Alternatively, if a vote-by-mail voter appears at their designated polling place on

15   Election Day without a vote-by-mail ballot in hand, if the official cannot ensure that their vote-

16   by-mail ballot has not been cast, or if the voter cannot be found on the roster, the voter will be

17   allowed to cast a provisional ballot. Cal. Elec. Code §§ 3016; 14310. Provisional ballots are

18   maintained separately, counted last, compared against lists of vote-by-mail voters who have cast a

19   mail ballot, and subject to signature verification and comparison. Cal. Elec. Code § 14310.

20        24.    *Signature verification.* Every vote-by-mail ballot envelope must be signed. Cal.

21   Elec. Code § 3019. After Election Day, every signature is checked against the signature in the

22   county's records. *Id.* If an elections official determines that the signatures do not compare or a

23   signature is missing from the envelope, a voter is given an opportunity to cure the defect. *Id.* If

24   the voter fails to do so, the ballot is not counted.

25   ***Current Status of Preparations for the November 2020 Election***

26        25.    Preparations for the November 2020 presidential election are, of necessity, well

27   under way throughout the State. In addition to the challenges typically encountered in a

28

5

1  presidential election year, this year there is heightened uncertainty due to the COVID-19

2  pandemic.

3        26.     Other states recently have had serious disruptions to their elections.  Most notably,

4  the Wisconsin primary election on April 7 featured abrupt last-minute changes to election

5  procedures that resulted in potential voter confusion and significant amounts of litigation.  The

6  experience of Wisconsin and other states made it clear that California elections officials needed to

7  begin preparing for the November 2020 election immediately—beginning in May 2020—in light

8  of the COVID-19 pandemic.

9        27.     COVID specific challenges include recruiting and protecting a sufficient number

10  of poll workers (many of whom may be at higher risk of transmission because of their age or

11  physical vulnerabilities), ensuring the safety of polling places, and ensuring the availability and

12  integrity of mail or other remote forms of voting.

13        28.     California elections officials are planning for every possible contingency,

14  including a resurgence of the COVID-19 virus or changes in the law because of the COVID-19

15  pandemic.  Depending on the seriousness of the situation in November, the COVID-19 might

16  prevent elections officials, poll workers, or voters from being physically present at enclosed

17  polling places, or result in fewer polling places than would otherwise be available.

18        29.     The Governor's Executive Orders, Executive Order N- 64-20 and Executive Order

19  N-67-20, AB 860, and the anticipated passage of SB 423 have given much-needed clarity to

20  county elections officials preparing for the November 2020 election in California. Elections

21  officials needed immediate guidance because of the many uncertainties involved in this year's

22  election.  Ongoing efforts to prepare for the November election are informed by the Executive

23  Orders the superseding legislation. Any unexpected disruption of these efforts—including by a

24  court order of significant duration—would increase the risk of problems, despite elections

25  officials' best efforts.

26

27  /// 

28

6

1    I declare under penalty of perjury under the laws of the State of California and the United

2    States of America that the foregoing is true and correct, to the best of my knowledge, and that this

3    Declaration was executed on June 25, 2020, in Sacramento, California.

4

5    _Jana M. Lean_

6    Jana M. Lean
     Chief, Elections Division
7    California Secretary of State

8

9

10

11

12

13

14

15

16

17

18

19   SA2020301369
     34131392.docx
20

21

22

23

24

25

26

27

28

7

# Exhibit A

*XAVIER BECERRA*
*Attorney General*

*State of California*
*DEPARTMENT OF JUSTICE*

455 GOLDEN GATE AVENUE, SUITE 11000
SAN FRANCISCO, CA 94102-7004

Public: (415) 510-4400
Telephone: (415) 510-3817
Facsimile: (415) 703-1234
E-Mail: Patty.Li@doj.ca.gov

January 2, 2020

**VIA OVERNIGHT MAIL AND E-MAIL**
Robert D. Popper
Judicial Watch
425 Third St. SW, Suite 800
Washington, DC 20024
rpopper@judicialwatch.org

Dear Mr. Popper:

I write on behalf of California Secretary of State Alex Padilla, in response to your letters dated December 12, 2019 regarding alleged violations of 52 U.S.C. § 20507 by Orange, Riverside, and Santa Clara Counties. As with your previous letters (dated October 4, November 15, and November 22, 2019) regarding other California counties, these letters are primarily concerned with those counties' list maintenance practices and whether they comport with the National Voter Registration Act ("NVRA"). Under California's system for administering elections, each county has primary responsibility for carrying out its list maintenance practices in accordance with California and federal law. As set forth below, California law requires counties to engage in numerous list maintenance activities. Compliance with these requirements satisfies the obligation under the NVRA to "conduct a general program to make a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of" change in a registrant's residence. (52 U.S.C. § 20507(a)(4).) In addition, the Secretary of State has issued detailed guidance and has conducted in-person and webinar trainings for county elections officials on this topic. And, California law has been recently amended to conform to the Supreme Court's 2018 decision regarding the cancellation of voter registrations under the NVRA, *Husted v. A. Philip Randolph Inst.*, 138 S. Ct. 1833 (2018). Taken together, these California laws and the related guidance and training offered by the Secretary of State, as well as the commitments made (and kept) by the Secretary of State under its prior settlement with Judicial Watch, constitute a general program that makes a reasonable effort to maintain accurate lists of eligible voters.

**List Maintenance Requirements Under California Law**

The NVRA does not mandate any particular method of identifying ineligible voters, as part of a general program to remove ineligible voters. Elections officials in California must follow the procedures for confirming registrants' addresses set forth in

January 2, 2020
Page 2

California Elections Code sections 2220 through 2226. Those procedures are described
in detail in Chapter 4 of the 2019 California NVRA Manual, which is entitled "Voter
Registration Applications and Voter List Maintenance" and is attached hereto as Exhibit
A. These procedures include:

- the sending of voter notification cards (Elec. Code, §§ 2155, 2155.3);

- the use of a preelection residency confirmation postcard (Elec. Code, § 2220) or
  an alternative procedure, such as

  o the use of national change of address data from the U.S. Postal Service
    (Elec. Code, § 2222);

  o the mailing of county voter information guides with address correction
    requests (Elec. Code, § 2223); or

  o obtaining change-of-address data from a consumer credit reporting agency
    (Elec. Code, § 2227);

- the sending of address confirmation notices in response to information indicating
  that a registrant has moved (Elec. Code, §§ 2155, 2225, 2226);

- the intra- or inter-county transfer of voter registrations, when appropriate (Elec.
  Code, § 2155);

- the placement of voter registration records on inactive status, when appropriate
  (Elec. Code, § 2221, 2225); and

- the cancellation of voter registrations when all requirements of Section 8(d)(2) of the
  NVRA (52 U.S.C. § 20507(d)(2)) have been satisfied (Elec. Code, §§ 2225, 2226).[1]

Thus, in accordance with these requirements under California law, county elections
officials conduct list maintenance through confirmatory mailings, the use of change-of-
address data, the placement of voters on inactive status, and ultimately cancellation of
registrations in compliance with Section 8(d)(2) of the NVRA.

## Cancellation of Voter Registrations in Accordance with Section 8 of the NVRA

Section 8(b)(2) of the NVRA prohibits the cancellation of a registration for failure
to vote, and Section 8(d)(2) authorizes cancellation on the ground that the registrant has

---

[1] In addition to these procedures, Elections Code section 2224 authorizes the optional use
of an alternative residency confirmation postcard. However, that section became inoperative on
January 1, 2020. (Cal. Stats. 2019, ch. 262, § 4.)

January 2, 2020
Page 3

changed residence only after a qualifying notice has been sent[2] and certain conditions are thereafter satisfied. (52 U.S.C. §§ 20507(b)(2), (d)(2).) A qualifying notice can be sent in response to information indicating that the registrant has moved out-of-state, or has moved and left no forwarding address. (Elec. Code, §§ 2221(a)(1), 2225(c).) After this, if a voter fails to return the address confirmation notice; does not offer or appear to vote in any election within the next two federal general election cycles following the mailing of that notice; and does not notify a county elections official of continued residency within California, the county elections official must update the voter's registration record to reflect that the registration is cancelled. (Elec. Code, §§ 2225(c), 2226(b); 52 U.S.C. §§ 21803(a)(4)(A), 20507(a)(4), (d)(3); *Husted*, 138 S.Ct. at 1841-42.)

Currently, Elections Code section 2226 authorizes, but does not require, cancellation once Section 8(d)(2) requirements have been met. This reflects the California Legislature's previous understanding that cancellation was authorized, but not required, by the NVRA. Although Section 8(d)(2) does not explicitly require cancellation, the Supreme Court clarified in its 2018 *Husted* decision that cancellation is mandatory, under federal law. The decision states that, with respect to cancellations pursuant to Section 8(d), "Not only are States allowed to remove registrants who satisfy these requirements, but federal law makes this removal mandatory." (138 S.Ct. at 1841-42, citing 52 U.S.C. § 20507(d)(3); 52 U.S.C. § 21083(a)(4)(A).)

As you know, Judicial Watch and the Secretary of State were both parties in the *Judicial Watch v. Logan* litigation,[3] concerning the list maintenance practices of Los Angeles County and cancellation obligations under Section 8 of the NVRA. In that litigation, the parties entered into a settlement agreement that required the Secretary of State to update the California NVRA Manual to reflect the Supreme Court's interpretation of Section 8 in *Husted*. The 2019 California NVRA Manual incorporates this interpretation of Section 8. In addition, the Legislature recently amended the

---

[2] An address confirmation notice that begins the Section 8(d)(2) cancellation process must provide a postage paid, pre-addressed return form for the voter to state his or her current address, and must explain that: (1) if the registrant did not change his or her residence, or changed residence within California, the registrant should return the card not later than 15 days prior to the date of the next election; (2) that if the card is not returned, affirmation or confirmation of the registrant's address may be required before the registrant is permitted to vote in an election during the period beginning on the date of the notice and ending on the day after the date of the second general election for Federal office that occurs after the date of the notice; (3) if the registrant does not vote in an election during that period the registrant's name will be removed from the list of eligible voters; and (4) if the registrant has changed residence to a place outside of California, the notice must include information concerning how the voter can continue to be eligible to vote.

[3] *Judicial Watch v. Logan*, No. 17-cv-8948, C.D. Cal.

January 2, 2020
Page 4

Elections Code to align California law with the Supreme Court's pronouncement in *Husted*. As of January 1, 2020, Elections Code section 2226 explicitly requires the cancellation of a registration once all Section 8(d)(2) prerequisites have been satisfied. (Cal Stats. 2019, ch. 262, § 6.)

**California Law and Related Guidance Conform to *Husted* and Comply with the NVRA's List Maintenance Requirements**

The 2019 California NVRA Manual is available to the public on the Secretary of State's website. When the Secretary of State released the manual in March 2019, the Secretary of State informed county elections officials via a written advisory, which is attached hereto as Exhibit B.[4] The Secretary of State also offered multiple in-person trainings regarding the updated manual to various county elections officials, as well as a webinar training that was available to all county elections officials in California. All of this guidance and training incorporates the Supreme Court's interpretation of Section 8 of the NVRA, as set forth in *Husted*.

In summary, California law requires county elections officials to engage in numerous list maintenance activities that may ultimately result in cancellation of registrations. These activities include the regular use of change-of-address data; the streamlined transfer of registrations in response to information indicating that a registrant has moved within California; the sending of confirmatory mailings in response to information indicating that a registrant has moved; and the cancellation of registrations when all conditions in Section 8(d)(2) of the NVRA have been satisfied. The Secretary of State has issued specific guidance and offered trainings on these requirements. Counties that comply with California law, with the assistance of this guidance and training, have a reasonable list maintenance program as required by the NVRA.

It is important to note that the recent data relating to voter registration that Judicial Watch cites will not necessarily reflect the effects of a list maintenance program that complies with California law and the NVRA, and not because the counties have failed to implement such a program. As a threshold matter, it is not clear that the data Judicial Watch has relied upon fairly allows for the types of calculations and comparisons that Judicial Watch has performed. For example, as explained in correspondence from San Diego County to Judicial Watch dated November 22, 2019, and consistent with the findings of several federal courts, comparisons between the Election Administration and Voting Survey ("EAVS") data for the November 2018 election and the Census Bureau's five-year American Community Survey ("ACS") report for 2013-2017 are inappropriate.

---

[4] In accordance with Paragraph 9 of the *Judicial Watch v. Logan* settlement agreement, the advisory states that the updated manual "contains specific reference to *Husted v. A. Philip Randolph Inst.*, 138 S.Ct. 1833 (2018) and the requirement to cancel the voter registration record of a voter who has failed to respond to an NVRA Section 8(d)(2) notice and then fails to vote, offer to vote, correct their voter registration record, or otherwise have their eligibility to vote confirmed for a period of time including the next two general federal elections." Ex. B, at 2.

January 2, 2020
Page 5

This is because the EAVS data reflects the high-water mark for a county's number of registered voters, but the ACS five-year report measures population at a different point in time, and does not account for persons residing in the county part-time but who are still properly registered to vote. (*See Bellitto v. Snipes*, No. 16-cv-61474 (S.D. Fla. March 30, 2018) (order after trial), *aff'd, Bellitto v. Snipes*, 935 F.3d 1192 (11th Cir. 2019).)

In addition, even assuming that Judicial Watch's calculations are accurate, it is simply too soon to rely upon the number or percentages of inactive voters or cancellations in any given county. As explained above, removal from inactive status by reason of cancellation must be in accordance with Section 8(d)(2) of the NVRA, which requires two federal general elections to pass after a qualifying address confirmation notice has been sent. The Supreme Court issued its ruling in *Husted* in June 2018, while Judicial Watch and the Secretary of State were actively engaged in litigation concerning cancellation under Section 8 of the NVRA. The settlement agreement resolving that litigation and recognizing that *Husted* makes cancellation mandatory under Section 8 was executed in January 2019, and the Secretary of State issued updated guidance to this effect in March 2019. A cancellation process that started with a qualifying address confirmation notice sent after March 2019 could not result in any cancellations until the passage of two federal general elections, in November 2022.

On the whole, we find your recent letters surprising given the fact that the parties recently settled similar allegations, based in significant part on the Supreme Court's 2018 decision in *Husted*. As a result of *Husted* and the settlement, the Secretary of State and the counties, as well as the California Legislature, have taken numerous actions aimed at ensuring compliance with the NVRA's list maintenance requirements. Moreover, Judicial Watch has not suggested that the Secretary of State has violated its obligations under the settlement, nor would there be any basis for such a suggestion. Because of these recent changes, it would make little practical sense to litigate conduct that may or may not have occurred prior to *Husted* and the settlement. And, as noted above, because registrants cannot be removed until they have been identified and received notification under Section 8(d)(2) and then failed to vote in two consecutive federal elections, we believe it would be premature for Judicial Watch to sue before registrations may be cancelled in a manner consistent with the NVRA.

## Request for Documents Under Section 8(i)(1) of the NVRA

Your December 12, 2019 letters include a request under Section 8(i)(1) of the NVRA for seven categories of documents (some of which have several subcategories), "insofar as they were generated by, or concern, the County," that is, Orange, Riverside, or Santa Clara Counties. To the extent that the requested records (1) "concern[] the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters," 52 U.S.C. § 205070(i)(1), and (2) have not already been provided to you by the Secretary of State in response to previous Section 8(i)(1) requests, California Public Records Act

January 2, 2020
Page 6

requests, or during the *Judicial Watch v. Logan* litigation, the Secretary of State will provide responsive records, if any, over the next several weeks.

Sincerely,

P. PATTY LI
Deputy Attorney General

For     XAVIER BECERRA
Attorney General

Exhibit A

## Chapter 4

## Voter Registration Applications and Voter List Maintenance

**Table of Contents**

I.   Overview ................................................................................. 1

II.  Acceptance of Valid Voter Registration Application .......................... 1

III. Notification of Disposition of Voter Registration Application:
     Voter Notification Card ......................................................... 3

   A.   Application Accepted ........................................................ 3

   B.   Application Rejected or Request to Cure Defect ......................... 4

IV.  Residency Confirmation Procedures and Mailings ............................ 6

   A.   Voter Notification Card (VNC) ............................................. 6

   B.   Preelection Residency Confirmation Postcard ........................... 8

      1.   National Change of Address System (NCOA) Data ................. 10

      2.   County Voter Information Guide .................................. 11

      3.   Consumer Credit Reporting Agency ............................... 12

   C.   Alternative Residency Confirmation (ARC) Postcard .................... 13

V.   Address Confirmation Notices; Updating, Inactivating, and Cancelling Voter
     Registration Records ........................................................... 15

   A.   Address Confirmation Notices Sent for In-State Moves .................. 15

   B.   Address Confirmation Notices Sent for Out-of-State Moves ............. 17

   C.   Address Confirmation Notices Sent If No Forwarding Address ........... 18

   D.   Updating or Inactivating Registrations Based on Responses to Address
        Confirmation Notices ....................................................... 19

      1.   Elections Code Section 2225(b) .............................. 19

2.     Elections Code Section 2225(c) or Section 8(d)(2) of the NVRA .. 20

E.    Cancelling Registrations After Two General Federal Elections .............. 20

Reissued September 2019

## I.  Overview

Promoting the exercise of the fundamental right to vote and facilitating voter participation in elections is at the heart of the NVRA. (52 U.S.C. § 20501.) Exemplifying these principles, the purposes of the NVRA are fourfold: "(1) to establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office; (2) to make it possible for Federal, State, and local governments to implement this chapter in a manner that enhances the participation of eligible citizens as voters in elections for Federal office; (3) to protect the integrity of the electoral process; and (4) to ensure that accurate and current voter registration rolls are maintained."

Section 8[1] of the NVRA requires that any list maintenance program aimed at ensuring the integrity of voter registration rolls conforms to certain basic requirements, and be uniform, nondiscriminatory and in compliance with the Voting Rights Act of 1965. (52 U.S.C.      § 20507.) Section 8 also establishes specific requirements concerning (1) voter registration processing; (2) notices to voters regarding the disposition of voter registration applications; (3) maintenance of a general program that makes a "reasonable effort to remove the names of ineligible voters from the lists of eligible voters" by reason of death or change in the residence of the registrant. (52 U.S.C. § 20507.) And, Section 8(d) provides that voters shall not be removed from the official list of eligible voters on the ground that the registrant has changed residence unless (1) the registrant confirms in writing a change of residence outside the registrar's jurisdiction, or (2) the registrant has failed to respond to an address confirmation notice in the form specified in Section 8(d)(2), and has not offered or appeared to vote in any election within the next two federal general election cycles following the date of the address confirmation notice.

California law imposes its own requirements regarding notifications to persons who register to vote and list maintenance activities.  The following sections describe these state law requirements and their relationship to the requirements under Section 8 of the NVRA.

## II. Acceptance of Valid Voter Registration Application

The NVRA specifies the time period for accepting valid voter registration applications (also known in the paper form as voter registration cards (VRCs)), and for determining eligibility for an upcoming election.  The NVRA requires states to accept valid voter registration applications submitted to any NVRA voter registration agency by the state's voter registration deadline, which in California is 15 days before each election. (Elec. Code, § 2102; 52 U.S.C. § 20507(a)(1).)[2]

---

[1] Throughout this chapter, "Section 8" refers to 52 U.S.C. § 20507.

[2] In California, conditional voter registration (CVR) and CVR provisional voting is available following the 15-day close of registration up through and including Election Day.  CVR and CVR provisional voting are offered at all permanent offices of the county elections official, all vote centers, and

Under the NVRA, a voter registration application must be accepted as timely for an upcoming election if it is received in one of the following ways:

By an elections official by mail, and was:
- *Postmarked* on or before the voter registration deadline

By the Department of Motor Vehicles (DMV), and was:
- *Submitted* to DMV on or before the voter registration deadline

By another NVRA voter registration agency, and was:
- *Accepted* at the agency on or before the voter registration deadline

By an elections official, and was:
- *Received* by the elections official on or before the voter registration deadline

(52 U.S.C. § 20507(a)(1)(A)-(D).)

California law generally mirrors the NVRA with respect to the time periods for determining eligibility. Under California law, a voter registration deadline is 15 days prior to the election. (Elec. Code, §§ 2102 (a)(1)-(4), 2114, 2119(d)(1)-(4).) California law also provides for registration over the internet through the California Online Voter Registration Application, which must be submitted on or before the 15-day voter registration deadline. (Elec. Code, § 2196.) The Secretary of State has issued a revised guidance document, "Updating Voter Registration Dates," for county elections officials to use when adding or updating voter registration dates. (See guidance document, Updating Voter Registration Dates, revised, attached as Appendix C.) This guidance document addresses the applicable registration date for voter registration applications submitted to and/or processed by an NVRA registration agency.

The DMV and other agencies designated as NVRA voter registration agencies must transmit completed paper VRCs to elections officials within 10 days of acceptance and within five days, if accepted within five days of the voter registration deadline. (52 U.S.C. §§ 20504(e), 20506(d).) As a best practice, the Secretary of State recommends daily transmittal of paper VRCs to elections officials to minimize the potential for delay and to ensure that eligible voters can vote in an upcoming federal, state, and local election.

County elections officials must process voter registration applications immediately. (Cal. Code Regs., tit. 2, § 20108.40.) While delays may occur in the transmittal of voter registration applications from the DMV or another NVRA voter registration agency, elections offices must nevertheless process as timely, completed

---

designated satellite offices, which can include polling places if in compliance with Section 20023(d) of Title 2 of the California Code of Regulations. (Elec. Code, § 2170; Cal. Code Regs., tit. 2, § 20021.)

applications that are: (1) accepted by the DMV or another NVRA voter registration agency on or before the voter registration deadline, and (2) received by the elections official prior to the certification of the election.  (Elec. Code, § 2102(a)(2); Cal. Code Regs., tit. 2, § 20108.18(b)(3).)

## III. Notification of Disposition of Voter Registration Application: Voter Notification Card

Section 8 of the NVRA requires that elections officials notify each voter registration applicant of the disposition of his or her voter registration application, for instance, whether the application is accepted or rejected, or whether additional information is needed.  (52 U.S.C. § 20507(a)(2).)

While the NVRA is silent with respect to a particular method for notifying an applicant about the disposition of his or her application, state law provides for the following methods and requirements.

### A. Application Accepted

A completed voter registration application must contain the following statutorily required information: facts establishing the applicant as an elector, the applicant's name, place of residence, mailing address if different than the place of residence, date of birth, country of birth, driver license (or state identification card) number or last four digits of social security number, and that the applicant is not in state or federal prison for a felony conviction. (Elec. Code, § 2150(a).)  The application must also certify as to the truthfulness and correctness of the contents and be signed under penalty of perjury.  (Elec. Code, § 2150(b).)

In California, when a voter registration application is processed and the applicant's eligibility is verified, the application is accepted and the applicant becomes a registered voter, or if it is a reregistration, the voter's existing registration record is updated. (Elec. Code, §§ 2102, 2115, 2119, 2155, 2170.)  Once an application is accepted or a registration updated (including the updating of a mailing address), the county elections official must provide notification to the voter by mailing a *non-forwardable* Voter Notification Card (VNC).[3]  (Elec. Code, § 2155.)  County elections officials mail the VNCs to the residence address listed, unless a separate mailing address has been provided.   California law allows the county elections official to notify applicants of properly executed affidavits of registration by text message or email that their voter registration information has been received and that they will receive a VNC.  (Elec. Code, § 2155.4.)

---

[3] Pursuant to California law, county elections officials also mail a VNC upon receipt of an address correction notice or letter responding to a mailing under Elections Code sections 2119, 2155, 2220 through 2226, or the NVRA.  (Elec. Code, §§ 2155, 2155.3.)

Elections Code section 2155 provides that the voter notification shall be in substantially the following form:

## VOTER NOTIFICATION

You are registered to vote. The party preference you chose, if any, is on this card. This card is being sent as a notification of:

1. Your recently completed affidavit of registration.

OR,

2. A change to your registration because of an official notice that you have moved. If your residence address has not changed or if your move is temporary, please call or write to our office immediately.

OR,

3. Your recent registration with a change in party preference. If this change is not correct, please call or write to our office immediately.

You may vote in any election held 15 or more days after the date on this card.

Your name will appear on the roster kept at the polls.

Please contact our office if the information shown on the reverse side of this card is incorrect.

(This language is also found in Appendix D, Recommended Language for List Maintenance Mailings, revised; a diagram related to this and other mailings is attached as Appendix E.)   The VNC satisfies the NVRA's requirement to notify each voter registration applicant of the disposition of his or her registration application.  (52 U.S.C. § 20507(a)(2).)

## B. Application Rejected or Request to Cure Defect

A county elections official may reject an application if (1) the applicant does not meet the qualifications for registering to vote; or (2) the application is missing required information, and the missing information does not have an applicable rebuttable presumption and the elections official cannot obtain the information from the applicant. (Elec. Code, §§ 2150, 2153, 2154.)

When required information is missing from the voter registration application, county elections offices must attempt to contact the applicant. (Elec. Code, §§ 2150, 2153.) For example, if an applicant has not checked the "Yes" box to indicate U.S. citizenship and instead left the U.S. citizenship check box on the application blank, the application cannot be accepted; the county elections official must attempt to contact the applicant to seek this information. (See Elec. Code, §§ 2111, 2112, 2150(a)(1), 2153; 52 U.S.C. § 21083(b)(4)(A), (B) (HAVA).)

Generally, if required information is missing, but the mailing address is legible, the county elections official must send the applicant a new VRC or document requesting the missing information. With respect to the effective date of the affidavit, the following guidance has been provided:

If upon initial submission, a signature is missing:

after the applicant returns the VRC or document with the signature, the voter registration application must be processed, and the voter registered with an <u>effective date of the date the unsigned affidavit was initially received</u>.

If upon initial submission other information, such as a date of birth, name, or citizenship affirmation is missing, or if the applicant used a PO Box or business address as a residence address, or if the stated address is nonexistent:

after the applicant returns the VRC or document providing the missing information, the voter registration application must be processed, and the voter registered with an <u>effective date of the date the affidavit is completed or the missing information is received</u>.

(See Appendix C, Updating Voter Registration Dates, revised for further information and exceptions.) If no response is received from the applicant, then the applicant shall not be registered. (Elec. Code, § 2153.)

However, if the voter registration application is executed under penalty of perjury, and the missing information falls within the "rebuttable presumption" category, the application cannot be rejected, and the county elections official is not required to contact the applicant for this information. (Elec. Code, § 2154.) The following are rebuttable presumptions set forth in California law:

- No middle name or initial is provided – the presumption is that none exists.

- No party preference is provided – the presumption is that the applicant declined to disclose a party preference.[4]

- No execution date is provided – the presumption is that the application was executed on or before the 15-day close of registration, provided that the county elections official either: (1) received the application on or before the 15-day close; or (2) received by mail the application and it is postmarked on or before the 15-day close.

- No state of birth within the United States is provided, but instead "U.S.A.," "United States," or other indication of the United States is provided – the presumption is that the applicant was born in a state or territory of the United

   States. The affiant's failure to furnish his or her place birth shall not preclude his or her affidavit of registration from being deemed complete. However, as stated above, the affiant must have checked the "Yes" box to indicate U.S. Citizenship before an affidavit of registration can be deemed complete.

   (Elec. Code, § 2154(a)-(d).)

If the application is rejected for other reasons, the county elections officials must notify the applicant of the reason for rejection. (Elec. Code, § 2153; 52 U.S.C. § 20507(a)(2).)


## IV. Residency Confirmation Procedures and Mailings

Section 8 requires that the state "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of" death or change of address. (52 U.S.C. § 20507(a).) The NVRA does not mandate any particular method of identifying ineligible voters. State law, however, provides several methods for elections officials to confirm registrants' addresses in compliance with NVRA requirements, as described below.[5]

---

[4] Updates to a voter registration record through a California Department of Motor Vehicles (DMV)-based voter registration transaction are handled differently: when an applicant updates his or her voter registration record, but does not indicate a party preference, and a preference had previously been chosen, the party preference reverts to the most recent party preference. (See Section III of Chapter 2, Voter Registration at Department of Motor Vehicles (DMV).)

[5] In addition to the residency confirmation procedures provided in Elections Code sections 2220-2226 and set forth in this Section, the Secretary of State receives and sends on to county elections officials change-of-address information from specific transactions at the DMV. (See Chapter 2, Voter Registration at Department of Motor Vehicles (DMV).)

Some of these methods to confirm addresses may result in elections officials placing a voter's registration on inactive status, as described below.   Under California law, voters with an inactive status are not mailed election materials, and they are not taken into consideration in determining the number of signatures required for qualification of candidates or ballot measures, precinct size, or other election administration processes.  (Elec. Code, § 2226(a)(2).)  It is the Secretary of State's recommendation that a list of inactive voters, in addition to the required list of active voters, be provided to each polling place in the county.  (Elec. Code, §§ 349.5, 359, 359.2, 2183, 2191, 2226(c).)  If the county elections official provides a list of inactive voters to the polling place and an inactive voter offers/appears to vote and is on the list, the voter shall be provided a nonprovisional ballot to vote.  If the county elections official does not provide a list of inactive voters to the polling place or if a list is provided, but the inactive voter is not on the list and the inactive voter offers/appears to vote, the voter shall be provided an opportunity to vote provisionally.  (Elec. Code, § 14310.)

## A. Voter Notification Card (VNC)

As described in Section III above, "Notification of Disposition of Voter Registration Application: Voter Notification Card," California law requires a Voter Notification Card (VNC) to be sent to each voter registration applicant who submits a properly executed and complete voter registration application, including a reregistration and a change of mailing address. (Elec. Code, §§ 2155, 2155.3.) Additionally, county elections officials must also send VNCs upon the receipt of an address correction notice or letter responding to a mailing under Elections Code section 2119, Article 2 (commencing with Section 2220), or the NVRA.[6]  (Elec. Code, § 2155.)

The purpose of the VNC is two-fold: (a) to notify the applicant that he or she is registered to vote, and (b) to confirm the voter's address and voter preference information.  (Elec. Code, § 2155.) The voter notification shall state the party preference for which the voter has registered in the following format: "Party: (Name of political party)."

VNC cards are *non-forwardable,* first-class mail sent to the residence address listed on the voter's registration application, unless a separate mailing address has been provided.   The post office provides updated information if the VNC cannot be delivered as addressed but does not forward it to the addressee.

A voter's voter registration will remain active even if the voter does not respond to a VNC.

---

[6] This includes voter registration applications and change-of-address information received from specific transactions at the DMV.  (See Chapter 2, Voter Registration at Department of Motor Vehicles (DMV).)

If a voter replies to a VNC with an address change within his or her county, the county elections official shall update the voter's registration record and send a VNC to the new address.  If the voter replies with a residence address change in another county, the county elections official of the former county shall alert the county elections official associated with the new residence address through use of the statewide voter registration system (in the statewide voter registration system this is known as the "push voter" function); the county elections official associated with the voter's new residence address shall send a new VNC to the new address. (Elec. Code, §§ 2119, 2120, 2155, 2226(a)(1); 52 U.S.C. §§ 20507(d)(3), (f); see also Section V, "Address Confirmation Notices; Updating, Inactivating, and Cancelling Voter Registration Records.")

If a VNC is returned by the post office, it will be treated as a notice of change of address and subsequently, a *forwardable* address confirmation mailing will be sent to the voter.

If the address change is to an address in the same county, the county elections official shall update the voter's registration record and send an address confirmation mailing that complies with Elections Code section 2225(b) to the new address.

If the address change is in another county, the county elections official of the former county shall alert the county elections official associated with the new residence address through use of the statewide voter registration system (in the statewide voter registration system this is known as the "push voter" function); the county elections official associated with the voter's new residence address shall send an address confirmation mailing that complies with Elections Code section 2225(b) to the new address.

If the address change is to another state, if there is no forwarding address, or a returned mailing indicates that the voter does not live at that address, the county elections official shall update the voter's registration record to inactive and send a confirmation mailing that complies with Section 8(d)(2) or Elections Code section 2225(c).

(See Elec. Code, §§ 2225, 2226; 52 U.S.C. § 20507(c)(1)(B), (d)(2); see also Section V, "Address Confirmation Notices; Updating, Inactivating, and Cancelling Voter Registration Records"; a diagram related to this and other mailings is attached as Appendix E.)

## B. Preelection Residency Confirmation Postcard

California law also requires county elections officials to conduct a residency confirmation procedure at least 90 days before the direct primary election.

(Elec. Code, § 2220(a).)  This confirmation is initiated by mailing a *non-forwardable* postcard, sent "Address Correction Requested, Return Postage Guaranteed," to each registered voter of the county prior to a direct primary election.  The postcard must be in substantially the following form:

> We are requesting your assistance in correcting the addresses of voters who have moved and have not reregistered.
>
> 1. If you still live at the address noted on this postcard, your voter registration will remain in effect and you may disregard this notice.
>
> 2. If the person named on this postcard is not at this address, please return this postcard to your mail carrier.

(Elec. Code, § 2220(a).)  (This language is also found in Appendix D, Recommended Language for List Maintenance Mailings, revised; a diagram related to this and other mailings is attached as Appendix E.) The county elections official is not required to mail a preelection residency confirmation postcard to any voter who has voted at an election in the last six (6) months or to any person who will not be 18 years of age on or before the direct primary election.  (Elec. Code, § 2220(b).)

A voter's voter registration will remain active even if the voter does not respond to a preelection residency confirmation postcard.

If a voter replies to a preelection residency confirmation postcard with an address change within their county, the county elections official shall update the voter's registration record and send a VNC to the new address.  If the voter replies to a preelection residency confirmation postcard with a residence address change in another county, the county elections official of the former county shall alert the county elections official associated with the new residence address through use of the statewide voter registration system (in the statewide voter registration system this is known as the "push voter" function); the county elections official associated with the voter's new residence address shall send a VNC to the new address.  (Elec. Code, §§ 2119, 2120, 2155, 2226(a)(1); 52 U.S.C. §§ 20507(d)(3), (f); see also Section V, "Address Confirmation Notices; Updating, Inactivating, and Cancelling Voter Registration Records.")

If a preelection residency confirmation postcard is returned by the post office, it will be treated as a notice of change of address and subsequently, a *forwardable* address confirmation mailing shall be sent to the voter, as specified in Elections Code section 2221(a).

If the address change is to an address in the same county, the county elections official shall update the voter's registration record and send an address confirmation mailing that complies with Elections Code section 2225(b) to the new address.

If the address change is in another county, the county elections official of the former county shall alert the county elections official associated with the new residence address through use of the statewide voter registration system (in the statewide voter registration system this is known as the "push voter" function); the county elections official associated with the voter's new residence address shall send an address confirmation mailing that complies with Elections Code section 2225(b) to the new address.

If the address change is to another state, if there is no forwarding address, if it is returned by the post office as undeliverable, or if a returned mailing indicates that the voter is not at that address, the county elections official shall update the voter's registration record to inactive and send a confirmation mailing that complies with Section 8(d)(2) or Elections Code section 2225(c).

(See Elec. Code, §§ 2221(a), 2225, 2226[7]; 52 U.S.C. § 20507(c)(1)(B), (d)(2); see also Section V, "Address Confirmation Notices; Updating, Inactivating, and Cancelling Voter Registration Records.")

As an alternative to the preelection residency confirmation postcard, county elections officials may use any of the following methods:

## 1. National Change of Address System (NCOA) Data

In California, the Secretary of State obtains National Change of Address System (NCOA) data from the California Employment Development Department and forwards the information to the county elections officials through the statewide voter registration system. (Elec. Code, § 2222; 52 U.S.C. § 20507(c)(1)(A).)

If the NCOA data indicates a change of address, it shall be treated as a notice of change of residence and subsequently, a *forwardable* address confirmation mailing shall be sent to the voter.

---

[7] As described below in Section V, "Address Confirmation Notices; Updating, Inactivating, and Cancelling Voter Registration Records," although Elections Code section 2226(a)(2) provides that county elections officials "may" place a voter on inactive status based on the return of certain mailings as undeliverable, the Secretary of State recommends that county elections officials place all such voters on inactive status. This will help maintain uniform practices across the state and facilitate compliance with federal requirements for cancelling voter registrations, in certain circumstances.

If the address change is to an address in the same county, the county elections official shall update the voter's registration record and send an address confirmation mailing that complies with Elections Code section 2225(b) to the new address.

If the address change is in another county, the county elections official of the former county shall alert the county elections official associated with the new residence address through use of the statewide voter registration system (in the statewide voter registration system this is known as the "push voter" function); the county elections official associated with the voter's new residence address shall send an address confirmation mailing that complies with Elections Code section 2225(b) to the new address.

If the address change is to another state or if there is no forwarding address, the county elections official shall update the voter's registration record to inactive and send a confirmation mailing that complies with Section 8(d)(2) or Elections Code section 2225(c).

(See Elec. Code, §§ 2225, 2226; 52 U.S.C. § 20507(c)(1)(B), (d)(2); see also Section V, "Address Confirmation Notices; Updating, Inactivating, and Cancelling Voter Registration Records.")

## 2. County Voter Information Guide

County elections officials may include the return address of the county elections official's office on the outside portion of the county voter information guide or envelope mailed to the voter for an election conducted within the last six (6) months preceding the start of the confirmation process, along with the following statement:

Address Correction Requested and Notice:

If the person named on the county voter information guide is not at the address, please help keep the voter rolls current and save taxpayer dollars by returning this county voter information guide to your mail carrier.

(Elec. Code, § 2223; this language is also found in Appendix D, Recommended Language for List Maintenance Mailings, revised; a diagram related to this and other mailings is attached as Appendix E.)

If the results of these efforts indicate a change of address from a physical mail back or an Address Change Service (ACS) electronic file, it will be treated as a notice of change of address and subsequently, a *forwardable* address confirmation mailing will be sent to the voter.

If the address change is to an address in the same county, the county elections official shall update the voter's registration record and send an address confirmation mailing that complies with Elections Code section 2225(b) to the new address.

If the residence address change is in another county, the county elections official of the former county shall alert the county elections official associated with the new residence address through use of the statewide voter registration system (in the statewide voter registration system this is known as the "push voter" function); the county elections official associated with the voter's new residence address shall send an address confirmation mailing that complies with Elections Code section 2225(b) to the new address.

If the address change is to another state, if there is no forwarding address, if this mailing is returned by the post office as undeliverable, if the ACS file indicates that the mailing is undeliverable, or if a returned mailing indicates that the voter is not at that address, the county elections official shall update the voter's registration record to inactive and send a confirmation mailing that complies with Section 8(d)(2) or Elections Code section 2225(c).

(See Elec. Code, §§ 2225, 2226[8]; 52 U.S.C. § 20507(c)(1)(B), (d)(2); see also Section V, "Address Confirmation Notices; Updating, Inactivating, and Cancelling Voter Registration Records.")

### 3. Consumer Credit Reporting Agency

County elections officials may contract with a consumer credit reporting agency or its licensees to obtain use of change-of-address data. (Elec. Code, § 2227.) If the results of these efforts indicate a change of address, the county elections official shall send a

---

[8] As described below in Section V, "Address Confirmation Notices; Updating, Inactivating, and Cancelling Voter Registration Records," although Elections Code section 2226(a)(2) provides that county elections officials "may" place a voter on inactive status based on the return of certain mailings as undeliverable, the Secretary of State recommends that county elections officials place all such voters on inactive status. This will help maintain uniform practices across the state and facilitate compliance with federal requirements for cancelling voter registrations, in certain circumstances.

*forwardable* notice, including a postage-paid and preaddressed return form, which may be in the form of a postcard, to the registered voter to enable the voter to verify or correct address information. The *forwardable* notice shall be in substantially the following form:

> We have received notification that you have moved to a new residence address in _____ County. You will remain registered to vote at your old address unless you notify our office that the address to which this card was mailed is a change of your permanent residence. Please notify our office in writing by returning the attached postage-paid postcard. If this is not a permanent residence, and you do not wish to change your address for voting purposes, please disregard this notice.

(This language is also found in Appendix D, Recommended Language for List Maintenance Mailings, revised; a diagram related to this and other mailings is attached as Appendix E.) The results of this mailing can only be used to update a voter's record or confirm their address. A voter's registration record cannot be changed to inactive status or cancelled for failure to respond to this postcard or if the postcard is returned as undeliverable. (Elec. Code, § 2227(f).) To initiate the inactivation or cancellation process, a different residency confirmation procedure must be used. (See, e.g., Elec. Code, §§ 2220-2226.)

## C. Alternative Residency Confirmation (ARC) Postcard

California county elections officials currently have the option of sending an alternative residency confirmation (ARC) postcard. (Elec. Code, § 2224[9].) These ARC postcards may be sent if a voter has not voted in an election within the preceding four (4) years, and the voter's residence address, name, or party preference has not been updated during that time. This ARC postcard may be sent subsequent to NCOA or county voter information guide returns but shall not be used as the residency confirmation process conducted under Elections Code section 2220. (Elec. Code, § 2224(a).)

Since ARC postcards are sent based only on voter inactivity, the Secretary of State does not consider a failure to respond to ARC postcards to be a reliable indicator of a possible change of address, and thus discourages the use of ARC postcards.

If elections officials do send ARC postcards, such postcards should strictly comply with the requirements and prescribed language of Elections Code

---

[9] Assembly Bill (AB) 504 ("AB 504") (Berman) Chapter 262, Statutes of 2019, provides that Section 2224 shall become inoperative on January 1, 2020, the date AB 504 becomes effective.

section 2224.  The ARC postcard process can only lead to cancellation if the county elections official receives as a result of the ARC postcard information or a notification that the voter no longer resides in California, and then sends the voter a *forwardable* address confirmation notice that complies with Section 8(d)(2) of the NVRA.  (See Section V, "Address Confirmation Notices; Updating, Inactivating, and Cancelling Voter Registration Records.")[10]

Nevertheless, if a county elections official chooses to use the ARC process, the ARC postcard shall be *forwardable*, including a postage-paid and preaddressed return form to enable the voter to verify or correct the address information, and shall be in substantially the following form:

> If the person named on the postcard is not at this address, PLEASE help keep the voter rolls current and save taxpayer dollars by returning this postcard to your mail carrier.

> IMPORTANT NOTICE

> According to our records you have not voted in any election during the past four years, which may indicate that you no longer reside in _____ County. If you continue to reside in California you must confirm your residency address in order to remain on the active voter list and receive election materials in the mail.

> If confirmation has not been received within 15 days, you may be required to provide proof of your residence address in order to vote at future elections.

(This language is also found in Appendix D, Recommended Language for List Maintenance Mailings, revised; a diagram related to this and other mailings is attached as Appendix E.) Upon the sending of the ARC postcard, county elections official shall update the voter's registration record to reflect that the voter is an inactive voter.  (Elec. Code, § 2226(a)(2).)  The results of this ARC postcard mailing can be used to update a voter's record to that active status and can also be used to confirm their address, as is done with the other mailings.  (Elec. Code, § 2226(a)(1).)

If in response to an ARC postcard the county elections official receives information or a notification that the voter no longer resides in California, in order to initiate the cancellation process, a *forwardable* address confirmation notice that complies with Section 8(d)(2) of the NVRA must then be mailed to the voter.  (See Section V, "Address Confirmation Notices; Updating, Inactivating, and Cancelling Voter Registration Records.")

---

[10] The Stipulated Order in *Wilson v. United States of America,* is no longer applicable as it has since been superseded by legislative amendments.

## V. Address Confirmation Notices; Updating, Inactivating, and Cancelling Voter Registration Records

If county elections officials receive information indicating that a voter has moved to a new address, county elections officials send address confirmation notices as provided in California law and in NVRA Section 8(d)(2), as described below. (Elec. Code, §§ 2155, 2225, 2226; 52 U.S.C. § 20507(c), (d) and (f).)  This information may be received from the voter directly, NCOA information, as well as in response to VNCs, preelection residency confirmation postcards, county voter information guides, or alternative residency confirmation postcards.  (Elec. Code, §§ 2155, 2155.3, 2220, 2222, 2223, 2224, 2225.)

The address confirmation process may ultimately result in cancellation of a voter registration record.[11]  Cancellation of a voter registration record because of a change of address requires compliance with the address confirmation process outlined below, in accordance with NVRA Section 8(d)(2).  Thus, all address confirmation notices sent to registrants who are believed to have moved out-of-state, have no forwarding address, or have mail returned as undeliverable with no forwarding address, must comply with Section 8(d)(2) or Elections Code section 2225(c) (as modified in Section V.C, below) in order for those registrations to be cancelled.

### A. Address Confirmation Notices Sent for In-State Moves

If a county elections official receives a mailing **from the voter** indicating the voter has moved to:

- **a new address in the same county in which the voter is currently registered**, it will be treated as a notice of change of address.  The county elections official immediately shall update the registration record to show the new address and send a VNC.  (Elec. Code, § 2155.)

- **a new residence address in another county** within California, it will be treated as a notice of change of address.  The county elections official in receipt of the change-of-address information shall not remove the voter as an active voter from their county, but instead immediately shall alert the new county's county elections official about the voter's new residence address through use of the statewide voter registration

---

[11] Under Section 8 of the NVRA and California law, a voter registration record may be cancelled for a variety of reasons, such as: by written request from the voter, because of death or the voter has been found to be mentally incompetent to vote, because the voter is serving a state or federal prison sentence or is on parole for the conviction of a felony, or following the process established in California law and in NVRA Section 8(d)(2), described below, for voters who have moved to a new address. (Elec. Code, § 2201; 52 U.S.C. § 20507(a)(3), (4).)  Additional reasons for cancellation in California are: by court order, upon notification the voter is registered in another state, or upon proof that the person is ineligible to vote.  (Elec. Code, § 2201.)  Cancelled registration records may be disposed of after five (5) years.  (Elec. Code, § 17000.)

system (in the statewide voter registration system this is known as the "push voter" function). The new county's county elections official must send a VNC to the new residence address.  (Elec. Code, § 2155.)

If a county elections official receives a mailing **returned by the post office with, or NCOA data** indicating a voter has moved to:

- **a forwarding or new address in the <u>same county</u> in which the voter is currently registered**, it will be treated as a notice of change of address.  The county elections official immediately shall update the registration record to show the new address and send a *forwardable* mail notice of the address change and a postage paid, pre-addressed return form for the voter to verify or correct the address information, as described in Elections Code section 2225(b).  (Elec. Code, §§ 2222, 2225(b), 2226(a)(1); 52 U.S.C.                §§ 20507(c)(1)(B)(i), (d)(3), (f).)

- **a forwarding or new residence address in <u>another county</u> within California**, it will be treated as a notice of change of address.  The county elections official in receipt of the change-of-address information shall not remove the voter as an active voter from their county, but instead immediately shall update the registration record to show the new residence address and then alert the new county's county elections official about the voter's new residence address through use of the statewide voter registration system (in the statewide voter registration system this is known as the "push voter" function). The new county's county elections official must send a *forwardable* mail notice of the address change and a postage paid, pre-addressed return form enabling the voter to verify or correct the address information, as described in Elections Code section 2225(b).  (Elec. Code, §§ 2222, 2225(b), 2226(a)(1); 52 U.S.C. §§ 20507(c)(1)(B)(i), (d)(3).)

For these in-state moves, Elections Code section 2225(b), which has been modified below, prescribes that the language of the *forwardable* mail notice:

> We have received notification that you have moved to a new residence address in California. Your voter registration record has been updated to this new address.  If this is correct, you do not have to take any action.  If this is incorrect, you can notify our office by either returning the attached postage-paid postcard, or by calling toll free; you must notify us at least 15 days prior to the next election or you may be required to vote using a provisional ballot.

(This language mirrors the language of Section 2225(b) found in Assembly Bill (AB) 504 ("AB 504") (Berman) Chapter 262, Statutes

of 2019, which will become effective January 1, 2020 and is also found in Appendix D, Recommended Language for List Maintenance Mailings, revised; a diagram related to this and other mailings is attached as Appendix E.)  A voter with an active voter status and a new valid address within California should not be placed on inactive status and should not be subject to cancellation.  Such a voter should not receive a Section 8(d)(2) notice.

## B. Address Confirmation Notices Sent for Out-of-State Moves

If a county elections official receives a mailing **from the voter** indicating the voter has moved out of state, no address confirmation notice is required to be sent.  Instead, the county elections official shall cancel the voter's record and send the required notification to the voter regarding the cancellation of the voter's record.  (Elec. Code, § 2201(a); Cal. Code Regs., tit. 2, § 20070.)

If a mailing is returned by the post office with a **forwarding address outside California**, or if **NCOA data indicates a voter has moved outside California,** these should be treated as notices of change of address.  The county elections official must send a *forwardable* address confirmation mailing to the voter.  Upon the sending of this mail notice, the county elections official shall update the voter's record to "inactive."  This mail notice must comply with the requirements of Section 8(d)(2), in order to initiate the cancellation process.  (Elec. Code, §§ 2221(a)(1), 2225(c); 52 U.S.C. § 20507(c)(1)(A), (B)(ii), (d)(1), (2)(A), (B), (3).)

The 8(d)(2) notice must be provide a postage paid, pre-addressed return form for the voter to state his or her current address, and must explain that: (1) if the registrant did not change his or her residence, or changed residence within California, the registrant should return the card not later than 15 days prior to the date of the next election; (2) that if the card is not returned, affirmation or confirmation of the registrant's address may be required before the registrant is permitted to vote in an election during the period beginning on the date of the notice and ending on the day after the date of the second general election for Federal office that occurs after the date of the notice; (3) if the registrant does not vote in an election during that period the registrant's name will be removed from the list of eligible voters; and (4) if the registrant has changed residence to a place outside of California, the notice must include information concerning how the voter can continue to be eligible to vote.  For example, information can be provided regarding the National Mail Voter Registration Form, which can be downloaded at: https://www.eac.gov/voters/national-mail-voter-registration-form/. (52 U.S.C. § 20507(d)(2); see *Husted v. A. Philip Randolph Institute*, 138 S. Ct. 1833 (2018) attached as Appendix F.)

(This language is also found in Appendix D, Recommended Language for List Maintenance Mailings, revised; a diagram related to this and other mailings is attached as Appendix E.)

## C. Address Confirmation Notices Sent If No Forwarding Address

State law provides that notification received through **NCOA or Operation Mail that a voter has moved and has not given a forwarding address** does not require the mailing of a forwardable notice to the voter. (Elec. Code, § 2225(a).) However, under Section 8 of the NVRA, a voter's registration cannot be cancelled based on a change of address unless the registrant first receives a notice that complies with Section 8(d)(2). The Secretary of State recommends that the procedure below (for mail returned by the post office as undeliverable and with no forwarding address) be used in response to NCOA or Operation Mail notifications that a voter has moved and left no forwarding address.

If a mailing is returned by the post office as **undeliverable and with no forwarding address**, in order to begin the cancellation process, the county elections official must send a *forwardable* address confirmation mailing to the voter at that same address, which must be in substantially the form required by Elections Code section 2225(c), but that states that the voter has until 15 days before the next election to return the card in order to comply with the requirements of Section 8(d)(2) of the NVRA[12]:

> We are attempting to verify postal notification that the voter to whom this card is addressed has moved and left no forwarding address. If the person receiving this card is the addressed voter, please confirm your continued residence or provide current residence information on the attached postage-paid postcard not later than 15 days prior to the date of the next election. If you do not return this card and continue to reside in California, you may be required to provide proof of your residence address in order to vote at future elections and, if you do not offer to vote at any election in the period between the date of this notice and the second federal general election following this notice, your voter registration will be cancelled and you will have to reregister in order to vote.

(This language is also found in Appendix D, Recommended Language for List Maintenance Mailings, revised (although the language of Section 2225(c), found in AB 504, refers directly to 52 U.S.C. § 20507(d)(2)); a diagram related to this and other mailings is attached as Appendix E.) Upon

---

[12] The notice described in Elections Code section 2225(c) asks the voter to return the card within 15 days, however, Section 8(d)(2) of the NVRA requires that the notice state the voter has until 15 days before the date of the next election to return the card. (52 U.S.C. § 20507(d)(2)(A).)

the sending of this mail notice, the county elections official shall update the voter's record to "inactive."  (Elec. Code, §§ 2221(a)(1), 2225(c); 52 U.S.C. § 20507(d)(2)(A), (3).)

## D. Updating or Inactivating Registrations Based on Responses to Address Confirmation Notices

If in response to any of the address confirmation notices described above (under Elections Code section 2225(b) or (c), or pursuant to Section 8(d)(2) of the NVRA), the voter provides written confirmation of a **change of address to a new residence address in California**, the county elections official shall update the voter's registration, through use of the statewide voter registration system and use the "push voter" functionality if the voter has moved to a new county in California.  (Elec. Code, § 2226(a)(1).)  The county elections official for the voter's new residence address shall then send a VNC to confirm the change in registration.  (Elec. Code, § 2155.)

### 1. Elections Code Section 2225(b)

**If a voter does not return an address confirmation notice sent in accordance with Elections Code section 2225(b)**, the voter's status shall remain active.

If an address confirmation notice sent pursuant to Elections Code section 2225(b) **returned as undeliverable**, the voter's status shall be changed to inactive upon receipt of the returned mail.  (Elec. Code, § 2226(a)(2).)   Although Elections Code section 2226(a)(2) provides that county elections officials "may" place a voter on inactive status based on the return of certain mailings as undeliverable, the Secretary of State recommends that county elections officials place all such voters on inactive status.  This will help maintain uniform practices across the state and facilitate compliance with the requirement under the Help America Vote Act (HAVA) and the NVRA to cancel registrations of voters who failed to return an address confirmation notice sent in accordance with Section 8(d)(2) or Elections Code section 2225(c), and who do not vote in an election during the period beginning on the date of the notice and ending on the day after the date of the second general election for federal office that occurs after the date of the notice.   (52 U.S.C. §§ 21803(a)(4)(A),  20507(a)(4),  (d)(3);  see also Section V.E, "Cancelling Registrations After Two General Federal Elections.")

Note that if a notice sent pursuant to Elections Code section 2225(b) is returned as undeliverable, in order to initiate the cancellation process, a *forwardable* address confirmation notice that complies with Section 8(d)(2) of the NVRA must then be mailed to the voter.

2. **Elections Code Section 2225(c) or Section 8(d)(2) of the NVRA**

**If a voter does not return an address confirmation notice sent in accordance with Elections Code section 2225(c) or Section 8(d)(2) of the NVRA,** the voter's status shall remain inactive. In accordance with NVRA section 8(d)(2), should the voter contact the county elections official at least 15 days prior to the next election, the county elections official will update the voter's voter registration record to that of active. (Elec. Code, § 2225(c).)

If an address confirmation notice sent pursuant to Elections Code section 2225(c) or Section 8(d)(2) of the NVRA is **returned as undeliverable,** the voter's status remains as inactive.

If, on or before the second general election for federal office after the address confirmation notice is sent, a voter with inactive status has not moved to a different state and (1) offers to vote in **any** election,[13] or (2) notifies the county elections official of continued residency, the county elections official shall restore the voter's status to active. (Elec. Code, § 2226(c); 52 U.S.C. § 20507(e).)

E. **Cancelling Registrations After Two General Federal Elections**

If a voter fails to return an address confirmation notice sent in accordance with Elections Code section 2225(c) or Section 8(d)(2) as set forth above; does not offer or appear to vote in any election within the next two federal general election cycles following the mailing of that notice; and does not notify a county elections official of continued residency within California,[14] the county elections official must update the voter's registration record to reflect that the registration is cancelled. (Elec. Code, §§ 2225(c), 2226(b); 52 U.S.C. §§ 21803(a)(4)(A), 20507(a)(4), (d)(3); see *Husted v. A. Philip Randolph Institute*, attached as Appendix F.)

---

[13] The following is a non-exhaustive list of examples of offering to vote: interactions with county elections official relating to the voter's registration record, submittal of a vote-by-mail application, and voting provisionally.)

[14] This notification to a county elections official may be made directly by the voter, or through a voter registration application or change-of-address information received from specific transactions at the DMV. (See Chapter 2, Voter Registration at Department of Motor Vehicles (DMV).)

Exhibit B

**ALEX PADILLA | SECRETARY OF STATE | STATE OF CALIFORNIA**
ELECTIONS DIVISION
1500 11th Street, 5th Floor, Sacramento, CA 95814 | **Tel** 916.657.2166 | **Fax** 916.653.3214 | www.sos.ca.gov

March 27, 2019

County Clerk/Registrar of Voters (CC/ROV) Memorandum # 19030

TO:           All County Clerks/Registrars of Voters

FROM:       /s/ Rachelle C. Delucchi
              Elections Counsel

RE:           Publication: 2019 California NVRA Manual

The 2019 California National Voter Registration Act (NVRA) Manual is now available on our website at https://www.sos.ca.gov/elections/voter-registration/nvra/laws-standards/nvra-manual/.

This updated manual includes the following chapters:

Chapter 1 - Executive Summary

Chapter 2 - Voter Registration at Department of Motor Vehicles (DMV)
              [to be released later this year]

Chapter 3 - NVRA Implementation at Public Assistance Agencies, Agencies
              Serving People with Disabilities, and Other Designated Agencies

Chapter 4 - Voter Registration and Voter List Maintenance

Chapter 5 - Provisional Voting

Chapter 6 - Record Keeping and Reporting Requirements

Chapter 7 - The National Mail Voter Registration Form

While the entire 2019 California NVRA Manual has been updated, the highlights of the updates are as follows:

**Chapter 2** of this manual, formerly Chapters 2 and 3 (to be released later this year), will contain information related to all aspects of voter registration at DMV.

**Chapter 3**, formerly Chapter 4, contains information on the NVRA and California's voter registration agencies (VRAs). This chapter contains information on the VRAs

CCROV # 19030
March 27, 2019
Page 2

and updated procedures related to the newest VRAs (offices serving students with disabilities at the public universities and community colleges, and the Office of Services to the Blind, Assistance Dog Special Allowance program at the Department of Social Services).

**Chapter 4** of this manual, formerly Chapter 5, contains updated information related to list maintenance procedures that are consistent with the California Elections Code and federal NVRA. Section I provides an overview of the federal requirements for voter registration procedures and list maintenance programs. Section II addresses the acceptance of voter registration applications. Section III addresses the federal requirement related to notification of the disposition of a voter registration application. Section IV addresses residency confirmation processes and mailings. Section V provides information related to address confirmation notices, as well as updating, inactivating, and cancelling voter registration records. Section V also contains specific reference to *Husted v. A. Philip Randolph Inst.,* 138 S.Ct. 1833 (2018) and the requirement to cancel the voter registration record of a voter who has failed to respond to an NVRA Section 8(d)(2) notice and then fails to vote, offer to vote, correct their voter registration record, or otherwise have their eligibility to vote confirmed for a period of time including the next two general federal elections.

An **appendix section** of the manual includes recommended language for the required mailings discussed in Sections III, IV, and V of Chapter 4.

Our office will offer the following training sessions on the topic of list maintenance, and, specifically, residency confirmation processes and mailings, as well as address confirmation notices:

- Tuesday, April 9 – Shasta County

- Wednesday, April 10 – Sacramento County

- Thursday, April 18 – Orange County

An invitation for these training sessions will be sent out in a separate communication to the counties.

If you have any questions, please feel free to contact me at rdelucch@sos.ca.gov.

# Exhibit B

*XAVIER BECERRA*
*Attorney General*

*State of California*
*DEPARTMENT OF JUSTICE*

455 GOLDEN GATE AVENUE, SUITE 11000
SAN FRANCISCO, CA  94102-7004

Public:  (415) 510-4400
Telephone:  (415) 510-3817
Facsimile:  (415) 703-1234
E-Mail:  Patty.Li@doj.ca.gov

December 5, 2019

**VIA OVERNIGHT MAIL AND E-MAIL**
Robert D. Popper
Judicial Watch
425 Third St. SW, Suite 800
Washington, DC 20024
rpopper@judicialwatch.org

Dear Mr. Popper:

I write on behalf of California Secretary of State Alex Padilla, in response to your letters dated October 4, November 15, and November 22, 2019 regarding alleged violations of 52 U.S.C. § 20507 by Imperial, Monterey, San Diego, San Francisco, San Mateo, Solano, Stanislaus, and Yolo Counties. Your letters are primarily concerned with those counties' list maintenance practices and whether they comport with the National Voter Registration Act ("NVRA"). Under California's system for administering elections, each county has primary responsibility for carrying out its list maintenance practices in accordance with California and federal law. As set forth below, California law requires counties to engage in numerous list maintenance activities. Compliance with these requirements satisfies the obligation under the NVRA to "conduct a general program to make a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of" change in a registrant's residence. (52 U.S.C. § 20507(a)(4).) In addition, the Secretary of State has issued detailed guidance and has conducted in-person and webinar trainings for county elections officials on this topic. And, California law has been recently amended to conform to the Supreme Court's 2018 decision regarding the cancellation of voter registrations under the NVRA, *Husted v. A. Philip Randolph Inst.*, 138 S. Ct. 1833 (2018). Taken together, these California laws and the related guidance and training offered by the Secretary of State, as well as the commitments made (and kept) by the Secretary of State under its prior settlement with Judicial Watch, constitute a general program that makes a reasonable effort to maintain accurate lists of eligible voters.

**List Maintenance Requirements Under California Law**

The NVRA does not mandate any particular method of identifying ineligible voters, as part of a general program to remove ineligible voters. Elections officials in California must follow the procedures for confirming registrants' addresses set forth in California Elections Code sections 2220 through 2226. Those procedures are described

December 5, 2019
Page 2

in detail in Chapter 4 of the 2019 California NVRA Manual, which is entitled "Voter Registration Applications and Voter List Maintenance" and is attached hereto as Exhibit A. These procedures include:

- the sending of voter notification cards (Elec. Code, §§ 2155, 2155.3);

- the use of a preelection residency confirmation postcard (Elec. Code, § 2220) or an alternative procedure, such as

  o the use of national change of address data from the U.S. Postal Service (Elec. Code, § 2222);

  o the mailing of county voter information guides with address correction requests (Elec. Code, § 2223); or

  o obtaining change-of-address data from a consumer credit reporting agency (Elec. Code, § 2227);

- the sending of address confirmation notices in response to information indicating that a registrant has moved (Elec. Code, §§ 2155, 2225, 2226);

- the intra- or inter-county transfer of voter registrations, when appropriate (Elec. Code, § 2155);

- the placement of voter registration records on inactive status, when appropriate (Elec. Code, § 2221, 2225); and

- the cancellation of voter registrations when all requirements of Section 8(d)(2) of the NVRA (52 U.S.C. § 20507(d)(2)) have been satisfied (Elec. Code, §§ 2225, 2226).[1]

Thus, in accordance with these requirements under California law, county elections officials conduct list maintenance through confirmatory mailings, the use of change-of-address data, the placement of voters on inactive status, and ultimately cancellation of registrations in compliance with Section 8(d)(2) of the NVRA.

**Cancellation of Voter Registrations in Accordance with Section 8 of the NVRA**

Section 8(b)(2) of the NVRA prohibits the cancellation of a registration for failure to vote, and Section 8(d)(2) authorizes cancellation on the ground that the registrant has

---

[1] In addition to these procedures, Elections Code section 2224 authorizes the optional use of an alternative residency confirmation postcard. However, that section will become inoperative on January 1, 2020. (Cal. Stats. 2019, ch. 262, § 4.)

December 5, 2019
Page 3

changed residence only after a qualifying notice has been sent[2] and certain conditions are thereafter satisfied.  (52 U.S.C. §§ 20507(b)(2), (d)(2).)  A qualifying notice can be sent in response to information indicating that the registrant has moved out-of-state, or has moved and left no forwarding address.  (Elec. Code, §§ 2221(a)(1), 2225(c).)  After this, if a voter fails to return the address confirmation notice; does not offer or appear to vote in any election within the next two federal general election cycles following the mailing of that notice; and does not notify a county elections official of continued residency within California, the county elections official must update the voter's registration record to reflect that the registration is cancelled.  (Elec. Code, §§ 2225(c), 2226(b); 52 U.S.C. §§ 21803(a)(4)(A), 20507(a)(4), (d)(3); *Husted*, 138 S.Ct. at 1841-42.)

Currently, Elections Code section 2226 authorizes, but does not require, cancellation once Section 8(d)(2) requirements have been met.  This reflects the California Legislature's previous understanding that cancellation was authorized, but not required, by the NVRA.  Although Section 8(d)(2) does not explicitly require cancellation, the Supreme Court clarified in its 2018 *Husted* decision that cancellation is mandatory, under federal law.  The decision states that, with respect to cancellations pursuant to Section 8(d), "Not only are States allowed to remove registrants who satisfy these requirements, but federal law makes this removal mandatory."  (138 S.Ct. at 1841-42, citing 52 U.S.C. § 20507(d)(3); 52 U.S.C. § 21083(a)(4)(A).)

As you know, Judicial Watch and the Secretary of State were both parties in the *Judicial Watch v. Logan* litigation,[3] concerning the list maintenance practices of Los Angeles County and cancellation obligations under Section 8 of the NVRA.  In that litigation, the parties entered into a settlement agreement that required the Secretary of State to update the California NVRA Manual to reflect the Supreme Court's interpretation of Section 8 in *Husted*.  The 2019 California NVRA Manual incorporates this interpretation of Section 8.  In addition, the Legislature recently amended the

---

[2] An address confirmation notice that begins the Section 8(d)(2) cancellation process must provide a postage paid, pre-addressed return form for the voter to state his or her current address, and must explain that: (1) if the registrant did not change his or her residence, or changed residence within California, the registrant should return the card not later than 15 days prior to the date of the next election; (2) that if the card is not returned, affirmation or confirmation of the registrant's address may be required before the registrant is permitted to vote in an election during the period beginning on the date of the notice and ending on the day after the date of the second general election for Federal office that occurs after the date of the notice; (3) if the registrant does not vote in an election during that period the registrant's name will be removed from the list of eligible voters; and (4) if the registrant has changed residence to a place outside of California, the notice must include information concerning how the voter can continue to be eligible to vote.

[3] *Judicial Watch v. Logan*, No. 17-cv-8948, C.D. Cal.

December 5, 2019
Page 4

Elections Code to align California law with the Supreme Court's pronouncement in
*Husted*. As of January 1, 2020, Elections Code section 2226 will explicitly require the
cancellation of a registration once all Section 8(d)(2) prerequisites have been satisfied.
(Cal Stats. 2019, ch. 262, § 6.)

**California Law and Related Guidance Conform to *Husted* and Comply with the
NVRA's List Maintenance Requirements**

The 2019 California NVRA Manual is available to the public on the Secretary of State's
website. When the Secretary of State released the manual in March 2019, the Secretary of State
informed county elections officials via a written advisory, which is attached hereto as Exhibit B.[4]
The Secretary of State also offered multiple in-person trainings regarding the updated manual to
various county elections officials, as well as a webinar training that was available to all county
elections officials in California. All of this guidance and training incorporates the Supreme
Court's interpretation of Section 8 of the NVRA, as set forth in *Husted*.

In summary, California law requires county elections officials to engage in
numerous list maintenance activities that may ultimately result in cancellation of
registrations. These activities include the regular use of change-of-address data; the
streamlined transfer of registrations in response to information indicating that a registrant
has moved within California; the sending of confirmatory mailings in response to
information indicating that a registrant has moved; and the cancellation of registrations
when all conditions in Section 8(d)(2) of the NVRA have been satisfied. The Secretary
of State has issued specific guidance and offered trainings on these requirements.
Counties that comply with California law, with the assistance of this guidance and
training, have a reasonable list maintenance program as required by the NVRA.

It is important to note that the recent data relating to voter registration that
Judicial Watch cites will not necessarily reflect the effects of a list maintenance program
that complies with California law and the NVRA, and not because the counties have
failed to implement such a program. As a threshold matter, it is not clear that the data
Judicial Watch has relied upon fairly allows for the types of calculations and comparisons
that Judicial Watch has performed. For example, as explained in correspondence from
San Diego County to Judicial Watch dated November 22, 2019, and consistent with the
findings of several federal courts, comparisons between the Election Administration and
Voting Survey ("EAVS") data for the November 2018 election and the Census Bureau's
five-year American Community Survey ("ACS") report for 2013-2017 are inappropriate.

---

[4] In accordance with Paragraph 9 of the *Judicial Watch v. Logan* settlement agreement,
the advisory states that the updated manual "contains specific reference to *Husted v. A. Philip
Randolph Inst.*, 138 S.Ct. 1833 (2018) and the requirement to cancel the voter registration record
of a voter who has failed to respond to an NVRA Section 8(d)(2) notice and then fails to vote,
offer to vote, correct their voter registration record, or otherwise have their eligibility to vote
confirmed for a period of time including the next two general federal elections." Ex. B, at 2.

December 5, 2019
Page 5

This is because the EAVS data reflects the high-water mark for a county's number of registered voters, but the ACS five-year report measures population at a different point in time, and does not account for persons residing in the county part-time but who are still properly registered to vote. (*See Bellitto v. Snipes*, No. 16-cv-61474 (S.D. Fla. March 30, 2018) (order after trial), *aff'd*, *Bellitto v. Snipes*, 935 F.3d 1192 (11th Cir. 2019).)

In addition, even assuming that Judicial Watch's calculations are accurate, it is simply too soon to rely upon the number or percentages of inactive voters or cancellations in any given county. As explained above, removal from inactive status by reason of cancellation must be in accordance with Section 8(d)(2) of the NVRA, which requires two federal general elections to pass after a qualifying address confirmation notice has been sent. The Supreme Court issued its ruling in *Husted* in June 2018, while Judicial Watch and the Secretary of State were actively engaged in litigation concerning cancellation under Section 8 of the NVRA. The settlement agreement resolving that litigation and recognizing that *Husted* makes cancellation mandatory under Section 8 was executed in January 2019, and the Secretary of State issued updated guidance to this effect in March 2019. A cancellation process that started with a qualifying address confirmation notice sent after March 2019 could not result in any cancellations until the passage of two federal general elections, in November 2022.

On the whole, we find your recent letters surprising given the fact that the parties recently settled similar allegations, based in significant part on the Supreme Court's 2018 decision in *Husted*. As a result of *Husted* and the settlement, the Secretary of State and the counties, as well as the California Legislature, have taken numerous actions aimed at ensuring compliance with the NVRA's list maintenance requirements. Moreover, Judicial Watch has not suggested that the Secretary of State has violated its obligations under the settlement, nor would there be any basis for such a suggestion. Because of these recent changes, it would make little practical sense to litigate conduct that may or may not have occurred prior to *Husted* and the settlement. And, as noted above, because registrants cannot be removed until they have been identified and received notification under Section 8(d)(2) and then failed to vote in two consecutive federal elections, we believe it would be premature for Judicial Watch to sue before registrations may be cancelled in a manner consistent with the NVRA.

Sincerely,

P. PATTY LI
Deputy Attorney General

For     XAVIER BECERRA
        Attorney General

# Exhibit C



# County of San Diego

| | | |
|---|---|---|
| **THOMAS E. MONTGOMERY**<br>COUNTY COUNSEL | **OFFICE OF COUNTY COUNSEL**<br>1600 PACIFIC HIGHWAY, ROOM 355, SAN DIEGO, CA 92101<br>(619) 531-4860   Fax (619) 531-6005 | **CHRISTINA SNIDER**<br>SENIOR DEPUTY<br>Direct Dial: (619) 531-6229<br>E-Mail: christina.snider@sdcounty.ca.gov |

November 22, 2019

<u>Via e-mail and U.S. Mail</u>

Robert D. Popper, Attorney
Judicial Watch, Inc.
425 Third St. SW, Suite 800
Washington, DC 20024
Email: rpopper@judicialwatch.org

RE:   **Response to your letters to Michael Vu dated October 4, 2019 and
November 15, 2019**

Dear Mr. Popper:

This office represents the Office of the Registrar of Voters for San Diego County.
This letter responds to your letters dated October 4, 2019 and November 15, 2019,
addressed to Michael Vu, the Registrar of Voters for San Diego County.[1]  In light of the
threat of litigation in your letters, please direct any further communication regarding this
matter to me.

Your letters claim that San Diego County is in violation of 52 U.S.C. § 20507
("Section 8") of the National Voter Registration Act ("NVRA").  Specifically, your
letters allege the following violations:

1.   The number of voter registrations in San Diego County allegedly exceeds the
     number of citizens living in the County who are old enough to register;

2.   San Diego County allegedly is not removing inactive registrations as required
     by the NVRA;

3.   San Diego County allegedly is not sending enough address confirmation
     notices to its registered voters; and

---

[1] Your two letters contain the same substantive information but are written on
behalf of different organizations and individuals.  The October 4 letter purports to be on
behalf of Judicial Watch, Inc., Election Integrity Project California, Inc., Dennis Dorman,
Jim Redhead, Jean Esop, Hugh Winthrop, and Norman Walter; and your November 15
letter purports to be on behalf of the Institute for Fair Elections.

Mr. Popper                                         2                        November 22, 2019

    4.  San Diego County allegedly is not retaining documents required by the NVRA.

    Your assertions are incorrect, as set forth below.  San Diego County is not in violation of the NVRA.  The Registrar is in full compliance with state and federal laws relating to list maintenance.

### *Voter Registrations Compared to the Number of Voting-Age Citizens*

    Your conclusion that there are more voter registrations in San Diego County than there are citizens old enough to register is based on faulty assumptions and outdated data.

    You state that San Diego County has a "117%" voter registration rate, based on your figures of "about 2.6 million registered voters" and "2.2 million San Diego County citizens who are over the age of 18."  You base the 2.6 million figure on EAVS survey data regarding the November 2018 election.  You purport to base the 2.2 million figure on the Census Bureau's five-year ACS report for the period 2013 to 2017.

    As you may know, a federal district court recently found the comparison of EAVS survey data in a federal election year to the population estimate found in a five-year ACS report to be "misleading" and "inaccurate."  The court held that this comparison did not support the plaintiff's contention that a supervisor of elections failed to comply with the NVRA's list-maintenance requirements.  The district court found the supervisor of elections did not violate the NVRA, and the Eleventh Circuit Court of Appeals affirmed. *Bellitto v. Snipes*, No. 16-cv-61474 (S.D. Fla. March 30, 2018) (order after trial), *aff'd*, *Bellitto v. Snipes*, 935 F.3d 1192 (11th Cir. 2019).

    Specifically, the court credited expert testimony that the EAVS data reflects "a high point in a county's number of registered voters" because registration increases prior to a federal election, and list maintenance is prohibited by the NVRA for ninety days prior to the election. *Bellitto*, 935 F.3d at 1208.  The expert also explained that the ACS five-year report draws from the preceding five years and estimates the midpoint of the data, which does not reflect population growth, and that the report does not account for persons who reside in the county part time but are still properly registered to vote. *Id.* The district court found it inappropriate to compare an "artificially high numerator" to an "artificially low denominator." *See id.* The faulty assumptions discredited in *Bellitto* appear to underlie your calculations as well.

    Further, your data is outdated.  For example, elsewhere in your letters, you state that San Diego County has "over 800,000 inactive registrations on its rolls."  This number is presumably derived from the 2018 EAVS survey.  However, on July 31, 2019, the Registrar cancelled 342,513 inactive registrations.  On October 9, 2019, the Registrar sent 285,847 inactive voters an address confirmation notice in conformity with Section 8(d)(2).  And the Registrar previously mailed a confirmation notice to the remaining population of inactive voters (approximately 200,000 persons), but they have not met the requirement of Section 8(d)(1)(B)(ii) of not voting or appearing to vote in two federal general elections.  The data you rely on does not account for this activity.

Mr. Popper                                   3                      November 22, 2019

In fact, even the data publicly available on the Secretary of State's website contradicts your letters. As of October 1, 2019, the Secretary of State calculated the total number of registered voters in San Diego County at 1,799,829. Even compared to your figure of "2.2 million" people eligible to vote, that would be an approximately 82% registration rate, not the "117%" that you calculate. Thus there is no evidence that the Registrar is not making a reasonable effort to remove ineligible voter registrations.

### *San Diego County's Removal of Inactive Voter Registrations in Compliance with the NVRA*

The Registrar fully complies with the NVRA and California Secretary of State's NVRA Manual regarding removal of inactive voter registrations. Once the Registrar has sent a Section 8(d)(2) address confirmation notice to a voter, if the voter does not respond to the notice and has no voting activity (including voting, signing a petition, updating their registration record, or confirming their registration status), and also has been on inactive status for two federal general elections or more, then the Registrar removes the voter from the list of eligible voters.

You claim, however, that "the evidence" indicates San Diego County is not removing inactive voter registrations, citing the 2018 EAVS survey data. But as discussed above, the 2018 EAVS survey data does not account for the Registrar's 2019 activity related to inactive voter registrations. Your conclusion that San Diego is not sufficiently removing inactive voter registrations is incorrect.

### *San Diego County's Distribution of Address Confirmation Notices in Compliance with the NVRA*

You claim San Diego County is not sending enough address confirmation notices, based on your estimate that "perhaps 15.7%" of the County's residents are not living in the same house they were a year ago and your conclusion that the Registrar sent on average 9,268 confirmation notices per year from 2016 to 2018.

But the census data you cite regarding 15.7% of San Diego County residents not living in the same house as they did a year ago is based on 2017 census questions asked "of the population *1 year and older*." (*See* the ACS 2017 Subject Definitions (emphasis added).) Thus your estimate of "15.7%" of the population includes children who are not registered to vote and would not receive an address confirmation notice.

You cite EAVS survey data to conclude that San Diego County sent on average only 9,268 confirmation notices per year. You presumably base this number on the Registrar's response to question A8a of the survey. However, the survey only requested data about notices sent because either "1) there is an indication that the registrant no longer resides *in the registrar's jurisdiction*, or 2) the voter has not voted or appeared to vote in a federal election during the period." (Emphasis added.) That is, the survey data expressly did not account for the number of confirmation notices sent out due to moves *within* the County.

Mr. Popper                                    4                              November 22, 2019

In fact, you should already be aware that the EAVS survey data does not reflect the total number of Section 8(d)(2) notices sent because of the Registrar's response to Judicial Watch's April 12, 2019 letter. In response to that letter, the Registrar produced a 2,313-page document listing the Section 8(d)(2) notices sent during the prior two years. Further, the Registrar is diligently sending NVRA-compliant confirmation notices. In 2017, the Registrar sent out 169,706 NVRA-compliant confirmation notices. In 2018, the Registrar sent out 88,542 such notices. And in 2019, the Registrar sent out 472,450 NVRA-compliant confirmation notices.

Your conclusion that San Diego County is not sending enough address confirmation notices is simply unfounded.

### *San Diego County's Document Retention in Compliance with the NVRA*

You claim that, based on correspondence between Judicial Watch and the Registrar, the Registrar failed to keep records concerning whether voters responded to address confirmation notices. Your conclusion is incorrect.

The Registrar does keep such records—they are in the form of the response cards themselves. This is why, on June 18, 2019, the Registrar sent Judicial Watch an email estimating that there were 24,000 pages responsive to Judicial Watch's public records request for this specific information. The Registrar does not keep a summary file (such as a spreadsheet) which could be sent to you electronically and immediately. The cards themselves are available for in-person inspection, but if you want copies, the Registrar will need to apply redactions, which will be a lengthy undertaking.

To the extent there was any confusion regarding the Registrar's response to Judicial Watch's public records request about this information, Judicial Watch certainly could have requested clarification in the multiple correspondences between Judicial Watch and the Registrar's office from April to September of this year, or after the Registrar produced over 2,600 pages of records to Judicial Watch in September. Regardless, the documents described in your letters are in fact available, and your contention that the Registrar does not properly retain documents required by the NVRA is unfounded.

### *San Diego County's List Maintenance Activities*

In your letters, you demand the Registrar's "plans" for correcting the four purported violations of the NVRA, along with various other explanations or descriptions of Registrar activities.

But as described above, the four purported violations of the NVRA are not in fact violations.

Mr. Popper                               5                      November 22, 2019

With regard to your additional requests, the Registrar conducts robust list maintenance. The Registrar routinely receives information from government sources (e.g. Secretary of State, Bureau of Vital Records, County Assessor, Recorder, County Clerk's office, state and federal court system, etc.) and from voters in order to maintain voter records. List maintenance occurs daily and includes the following:

1. Updating voter records when the voter re-registers with new information;

2. Updating voter records based on National Change of Address (NCOA) information;

3. Updating voter records when mail is returned undeliverable (e.g. undeliverable mail ballots);

4. Merging duplicate registration records;

5. Removing voters who notify the Registrar they no longer live within San Diego County;

6. Removing deceased voters when notified by the County Assessor, Recorder, County Clerk's office or through the statewide voter registration system;

7. Removing voters when another election office notifies the Registrar that the individual has registered to vote in the other jurisdiction;

8. Removing voters when a state or federal court system notifies the Registrar that an individual is an incarcerated felon who may also be a registered voter;

9. Notifying another California county if a voter from San Diego has moved to their county which allows the voter to remain registered in California;

10. Updating voter records through updates provided by the Department of Motor Vehicles.

The Registrar is continuously updating its files and processing voter data from a variety of sources. For example, in 2018, the Registrar processed 118,556 NCOA electronic files and 23,881 returned confirmation notices. In 2019 (from January to August), the Registrar processed 99,634 NCOA electronic files and 28,390 returned confirmation notices.

The Registrar completed nearly 900,000 maintenance transactions in 2018. From January through August 2019, the Registrar completed nearly 650,000 maintenance transactions. In sum, the Registrar is continuously conducting list maintenance in compliance with the NVRA. In addition, the Registrar is proactively addressing new maintenance efforts, including tracking AB 504 and adhering to the Secretary of State's updated California NVRA Manual.

I trust this letter provides the information you were seeking in your letters, but to the extent you have additional specific questions, please contact me to discuss them. As you may know, the Registrar meets regularly with representatives of the Election

Mr. Popper                                6                        November 22, 2019

Integrity Project, and the Registrar has discussed the above list maintenance activities with them. The Registrar would be happy to meet with Messrs. Dorman, Redhead, Esop, Winthrop, and Walker, as well as representatives from Judicial Watch, at a mutually-convenient time to do the same.

In fact, my office apprised you of the Registrar's willingness to meet more than two years ago in response to a similar letter from Judicial Watch threatening potential litigation under the NVRA. Judicial Watch never even attempted such a meeting before sending its latest missives, although such a meeting likely would have alleviated your purported concerns.

Please contact me directly with any further communications regarding the issues set forth above.

Sincerely,

Christina Snider
Senior Deputy County Counsel

cc: Mr. Michael Vu
19-01965

# Exhibit D



**OFFICE OF THE COUNTY COUNSEL**
**COUNTY OF ORANGE**

333 W. SANTA ANA BLVD., SUITE 407
SANTA ANA, CA  92701
MAILING ADDRESS: P.O. BOX 1379
SANTA ANA, CA 92702-1379
(714) 834-3300
FAX: (714) 834-2359

Mark D. Servino
Supervising Deputy
(714) 834-4714

E-Mail:
mark.servino@coco.ocgov.com

January 3, 2020

*Sent via United Parcel Service*
*Tracking No. 1Z E76 7W3 22 1002 426 5*

Robert P. Popper, Esq.
Judicial Watch, Inc.
425 Third Street SW, Suite 800
Washington D.C. 20024

Re:   Statutory Notice of Violations of 52 U.S.C. § 20507 in Orange County

Dear Mr. Popper:

I am writing on behalf of the Orange County Registrar of Voters. We are in receipt of your letter giving notice of alleged violations of the National Voter Registration Act ("NVRA") in Orange County and requesting certain records of the County's voter registration activities.

Congress passed the NVRA in 1993 to reinforce the right of qualified citizens to vote by reducing the restrictive nature of voter registration requirements. *Association of Community Organizations for Reform Now v. Miller*, 129 F.3d 833, 835 (6th Cir. 1997). The Act requires states to offer voter registration by mail, by application in person at all offices in the state providing public assistance or administering state-funded programs which primarily provide services to persons with disabilities, and by application in person while applying for a motor vehicle driver's license. *Id.*

The NVRA further sets limits on the removal of registrants from the voter registration rolls. *Bell v. Marinko*, 367 F.3d 588, 591 (6th Cir. 2004). "In short, the law permits the states to remove registrants only under defined circumstances – at the request of the voter, by reason of criminal conviction or mental incapacity as provided in state law, or because of death or change of residence; but it also requires the states to conduct a general program that makes a reasonable effort to remove the names of voters who have become ineligible on account of death or change of address." *Bellitto v. Snipes*, 935 F.3d 1192 (11th Cir. 2019).

<u>RESPONSE TO CONTENTIONS</u>

As explained herein, the County has clearly met its obligation under 52 U.S.C. 20507(a)(4) to conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of (1) the death of the

Robert P. Popper, Esq.
January 3, 2020
Page 2

registrant, or (2) a change in the residence of the registrant.  We respond to each of the
contentions set forth in your letter as follows:

- Contention 1: "*Whether you agree that the EAC accurately quoted data it
received from you regarding the number of registrations you removed
under the process set forth in Section 8(d) of the NVRA during the last
two-year reporting period. If you believe the data reported was not
accurate, please let us know your own estimates regarding these two
numbers.*"

The Election Administration & Voting Survey ("EAVS") data cited does not include list
maintenance activity from 2019.  In 2019, Orange County removed 45,667 voters who failed to
respond to an address confirmation notice and failed to vote in two consecutive federal elections.
This included all voters that were eligible to be removed through this process.  The Secretary of
State's 2019 NVRA Manual Update clarifies that compliance with 52 U.S.C, § 20507(d) is
mandatory, not permissive, and Orange County is in compliance.

- Contention 2: "*Your explanation regarding the County's high number of
inactive registrations.*"

There are approximately 342,400 inactive voters on the County's voter rolls.  Inactive
voters are placed in this status for one of the following reasons:

1. The voters were placed into an inactive status due to a
failure to vote or update their registration; or

2. Our office received notification that the voter may have
moved outside of the jurisdiction.

Voters who were in inactive status and had not voted for two Federal general elections,
confirmed or updated their registration, are not classified as inactive voters, because they have
been canceled and removed from the voting rolls in compliance with 52 U.S.C. § 20507(d).

It is important to note that Orange County does not only identify ineligible voters using
the mandated residency confirmation procedures available under Section 2220 of the Election
Code, but Orange County has also utilized the additional permissive procedures available under
Sections 2222 (contract with the U.S. Postal Service) and 2227 (contract with credit reporting
agency).  Specifically, Orange County uses third-party data providers to locate new addresses for
inactive voters and attempts to contract these voters at their new addresses.  Thus, the number of
inactive voters is due in part to Orange County's efforts to remove the names of ineligible voters
from the official lists of eligible voters as required by the NVRA.

Robert P. Popper, Esq.
January 3, 2020
Page 3

After Orange County has engaged in extensive efforts to maintain its voter registration database and remove ineligible voters, which extend beyond the minimum activities required by statute, only voters who may not be canceled remain inactive.

- Contention 3: "*Your explanation regarding the County's registration rate discussed above.*"

As of the time of this response, Orange County has 79.5% of eligible voters registered as active voters, and the current published State of California average is 80.65%. In 2019 alone, Orange County canceled 74,863 voters and placed 70,636 voters in its inactive file. We have made 685,821 updates to voter records and processed 456,806 registrations. Orange County performs extensive voter list maintenance activities and it also receives a large number of new and updated registrations.

- Contention 4: "*A description of the State's and the County's programs for sending address confirmation notices described in 52 U.S.C. § 20507(d)(2) to those who are believed to have moved.*"

Orange County currently complies with 52 U.S.C. § 20507(d)(2) and the laws of the State of California governing voter file maintenance activities. Indeed, the State's laws and procedures were updated in light of *Husted v. A. Philip Randolph Institute*, 138 S.Ct. 1833 through California State Assembly Bill No. 504 (2019) and the Secretary of State's publication of the California National Voter Registration Act Manual (March 2019).

When Orange County receives a notice of a change of address from a third party, such as the U.S. Post Service, the Orange County Registrar mails out a postcard that complies with 52 U.S.C. § 20507. If the voter is within the County, the address is updated, and a postcard is mailed to the new address. If the voter is outside of the County, but in California, the Orange County Registrar pushes the record to the new county. If the voter is outside of the State of California, the Registrar places the voter in inactive status and sends a postcard to the new address. If the original postcard is returned, the Registrar sends a second postcard to the voter. If the voter returns the second postcard, the voter's record is updated according to the voter's response. The postcards used in these processes comply the State's prescribed language. See Cal. Elec. Code § 2220.

If the voter does not respond, or update their registration, the voter is removed from the voter registration list after two Federal general elections.

- Contention 5: "*A description of the State's and the County's programs for complying with the other voter list maintenance requirements of the NVRA, including all requirements to remove the registrations of those who have died or have otherwise become ineligible to register or vote.*"

Robert P. Popper, Esq.
January 3, 2020
Page 4

Deceased Voters

The Orange County Registrar's effort to remove deceased voters from the official lists of eligible voters extends beyond complying with the requirements of Section 2205 of the Elections Code, which requires county elections officials to cancel deceased voters noticed by the local registrar of births and deaths. In order maintain accurate and current voter registration rolls, Orange County takes additional measures to identify and remove deceased voters:

- The Orange County Registrar conducts research based on notification. While the Registrar does not cancel a voter based on a phone call alone, the Registrar will conduct research with Ancestry.com and with the County Health Department to independently confirm whether the voter is deceased and must be removed from the list of eligible voters.

- The Orange County Registrar checks obituaries daily.

- The Orange County Registrar conducts a nationwide deceased voter check using third party data.

Last year, Orange County canceled 15,060 deceased voters.

Ineligible Voters

In addition to the procedures described above in response to Contention No. 4, the County of Orange performs the following activities to remove ineligible voters:

- The Orange County Registrar performs the National Change of Address process periodically and has mailed 111,613 notices through this process in the last year.

- The Orange County Registrar uses third party change of address notifications to locate and eventually cancel voters who have moved out of Orange County or the State of California.

- The Orange County Registrar uses a third-party data provider to locate voters who may have moved and have not been identified through all other processes, even though this process is permissive, rather than mandatory.

- The Orange County Registrar performs the alternate residency confirmation process as defined in Elections Code Section 2224 at least through January 1, 2020 when this section becomes inoperative.

Robert P. Popper, Esq.
January 3, 2020
Page 5

- The Orange County Registrar removes voters currently in state or federal prison or on parole for the conviction of a felony pursuant to EC 2212. Copies of the Registrar's policies for identifying and removing such voters have been produced with this response.

- Contention 6: "*A description of your plan to remedy any noncompliance with the voter list maintenance requirements of the NVRA, including 52 U.S.C. § 20507(a)(4) and (d).*"

The County of Orange County is in compliance with 52 U.S.C. § 20507(a)(4) and (d).

## RESPONSE TO REQUEST FOR RECORDS

The County's responses to your request for records in listed below:

1.  The names and addresses of all persons to whom notices described in 52 U.S.C. § 20507(d)(2) were sent, and information concerning whether or not each person responded to the notice.

The Orange County Registrar has sent 230,185 notices as of the date of this response. The Registrar will produce responsive voter date subject to the protections on voter privacy found in Sections 2188 and 2194 of the Election Code. To facilitate this production, please fill out the form available at this link:

https://www.ocvote.com/data/purchase-voter-data/

Alternatively, we have enclosed a printed version of this form, which is required under 2 CCR § 19008. The purpose of Sections 2188 and 2194 of the Election Code and the implementing regulations is to protect the privacy interests of voters while also facilitating the transparency of elections and election operations.

2.  All documents and communications concerning the questions contained in Section A of the most recent Election Administration & Voting Survey ("EAVS"). This request includes, but is not limited to:

    a.  Your written responses to the EAVS, along with any documents you provided along with your responses.

    b.  Any internal or external communications about the EAVS.

Robert P. Popper, Esq.
January 3, 2020
Page 6

The Orange County Registrar will produce the following responsive records:

eavs-report.pdf, which is responsive to 2(a) and EAVS_Communication.pdf, which is responsive to 2(b).

3.      All documents concerning any internal or external audit, evaluation, assessment, review, analysis, critique, or request for or response to any of the foregoing, relating to the accuracy and currency of official lists of eligible voters. This request includes, but is not limited to any of the foregoing documents relating to:

     a.      Registered voters who were sent notices described in 52 U.S.C. § 20507(d)(2).

     b.      Registered voters who have died.

     c.      Registered voters who are noncitizens.

Orange County partnered with Caltech, which conducted an extensive analysis of Orange County's voter registration list. A detailed report can be found online at:

   https://static1.squarespace.com/static/5ace8a6b45776eba2e40cbee/t/5cfef2301f430f0001
66b830/1560212017012/2018_OC_Haynes_Final_Report.pdf

The Caltech independent review concluded that the 2018 election administration in Orange County, CA was conducted with a "High Degree of Integrity."

4.      All documents concerning any instance(s) of voter fraud, including, but not limited to, impersonation fraud, double voting, registration fraud, absentee ballot fraud, mail-in ballot fraud, registration or voting by noncitizens, unlawful assistance, or aiding, abetting, or conspiring to commit any of the foregoing.

Responsive records relating to apparent instances of double voting, which the Registrar sends to the Orange County District Attorney, are exempt from disclosure under Government Code sections 6254, subdivision (f), 6255, article I, section 1 of the California Constitution. The Registrar will also produce documents that demonstrate how it has identified and investigated potential noncitizens who are registered to vote as well as documents which show that it has removed individuals who have been demonstrated to be noncitizens. However, information that is both sensitive and vulnerable to abuse such as the specific names of individuals shall be redacted.

5.      All manuals, training materials, protocols, written standards, and official guidance concerning efforts to ensure the accuracy and currency of your official list of eligible voters.

Robert P. Popper, Esq.
January 3, 2020
Page 7


The Orange County Registrar will produce the following responsive records, which describe the procedures used for list maintenance activities for processing third-party change of address records:

> NCOA_Processing.pdf
>
> Returned_3PCOA.pdf
>
> Returned_NCOA.pdf
>
> Returned_VNC.pdf

6.  All contracts with the U.S. Postal Service or any other federal agency to provide change-of-address information concerning registered voters.

The Orange County Registrar of Voters does not possess responsive records, because such contracts are maintained by the California Secretary of State.

7.  Copies of all documents and communications concerning the following:

   a.  The Systematic Alien Verification for Entitlements ("SAVE") database.

   b.  The Interstate Voter Registration Cross-Check Program.

   c.  The Electronic Registration Information Center ("ERIC").

The Orange County Registrar of Voters does not possess responsive records.

Please let us know if you have any difficulty accessing the materials referenced above.

Very truly yours,

LEON J. PAGE
COUNTY COUNSEL

By _____
Mark D. Servino, Supervising Deputy

MDS:mll
Enclosure
cc:   Alex Padilla, California Secretary of State
      (via UPS, Tracking No. 1Z E76 7W3 22 1002 425 6)

## APPLICATION FOR VOTER REGISTRATION INFORMATION

Pursuant to Election Code 2168, voter registration information is available to persons or groups who meet specific conditions, including the completion of a written application. All requests to view, purchase, or use voter registration information must be accompanied by a written application.

### PLEASE PRINT IN INK OR TYPE

NAME OF PERSON REQUESTING INFORMATION: _____

                                                First               Middle Initial          Last

Driver's License Number: _____  State _____  Date of Expiration: _____

COMPLETE RESIDENCE ADDRESS: _____

                                     Number            Street

(     )_____  _____  _____  _____

      Telephone Number          City                State        Zip Code

If no street address, give postal mailing address and describe location of residence.

_____

                                    Mailing Address

_____

                                  Location of Residence

COMPLETE BUSINESS ADDRESS: _____

                                     Number            Street

(     )_____  _____  _____  _____

      Telephone Number          City                State        Zip Code

If no street address, give postal mailing address and describe location of residence.

_____

                                    Mailing Address

_____

                                  Location of Residence

If this application is on behalf of any person or persons other than the applicant, this section must be completed.

_____

Name of person or group requesting voter information

COMPLETE BUSINESS ADDRESS: _____

                                     Number            Street

(     )_____  _____  _____  _____

      Telephone Number          City                State        Zip Code

_____

      Name of person authorizing or requesting this application

### THIS SECTION MUST BE COMPLETED

Specific voter registration information requested: _____

_____

Intended use of voter registration information requested: _____

_____

REQUESTING COPIES: List person(s) whose registration information is being copied: _____

_____

_____

"I certify, under penalty of perjury, that all information on this form is true and correct."

Signature (Full Name): _____

Dated: _____  Executed at Santa Ana

Identification verified by: _____

                            (Office Clerk)

(Revised 5/07/10)

In accordance with the California Public Records Act, I hereby request the following computer product:

___ CD-ROM voter file of entire County of Orange, w/Hist ☐ w/o Hist ☐

___ CD-ROM voter file of _____ (District) w/Hist ☐ w/o Hist ☐
　　(Voter history is a separate text file that can be merged with the *voter file* using the VoterID column)

___ CD-ROM of _____

___ Herd Copy of _____

___ Street index of voters, aka walk list (8.5x11 print out). List precinct(s) or district: _____
_____

The Registrar of Voters does not guarantee the accuracy or efficacy of the information contained in the product. The data contained in the CD-ROM copies is in text format (filename.txt). It is the responsibility of the purchaser to access/manipulate the data contained on the CD. The Registrar of Voters does not provide technical support for the use of this data. Full payment must accompany order. NO REFUNDS – EXCHANGES ONLY. The purchaser will need to import the text file into a data base application that you will be using.

All expected completion dates quoted by staff for the production of computer products are only estimates. The Registrar of Voters does not guarantee a delivery date for any computer product. All products requested will be produced following those jobs which are necessary to the department for the conduct of an election.

Initial _____

The applicant hereby agrees that the aforementioned information set forth in affidavits of registration of voters and any information derived from said electronic data processing CD's/printouts hereinafter collectively referred to as ("registration information") will be used only for election, governmental, scholarly or political research purposes, as defined by Title 2, Division 7, Article 1 section 19003 of the California Administrative Code.

The applicant further agrees not to sell, lease, loan or deliver possession of the registration information, or a copy thereof, or any portion thereof, to any person, organization or agency without receiving written authorization to do so from the Secretary of State or from the source agency.

Subject to provisions of Title 2, Division 7, Article 1 section 19001 through 19007 of the California Administrative Code, the applicant agrees to pay the State of California, as compensation for any unauthorized use of each individual's registration information, an amount equal to the sum of $.50 multiplied by the number of times each registration record is used by the applicant in an unauthorized manner.

Initial _____

Polling Place Information - I am aware of, and have read, the provisions of Section 18302 of the California Elections Code, regarding polling place information distribution, given below.

*Section 18302, California Elections Code, Distribution of Precinct Polling Place Information.*

*Every person is guilty of a misdemeanor who knowingly causes to be mailed or distributed, or knowingly mails or distributes, literature to any voter which includes a designation of voter's precinct polling place other than a precinct polling place listed for that voter in an official precinct polling list which constituted the latest official precinct polling list at sometime not more than 30 days prior to such mailing or distribution.*

Initial _____

| | | |
|---|---|---|
| Visa/MC# _____ | FOR OFFICE USE ONLY | |
| Exp. Date: _____ | MVF CD-ROM COPY | STREET INDEX (.50 cents per 1,000 voters) |
| Address on CC: _____ (include CVV #) | $ _____ | # of Reg. Voters _____ |
| _____ | $ _____ | $ _____ |
| Shipping Information (USPostOffice, FedEx, UPS, etc.) | Total $ _____ | |
| Courier Name: _____ | Receipt # _____ | |
| Acct. Number: _____ | | |
| Type of Service: _____ | Received by _____ | |
| Deliver to: _____ | (Customer Signature) | |
| _____ | Product Pick up date _____ | |

# Exhibit E



**ALEX PADILLA** | SECRETARY OF STATE | STATE OF CALIFORNIA
ELETIONS DIVISION
1500 11ᵗʰ Street, 5ᵗʰ Floor, Sacramento, CA 95814 | **Tel** 916.657.2166 | **Fax** 916.653.3214 | www.sos.ca.gov

January 16, 2020

County Clerk/Registrar of Voters (CC/ROV) Memorandum # 20019

TO:             All County Clerks/Registrars of Voters

FROM:        /s/ Jana M. Lean
                  Chief, Elections Division

RE:             Presidential Primary:  Surrendering Vote-by-Mail Ballots

Elections Code sections 3015 and 3016 address surrendered vote-by-mail ballots and the issuance of nonprovisional/regular and provisional ballots.  These code sections apply to counties conducting traditional elections, as well as those conducting elections under the California Voter's Choice Act (VCA).

For purposes of this memorandum, a surrendered vote-by-mail ballot is one that the voter does not intend to cast–rather the voter is returning it in order to receive a nonprovisional ballot.

This guidance is not intended to affect any process a county may have in place for the drop-off of a voted vote-by-mail ballot.

**Issuance of Nonprovisional Ballots**

If a vote-by-mail voter appears at their designated polling place on Election Day, or appears at a vote center or the regular or satellite office of their elections official where voting is permitted on or before Election Day, that voter **shall be permitted to vote a nonprovisional ballot** if <u>either</u> of the following conditions is satisfied:

1)  The voter surrenders his or her vote-by-mail ballot **-OR-**

2)  The voter is unable to surrender his or her vote-by-mail ballot, but the precinct board, vote center election board, or elections official does all of the following:
    (a) Verifies that the voter has not returned his or her voted vote-by-mail ballot, and
    (b) Notates the voter's voter record to ensure that the voter's vote-by-mail ballot is not cast or tabulated after he or she votes at the polls.

(Elec. Code, § 3015.)

CCROV # 20019
January 16, 2020
Page 2

## Issuance of Provisional Ballots

A vote-by-mail voter **shall be issued a provisional ballot**, in accordance with Section 14310, if:

1) The voter is unable to surrender his or her vote-by-mail ballot <u>and</u>
2) The precinct board, vote center election board, or elections official cannot:
   (a) Verify if the voter has returned his or her voted vote-by-mail ballot, and
   (b) Notate the voter's voter record accordingly.

   -OR-

3) The voter is unable to surrender his or her vote-by-mail ballot <u>and</u> the precinct board or elections official (in a non-VCA county) cannot readily determine if the voter is in the correct polling location.

(Elec. Code, §§ 3016, 14310(f).)

## Vote-By-Mail Voters on Roster (Non-VCA Counties)

To facilitate the ability of poll workers to identify vote-by-mail voters, the names of the voters who were mailed ballots for this election should appear on the voter roster/electronic poll book or any roster supplement that is maintained at the polling place.

Moreover, any vote-by-mail voter who properly surrenders a vote-by-mail ballot (or the voting location meets Section 3015's conditions) and is issued a nonprovisional ballot must sign the roster/index/electronic poll book or any roster supplement.  (Elec. Code, §§ 14105(a), 14107, 14109, 14216.)

## Suggested Reminder for Poll Workers (Non-VCA Counties)

You may wish to provide to your poll workers the following information regarding provisional ballots:

As a poll worker, you have a duty to assist in the administration of the election.  You should *never* turn a voter away from the polls.  A voter *always* has the right to cast a ballot, although scenarios will arise where a voter may not be able to cast a regular/nonprovisional ballot and he or she will be required to vote a provisional ballot.

<u>A provisional ballot is used in a polling place when</u>:

- A voter's name does not appear on any of the roster lists provided.
  - In this instance, the voter can conditionally register to vote (CVR) and vote a CVR provisional ballot (unless "Instant CVR" is available).

CCROV # 20019
January 16, 2020
Page 3

- A voter is at the wrong precinct and their ballot is not available at your location, but the voter still wants to vote at this polling site.

- A vote-by-mail voter wants to vote at this precinct, but cannot surrender his or her vote-by-mail ballot, and your location
  - cannot verify if the voter has already returned his or her voted vote-by-mail ballot and cannot notate the voter's voter record accordingly.
  - **-OR-**
  - cannot determine if the voter is in the correct polling location.
- A voter's name (unless it is a changed surname) or address is different than that listed on the roster lists.
  - In this instance, the voter can conditionally re-register to vote and vote a CVR provisional ballot (unless "Instant CVR" is available).
- A voter with "Proof of Residence Required" next to his or her name in the roster is unable to provide proof of residence.
  - The "Proof of Residence" requirement can be satisfied with over 30 acceptable documents listed in your poll worker handbook. A photo ID is acceptable but is not required to satisfy proof of residence.
- A voter is challenged by a member of the precinct board (not a member of the public), and the challenge is not resolved in his or her favor.

**Suggested Reminder for Vote Center Workers (VCA Counties)**

You may wish to provide to your vote center workers the following information regarding provisional ballots:

As a vote center worker, you have a duty to assist in the administration of the election. You should *never* turn a voter away from the vote center. A voter *always* has the right to cast a ballot, although scenarios will arise where a voter may not be able to cast a regular/nonprovisional ballot and he or she will be required to vote a provisional ballot.

<u>A provisional ballot is used in a vote center when:</u>

- A voter's name does not appear on any of the roster lists provided.
  - In this instance, the voter can conditionally register to vote (CVR) and vote a CVR provisional ballot (unless "Instant CVR" is available).
- A voter's name (unless it is a changed surname) or address is different than that listed on the roster lists.
  - In this instance, the voter can conditionally re-register to vote and vote a CVR provisional ballot (unless "Instant CVR" is available).
- A voter with "Proof of Residence Required" next to his or her name in the roster is unable to provide proof of residence.
  - The "Proof of Residence" requirement can be satisfied with over 30 acceptable documents listed in your poll worker handbook. A photo ID is acceptable but is not required to satisfy proof of residence.

CCROV # 20019
January 16, 2020
Page 4

- A voter is challenged by a member of the election board (not by a member of the public), and the challenge is not resolved in his or her favor.
- A voter's voter record indicates that they have already cast a ballot.


If you have any questions, please feel free to contact Rachelle Delucchi at rdelucch@sos.ca.gov or (916) 657-2166.  Thank you.

# CERTIFICATE OF SERVICE

Case Name: **Republican National**       No.     **2:20-cv-01055-KJM-CKD**
**Committee, et al. v. Gavin**
**Newsom, et al.**

I hereby certify that on June 25, 2020, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DECLARATION OF JANA M. LEAN IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on June 25, 2020, at Sacramento, California.

| Tracie L. Campbell | */s/ Tracie Campbell* |
|:---:|:---:|
| Declarant | Signature |

SA2020301369
34189255.docx