**ARNOLD & PORTER KAYE SCHOLER LLP**
TRENTON H. NORRIS (SBN 164781)
Trent.Norris@arnoldporter.com
GILBERT R. SEROTA (SBN 75305)
Gilbert.Serota@arnoldporter.com
BENJAMIN T. HALBIG (SBN 321523)
Benjamin.Halbig@arnoldporter.com
Three Embarcadero Center, 10th Floor
San Francisco, CA  94111-4024
Telephone:    415.471.3100
Facsimile:    415.471.3400

Attorneys for Amici Curiae
CALIFORNIA LEAGUE OF CONSERVATION VOTERS
and CALIFORNIA LEAGUE OF CONSERVATION
VOTERS EDUCATION FUND

*Additional Attorneys for Amici Curiae listed on next page*

# UNITED STATES STRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REPUBLICAN NATIONAL COMMITTEE, *et al*., <br><br> Plaintiffs, <br><br> v. <br><br> GAVIN NEWSOM, *et al*., <br><br> Defendants. | Case No. 2:20-cv-01055-MCE-CDK <br><br> **AMICUS CURIAE BRIEF OF CALIFORNIA LEAGUE OF CONSERVATION VOTERS AND CALIFORNIA LEAGUE OF CONSERVATION VOTERS EDUCATION FUND IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |

**BRENNAN CENTER FOR JUSTICE**
  **at NYU SCHOOL OF LAW**
MYRNA PÉREZ[*]
ELIZA SWEREN-BECKER[*]
myrna.perez@nyu.edu
eliza.sweren-becker@nyu.edu
120 Broadway, Suite 1750
New York, NY  10271
Telephone:    646.292.8310
Facsimile:    212.463.7308

**ARNOLD & PORTER KAYE SCHOLER LLP**
JOHN A. FREEDMAN[*]
John.Freedman@arnoldporter.com
601 Massachusetts Ave, NW
Washington, DC  20001
Telephone:    202.942.5000
Facsimile:    202.942.5999

*Application for admission pro hac vice forthcoming*

**TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................................................................1

INTEREST OF AMICI .........................................................................................................2

ARGUMENT .........................................................................................................................2

I. VOTE BY MAIL IS COMMON, PARTY-NEUTRAL, AND NECESSARY TO PROTECT THE FRANCHISE. ...................................................................................2

    A. Vote-By-Mail Is Common And Has A Long History And Is Widely Used In California. ..........................................................................................................2

    B. Vote-by-Mail Is Necessary To Ensure Californians Are Able to Exercise Their Right To Vote. ......................................................................................................3

    C. Vote-By-Mail Is Fair and Does Not Benefit Any Particular Party or Ideology...............................................................................................................5

II. VOTE-BY-MAIL IS SECURE AND DESIGNED TO PROTECT AGAINST FRAUD. ......................................................................................................................5

III. PLAINTIFFS HAVE NO CLAIM FOR "VOTER DILUTION," MUCH LESS ONE THAT CAUSES CONSTITUTIONAL INJURY...............................................8

IV. THE BALANCE OF HARMS STRONGLY FAVORS CALIFORNIA'S EXPANDED ACCESS TO MAILED BALLOTS ....................................................10

CONCLUSION ....................................................................................................................10

- i -

AMICUS CURIAE BRIEF OF CALIFORNIA LEAGUE OF CONSERVATION VOTERS   NO. 20-CV-01055-MCE-CDK
AND CALIFORNIA LEAGUE OF CONSERVATION VOTERS FUND

# INTRODUCTION

Plaintiffs' complaint and motion for preliminary injunction assert that mailing ballots to registered voters who have not specifically requested them invites fraud at a level that creates an injury under the U.S. Constitution. That assertion is dead wrong, both factually and legally. Plaintiffs' support for it is nothing more than a series of isolated anecdotes and speculations, strung together with little analysis, inapposite citations, and liberal application of the label "fraud."

It is not clear what of Plaintiffs' claims remain: the passage of AB 860 moots the crux of their complaint concerning the Governor's authority. What is clear is that, even before the Governor's Order and AB 860, approximately 80% of active, registered voters in California received mailed ballots, either because they opted to receive mail-in ballots or because they live in a county that already sends mailed ballots to all active registered voters. ECF 70-2 (Lean Decl.), ¶ 13.

Vote by mail ("VBM") is common and has a long and rich history in California (dating back to the 1860s) and across the entire country. Vote by mail is secure and fraud is exceedingly rare. Indeed, Plaintiffs' evidence of actual fraud (as opposed to speculation) in California elections is limited to three anecdotes, all of which concern the improper intentional registration of a handful of fictitious individuals or the inadvertent registration of ineligible voters, none of which involved use of mail ballots. ECF 24-28, 24-29 & 24-30.

There is no evidence that California's decision to mail ballots to the remaining one-fifth of the electorate that was not already receiving them will result in constitutional injury. Mailed ballots are a critical part of ensuring the right to vote in every state in the union. In the midst of a once-in-a-lifetime global pandemic, with public health officials warning about the need to minimize in-person interactions, vote by mail is essential to ensuring the right to vote is preserved in November. Indeed, the California League of Conservation Voters has made vote-by-mail a key part of its voter outreach and mobilization strategy for the fall.

AB 860 contains safeguards that are widely used across the country to prevent fraud and are more than adequate to protect the integrity of the election. No court has ever found the risk of fraud arising from use of mail ballots to present a constitutional injury. Furthermore, Plaintiffs' invocation of the bogeyman of "fraud" to make it more difficult for millions of Californians to cast their ballots

absurdly turns the doctrine of vote dilution on its head. That doctrine is designed to ensure that every American's vote counts, but Plaintiffs' proposed ban on mailing ballots to all active voters would have a disenfranchising effect. The balance of equities strongly favors rejecting Plaintiffs' imaginary claims of mail ballot fraud. Plaintiffs' request for injunctive relief would depress participation, not protect the constitutional right to vote. This Court should deny it and indeed dismiss the complaint.

## INTEREST OF AMICI

As set forth in its motion to intervene, California League of Conservation Voters ("CLCV") has a strong interest in the outcome of this litigation and ensuring that eligible Californians may safely exercise their voting rights in the general election this fall. ECF 48-1 at 7-10.

## ARGUMENT

### I.  VOTE BY MAIL IS COMMON, PARTY-NEUTRAL, AND NECESSARY TO PROTECT THE FRANCHISE.

#### A.  Vote-By-Mail Is Common, Has A Long History, And Is Widely Used In California.

Vote by mail was already deeply rooted in the U.S. and California electoral system well before the pandemic. In 2016, nearly one in every four U.S. votes (33 million) were cast by either universal mail or absentee ballots.[1] As of July 2, 2020, 36 states and the District of Columbia will offer all voters the opportunity to vote using a mail ballot in November, either because they have "no-excuse" absentee voting or because they conduct their elections primarily by mail ballots.[2] Five states have adopted and provided for all-mail elections: Oregon, Washington, Colorado, Utah, and Hawaii. *See Paher v. Cegavske*, — F. Supp. 3d —, 2020 WL 2089813, at *1 (D. Nev. Apr. 30, 2020).

In California, mail voting has a long and rich history dating back to the 1860s.[3] For over four decades, the state has expanded the use of mail ballots, including through a 1979 state law allowing

---

[1] Darrell M. West, *How does vote-by-mail work and does it increase election fraud?*, Policy 2020 Brookings Inst. (June 22, 2020), https://www.brookings.edu/policy2020/votervital/how-does-vote-by-mail-work-and-does-it-increase-election-fraud/.

[2] *See Preparing Your State for an Election Under Pandemic Conditions*, Brennan Center for Justice (Updated July 2, 2020), https://www.brennancenter.org/our-work/research-reports/preparing-your-state-election-under-pandemic-conditions.

[3] Sebastian Nelson, *California's First Absentee Ballots*, California Originals, a quarterly newsletter of the California State Archives (Spring 2013), https://archives.cdn.sos.ca.gov/pdf/vol-1-no-3.pdfhttps://archives.cdn.sos.ca.gov/pdf/vol-1-no-3.pdf .

for "no excuse" absentee voting, *see* Cal. Elec. Code §§ 3001, 3003, 3006, 3007.8, 3101 *et seq.* and a 2001 law, which authorized any voter to become a permanent vote-by-mail voter.[4] In 2016, the legislature passed, at CLCV's urging, the Voter's Choice Act ("VCA"), which authorizes counties to proactively mail ballots to all registered, active voters.[5] Cal. Elec. Code § 4005(a)(2), (8). As of June 10, 2020, 14 California counties conduct elections pursuant to the VCA where every active registered voter receives a ballot in the mail.[6] Together with California's "no excuse" absentee ballot system, approximately 80% of California's registered voters "will already be receiving a ballot in the mail even without AB 860 or the Governor's recent Executive Order."[7] Indeed, in the March 2020 primary election, 72% of all votes cast in California were by mail.[8] Given that a supermajority of eligible California voters were already being mailed ballots, Plaintiffs are wrong when they suggest California's plan to expand access to mailed ballots is "major" or "hasty." ECF 24-1 at 15.

### B. Vote-by-Mail Is Necessary To Ensure Californians Are Able to Exercise Their Right To Vote.

Expanding access to mail ballots will increase voter turnout. Against the backdrop of an ongoing pandemic, it will also avoid disparities in access to the franchise for populations particularly susceptible to COVID-19 or based on the prevalence of COVID-19 in a particular location.

1. **Vote By Mail Helps Voters Exercise Their Rights Without Risking Infection by COVID-19:** Vote by mail is a necessary response to the grave risks that the current pandemic poses to people's health and lives. The medical evidence in this record demonstrates that COVID-19 is not behind us, and further, a resurgence of cases will likely occur *precisely* around the time of the November election. Indeed, "[t]he risk of exposure to infectious diseases in enclosed areas like polling places with many people entering and leaving is significantly higher than in the community generally." ECF 69 at

---

[4] Senate Floor Analyses, California AB 860, California 2019-2020 Regular Session, at 4 (June 10, 2020) https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201920200AB860#.

[5] Senate Floor Analyses, California SB 450, California 2015-2016 Regular Session, at 7 (Aug. 25, 2016), http://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201520160SB450#.

[6] Amador, Butte, Calaveras, El Dorado, Fresno, Madera, Mariposa, Napa, Nevada, Orange, Sacramento, San Mateo, Santa Clara, and Tuolumne Counties. Senate Floor Analyses, AB 860, *supra* at 5 n.4.

[7] *Id.*

[8] *See Historical Vote-By-Mail (Absentee) Ballot Use in California*, Cal. Sec. of State (July 7, 2020), https://www.sos.ca.gov/elections/historical-absentee/.

17 (citing Mishori Decl. ¶ 34). Enjoining Defendants from expanding vote by mail amidst the pandemic will force some Californians who will not already receive a mail ballot and are unable to request a mailed ballot in time to face the impermissible choice between disenfranchisement and risking infection with a deadly virus.

2. **Vote By Mail Helps Elderly Voters and Voters With Certain Disabilities**: Vote by mail dramatically improves access to voting for senior citizens and people with disabilities.[9] Indeed, elderly people and people with disabilities use mail ballots more frequently than younger voters or people without disabilities.[10] The U.S. Election Assistance Commission found "individuals with disabilities…report[ed] voting by mail at much higher rates than do individuals not reporting a disability."[11]

3. **Vote by Mail Helps Rural Voters**: Vote by mail is likely to encourage voter participation in rural areas, where polling places are more spread out and therefore take more time and effort for voters to reach.[12] Non-drivers have particular difficulty exercising their right to vote.

4. **Vote By Mail Helps Working Voters**: Vote by mail is a convenient alternative to in-person voting on election day for those with busy schedules who cannot afford to take time off to cast their ballot in person.[13] Working parents whose responsibilities make it hard or at best uncertain that they will be able to visit the polls on election day find VBM particularly useful, especially if schools remain closed during the pandemic. Indeed, President Donald Trump, Vice President Mike Pence, and a half dozen other senior advisors to the President have all repeatedly voted by mail.[14]

---

[9] While greater access to mail voting enables many people with disabilities to cast their ballots, preservation of in-person polling places is also critical for voters with disabilities and others who need accommodations such as electronically assisted, ADA-compliant aids or who are otherwise unable to easily vote by mail.

[10] Charles Stewart III, *2016 Survey of the Performance of American Elections: Final Report*, Mass. Inst. of Tech. , at 13 (2017), http://www.legendsvote.org/wp-content/uploads/MIT-Charles-Stewart-Voter-Turnout-Study-2016.pdf (finding 33% of voters 70 years and older voted by mail compared to 20% of voters in their 30s, and 30% of voters with a disability voted by mail, compared to 22% of voters without a disability).

[11] *EAVS Deep Dive: Early, Absentee and Mail Voting*, U.S. Election Assistance Comm'n (Oct. 17, 2017), https://www.eac.gov/documents/2017/10/17/eavs-deep-dive-early-absentee-and-mail-voting-data-statutory-overview.

[12] *See* Russell Berman, *The Republicans Telling Their Voters to Ignore Trump*, The Atlantic (June 5, 2020), https://www.theatlantic.com/politics/archive/2020/06/trump-republicans-vote-mail-arizona-florida/612625/.

[13] Sarah Jackel & Stuart A. Thompson, *The Myth of the Lazy Nonvoter*, N.Y. Times (Oct. 5, 2018), https://www.nytimes.com/interactive/2018/10/05/opinion/midterm-election-voter-turnout-photo-id.html.

[14] Brian Slodysko, *Mail Voting: Pence, aides embrace practice panned by Trump*, Associated Press (June 22, 2020), https://apnews.com/b0bbd1a30fbbe1a1ebb0398564f19a58.

**C.     Vote-By-Mail Is Fair and Does Not Benefit Any Particular Party or Ideology.**

Multiple studies over an extended period of time make clear that vote by mail does not uniformly benefit any particular party or ideology.[15] A recently published "comprehensive design-based analysis of the effect of universal vote-by-mail" conducted by Stanford University political scientists concludes that VBM does not impact either party's share of turnout or vote share.[16] Courts have acknowledged that VBM improves access and therefore increases turnout, but there is no way to predict what higher turnout means. *See*, *e.g.*, *Short v. Brown*, 2018 WL 1941762, at *3 (E.D. Cal. Apr. 25, 2018), *aff'd*, 893 F.3d 671 (9th Cir. 2018) (noting that the effect of California's Voter's Choice Act "all-mail ballot election option is to increase turnout in the counties in which it is employed").

**II.    VOTE-BY-MAIL IS SECURE AND DESIGNED TO PROTECT AGAINST FRAUD.**

California vote-by-mail laws have safeguards that protect against fraud, including:

A. Active Voter Requirement: The Governor's Order, as modified by E.O. N-67-20, and AB 860 direct the provision of mail ballots only to *active* voters. An "[i]nactive voter" means a voter for whom a county elections office receives a returned residency confirmation mailing—such as a voter information guide or a mail-in ballot—or information obtained through the U.S. Postal Service National Change of Address database indicating the voter moved outside the county. Cal. Code Regs. tit. 2, § 20108.1(1) (citing Cal. Elec. Code §§ 2222, 2226).

B. List Maintenance: Federal and California law require that election officials regularly maintain their voter rolls and eliminate any ineligible voters. *See, e.g.*, 52 U.S.C. § 20507(a)(4); Cal. Elec. Code §§ 2220-2226. California county elections officials satisfy these requirements by, *inter alia*, issuing confirmatory mailings to voters with new addresses, utilizing change-of-address data, and cancelling voter registrations for voters who fail to verify their addresses after a certain period of

---

[15] *E.g.* Lee Drutman, *There Is No Evidence That Voting By Mail Gives One Party An Advantage*, FiveThirtyEight (May 12, 2020), https://fivethirtyeight.com/features/there-is-no-evidence-that-voting-by-mail-gives-one-party-an-advantage/ ("Numerous studies have arrived at the same conclusion: Voting by mail doesn't provide any clear partisan advantage."); Adam J. Berinsky, Nancy Burns & Michael W. Traugott, *Who Votes By Mail? A Dynamic Model of the Individual-Level Consequences of Voting-By-Mail Systems*, 65 Public Opinion Quarterly 178-97 (2001), http://web.mit.edu/berinsky/www/whovotesbymail.pdf.

[16] Daniel M. Thompson et al., *Universal vote-by-mail has no impact on partisan turnout or vote share*, 117 Proceedings of the National Academy of Sciences 25, at 14052-56 (Douglas S. Massey, ed., June 23, 2020), https://www.pnas.org/content/117/25/14052.

time. Cal. Elec. Code §§ 2220, 2222, 2226(a)-(d); *see also* ECF 70-2 (Lean Decl.) at Ex. A. Plaintiffs' stated concerns about California's list maintenance, ECF 24-1 at 7-8 & Exs. R-Y, completely ignore that (1) California law directs ballots to be mailed only to *active* voters and (2) list maintenance impacts in-person and mail ballots equally.

C. Ballot Identification: Each active voter gets a single mail-in ballot assigned and labeled with a unique barcode that helps prevent fraudulent use. County officials are in charge of keeping track of each of these ballots through their barcode system. Cal. Elec. Code §§ 3017(c), 3019.7.

D. Election Day Protections Against Double Voting: California law prohibits voters who chose to vote by mail from casting a second ballot in-person at a polling place. Each county is required to maintain a list of voters who receive and vote a mail ballot. *Id.* § 15111. A voter who has received a mailed ballot may vote a regular ballot at their polling place *only* if (a) they surrender their mailed ballot, or (b) the local elections board first verifies that the voter has not returned their mail-in ballot. *Id.* § 3015(a)(1)-(2). If neither condition is satisfied, the voter will only receive a provisional ballot, which is subject to stringent verification procedures. *Id.* §§ 3016, 14310.

E. Signature Verifications: California verifies voter signatures on mailed-in ballots. Each ballot envelope must be signed and compared against the voter's other signatures on record. *See id.* § 3019(a)(1)(A)-(B). If an elections official determines that the signatures do not compare or a signature is missing from the envelope, a voter is given an opportunity to cure the defect up to two days prior to the certification of the election. *Id.* § 3019(d)-(e). If the voter fails to do so, the ballot is not counted. *Id.* § 3019(c).

F. Internal Audit System: California has implemented a system of internal audits designed to ensure the accuracy of election results. California requires county election officials to conduct a public manual tally of all ballots cast (including mailed in ballots) in 1% of precincts, chosen at random. *Id.* § 15360(a). In addition, as provided under California law, Secretary Padilla has implemented a risk-limiting audit pilot program whereby a sample set of ballots chosen at random from across the state are audited for accuracy. *Id.* § 15367.[17] Under that pilot program, officials

---

[17] *See also Protecting the Integrity of Elections: Post-Election Risk-Limiting Audits*, Cal. Sec. of State, (July 7, 2020), https://www.sos.ca.gov/elections/risk-limiting-audits/.

review a sample set of ballots to confirm the accuracy of reported results and "[a]dditional ballots may be reviewed as necessary until the results of the election are confirmed to a certain degree of confidence." *Id*.

G. Criminal Penalties: California imposes harsh criminal penalties set up to punish any person who attempts to commit voter fraud. It is a felony to use a fraudulent signature when voting by mail, or to even tamper with a mail-in-ballot. Cal. Elec. Code § 18560. These felonies are punishable with fines up to $1,000 and imprisonment and up to three years. *Id.* §§ 18568, 18573, 18578. These harsh penalties "provide a strong deterrent to voter fraud; it makes no sense to risk such significant punishment for one additional vote."[18]

After all the safeguards, the incidence of voter fraud remains miniscule.[19] A recent analysis of the five states that mailed ballots to all active registered voters prior to 2018 showed only 44 instances of reported fraud out of over 55 million ballots cast.[20] In Oregon, which has conducted all vote-by-mail elections since 1998, there were only 15 attempts at fraudulent votes by mail (less than one attempt per year). The other states also have few instances of fraud: 12 instances of fraud in Washington since 2005, 14 instances in Colorado since 2013, and 2 instances in Hawaii and 1 Utah, which have conducted all elections by mail since 2013. This data is drawn from a study conducted by the conservative think tank Heritage Foundation, which collected all reported voter fraud cases across the United States over a 38-year period (between 1982 and 2020) and found only 207 cases of fraud related to mail voting out of hundreds of millions of mail ballots cast.[21] There is no evidence that this patently immaterial level of fraud has come close to changing the result of any election.

---

[18] Wendy R. Weiser & Harold Ekeh, *The False Narrative of Vote-by-Mail Fraud*, Brennan Center for Justice (April 10, 2020), https://www.brennancenter.org/our-work/analysis-opinion/false-narrative-vote-mail-fraud.

[19] *See, e.g.*, Elaine Kamarck & Christine Stenglein, *Low Rates of Fraud in Vote-By-Mail States Show the Benefits Outweigh the Risks*, Brookings Inst. (June 2, 2020), https://www.brookings.edu/blog/fixgov/2020/06/02/low-rates-of-fraud-in-vote-by-mail-states-show-the-benefits-outweigh-the-risks/; Elise Viebeck, *Minuscule Number of Potentially Fraudulent Ballots in States with Universal Mail Voting Undercuts Trump Claims About Election Risks*, Wash. Post (June 8, 2020), https://www.washingtonpost.com/politics/minuscule-number-of-potentially-fraudulent-ballots-in-states-with-universal-mail-voting-undercuts-trump-claims-about-election-risks/2020/06/08/1e78aa26-a5c5-11ea-bb20-ebf0921f3bbd_story.html.

[20] *See* Kamarck & Stenglein, *supra* n.19.

[21] Matt Barreto et al., *Debunking the Myth of Voter Fraud in Mail Ballots*, UCLA Voting Rights Project, at 6 (May 2020), https://latino.ucla.edu/wp-content/uploads/2020/04/LPPI-VRP-Voter-Fraud-res.pdf.

Indeed, courts that have looked at the facts have consistently recognized that the risk of voter fraud — even in the context of vote-by-mail — is miniscule. *See, e.g.*, *Thomas v. Andino*, 2020 WL 2617329, at *20, n.21 (D.S.C. May 25, 2020) (noting that "[d]espite th[e] dramatic increase in mail voting over time, fraud rates 'remained infinitesimally small.'" (citation omitted)); *Paher*, 2020 WL 2089813, at *1 (noting that Oregon, Washington, Colorado, Utah, and Hawaii conducted all mail elections with miniscule reported incidents of fraud); *Texas Dem. Party v. Abbott*, 2020 WL 2541971, at *33 (W.D. Tex. May 19, 2020) (noting lack of evidence showing that vote by mail leads to fraud in Texas).

Overall, the safeguards and procedures put in place by California provide a better alternative to keep voters safe during the present public health crisis. *See Paher*, 2020 WL 2089813, at *2 (noting mail-in ballots still had all the established safeguards in Nevada's election system); *see*, *e.g.*, *Texas Dem. Party*, 2020 WL 2541971, at *33 (noting vote-by mail was an alternative, "safe method" to vote during COVID). There is minimal danger of voter fraud or tampering. Providing mail-in ballots to the 20% of active, registered voters who do not already receive ballots is therefore appropriate under AB 860.

### III. PLAINTIFFS HAVE NO CLAIM FOR "VOTE DILUTION," MUCH LESS ONE THAT CAUSES CONSTITUTIONAL INJURY.

Plaintiffs' invocation from inapposite cases that "[d]ilution of honest votes, to any degree, by the casting of fraudulent or illegitimate votes violates the right to vote," Compl. ¶ 161, conflates two lines of cases to concoct a novel constitutional theory of voter dilution under the Fourteenth Amendment based on purported risk that a fraudulent mail ballot might be cast. Such a theory has never been recognized by any court. And it does not make sense.

The first cases Plaintiffs cite to involved legislative redistricting schemes designed to dilute the voices of minority voters. *See Reynolds v. Sims*, 377 U.S. 533, 555 (1964); *Baker v. Carr*, 369 U.S. 186, 207-08 (1962). In these cases, the Court used the term "dilution" when referring to situations where a "favored group has full voting strength . . . [and] [t]he groups not in favor have their votes discounted." *Reynolds*, 377 U.S. at 555 n.29 (quoting *South v. Peters*, 339 U.S. 276, 279 (1950) (Douglas, J., dissenting)); *see also Thornburg v. Gingles*, 478 U.S. 30, 47 (1986).

1     The second cases Plaintiffs cite to involved voters or officials charged with or convicted of
2  fraud, and in that context, the Supreme Court acknowledged that such fraud can dilute the votes of
3  honest voters. In *Anderson v. United States*, 417 U.S. 211, 226-27 (1974), for example, the Court
4  upheld a conviction against election officials who rigged an election by casting many fictitious
5  ballots in a primary election under 18 U.S.C. § 241 -- a statute passed during the Reconstruction Era
6  criminalizing conspiracies to deprive others of "their free exercise or enjoyment of any right or
7  privilege secured . . . by the Constitution or laws of the United States." *See* R. Paul Margie,
8  *Protecting the Right to Vote in State and Local Elections Under the Conspiracy Against Rights Act,*
9  1995 U. Chi. Legal F. 483, 485 (1995) (section 241 enacted to counter violence by the Ku Klux Klan
10 to intimidate Black voters and keep them away from polls).

11    The fact that there are criminal prohibitions on actual election fraud does not mean that there
12 is a broad, free-standing constitutional right that any voter or Plaintiffs can assert, based on nothing
13 more than speculation and immaterial incidents. Consider the analogy of the tax system: some
14 taxpayers cheat on their taxes, and without such fraud, tax rates would surely be lower for honest
15 taxpayers. In this way, individuals who cheat on their taxes harm honest taxpayers who do not. This
16 is in part why the U.S. government audits, investigates, and prosecutes individuals who engage in tax
17 fraud. But it is absurd to think that an honest taxpayer could sue to invalidate the entire tax system on
18 the basis that another taxpayer is cheating -- the harm would be too remote and speculative to support
19 the taxpayer's Article III standing, and there is no constitutional right to a tax system free of fraud. If
20 the IRS took some action to make filing taxes more convenient (such as simplifying tax forms), it is
21 equally absurd to think that an individual taxpayer would have a legal claim to challenge that change
22 as facilitating further tax fraud.

23    The notion that mailing ballots to the 20% of active California voters who do not already
24 receive them somehow dilutes the right to vote is speculative, unsupported by the law, and should be
25 rejected by this Court. Speculation that more fraud *might* result is far from enough to establish
26 constitutional injury to Plaintiffs or any voter. As the District of Nevada recently concluded in
27 rejecting a challenge to a similar vote-by-mail policy, the plaintiff voters lacked standing to bring a
28 claim for vote dilution. *Paher*, 2020 WL 2089813, at *5.

AMICUS CURIAE BRIEF OF CALIFORNIA LEAGUE OF CONSERVATION VOTERS                    NO. 20-CV-01055-MCE-CDK
AND CALIFORNIA LEAGUE OF CONSERVATION VOTERS FUND

### IV. THE BALANCE OF HARMS STRONGLY FAVORS CALIFORNIA'S EXPANDED ACCESS TO MAILED BALLOTS

In contrast to the wholly conjectural specter of "fraud" conjured by Plaintiffs, blocking California's plans to expand access to mailed ballots in the November 2020 election would significantly undermine CLCV's work in ensuring an open and accessible electoral process. If Plaintiffs are successful, CLCV would be forced to divert resources to create new plans to educate voters as to the availability of vote-by-mail and reconfigure its get-out-the-vote program to place additional emphasis on in-person voting, all while California scrambles to develop adequate protections for voters. ECF 48-1 at 17 (citing Creasman Decl. ¶ 19).

More importantly, Plaintiffs' position would undermine eligible Californians' ability to safely have their voices heard. The state—through both its executive and legislative branches—has implemented a plan to protect Californians' health in the general election this fall by expanding vote-by-mail access to the 20% of registered voters who would not otherwise receive a mailed ballot. If Plaintiffs are successful in invalidating this plan based on imaginary harms and an entirely unsupported theory of "vote dilution," it will be *more* difficult for Californians to exercise their voting rights. *See Paher*, 2020 WL 208913, at *7 (noting that if Nevada's identical plan was invalidated "voters worried about risks to their health or unsure about how to obtain an absentee ballot may very well be discouraged from exercising the right to vote all together"). The Court should not permit Plaintiffs to wreak havoc on the franchise in California.

### CONCLUSION

Plaintiffs promote a false narrative: that elections conducted partially or wholly by mail are subject to high levels of fraud. Plaintiffs repeat the same worn, inapposite, and isolated anecdotes, but ignore the data. They have no evidence of mail ballot fraud in California, and the evidence of fraud they proffer is clearly immaterial. The facts are that vote-by-mail is secure and fair, that adequate safeguards are in place and followed, and that vote-by-mail increases access to the ballot box. Once the Court looks at the facts, it should deny Plaintiffs' request for injunction.

Dated: July 7, 2020

Respectfully submitted,

| **ARNOLD & PORTER KAYE SCHOLER LLP** | **BRENNAN CENTER FOR JUSTICE at NYU SCHOOL OF LAW** |
|---|---|
| | MYRNA PÉREZ[*] |
| By:  /s/ *Trenton H. Norris* | ELIZA SWEREN-BECKER[*] |
| TRENTON H. NORRIS | myrna.perez@nyu.edu |
| Trent.Norris@arnoldporter.com | eliza.sweren-becker@nyu.edu |
| GILBERT R. SEROTA | 120 Broadway, Suite 1750 |
| Gilbert.Serota@arnoldpoter.com | New York, NY  10271 |
| BENJAMIN T. HALBIG | Telephone:     646.292.8310 |
| Benjamin.Halbig@arnoldporter.com | Facsimile:      212.463.7308 |
| Three Embarcadero Center, 10th Floor | |
| San Francisco, CA  94111-4024 | |
| Telephone:     415.471.3100 | |
| Facsimile:      415.471.3400 | |

JOHN A. FREEDMAN[*]
John.Freedman@arnoldporter.com
601 Massachusetts Ave, NW
Washington, DC  20001
Telephone:     202.942.5000
Facsimile      202.942.5999

*Attorneys for Amici Curiae*
CALIFORNIA LEAGUE OF CONSERVATION VOTERS and
CALIFORNIA LEAGUE OF CONSERVATION VOTERS
EDUCATION FUND

*\*Application for admission pro hac vice forthcoming*

## CERTIFICATE OF SERVICE

I, Trenton H. Norris, hereby certify that all counsel of record who are deemed to have consented to electronic service are being served a copy of the foregoing document(s) via the Court's CM/ECF system on July 7, 2020.

/s/ *Trenton H. Norris*
TRENTON H. NORRIS